**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| DAVID DAVIS, | ) |
| | )     Case Number: |
| Plaintiff | ) |
| | )     3:06-CV-0544-WHA |
| v. | ) |
| | ) |
| PHENIX CITY, ALABAMA, | ) |
| | ) |
| JEFFREY HARDIN, named in his individual | ) |
| and official capacities, | ) |
| | ) |
| H.H. ROBERTS, named in his individual | ) |
| and official capacities, | ) |
| | ) |
| WALLACE HUNTER, named in his individual | ) |
| and official capacities, | ) |
| | ) |
| ROY WATERS, named in his individual | ) |
| and official capacities, | ) |
| | ) |
| and | ) |
| | ) |
| BARBARA GOODWIN, named in her individual | ) |
| and official capacities, | ) |
| | ) |
| Defendants. | ) |

<u>***MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS***</u>

COME NOW, Defendants, Phenix City, Alabama, Jeffrey Hardin, H.H. Roberts

and Wallace Hunter and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and

files this their Memorandum Brief in support of their Motion for Summary Judgment.

## STATEMENT OF UNDISPUTED FACTS

Defendant, the City of Phenix City, Alabama is organized pursuant to a city charter, which requires a city manager/council form of government. This form of government empowers the city manager, to run the day to day operations of the City and to appoint all city department heads, including, but not limited to, the Chief of the Fire Department. Essentially, the city manager functions as the City's chief executive officer and the mayor and council function as the legislative and policy making body. See Defendants' Exhibit "1", City Charter of the City of Phenix City.

Employees of the City of Phenix City (including firefighters) are governed by the City of Phenix City Merit System Rules and Regulations. See Defendants' Exhibit "2", City of Phenix City Merit System Rules and Regulations. Phenix City firefighters also must comply with the Standard Operating Procedures of the Phenix City Fire Department. See Defendants' Exhibit "3", excerpts from Phenix City Fire Department's Standard Operating Procedures.

Plaintiff, David Davis, was hired as a firefighter, by the City of Phenix City, in 1998. After being hired, Davis joined the local firefighters union. See Defendant's Exhibit "4", Deposition of David Davis, p.17, lines 1-7. Davis testified that he became an officer in the union in 2002, serving as secretary/treasurer of the union. Sometime in 2005, apparently, Davis became vice president of the union and acted as interim President after the former union president, Dennis Duty, was terminated from the Phenix City Fire Department. See Defendants' Exhibit "4", Deposition of David Davis p.18 and p. 20, lines 3-5 and lines 12-25. Duty had filed a lawsuit against the City of Phenix City alleging among other things violation of his First Amendment Rights for speaking out on

matters of public concern and wrongful termination. That lawsuit ended with a jury verdict in favor of the City and all City related Defendants in June of 2005. See Defendants' Exhibit "5", Affidavit of James R. McKoon, Jr. It was at that time, that Davis became the elected president of the local firefighter's union in Phenix City. See Defendants' Exhibit "4", Deposition of David Davis p.18 and p. 20, lines 3-5 and lines 12-25.

On August 3, 2005, Davis, was involved in an incident with a superior, wherein the superior, Kristin Kennedy, was conducting a meeting along with three other assistant chiefs at Fire Station Number 1 in Phenix City, Alabama. Fire Marshal Kennedy, was speaking with the entire shift concerning Fire Department issues and specifically new work schedules. There had been some discussion about changing to 8 hour shifts. During the discussion, Davis, acted in an aggressive manner by rising to his feet, sticking his chest out in a quick motion and stating to Fire Marshal Kennedy (a female) in reference to 8 hour shifts "well do it and don't punk me out" or "stop punking me out". Thereafter, Davis was disciplined by being given a 1 day suspension without pay for committing a Group II Offense, i.e. "Threatening, intimidating, coercing, or interfering with fellow employees or supervisors at anytime, including abusive language". Davis appealed this action to the Personnel Review Board of the City of Phenix City on August 16, 2005. The suspension was recommended to be upheld by the Personnel Review Board and was indeed upheld by the City Manager. See Defendants' Exhibit "6", documents from Davis personnel file and records from the Personnel Review Board.

