IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS,                                )
                                            )
              Plaintiff,                    )
                                            )
        vs.                                 )        CIVIL ACTION NO. 3:06-cv-00544-VPM
                                            )
PHENIX CITY, ALABAMA, et al.                )
                                            )
                                            )
              Defendants.                   )
_____            )

**PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

        Plaintiff David Davis respectfully submits the memorandum in opposition to

defendants' motion for summary judgment. Plaintiff has also filed herewith his

supplemental Declaration. In addition, in order to avoid undue repetition, the plaintiff

incorporates herein by reference the papers he previously filed in support of his motion

for partial summary judgment.[1]

_____

        [1] Those papers include Plaintiff's Memorandum of Points and Authorities in Support of
Plaintiff's Motion for Partial Summary Judgment, the deposition testimony of defendants City
Manager H.H. Roberts, Fire Chief Wallace Hunter, and Mayor Jeffrey Hardin, as well as the
depositions of City Personnel Director Barbara Goodwin and Deputy Chief Roy Waters; and the
sworn Declarations of plaintiff Davis (with Exhibits), and Thomas Malone, Jr. (with Exhibits).

        In its Memorandum and Opinion and Order dated August 16, 2006, this Court denied the
defendants' motion to dismiss for failure to state a claim because, in part, a sufficient factual
record should be developed through discovery. That factual record—particularly the depositions
testimony of the individual defendants and the produced documents—is now before the Court.

## I. Introduction

The defendants' motion for summary judgment and related papers reveal that the core facts in this action are not in dispute. Defendants concede that plaintiff David Davis, an eight-year veteran of the Phenix Fire Department, was terminated because, while off-duty, he spoke to Mayor Hardin about a proposed Ordinance pending before the City Council. That decision to discharge Davis was deemed acceptable by the defendants on the grounds that it violated the City's Merit System Rules and Regulations (Section 2.054, titled "Free Speech") and a Standing Operating Procedure of the Fire Department (ASOP 12).[2] Indeed, in the defendants' summary judgment brief, they reference the Merit System Regulation and the ASOP more than 30 times as the basis for Davis' termination.

As shown in the plaintiff's memorandum of points and authorities supporting his motion for partial summary judgment (pp. 22-32), the same Merit System Regulation and ASOP, as written and applied, clearly impose an unconstitutional '**prior restraint**' on the exercise of the First Amendment right of free speech. Obviously, the defendants

---

[2]  Section 2.054 of the Merit System Regulations and ASOP 12 are contained in Exhibit 8 (pages 3 and 4), appended to the Declaration of plaintiff Davis.

Since it is uncontested that defendants fired Davis solely because he violated Sec. 2.054 of the Merit System Regulations and the fire department's ASOP 12 by talking with the Mayor about the proposed Ordinance, it is unclear why the defendants' brief (p. 3) makes gratuitous reference to a one-day suspension he had back in August, 2005. As admitted in the individual defendants' deposition testimony, Davis would still be employed and advancing his career in the Phenix fire department if he did not have that off-duty telephone conversation with Mayor Hardin.  (Plaintiff's opening memorandum, p. 45).

Equally irrelevant is the reference in the defendants' brief (pp. 2-3) to apparently an earlier suit brought by another fire department employee (Dennis Duty), after he was terminated by the City. That separate action, apparently concluded in June, 2005, has no bearing whatsoever on the facts and issues in this present matter.

can not justify Davis' termination based on policies and actions that are unconstitutional and invalid.

In addition, in their brief (pp. 3-5), defendants also rely on the same Merit System Regulation and the warning notice ("counseling form") given to Davis after he and other fire fighters were quoted in a September, 2005 news article in the <u>Columbus Ledger-Enquirer</u> about under-staffing, low morale, feared retaliation, and other issues of public concern involving the fire department. Again, consistent with established precedent and as explained in the plaintiff's opening memorandum (pp. 22-28), those regulatory restrictions and the defendants' actions surrounding that media report do not satisfy constitutional standards.

Moreover, even if the defendants' conduct in firing Davis was not bottomed on unconstitutional prohibitions – which they were – on this record of essentially undisputed facts, the defendants have not satisfied the four-part test the courts apply where discipline is assessed against a public employee for speaking out on a matter of public concern. (Plaintiff's opening memorandum, pp. 32-46).  On this question, the City's basic argument is that a fire department is a 'para-military' organization, which has a 'chain of command'[3] and, therefore, neither Davis nor any fire fighter—**at any time or under any circumstances**—can communicate with an elected Mayor, City Council members, or the media about any fire and rescue issues. If that theory proved successful, the First Amendment right of free expression would be completely eviscerated for all fire personnel in this country. Moreover, if it was enough for a local government to simply argue that strict adherence to a 'chain of command' trumps a fire

---

[3] The almost total reliance of the defendants on these two phrases is underscored by the fact that they are repeated over 20 times in the defendants' brief.

fighter's exercise of free expression outside a fire department, then the numerous federal court rulings over the years in favor of fire fighters in First Amendment cases were wrongly decided inasmuch as there are officers' ranks and a chain of command in every fire department. Succinctly stated, the defendants' almost exclusive reliance on the chain of command contention is misplaced, and it actually highlights the weakness of their position on the factual record before this Court.