In September of 2005, within a few weeks of the disciplinary action against Davis and within 90 days of the verdict in favor of the City against Duty, Davis participated in a

3

meeting with Chuck Williams, a reporter for the Columbus (GA) Ledger-Enquirer newspaper.  See Defendants' Exhibit "4", Deposition of David Davis, p.24, lines 6-24. At that Union meeting, Davis aired perceived problems regarding the City of Phenix City Fire Department to Mr. Williams.  See Defendants' Exhibit "4", Deposition of David Davis, p.25, lines 1-24.  For instance, Davis is quoted in the newspaper article entitled "Three Alarm Turmoil" referenced herein below as stating "Morale is at the lowest point since I've been here." and "We are reluctant to talk because of significant fear of retaliation, being disciplined or fired."  Davis had never taken these grievances to his chain of command as required by the City's Merit System Rules and Regulations.  See Defendants' Exhibit "7", Counseling Form dated September 21, 2005.

After the publication of the article in the Columbus (GA) Ledger-Enquirer newspaper by Mr. Williams entitled "Three-Alarm Turmoil", attached hereto as Defendants' Exhibit "8", Davis was brought in by his superiors and counseled regarding communicating his grievances through the chain of command as required by the Merit System Rules and Regulations, not through the media.  See Defendants' Exhibit "7", Counseling Form dated September 21, 2005.  He was presented with another copy of the Merit System Rules and Regulations and the Standard Operating Procedures of the Fire Department related to grievance procedures and contact with the media at or around the time of that meeting.  See Defendants' Exhibit "4", Deposition of David Davis, pp.47-48, lines 20-25 and lines 1-5.  Davis further indicated that he understood going forward he would need to communicate through his chain of command when he had grievances with the Fire Department.  See Defendants' Exhibit "4", Deposition of David Davis, p.52-53 and p.58, lines 18-25, lines 1-2 and lines 2-11 and Defendants' Exhibit "9",

4

Memorandum of Wallace Hunter dated September 20, 2005. A grievance is defined by the City of Phenix City's Merit System Rules and Regulations as, "a complaint—a view or opinion pertaining to employment conditions, to relationships between employees and supervisors, or to relationships with other employees." See Defendant's Exhibit "2", City of Phenix City Merit System Rules and Regulations at 15.022.

In April of 2006, Davis became aware of a proposed policy change within the City of Phenix City Fire Department to change the probationary period for newly hired Fire Department personnel from 12 months to 18 months. See Defendants' Exhibit "4", Deposition of David Davis, p.62, lines 3-17.[1] Davis has offered testimony that he would be personally affected by that policy decision. See Defendants' Exhibit "4", Deposition of David Davis, p.127, lines 8-10. Davis opposed this policy change, but did not communicate his grievance through his chain of command. See Defendants' Exhibit "4", Deposition of David Davis, p.126, lines 4-21. Rather, Davis contacted a few members of City Council and the Mayor regarding his personal objection to the implementation of this policy change. See Defendants' Exhibit "4", Deposition of David Davis, p.72, lines 7-25. After his chain of command was made aware of these communications, Davis was brought in and terminated on April, 21, 2006. See Defendants' Exhibit "10", End of Employment Form dated April 21, 2006. Davis was terminated due to his violation of the September 20, 2005 directive from Chief Wallace B. Hunter regarding free speech

---

[1] Although Davis stated in his deposition that the proposed probationary period change for new hires came to his attention through a newspaper article in April 2006, shortly before the City Council was to vote on the same, he also acknowledged that the matter had been discussed at least a couple of months earlier and that he was told at that time that it had nothing to do with current Fire Department employees, only new recruits. See Defendants' Exhibit "4", Deposition of David Davis pp. 75-76. Deputy Fire Chief Roy Waters stated in his deposition that the proposed change was explained in meetings throughout the Fire Department, that it did not affect veteran firefighters, that there were only two people who raised questions about the proposed change and it was clearly communicated that the policy only applied to new hires. See Defendants' Exhibit "18", Deposition of Roland Leroy Waters pp. 23-26.