## II.  The Defendants' Discharge of David Davis Violated His First Amendment Right of Free Speech

In their summary judgment brief, defendants suggest that Davis spoke to the Mayor as an individual employee with a personal gripe about the proposed City Ordinance lengthening the probation period and, therefore, he was not engaged in protected speech over a matter of public concern. They also argue, as noted, that the 'chain-of-command' and the goal of efficient fire department operations outweigh Davis' fundamental constitutional right to free expression. These and related contentions are without merit, and unsupported by the record evidence—particularly the defendants' own deposition testimony.

The contention in defendants' brief (p.5) that Davis was "personally affected" by the proposed Ordinance contemplating an enlargement of the probationary period from one year to 18 months is contradicted by the facts. (Facts, ¶'s 26 and 31). It is uncontested that the language and intent of the Ordinance applies only to **new hires**; Davis was an eight-year veteran of the fire department.  Davis and all of the City and fire department officials recognized that he was not personally affected as an employee by the Ordinance. (Facts, ¶ 1; Davis Decl. Exh. 14). When the individual defendants and

other City officials were asked in their depositions if Davis' interests were personally affected, they all answered in the negative.[4]

The defendants' brief (p. 5) mistakenly portrays a portion of Davis' deposition as indicating that he was personally affected by the Ordinance. A closer reading of page 126, line 22 to page 128, line 5, of his deposition reveals that Davis was noting that enlargement of the probationary period would adversely impact the recruitment and retention of fire fighters, and thus adequate staffing in the fire department. He stressed that "[a]nybody that probably knew the staffing issues…would be concerned" (Dep.. p. 128, lines 4 to 5); that it would "affect the safety of every person that resides in the fire protection district of the City of Phenix City" (Dep., p. 127 lines 1 to 3); and that "it wouldn't affect my job. It would affect my life." (Dep., p. 127 lines 6 to 7).[5] In this context, the Ordinance implicating recruitment, retention, staffing and morale involved issues impacting the safety and well-being of the public and the fire fighters who need an adequate number of qualified and experienced fire and rescue personnel to respond to life-threatening emergencies.[6]

It should not be overlooked that Davis' speech involved a proposed City **Ordinance** being publicly taken up and voted on by the Mayor and other City Council

---

[4] City Manager Roberts testified: "It would not have affected him at all." (Dep. p. 78 lines 9 to 15). When Chief Hunter was asked the same question, he responded: "None whatsoever." (Dep., p. 58, line 19). See also, Waters Dep., p. 24 lines 12 to 22; Hardin Dep., p. 50 lines 9 to p. 51 line 13.

[5] High employee turnover, staffing shortages and related safety concerns had been an ongoing problem for years in the City's fire department. (See, Exh. 4, attached to Davis Decl.; Hunter Dep., p. 26 lines 13 to 21; p. 27 line 10 to p. 28 line 13).

[6] Deputy Chief Watters correctly pointed out in his deposition that Fire Department matters such as recruitment and retention of fire fighters, staffing, and employee morale, all affect the safety of the public.  (Dep., p. 10 line 9 to p. 11 line 20).

members. This was not an internal, personal complaint that Davis had concerning his particular job, salary or benefits.  As a citizen and the President of the Phenix Firefighters' Association, Davis could not be constitutionally deprived of the right to speak to an elected City official about a topic that implicates the adequate staffing of the fire department with qualified personnel, consistent with the interests of the public and fellow fire fighter members of the Association.

In similar circumstances, the courts have properly determined that group concerns should not be converted into a singular employment grievance of an individual employee. See Moore, 877 F.2d 364, 370 n.2 (5th Cir. 1989), cert. denied, 493 U.S. 1003 (1990) (the speech of the fire fighters local association President Moore about understaffing "was not linked to a personal employment dispute between Moore and the City."); Cromer v. Brown, 88 F.3d 1315, 1326 (4th Cir. 1996) (a letter reflecting a group concern based on meetings is not an expression of a single dissatisfied employee about a personal employment dispute).