and grievances, violation of ASOP 12, violation of Merit System Rules and Regulations and insubordination.  <u>See Defendants' Exhibit "10", End of Employment Form dated April 21, 2006 and Defendants' Exhibit "11", Written Warning Form dated April 20, 2006.</u>

Davis appealed his termination to the City of Phenix City's Personnel Review Board.  <u>See Defendants' Exhibit "12", Letter of David Davis to Barbara Goodwin dated April 28, 2006.</u>  The Board recommended that his termination be upheld on May 16, 2006.  <u>See Defendants' Exhibit "13", Minutes of Personnel Review Board Meeting of May 16, 2006.</u>  City Manager H.H. Roberts upheld his termination in accord with the recommendation of the Personnel Review Board on May 18, 2006.  <u>See Defendants' Exhibit "14", Letter from H.H. Roberts to David Davis dated May 18, 2006.</u>  Davis filed this action on June 19, 2006.  <u>See Plaintiff's Complaint.</u>

## ARGUMENT

### Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  <u>Greason v. Kemp</u>, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  <u>See Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested

6

witnesses.'" <u>Reeves</u>, 530 U.S. at 151, quoting 9 A.C. Wright & A. Miller, Federal Practice and Procedure § 2529, p.299.[2]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.6 (11th Cir. 2001) (en banc) quoting <u>Massachusetts School of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

### COUNT I -- Violation of 42 U.S.C § 1983 by Defendants by adverse treatment to Plaintiff in violation of his right to free speech under the First and Fourteenth Amendments to the U.S. Constitution is due to be dismissed as such protections are limited for City employees.

Public employees do not surrender the right to comment on matters of public interest by accepting a public position.  <u>Pickering v. Board of Educ.</u>, 391 U.S. 563, 568 (1968).  However, the right to freedom of speech enjoyed by a public employee is not absolute.  <u>McKinley v. Kaplan</u>, 262 F.3d 1146, 1149 (11th Cir. 2001).  Public employers have an interest "in promoting the efficiency of the public services it performs through its employees."  <u>Pickering</u>, 391 U.S. at 568.  Consequently, the courts must strike "a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  <u>Id</u>.

Under Eleventh Circuit precedent, a public employee seeking to assert a claim for violation of his free speech rights must prove that the public employer retaliated against him because his speech was on a matter of public concern.  <u>McCabe v. Sharrett</u>, 12 F.3d

---

[2] Although <u>Reeves</u> was a review of a motion for a judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  <u>Reeves</u>, 530 U.S. at 150, citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-251 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

1558, 1564 n.3 (11th Cir. 1994). Where, as in the instant case, the putative plaintiff's employer is a public official or entity, retaliation occurs where an adverse employment action is taken that is likely to chill the exercise of constitutionally protected speech. Goffer v. Marbury, 956 F.2d 1045, 1049 n.1 (11th Cir. 1992). An adverse employment action is "broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." McCabe, 12 F.3d at 1564.

The Eleventh Circuit uses a four-part test to determine whether a public employee has been retaliated against in violation of the First Amendment: (1) the speech must be on a matter of public concern; (2) the employee's right to speak on the matter of public concern must outweigh the public employer's interest in promoting the efficiency of the services it performs through its employees; (3) the speech must play a substantial role in the decision to take an adverse employment action; and (4) the public employer must not have had another valid reason for the adverse employment action. Kaplan, 262 F.3d at 1149. To be of public concern, the subject of the speech should relate to political, social or other concerns to the community. Connick v. Myers, 461 U.S. 138, 146 (1983). This question is to be decided on the content, form and context of the speech. Id at 147-48.