Another indicator demonstrating that Davis was speaking as the President of the fire fighters' association and a citizen, and not as an employee of the fire department, is that his job duties did not encompass the subjects of recruitment, retention of personnel, adequate staffing, and employees' morale—the collective concerns of the Association's members that Davis voiced to the Mayor regarding the potential impact on public safety and fire personnel. (Facts, ¶29; Davis' Supplemental Decl. ¶'s 3-5). Davis was a driver-engineer when he was fired, and his job duties consisted of driving a fire engine to a fire, accident, rescue incident or emergency medical scene, and performing fire suppression, rescue and emergency medical services tasks. (Id.) When not responding

to an emergency, his duties included cleaning and maintaining the fire station, fire equipment, and gear; participating in cooking for the station crew; and training related to driving, fire suppression, rescue, and medical services. (Id.) Thus, when Davis communicated with Mayor Hardin about the proposed city Ordinance, he was not acting as an employee within the scope of his departmental duties.

Furthermore, it was certainly not part of Davis' official duties to convey to the Mayor the joint concerns of the Association's members about how adoption of the Ordinance enlarging the probationary period could have adverse ramifications with respect to fire and rescue services. Indeed, Davis' communication is not unlike any other citizens of Phenix City having input with the elected Mayor or City Council members, expressing their viewpoint on a proposed Ordinance that implicates the performance and services of the fire department.

In its Memorandum Opinion and Order (p. 4) issued on August 16, 2006, this Court cited Cook v. Gwinnett County School Dist., 414 F.3d 1313 (11th Cir. 2005), inter alia, for the principle that an employee who was speaking on behalf of a labor association spoke on a matter of public concern even though her speech about safety-related issues was not made to the general public. The ruling in Cook is instructive, and it rejects a number of contentions advanced by the defendants here. In Cook, the plaintiff was a school bus driver and the elected President of the labor organization known as the United School Employees Association ("USEA"). During layovers while on duty, she raised safety concerns with co-workers, discussed the USEA and recruited members to join the association. Her superiors ordered her to stop discussing the USEA during work hours and refused her request to insert a USEA flyer into employees'

paycheck envelopes. When she was transferred from her position, she claimed retaliation for her speech and associational activities. The County's officials argued, like the defendants do here, that the adverse employment action was proper because Cook was "insubordinate" and they properly limited her speech to "maintain discipline and efficiency in the workplace." 414 F.3d at 1317.

The appellate court rejected the employer's contention that Cook's speech did not involve a matter of public concern because it related to internal "employment issues" pertaining to her "personal interests." Id. at 1319. First, the Court noted that Cook was speaking on behalf of the labor association addressing the need for well-qualified and motivated employees implicating school safety. Id. The Court further stated that the fact that her speech was directed to co-workers "rather than directed at the general public does not remove the speech from the category of public concern. Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 415-16 (1979); Peterson v. Atlanta Housing Authority, 998 F.2d 904, 916 (11th Cir. 1993)." Id.

Next, the court of appeals observed that Cook was not speaking "only for herself individually, but rather for the collective welfare of her fellow [employees]." Id. The court stressed that the First Amendment protects the right to associate, speak and petition freely and the government "may not retaliate against individuals or associations for their exercise of First Amendment rights by imposing sanctions for the expression of particular views it opposes [citation omitted]." Id.

With respect to applying the Pickering balancing test, the Eleventh Circuit recognized the employer's claimed interest in efficiency, order and workplace relations. In affirming the lower court, however, it noted that Cook did not neglect her job-duties,

she did not have poor work evaluations, and there was no substantial evidence of workplace disruptions. 414 F.3d at 1320. Accordingly, the court held that Cook's interests in both free speech and association in promoting safety, and improving the competency, management and the organization of bus drivers "far outweighed" the scant evidence proffered in support of the employer's workplace efficiency contention. Id.

The principles and holding in Cook apply with even greater force on the record presented here. It is undisputed that when Davis talked with Mayor Hardin about the proposed City-wide Ordinance he was off-duty, out of uniform and speaking outside of the fire department—and that he was speaking as President of, and on behalf of the fire fighter members of the Association. He relayed their collective concerns about the impact that the Ordinance could have regarding recruitment and retention of qualified fire fighters and adequate staffing—all safety concerns. Like Ms. Cook, Davis performed his job well as a driver-engineer, and there is no evidence of significant disruptions generated by his telephone conversation with the Mayor. In these circumstances, as determined in Cook, Davis' free speech and associational interests "far outweigh" the City's claim of order and workplace efficiency.