Davis' First Amendment protection is diminished due to his membership in a paramilitary organization. The Phenix City Fire Department is a quasi-military organization; thus, the Plaintiff's burden in proving his speech is constitutionally protected is greater. See Anderson v. Burke County, 239 F.3d 1216 (11th Cir. 2001). Such agencies have a heightened need for "order, loyalty, morale and harmony" due to the trust and communication required to perform dangerous tasks. Oladeinde v. City of

8

Birmingham, 230 F.3d 1275, 1293 (11th Cir. 2000). In fact, the Eleventh Circuit has specifically held that "[i]n quasi-military organizations such as law enforcement agencies, comments concerning co-workers' performance of their duties and superior officers' integrity can directly interfere with the confidentiality, espirit de corps and efficient operation" of the organization. Busby v. City of Orlando, 931 F.2d 764, 774 (11th Cir. 1991). The Defendants' "need to secure discipline, mutual respect, trust and particular efficiency among the ranks" of the Fire Department employees must be considered in the determination of whether Plaintiff's speech is protected. Anderson, 239 F.3d at 1222 (quoting Hansen v. Soldenwagner, 19 F.3d 573, 577 (11th Cir. 1994); Abernathy v. City of Cartersville, 642 F. Supp. 529, 533 (N.D. Ga. 1986) (noting the importance of a close working relationship and the ability to destroy it with speech in reviewing fire department dismissals); Yarbrough v. City of Jacksonville, 363 F. Supp. 1176 (M.D. Fla. 1973) (recognizing quasi-military status of fire departments and the need for strict discipline and adherence to orders of a superior).

Plaintiff cannot prevail on Count I of his Complaint because the Defendants did not violate the Plaintiff's First Amendment right of free speech. Plaintiff alleges in Count I of his Complaint that he was terminated for speaking out on a matter of public concern, namely the extension of probationary periods of employment for firefighters, by making a telephone call to Mayor Jeffrey Hardin to discuss this issue. The City's Merit System Rules and Regulations and ASOP 12 are clear that if a firefighter has a complaint or concern regarding department policy that he is to report that complaint or concern to the appropriate person within the Department's chain of command. See Defendants' Exhibit "2", City of Phenix City Merit System Rules and Regulations 2.054 and 15.023

and Defendants' Exhibit "3", excerpts from Phenix City Fire Department's Standard Operating Procedures. The Mayor of Phenix City does not fall anywhere within the chain of command for the City of Phenix City Fire Department. Furthermore, to the extent Davis was claiming he was contacting the Mayor in his capacity as President of the firefighters union, he should have known the designated contact person for the City to approach on behalf of the union was H.H. Roberts, the City Manager of the City of Phenix City, Alabama. See Defendants' Exhibit "15", Deposition of H.H. Roberts pp. 81-82 and Defendants' Exhibit "16", Letter from H.H. Roberts to Thomas Malone dated March 15, 2005. The Plaintiff was fully aware of the Merit System Rules and Regulations at the time he decided to operate outside the chain of command entirely with his concern regarding the probationary period for firefighters. See Defendants' Exhibit "4", Deposition of David Davis pp.52-53. Furthermore, Davis was specifically directed by his superiors within his chain of command to follow the Merit System Rules and Regulations relating to grievances prior to the second violation, a direction he intentionally ignored. See Defendants' Exhibit "17", Deposition of Wallace Hunter pp. 47-48.

The claim outlined in Count I of the Plaintiff's Complaint against all Defendants is due to be dismissed for three reasons: (1) The First Amendment protection afforded Davis is diminished as compared to other public employees due to his membership in a paramilitary organization; (2) The Pickering balancing test weighs in the Defendants' favor and finally (3) Davis engaged in insubordinate conduct by contacting the Mayor, even if the content of his communication was constitutionally protected free speech, and

10

therefore the Defendants were fully justified in terminating the Plaintiff from employment.

Davis freely admits that at the time of the alleged violation he was serving as a Sergeant in the City of Phenix City Fire Department. It is undisputed that the City of Phenix City Fire Department is a paramilitary organization; thus, the Plaintiff's burden in proving his speech is constitutionally protected is greater. See Anderson v. Burke County, 239 F.3d 1216 (11th Cir. 2001). Such agencies have a heightened need for "order, loyalty, morale and harmony" due to the trust and communication required to perform dangerous tasks. Oladeinde v. City of Birmingham, 230 F.3d 1275, 1293 (11th Cir. 2000). Davis sought to take his dispute with his chain of command to the City Council and the Mayor. This action, regardless of what precisely was said, constitutes a direct attack on the order of the chain of command, demonstrates a lack of loyalty to the chain of command and the resulting undermining of the authority of the chain of command contributes to a decrease in the morale and harmony of the department.