As in virtually every First Amendment free speech case, the defendants have asserted that Davis' speech was seriously disruptive of fire department operations and therefore they should prevail under the Pickering balancing test.  At the outset, it should be noted that it must be shown that the **speech** itself caused significant disruption or impaired working relationships in the fire department. Waters. City of Philadelphia, 55 F.3d 886, 897-99 (3rd Cir. 1995) (no significant evidence in the record showing

disharmony or discontent in the police department as a result of police officers statements); Casey v. City of Cabool, 12 F.3d 799, 804 (8th Cir. 1993) (no demonstration that fire and police dispatcher's statements had any effect on effectiveness of city government). Here, the defendants have not come forward with substantial evidence showing that Davis' telephone conversation with Mayor Hardin about the proposed Ordinance caused, or would reasonably cause, disruption in operations or working relationships among fire personnel.

As stated above, defendants have heavily relied on the "chain of command" and asserted apprehensions about possible disruptions in efficient fire department operations. While the "chain of command" is one factor among many to be considered under the Pickering balancing test, it is not "outcome determinative". Perry v. Kinloch, 680 F.Supp. 1339, 1342 (E.D. Mo. 1988), cited in this Court's Memorandum Opinion and Order (p. 5) entered August 16, 2006.

In this situation, there was certainly no obligation for Davis, in his capacity as the elected representative of the fire fighters Association, to restrict his presentation on the Ordinance to his department supervisors. Once again, the evidence is unrebutted that he was acting as the leader of the Association and as a citizen, not as a single employee. The applicable authorities cited by the plaintiff hold that a representative of a fire fighters' organization can certainly communicate with City Council leaders without being restricted to a departmental chain of command. After all, this was a city-wide Ordinance that was being considered for immediate adoption; it is hard to see how the fire fighters and their Association would have an effective opportunity to communicate their concerns with the City Council if they were confined to the fire department. This is

especially true here, where Alabama state law explicitly gives fire fighters the rights to freely associate and submit proposals through their representative, and to their local government employer, without being penalized and discharged for exercising those statutory rights.

Moreover, if repeated references to a "chain of command" and general predictions of "disruption" were enough to restrict and punish expressions of concern about important fire and rescue services, there would be nothing left of free speech and association by local government fire fighters.[7] The federal courts have declined to give significant weight to such non-specific projections of adverse effects. In <u>Moore v. City of Kilgore</u>, 877 F.2d at 373-75, the appellate court held that "discipline for more abstract and attenuated management purposes that do not directly relate to the actual fighting of fires – the primary responsibility of the Fire Department – is an interest of lesser magnitude than discipline that relates directly to the business of fighting fires." Efforts to maintain "strict, marine-like control" and to make the fire fighters "subservient" are not the type of discipline and loyalty a City can properly demand. 877 F.2d at 374.

A closer look at the facts and reasoning in <u>Moore</u> is useful. In that case, Moore was an officer in the Kilgore Fire Department and also the President of the Kilgore Professional Fire Fighters Association. Against the direct orders of the Fire Chief, Moore spoke to the media and blamed the fire department's lean staffing policies for the death and injury of two fire fighters at a fire scene, capping his remarks with, "I just want to say 'I told you so'." Moore was then disciplined by the fire chief for, like here, violating

_____

[7]  Other than referring to the 'chain of command' and the City's regulations, Chief Hunter, as the City's Rule 30(b)(6) witness, could not articulate any specific ways in which Davis' telephone conversation with the Mayor disrupted the operations and efficiency of the fire department.  (Hunter Dep., p. 74 line 2 to p. 75 line 12).

established policies, departing from the chain of command, and failure to air his criticism internally within the department's grievance procedures. In a thoughtful analysis, the Court of Appeals held that Moore's 'insubordinate' speech related to a matter of public concern, and his interest and that of the public in fire department staffing and operations clearly outweighed the City's asserted interest in the chain of command, efficient operations, respect for authority, loyalty, etc..

A similar conclusion was reached in <u>Mansoor v. Trank</u>, 189 F.Supp. 2d 426 (W.D. Va.), <u>affirmed</u>, 319 F.3d 133 (4th Cir. 2003) where the county and police officials also contended that the need "to work within the chain of command" and prevent disruptions should outweigh Mansoor's interest in free expression. 189 F.Supp.2d at 436. Both the District Court and the Court of Appeals rejected the argument. 189 F.Supp.2d at 436-37; 319 F.3d at 138-39. The courts noted that Mansoor had not caused any significant disruptions, and that there was no justification in restricting the employee's prospective free speech on matters of public concern as a citizen.[8] The same points apply here, and thus the defendants' argument should also be rejected. <u>See</u> <u>also</u>, <u>Hickory</u>, 656 F.2d at 921 (city could not use the contention that fire fighters should air their complaints 'in-house' through grievance procedures as a "compelling justification" to bar them from speaking to City Council members); <u>Int'l Fire Fighters Ass'n Local 3233 v. Frenchtown Charter Township</u>, 246 F.Supp.2d 734 (E.D. Mich. 2003) (Court rejected local government's argument that fire department personnel

---

[8] Indeed, if a local government could silence its fire service employees by simply referring to its 'chain of command' and the need for 'efficient operations', fire fighters would never be able to speak outside the fire department to elected officials, the public, the media, or anybody else.

should route their concerns regarding "fire department matters" through the fire Chief for his handling).