The Pickering test asks first that a determination be made as to whether or not the speech in question was on a matter of public concern or involved a matter of personal interest. Davis indicated that this policy change regarding probationary periods for new firefighters would affect him on the job. See Defendants' Exhibit "4", Deposition of David Davis, p.127 lines 8-10. Davis has not articulated or shown at any time how the extension of probationary periods for these newly hired personnel would constitute a detriment to the ability of the Fire Department to carry on its work in the community. The content of the telephone call to the Mayor was on a matter of personal interest for

11

Davis and therefore the Defendants had wide latitude in deciding how to discipline Davis for violating the Merit System Rules and Regulations.

If this Court were to find that Davis was speaking on a matter of public concern, then the court must balance "the employee's interest in expressing h[im]self" against "any injury the speech could cause to `the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Waters v. Churchill, 511 U.S. 661, 668, 114 S.Ct. 1878 (quoting Connick, 461 U.S. at 142, 103 S.Ct. 1684). In addition to the Merit System Rules and Regulations, the Fire Department has a Standard Operating Procedure (ASOP) regarding addressing City Council. Davis was aware of this ASOP 12 which requires in pertinent part that any member of the Fire Department should take a concern regarding work related matters first to their supervisor, then through the chain of command and finally to the City Manager who is then authorized to schedule a hearing with the City Council. See Defendants' Exhibit "4", Deposition of David Davis, p.121, lines 1-21. Davis seems to suggest that because he was off-duty that the ASOP did not apply to him. However the ASOP applies to all members of the Fire Department and makes no distinction about whether or not the complaint is lodged while on duty or off duty. See Defendants' Exhibit "3", excerpts from Phenix City Fire Department's Standard Operating Procedures. In point of fact, it would seem difficult for a firefighter to lodge such a complaint with the City Council while on duty. Davis also suggests that the ASOP did not apply because he was acting in his capacity as President of the firefighters union. While Defendants in no way concede that Davis was acting solely as President of the firefighters union, the ASOP makes no distinction for a union representative and furthermore the designated contact for the union

12

was the City Manager, not the Mayor or individual members of City Council. <u>See</u> <u>Defendants' Exhibit "3", excerpts from Phenix City Fire Department's Standard</u> <u>Operating Procedures and Defendants' Exhibit "16", Letter from H.H. Roberts to Thomas</u> <u>Malone dated March 15, 2005.</u>

The City of Phenix City Fire Department is a paramilitary organization and has a strong interest in providing its services efficiently as the protection of property and human lives often rest with the ability of the department to provide its services in as an efficient manner as possible. Davis broke the chain of command and violated the Merit System Rules and Regulations and ASOP 12 in making the telephone call to the Mayor that resulted in his termination. The effect of firefighters ignoring the Merit System Rules and the ASOPs of the department undermine the authority of the chain of command and reduce the efficiency of the department in delivering its services. The strong interest Defendants have in maintaining the efficiency of the department far outweighs whatever interest Davis had in expressing himself on the issue of the extension of the probationary period for new firefighters. But even if this Court found that Davis was speaking on a matter of public concern, an application of the <u>Pickering</u> balancing test would show that it weighs strongly in favor of upholding the adverse employment action to preserve efficiency of delivery of vitally needed city services, namely fire protection. The Defendants are not required to show that the call to the Mayor actually caused injury to delivery of city services but simply that Defendants could make a reasonable prediction of disruption. <u>See Waters v. Churchill</u>, 511 U.S. 661, 673, 114 S.Ct. 1878.