The defendants' reliance on the Tenth Circuit's opinion in <u>Belcher v, City of McAlester, OK</u>, 324 F.3d 1203 (10th Cir. 2003) is misplaced. There, a fire fighter voiced to City officials his personal complaint against the purchase of a fire truck, remarking that there was '"the possibility of corruption and kickbacks"', and waiving the "competitive bidding process was problematic." 324 F.3d at 1205. A number of other fire fighters were upset with Belcher's individual objections because they needed the new fire truck and because he had gone outside the fire department to voice his personal complaints. Significantly, Belcher had admitted that his comments and approach "caused controversy or friction within the fire department and made other fire fighters distrust him." The court ruled that this evidence caused "actual disruption" in fire department operations which outweighed Belcher's interest in pursuing his personal complaint. Here, as the record reveals, Davis was expressing the collective concerns of the fire fighters' Association about a city-wide Ordinance that the Council was about to vote on, and there is no showing that his telephone conversation with the Mayor about the proposed Ordinance had any appreciable disruption on fire department functions. [9]

---

[9] The defendants have cited several cases regarding the particular need for order, morale and harmony in local police departments because law enforcement agencies are considered quasi-military organizations. Those cases are factually and legally inapposite. For example, in <u>Oladeinde v. City of Birmingham</u>, 230 F.3d 1275, 1293-94 (11th Cir. 2000), the court held that a police chief and captain were entitled to "qualified immunity" where the plaintiff's speech about alleged misconduct by two police officers involving arrest records was seriously disruptive because she refused her superior's order to disclose details so an internal investigation could be conducted by the internal affairs unit.

In <u>Busby v. City of Orlando</u>, 931 F.2d 764, 774-775 (11th Cir. 1991), the court found that the defendant police officers were entitled to qualified immunity where they did not bar plaintiff from publicly voicing the critical statements she made about her superiors, but simply sought to

Anderson v. Burke County, GA, 239 F.3d 1216 (11th Cir. 2001), is also distinguishable.  That case involved a limited appeal on the question of whether the individual defendants enjoyed "qualified immunity" regarding a free speech claim.  The Court observed that the plaintiff's questionnaire sent to political candidates "had far more to deal with Plaintiff's grievances as an employee" than public concern.  239 F.3d at 1221.  Although the court approved the qualified immunity defense, significantly, it did note that "understaffing" and "employee turnover" implicated matters of public concern. Id., at 1220.

The defendants' reliance on the City's grievance process is also misplaced.  The Ordinance, which was about to receive final consideration by the City Council on Tuesday, April 18, 2006, envisioned a policy to expand a change in the probationary period for not only the fire department, but also the police department and the code enforcement agency. (Exh. 14, appended to Davis' Decl.). The Merit System Rules and Regulations do not authorize individual employees to challenge proposed City Ordinances through departmental grievance procedures. (See, Defendant's Exh. 2, Section 15.022; Davis' Supplemental Decl., ¶2).  For this additional reason, the defendants' contention bottomed on the grievance process and the related chain of command should carry no weight.

---

delay her making her complaints public until the police department was first afforded the opportunity to investigate the matter internally.

In McCabe v. C.E. Sharrett, 12 Fed. 2d 1558, 1570-74 (11th Cir. 1994), the court held that the police chief's transfer of his secretary to a less sensitive position did not infringe her intimate association rights to be married to a subordinate police officer because the secretary's conflicting interests with her husband reasonably threatened the loyalty and strict confidentiality the chief needed to effectively perform his duties.

It is evident that the defendants are using the 'chain-of-command' contention, in conjunction with the unconstitutional Merit System Regulation and ASOP 12, to completely block Davis and other fire fighters from ever speaking to the elected Mayor and City Council members about any fire department-related matters—even in a public forum accessible to all citizens.  Incredibly, defendants believe that they can impose an absolute code of silence, **even where the chain of command is pursued and exhausted**.  City Manager Roberts left no doubt about this in his deposition testimony:

> Q:   Are there any circumstances under which a firefighter
>        working for the city can communicate with the Mayor
>        of the city about issues that involve the city fire
>        department?
>
> A:   Not to my knowledge.
>
> Q:   Would your answer be the same if I referred to
>        city council members? Are there any circumstances
>        or situations under which a firefighter can speak to a city
>        council member about issues involving the city's fire
>        department?
>
> A:   They can come to the council through proper procedures.
>        And I think that the proper procedure goes through
>        their chain of command. And if we cannot correct it,
>        then we feel – ultimately, if I feel that it needs to get
>        to the council, then I will get it to them.
>
> Q:   You, as the city manager, will raise concerns?
>
> A:   Yes. The bottom line, even on a work session, of
>        whatever comes before council for a work session
>        we control, whether it be the civilians coming in or
>        whomever. It's a very structured form of government.
>
> Q:   Is a firefighter permitted to – after exhausting the chain
>        of command on an issue affecting the fire department,
>        is that firefighter then allowed to address the city
>        council or city council members on that issue?
>
> A:   Not by Merit System, I don't think, no, sir.