Defendants cite the Court to <u>Belcher v. City of McAlester, Oklahoma</u> 324 F.3d 1203 (10th Cir. 2003). In that case, Steve Belcher, a firefighter with the City of

McAlester, Oklahoma, called three members of City Council to express his concern with

a pending vote to waive the bidding process on the purchase of a new fire truck. He

made these contacts despite City and Department policies which prohibited contacting

Council members individually. Violations of these policies can be punishable by a

written reprimand and even dismissal. Belcher was issued a written reprimand for

violations of City and Departmental procedures. He filed suit claiming that the

reprimand violated his First Amendment rights to speak on a matter of public concern. In

upholding the summary judgment granted Defendants by the District Court, the United

States Court of Appeals for the Tenth Circuit held in performing the analysis required by

Pickering that:

> In performing [Pickering] balancing, [an employee's] statement will not be considered in
> a vacuum; the manner, time and place of the employee's expression are relevant, as is the
> context in which the dispute arose." Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct.
> 2891, 97 L.Ed.2d 315 (1987). In considering the time, place and manner of the speech,
> we take into account whether the employee used "less disruptive internal channels" of
> communication. In the instant case, Belcher could have used "less disruptive internal
> channels," by explaining his concerns to his superior officers at the Fire Department and
> following the chain of command. Instead, Belcher chose to go outside the Department,
> speaking directly to Council members in violation of Department and City policy,
> diminishing the level of protection his speech might otherwise enjoy. Belcher's interest
> in speaking privately to the Council members must be weighed against the contrary
> interests of the City and the Department in maintaining harmony among Dempartment
> employees...Because such close relationships are necessary in a fire department, there is
> a "heightened governmental interest in maintaining harmony" among fire department
> employees...Firefighters place their lives in each others' hands, and it is essential that
> each firefighter have trust in his colleagues...In sum, Belcher's narrow interest in
> expressing his concerns through external channels, in violation of City and Department
> policy, when weighed against the heightened interest of the City and the Department in
> maintaining harmony among firefighters and their officers, tips the scales on the City's
> side. Thus, Belcher's speech is not protected, and the district court correctly granted
> summary judgment to defendants. Belcher 324 F.3d 1203 at 1208-09, 107 S.Ct. 2891.

There can be little doubt that allowing firefighters to disobey the SOP and Merit

14

System Rules and Regulations at will could reasonably be predicted to cause disruption in the delivery of city services and therefore Davis should not prevail on his claims in Count I.

Even if the Court did not find the <u>Pickering</u> test weighed in favor of Defendants' actions with regard to the Plaintiff's employment, the Defendants are protected by the "mixed-motive" defense as delineated in <u>Mt. Healthy City School District Bd. Of Educ. V. Doyle</u>, 429 U.S. 274 (1977). The "mixed motive defense" is applicable where an employer's decision regarding an employee is based upon both proper and improper motives.

In <u>Mt. Healthy</u>, the plaintiff complained that his employment was not renewed because of his complaints to the media, in violation of his First Amendment rights. <u>Id</u> at 284. The Court concluded that, once the plaintiff showed that his speech was protected and was a "motivating factor" in the employer's decision, the burden shifted to the employer to prove that it would have made the same decision absent the consideration of the plaintiff's complaints to the media. <u>Id</u>, at 287. The court held that if the employer made the requisite showing, that the decision to not renew employment was valid for a reason separate from the protected conduct, then no constitutional violation had occurred. <u>Id</u> at 285; <u>see also Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1269 (11th Cir. 2001) (holding that in § 1983 retaliation cases employer can avoid liability by proving it would have made the same employment decision without alleged bias).

Thus, even if Davis was successful in establishing that the Defendants took retaliatory actions, the Defendants have demonstrated that the decision to terminate Davis was based upon legitimate and sufficient reasons—the fact that Davis had not followed

departmental rules and policies and had been directly insubordinate regarding the counseling he received on September 20, 2005. Because the Defendants had non-retaliatory reasons to terminate Davis, even if Davis established retaliatory motives for that decision, he cannot prevail. Therefore Count I of the Complaint is due to be dismissed.

### COUNT II -- Violation of 42 U.S.C. 1983 by Defendants by adverse treatment to Plaintiff in violation of his right to free association under the First and Fourteenth Amendments to the U.S. Constitution is due to be dismissed as it fails the three-part test necessary to be considered a violation.