Q:   So if such a firefighter did that after exhausting the
      chain of command, that firefighter would be violating
      the Merit System rules and regulations?

A:   I think he would be violating the intent of the Merit
      System rules and regulations, I do.

Q:   Would he be violating the language of the Merit
      System rules and regulations?

A:   I feel like they would be, yes.

Q:   And would that same firefighter, after exhausting
      the chain of command, who addressed the city
      council as a group on an issue affecting the fire
      department,  would that firefighter be subject
      to discipline up to and including termination?

A:   He would be disciplined as to whatever the Merit
      System says. . . .

Q:   Well, just so the record is clear, the firefighter
      pursues the chain of command on an issue
      affecting the fire department and addresses the
      city council on that same issue, then would he be
      subject to discipline, including firing?

A:   He could be, yes.

                                        (Roberts Dep., p. 83, line 2 to p. 85, line 6)

Chief Hunter was equally adamant about the silencing effect that Fire

Department regulation ASOP 12 has regarding any contacts with City Council

members:

Q:   Is there also an SOP that the fire department has that
      you believe Mr. Davis violated when he talked with the
      mayor about the probationary period?

A:    ASOP 12, I believe it is.

                                        (Hunter Dep., p.75 lines 13 to 17)

16

Q:    Okay. So, in other words, under this ASOP 12, firefighters are not permitted to go beyond the city manager and are not permitted to address the city council as a group in a meeting; is that accurate?

A:    City Manager informs the council of anything that's going on. He would be the one that — if he had to express something that was bad, he would be the one that would meet with the city council.

Q:    If a firefighter had a concern about staffing, morale, equipment, budget within the fire department, those kinds of issues, Chief Hunter, that firefighter is not permitted to go directly to the city council in a public meeting and express those concerns?

A:    That's correct.

Q:    And if he did so, that would violate the chain of command and would violate this ASOP; is that correct?

A:    That's right. And it would – yes, sir.

(Hunter Dep., p. 76 lines 7 to p. 77 line 2)

The blanket restrictions under the defendants' regulations and the chain of command argument also impose an absolute, and unconstitutional, ban on the fire fighters' contacts with the media.  Chief Hunter confirmed in his deposition that even if Davis or other fire fighters expressed their views on issues of public concern through the chain of command, they still would be barred from communicating with the media.

Q. What is your position as the chief of the fire department and the Rule 30(b)(6) witness in this case on the following subject: If a firefighter has concerns about public safety or operations in the fire department, or poor morale, or or understaffing, and they exhaust the chain of command— they route those concerns up to their first officer and ultimately to you—do they then, after you consider that matter, do they then have the right to go to the local media and issue and state those same exact concerns?

17

A.  They still don't have the right….

(Hunter Dep., p. 56 lines 2 to 13)

When Hunter was asked the follow-up question whether a fire fighter would violate the Merit System rules and regulations if he spoke to the media after exhausting the chain of command, he answered: "That's correct." (Dep., p. 56 line 16 to p. 57 line 2).

In sum, it is obvious that the City and the individual defendants have followed written policies and practices designed to completely prohibit fire fighters like Davis from—at any time—communicating with the Mayor, or other City officials and the media. Clearly, Davis' termination based on these unconstitutional restrictions can not withstand judicial scrutiny.  As the Supreme Court aptly stated in Rankin v. McPherson, 483 U.S. 378, 384 (1987), "Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions, but because superiors disagree with the content of employees speech."

The defendants' next argument (Brief, p. 15-16) that this is a "mixed motive" case is wrong on the law and the record presented here.[10] That defense is only available where there is a question or significant evidence that the employee may have been disciplined for a proper reason (typically related to poor job performance) other than the speech or statement of the employee.

---

[10] In Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977), the Supreme Court addressed the causation issue as to whether the speech in question was a "substantial" or "motivating" factor in the adverse employment action.  See, Beckwith v. City of Beach Shores, 58 F.3d 1554, 1564 (11th Cir. 1995)(the "substantial" or "motivating factor" burden on an employee "is not a heavy one").