Plaintiff's claim in Count II of his Complaint that he was retaliated against due to his association with a union should also fail. The First Amendment's right of expressive association is "the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion." McCabe v. Sharrett, 12 F.3d 1558, 1564 (11th Cir. 1994). Davis must satisfy a three prong test to demonstrate that his termination was the result of his union membership. See Caruso v. City of Cocoa, Fla., 260 F. Supp. 2d 1191, 1206 (M.D. Fla. 2003). Davis must first establish that he has a constitutional right to the association. Id. Next, he must show that "he suffered an adverse employment action for exercising that right." Id. Finally, should he establish the first two prongs, the Plaintiff's interest in associating with the union would be balanced against the Fire Department's interest in "promoting the efficiency of the public services it performs through its employees." Id. (citations omitted).

Davis's claim fails at the second prong of this test, as he cannot show that he was terminated for his union membership. The evidence establishes that Davis was terminated because he failed to follow the rules and procedures and directives of his

employer. Davis also failed to allege any facts in support of his claim that Defendants violated his right of association.

Davis's claim also fails on the third prong of the test. Even if Davis could make a showing that he was terminated for his union membership, the interest of Defendants in promoting the efficiency of the public services it performs through its employees would outweigh his interest in associating in the union. The balancing analysis is the same as in Count I and Defendants would refer the Court to the analysis performed by the United States Court of Appeals for the Tenth Circuit in <u>Belcher v. City of McAlester, Oklahoma</u> 324 F.3d 1203 (10th Cir. 2003).

The law regarding the filing of actions on violation of the right to free association arising under 42 U.S.C. 1983 in the federal courts of Alabama is outlined by United States District Court for the Middle District of Alabama, Northern Division in <u>Thomas v. McKee</u>, 205 F. Supp. 2d 1275 (2002) as follows:

> The Eleventh Circuit does not require plaintiffs to demonstrate that their claimed freedom of association pertains to matters of public concern. Therefore, in analyzing whether a government employee's freedom of association rights have been infringed involves a three-part test. The first step is for the court to balance an employer's interest in maintaining an efficient workplace against the weight accorded to the employee's First Amendment rights. If the First Amendment interest is of sufficient importance, plaintiffs then have the burden of showing that the protected activity was a substantial motivating factor in the decision not to promote them. If plaintiffs demonstrate this, the burden shifts to defendants to prove by a preponderance of the evidence that they would not have promoted plaintiffs, regardless of the parties' divergent political inclinations.

Plaintiff has made no allegation that his free association rights to belong to and represent the firefighter's union outweigh the City's interest in maintaining an efficient workplace. If every firefighter with a complaint about Department policy went to the Mayor instead of through the proper chain of command, the Mayor would have time for

17

nothing but hearing the complaints of police officers, firefighters, EMTs and other City employees and would be unable to conduct City business. No showing or allegation has been made that the free association rights of the plaintiff outweigh the ability for the Mayor to perform his duties with respect to the operation of City government. So the second count of the Complaint should fail upon that basis alone.

Even if this Court were to determine that the plaintiff's interest outweighed the City's interest in maintaining an efficient workplace, the plaintiff would still fail the second prong of the <u>Thomas</u> test in that plaintiff has made no showing that the adverse employment action was related to his exercise of free association rights. In the allegations made under the sections of the Complaint captioned "Facts" and "Common Allegations", the plaintiff alleges that the adverse employment action occurred within days of his attempt to lodge a complaint with the Mayor regarding a change in the policies of the Phenix City Fire Department. See Complaint at Paragraphs 15 through 18. It is not disputed that the reason for the termination of the plaintiff was his contact to the Mayor, which was a direct violation of the City's Merit System Rules and Regulations. The fact that he was involved with the Union was immaterial, as it would have been a violation of the Merit System Rules and Regulations whether or not he was a member of the Firefighter's Union. Therefore, the second count of the Complaint is due to be dismissed.