Here, it is undisputed that Davis was discharged solely due to his off-duty telephone conversation with the Mayor and the defendants' decision that this violated the City's Merit System Regulation and the fire department's ASOP 12 (plaintiff's opening brief, pp. 44-45, and Facts, ¶'s 32-39). Indeed, in its summary judgment brief (p.18), the defendants again concede: "It is not disputed that the reason for the termination of the plaintiff was his contact to the Mayor, which was a direct violation of the City's Merit System Rules and Regulations." Thus, there is no basis for arguing that the defendants had a legitimate reason, or 'mixed motive', when they discharged Davis a few days after he spoke with the Mayor.

Finally, it is essential in the <u>Pickering</u> balancing test to take into account the public interest. Mayor Hardin testified that he has an "open door policy" and when he receives input from City employees he can do a better job serving as an elected representative of the citizens. (Hardin Dep., p. 22 line 21 to p. 23 line 3; p. 59 lines 9 to 17; p. 60 line 2 to p. 61 line 5). The "informed speech" of fire fighters can provide valuable information that is otherwise difficult to obtain "unless an informed person speaks out." <u>Moore v. City of Kilgore</u>, 877 F.2d at 372. With this in mind, the public certainly has an interest in having fire fighters, like Davis, provide information to their elected government leaders about topics that could impact the recruitment and retention of fire and rescue personnel, as well as adequate staffing and morale in the fire department. This additional factor reinforces the determination that the balance of interests clearly weigh in favor of Davis and the exercise of his First Amendment right to free speech.

### III. Plaintiff's First Amendment  Right of
### Free Association Was Violated in Several Ways

The defendants have advanced substantially the same arguments in opposing the First Amendment free association claims of David Davis, as they have done in resisting his free speech claims. The analysis of a claim for a denial of the right of free association is the same as that for a free speech claim, except that the plaintiff does not need to show that the associational activity pertained to a matter of public concern. See, this Court's Memorandum Opinion and Order (dated August 16, 2006), pp. 3-4, citing Cook, 414 F.2d at 1320.[11]

The defendants' brief does not address Davis' distinct claim that his right to freely associate with Mayor Hardin was contravened when he approached the Mayor about the group concerns of the fire fighters and members of their organization. It is hard to see how that claim could possibly be denied when it is admitted that Davis was fired for that precise activity. Beach, 185 F. Supp. 2d at 1238-39 (police officer and union representative's right of free association with fellow members and with City Council members was violated by restriction on such activities); Pesek v. City of Brunswick, 794 F.Supp. 768, 787 (N.D. Ohio 1992)(recognizing city's interest in the "chain of command", court held fire fighters' interest in speaking to City council members outweighed City's claims that his speech impaired discipline, adversely affected working relationships, and impaired harmony in fire department).

The one contention made in the defendants' brief is that Davis was not terminated for his various leadership activities on behalf of the fire fighters' organization.

---

[11]   It is well-established that "[t]he right to associate in order to express one's views is 'inseparable' from the right to speak freely."  Edwards v. City of Goldsboro, 178 F.3d 231, 249 (4th Cir. 1999)(quoting Thomas v. Collins, 323 U.S. 526, 530 (1945)).

The plaintiffs' opening memorandum and supporting evidence fully support this additional claim. (Memorandum, p. 47). Moreover, under the balancing-of-interests test, for the same reasons set forth with regard to the free speech claim, the rights and interests of Davis "far outweigh" the interests of the City regarding efficiency of operations.  Cook, 414 F.3d at 1320 (see also, discussion above, at pp. 9-19, and in plaintiff's opening memorandum, pp. 39-44).

## IV.  Defendants Violated Davis' Rights and Protections Granted Under Section 11-43-143(b) of the Alabama Code

As they did in their previously denied motion to dismiss the Complaint, defendants again persist in misreading the plaintiff's claims under Section 11-43-143(b) of the Alabama Code. Evidently, defendants believe that they have a better chance of prevailing under this state law provision if they convert Count III of the plaintiff's Complaint into asserting a "defect in the appellate proceeding…before the City's Personnel Review Board." No such contention is being made by Davis in this action.[12]

As explained in plaintiff's opening memorandum (pp. 48-49), Section 11-43-143(b) provides fire fighters with three separate protections: 1) the right of association and membership in a labor organization; 2) the right to present proposals concerning employment conditions through a representative; and 3) the protection against coercion, discrimination and discharge for exercising these rights.