**COUNT III -- Violation of Code of Ala. § 11-43-143 by Defendants is due to be dismissed as there has been no challenge by Plaintiff to the validity of his appellate proceeding before the Personnel Review Board and that is the only proceeding that may be reviewed by this Court under Alabama law.**

The law regarding the scope of review afforded a Court under Alabama law of a personnel decision upheld after a due process hearing is outlined by the Supreme Court of Alabama in Ex Parte Tuskegee, 447 So. 2d 713, 715 (1984) as follows:

> Those standards being before the trial court, the next question is: What is the scope of the trial court's review in an action brought by the person discharged under those standards? Under these circumstances, the review by the circuit court is, in effect, that of certiorari, and on such a review the circuit court is restricted to examining only the external validity of the proceeding. Ferrell v. Langley, 421 So. 2d 116 (Ala.Civ.App. 1982); cf. Guthrie v. Civil Service Board of Jasper, 342 So. 2d 372 (Ala.Civ.App. 1977), and Ex parte Hennies, 33 Ala.App. 377, 34 So. 2d 22 (1948). Thus, in this case, the circuit court is limited to a review of the record made before the Council and questions of law presented thereby. And, where there was substantial evidence in support of the Council's discretionary discharge authority, the reviewing circuit court may not supplant the Council's judgment with its own.

Plaintiff has not alleged that there was any defect in the appellate proceeding he had access to before the City's Personnel Review Board. Therefore given the limited jurisdiction afforded a state Court in reviewing a violation of Alabama law that will also govern here, and given the failure of the plaintiff to plead any defect in the appellate proceeding, count three of the Complaint is due to be dismissed.

To the extent the Plaintiff is not alleging a defect in the appellate process of the Personnel Review Board but is rather claiming that the Defendants violated his freedom of association as noted in the Court's Order on Defendants' Motion to Dismiss, Defendants would suggest that the Plaintiff has not articulated or shown any way by which Defendants sought to imperil his freedom of association in the firefighters union. Plaintiff has not articulated or shown any way by which Defendants took an adverse employment action against him due to his union membership or holding office in the

19

union.  The only statement made against the union by Chief Hunter that Davis has tendered was that, "the union won't help y'all" and that he was told Chief Hunter said to a third party "we done got rid of the troublemakers" after Davis was terminated.  <u>See Defendants' Exhibit "4", Deposition of David Davis pp.105-106 lines 8-25 and lines 1-10</u>.  Davis even admitted that almost all of Chief Hunter's allegedly derogatory statements about Davis in his capacity as union president were hearsay and that he could not identify any of the persons who allegedly heard these derogatory statements.  <u>See Defendants' Exhibit "4", Deposition of David Davis pp.106-107 lines 13-25 and lines 1-13</u>.  Davis admitted he was unaware of any derogatory statement made by Chief Waters regarding the union or his participation in it.  <u>See Defendants' Exhibit "4", Deposition of David Davis pp.107-108 lines 20-25 and lines 1-4</u>.  To date, Davis has tendered no evidence outside of the unsupported allegations of his Complaint to substantiate Count III that the Defendants took action to silence Davis or otherwise prevent him from associating with labor union members.  Therefore for these reasons and the reasons outlined in this Memorandum with respect to Count II of Plaintiff's Complaint, Count III of the Complaint should be dismissed.

## CONCLUSION

For the reasons stated hereinabove, the Defendants respectfully request that all of the claims in the Plaintiff's Complaint be dismissed with prejudice.

This 24th day of April, 2007.

JAMES R. McKOON, JR.
State Bar No. MCK020
JOSHUA R. MCKOON
State Bar No. MCK057
Attorneys for Defendants

20

McKoon, Thomas & McKoon
925 Broad Street
Post Office Box 3220
Phenix City, Alabama 36868-3220
334-297-2300
facsimile 334-297-2777

OF COUNSEL:
James P. Graham, Jr.
The Graham Firm
P.O. Box 3380
Phenix City, Alabama  36868-3380
334-291-0315

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing Motion to Dismiss upon Counsel for the Plaintiff by placing a copy of same in First Class Mail addressed as follows:

Thomas A. Woodley
Molly A. Elkin
Bryan G. Polisuk
Woodley & McGillivary
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005

J. Michael Cooper, Esq.
Fitzpatrick, Cooper & Clark, LLP
Farley Building, Suite 600
1929 Third Avenue North
Birmingham, Alabama 35203

_____
JAMES R. McKOON, JR.
One of the Attorneys for Defendants