_____

[12] While the plaintiff is not seeking judicial review of the Personnel Board's Personnel proceedings, the troublesome procedures followed by the defendants to effectuate Davis' termination bolster his claims presented here. The City appoints the members of the City's Personnel Board; City Manager Roberts made the decision that Davis would be terminated; Roberts then testified against Davis at the Board's hearing; the Board then recommended to Roberts that he uphold Davis termination; and Roberts accepted the Board's recommendation and, in essence, upheld his original decision to discharge Davis. (Facts, ¶'s 35 and 38). In his deposition, defendant Roberts did not see any difficulties with the Personnel Board proceedings or any conflicts of interest. (Dep., p. 88 line 1 to p. 89 line 6). From beginning to end, the outcome regarding Davis' termination was never in doubt.

Without reiterating each of the points discussed above and in plaintiff's initial memorandum, Davis unquestionably made proposals to Mayor Hardin, on behalf of the members of the fire fighters' labor association, relative to the issue of extending the probationary period contemplated in the proposed Ordinance. (Facts, ¶'s 27-29, 31). In response to that effort, involving **both** association activities and proposals, he was promptly interrogated and discharged. It is hard to imagine a more patent violation of Section 11-43-143(b).

In addition, as also detailed in plaintiff's initial memorandum (p. 49), the defendants flouted efforts Davis made earlier regarding other employment proposals (Facts, ¶'s 13-15); they voiced anti-union threats (Facts, ¶'s 17 and 21);[13] they harassed Davis about correspondence received from IAFF General President Schaitberger (Facts, ¶ 24); and they intimidated him with an "investigation" and warning notice when he joined with his fellow union members in speaking to a local newspaper reporter about understaffing, poor employee morale, fears of reprisals, etc. (Facts, ¶'s 16-22). This substantial body of evidence reinforces the conclusion that the defendants violated the rights and protections granted to Davis under this provision of the Alabama State Code.

---

[13] Although defendants view the anti-union comments by fire department officials like defendant Chief Hunter and Assistant Chief Johansen as inadmissible hearsay, they are actually admissible as adverse statements from a party-in-interest and its agents.  FRE 801(d)(2)(A) and (D).  See, Camp Creek Hospitality v. Sheraton Franchise, 139 F.3d 1396, 1406, n. 14 (11th Cir. 1998); U.S. v. Portsmouth Paving Corp., 694 F.2d 312, 320-21 (4th Cir. 1982); Cline v. Roadway Express, 689 F.2d 481, 488 (4th Cir. 1982).

**V. <u>Conclusion</u>**

In summary, the defendants have acknowledged that they terminated David Davis' employment on the grounds that he violated the City's Merit System Regulations (Sec. 2.054) and ASOP 12 of the Fire Department's Standard Operating Procedures by having an off-duty telephone conversation with Mayor Hardin about a proposed Ordinance pending before the City Council. That adverse action violated Davis' First Amendment right of free speech in two respects: 1) it was based on regulations and practices that are invalid because they impose an unconstitutional prior restraint and ban on the legitimate exercise of free expression; and 2) it unlawfully punished Davis for speaking out on a matter of public concern.

In addition, the defendants improperly discharged Davis in contravention of his right of free association safeguarded by the First Amendment, and in violation of his rights and protections contained in Section 11-43-143(b) of the Alabama Code.

Accordingly, for the reasons stated above and in the plaintiff's motion for partial summary judgment and supporting papers, the defendants' summary judgment motion should be denied, and the plaintiff's motion for partial summary judgment regarding the defendants' liability should be granted.

Respectfully submitted,


/s/ Thomas A. Woodley
Thomas A. Woodley
Molly A. Elkin
Bryan G. Polisuk
WOODLEY & McGILLIVARY
1125 15th Street, NW, Ste. 400
Washington, DC 20005
Tel:  (202) 833-8855
Fax: (202) 452-1090



/s/ Gary Brown
Gary Brown, Esq.
FITZPATRICK & BROWN
Farley Building, Suite 600
1929 Third Avenue North
Birmingham, Alabama 35203
Tel: (205) 320-2255
Fax: (205) 320-7444

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS,                         )
                                     )
            Plaintiff,               )
                                     )
    vs.                              )        CIVIL ACTION NO. 3:06-cv-00544-VPM
                                     )
PHENIX CITY, ALABAMA, et al.         )        Judge W. Harold Albritton
                                     )
            Defendants.              )
_____)

## CERTIFICATE OF SERVICE

This is to certify that on May 18, 2007, I electronically filed Plaintiff's

Memorandum of Points and Authorities in Opposition to Defendant's Motion for

Summary Judgment, and the Supplemental Declaration of David Davis with Exhibit, with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing.  Service has also been made by email and facsimile transmission to counsel for

defendant:

Joshua Robert McKoon
McKoon, Thomas, & McKoon
925 Broad Street
P.O. Box 3220
Phenix City, AL 36868


                              /s/ Thomas A. Woodley
                              Thomas A. Woodley
                              Attorney for Plaintiff