IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS,                          )
                                      )        Case Number:
Plaintiff                             )
                                      )        3:06-CV-0544-WHA
v.                                    )
                                      )
PHENIX CITY, ALABAMA, et al.          )
                                      )
Defendants.                           )

## RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW Defendants Phenix City, Alabama, Jeffrey Hardin, H.H. Roberts and Wallace Hunter and files this their Response to Plaintiff's Motion for Partial Summary Judgment and shows as follows:

## INTRODUCTION

This case is about an employee who was disciplined for failing to follow the well-publicized chain of command of his department. This chain of command requires firefighters to voice their concerns regarding department policy to their superior officers prior to making complaints to City officials such as the Mayor and City Council, and it permits firefighters, unsatisfied with the response of their superior officers to bring their concerns to the City Council through the public agenda process for open City Council Meetings. See Affidavit of H.H. Roberts, attached as Exhibit "A". This chain of command is necessary to ensure that employees' grievances with his employer's policies may be addressed by the employer and will not interfere with the efficient operation of local government.

## SUMMARY JUDGMENT STANDARD

To be entitled to summary judgment, the Plaintiff must show that there is no genuine issue of material fact and that he is entitled to prevail as a matter of law. Fed. R. Civ. P. 56. Defendants dispute vigorously several facts that Plaintiff has set forth as undisputed.[1]  On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).

## SUBMISSIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants submit their previously filed Motion for Summary Judgment, including all arguments, case law and evidentiary submissions attached thereto, in Opposition to Plaintiff's Motion for Partial Summary Judgment in addition to this response and the evidentiary attachments hereto.

## ARGUMENT

### I.    Facial Challenge to City's Policies on Free Speech or Free Association Challenge is not appropriate and does not withstand scrutiny

#### A.    PLAINTIFF'S PRIOR RESTRAINT ARGUMENT

The undisputed facts show that this is not a prior restraint case.  The Plaintiff was never prevented from speaking, but was disciplined after the fact for speech that was in violation of the constitutionally permitted rules and regulations of the Merit System of

---

[1] Defendants dispute the contention in Paragraph 21 of Plaintiff's Statement of Material Facts that Assistant Chief Johansen stated that the union was "ruining the Plaintiff's career" or that he stated that City Manager Roberts was "tired of the union's crap." See Affidavit of Assistant Chief Johansen, attached hereto as Exhibit "B"). Defendants dispute the contention in Paragraph 34 of Plaintiff's Statement of Facts that a firefighter is always prohibited from contacting the Mayor and/or City Council. See Affidavit of H. H. Roberts. Additionally, City policy allows for such contact to be arranged by the City Manager after the chain of command has been exhausted. Crucially, in this case the Plaintiff did not take the first step in attempting to exhaust the chain of command as was constitutionally required by the Merit System Rules and Regulations of the City of Phenix City and Fire Department Policy.

the City of Phenix City and City of Phenix City Fire Department policy. However, since Plaintiff is now attempting a *facial* challenge to the above merit system rules and regulations and department policy and has cited several "prior restraint" cases, Defendants are responding to those cases hereinbelow.

There are several problems with Plaintiff's prior restraint argument. First, Plaintiff's Complaint fails to make a *facial* challenge to the policies and procedures of the City of Phenix City as stated in its Merit System rules and regulations. Instead, Plaintiff's Complaint focuses entirely on the adverse employment actions against the Plaintiff for specific acts of expression on his part. Defendants contend that Plaintiff's attempt to place an entirely new claim into this action by Motion, almost a year after the filing of his Complaint should not be allowed and the Court should not consider argument on this claim for that reason alone. See Fed R. Civ. P. 15.

Second, the cases upon which Plaintiff relies are inapplicable to the facts of this case. The Plaintiff claims that the City of Phenix City's Merit System Rules and Regulations impose an unconstitutional prior restraint on free speech. In support of this contention the Plaintiff refers the Court to several cases. The first of these cases, U.S. v. NTEU, 513 U.S. 454 (1995) was a case challenging the constitutionality of a federal statute barring federal government employees from receiving honoraria for making an appearance or speech or writing an article. In that case, the Court found the statute to be unconstitutional because it constituted "a wholesale deterrent to a broad category of expression by a massive number of potential speakers." which meant that the Government's burden to show a public interest in such a wholesale prohibition would be, "even greater than it was in Pickering [v. Board of Education] and its progeny, which

usually involved individual disciplinary actions taken in response to particular government employees' actual speech." Id at 454. The case at bar is one like Pickering and the cases that followed it. Here, a particular government employee, David Davis, actually contacted the Mayor and members of the City Council and complained about a policy change regarding probationary periods for new firefighters and was disciplined for that particular speech.

Even if one were to concede that the City's policies constituted a wholesale ban on a wide array of topics, which Defendants do not concede, this case would still be distinguishable from the NTEU decision because the policy here is limited to a specific and narrow class of government employees, in this case, namely firefighters. Plaintiff cites in support of his argument Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 749-50 (7th Cir. 1999). In that case, the Court was presented with a memorandum issued from the Chief of Police that any complaint made by an officer would be deemed confidential and the officer would be barred from discussing it with anyone, including their union representative and their attorney. Once again this was an extreme ban on contact with any party regarding a wide array of potential subjects, and the Court stated, "in weighing the interests of the government as employer against that of the employees, we do not have the opportunity to consider the actual nature of the speech that was communicated and the impact it had on the workplace; instead, we are presented with a general prohibition against speech rather than an isolated communication that already occurred." Id at 749-50. To reiterate, in the case at bar, the individual adverse employment action was taken in response to a communication that had already occurred, therefore Pickering and not NTEU should supply the standard by which the Court judges the conduct of Defendants.

Harman v. City of New York, 140 F.3d 111 (2nd Cir. 1998) is cited by the Plaintiff in support of his prior restraint argument is also distinguishable. In that case, the New York City Human Resources Administration (HRA) put into action a blanket prohibition of communication to the media without first obtaining intra-agency clearance in order to protect the confidentiality of reports and information related to the individuals served by the HRA. The case at bar is easily distinguishable in that the City of Phenix City Fire Department is a paramilitary organization where following a chain of command is essential to proper operation and delivery of the public service entrusted to it, as contrasted with the New York City Human Resources Administration, which is clearly no paramilitary organization. The Plaintiff claims the case of Swartzwelder v. McNeilly, 297 F.3d 228, 231-32, 235-36 (3rd Cir. 2002) supports his position regarding clearance procedures for speech. However, in Swartzwelder, the Court was presented with a departmental pre-clearance procedure regarding testimony by department employees when appearing as defense witnesses in criminal cases. Restricting speech of employees as expert witnesses is not in any way comparable to restricting speech on matters of departmental policy, which is the matter before this Court in this case.

The Plaintiff refers to Providence Firefighters v. City of Providence, 26 F.Supp.2d 350 (D.R.I. 1998) in support of this position that the City of Phenix City was unconstitutionally imposing a prior restraint on free speech. The problem with this entire line of argument and the cases that support it, is that all of these cases involved a *facial* challenge to the policies and procedures of a government or governmental department. It is simply too late for the Plaintiff to attempt to amend his complaint to include such a facial challenge as it would prejudice Defendants, occurs some 11 months after the

Complaint was filed and after the Defendants' dispositive motion deadline had passed. Mehr v. Starwood Hotels & Resorts Worldwide, Inc., 72 Fed. Appx. 276, 285 (6th Cir., 2003); Moore v. City of Kilgore, 877 F.2d 364 (5th Cir. 1989). Again, a careful review of the Plaintiff's 39 paragraph Complaint finds that he makes no such challenge to the policies and procedures of the City of Phenix City as stated in the Merit System Rules and Regulations. Rather, his Complaint focuses entirely on the adverse employment actions taken against him for specific acts of expression on his part. In Providence, the Defendants could not point to any concrete harm that was averted by implementing their policies.

Plaintiff also cites in support of its argument that the City's policies amounted to a prior restraint on free speech the case of Moore v. City of Kilgore, 877 F.2d 364 (5th Cir. 1989). In that case the Court ruled that the City of Kilgore unconstitutionally restricted Moore's free speech by subjecting him to discipline after he made certain statements to the media regarding staffing in the wake of a fatal firefighting incident. His initial contact with the media had been authorized by the Fire Chief, the discipline resulted from statements that went beyond what the Chief had approved. Needless to say this factual situation is distinguishable from the case at bar where the Plaintiff took his complaints about department policy regarding new hires directly to City Councilors and the Mayor instead of following the chain of command. The rule which Moore sought to be found facially unconstitutional that had been imposed by the City of Kilgore was Article 4.2A(40) of the Rules and Regulations of the Kilgore Fire Department which directs firefighters to, "Refrain from furnishing information relative to department policy, practices, or business affairs except as authorized by the Chief of the Department."

6

Moore 877 F.2d at 368.  The Plaintiff suggests that the City of Kilgore and City of

Phenix City's policies are similar.  The Defendants agree.  However, City of Phenix

City's policies do not comprise a prior restraint on free speech, as Moore makes clear:

> Nor, finally, is the rule a prior restraint. The department does not pretend to have
> authority to gag its employees before they speak. It claims the right to fire,
> demote, or suspend them after they speak. That is not a prior restraint; it is an
> after-the-fact sanction. The Kilgore fire department is not proposing to do
> anything that is analogous to shutting down the presses, as the government sought
> to do in New York Times Co. v. United States, 403 U.S. 713, 91 S. Ct. 2140, 29
> L. Ed. 2d 822 (1971), and Near v. Minnesota, 283 U.S. 697, 51 S. Ct. 625, 75 L.
> Ed. 1357 (1931). Nor does the Kilgore rule authorize police to interrupt speech in
> progress, as happens when a city rule allows police officers to disperse a
> demonstration or to muffle a loudspeaker.
>
> True, the City did ask its employees to seek permission *before* they spoke. But
> offending employees are penalized after-the-fact, by the loss of their jobs. They
> are not gagged or subjected to an injunction. Demotion and suspension was the
> fate suffered by Moore, and the event that precipitated this suit. Kilgore did not
> stop him from getting his message out.
>
> The difference is crucial. The great evil of a prior restraint is that it prevents the
> public from receiving the information possessed by the gagged speaker, and so
> from judging the information's worth and the speaker's case. If a sanction is
> instead applied after-the-fact, angry voters may vindicate the speaker's rights, by
> removing from office those who imposed the sanction. Prior restraints are
> constitutionally suspect because they deprive speakers of recourse to the people,
> who are inevitably the ultimate, and the most important, protector of justice in
> American politics.
>
> These concerns are not implicated by Kilgore's rule.  And, indeed, it is difficult to
> see how any government employer could regulate speech without, more or less,
> directly, carving out an exception for speech approved by the employer.
> Employees will sometimes have to act as spokespeople. Speech that would be
> damaging to the department if made without supervisory approval may be
> essential to the department if made with approval.  Moore 877 F.2d 364 at 392.

It is clear from the Court's analysis that neither the City of Kilgore's Article 4.2A(40) nor

the City of Phenix City's Standard Operating Procedure (ASOP) 12 nor Section 2.054 of

the Merit System Rules and Regulations constitute a prior restraint on free speech as

defined by Plaintiff's own case authority.  The cases of Beckwith v. City of Daytona

Beach Shores, 58 F.3d 1554, 1565 (11th Cir. 1995) and Casey v. City of Cabool, MO, 12

F.3d 799 (9th Cir. 1993), also cited by Plaintiff in support of his prior restraint argument

are distinguishable from the case at bar as they address adverse employment action

toward department heads, namely Fire Chiefs.  In both of those cases, the Fire Chief of

the Defendant City was terminated after advocating for his respective department by

making complaints regarding City policy toward the department.  The Plaintiff in this

case was not the Fire Chief and was subject to ASOP 12 and Section 2.054, just like

every other firefighter in the City of Phenix City.  The final case cited by Plaintiff in

support of this position is Hickory Fire Fighters' Ass'n v. City of Hickory, 656 F.2d 917

(4th Cir. 1981).  That case dealt with union representatives seeking the opportunity to

speak on the public agenda at a City Council meeting and also an ordinance related to

picketing and/or striking.  It did not deal, as this case does, with a firefighter who seeks to

privately contact members of City Council and the Mayor without first going through the

chain of command as required by City policy.  The Hickory case has nothing whatsoever

to do with a facial challenge to the constitutionality of the Defendants' policies which as

mentioned earlier should not even be considered since a facial challenge was never made

in Plaintiff's Complaint filed almost one year ago.

     To the extent the Plaintiff makes a different argument that the City's regulation

and enforcement of those regulations are unconstitutional prior restraints on free speech

as applied to this Plaintiff, Defendants refer the Court back to the Moore opinion cited in

Plaintiff's own Memorandum of Law in Support of his Motion for Partial Summary

Judgment.  Here, the Defendants did not seek an injunction or otherwise gag the Plaintiff.

Instead, the Defendants implemented sanctions against the Plaintiff after he violated the

policies and procedures of the City of Phenix City with respect to his contact with the Mayor and City Council. It is that adverse employment action of which the Plaintiff complains. The question of whether the City was constitutionally permitted to discipline Davis for contacting the City Council members and the Mayor is a separate matter, which will be discussed further on in this brief.

Next, the Plaintiff claims that the City's policy regarding communication between the firefighters and the Mayor and City Council are unconstitutional. This claim results from a misunderstanding of City Manager Roberts deposition testimony. See Affidavit of H. H. Roberts. In addition, the City of Phenix City Fire Department policy, as outlined in ASOP 12, states in pertinent part that, "3. If a problem cannot be solved by anyone in the chain of command, then the City Manager will arrange a hearing with the City Council." Of course, the City Council includes the Mayor. It is well established that a City Council may make reasonable time, place or manner restrictions on speech from any citizen, not to mention city employees. City of Madison, Joint School District No. 8 v. Wisconsin Employment Relations Commission, 429 U.S. 167, 97 S. Ct. 421, 50 L. Ed. 2d 376 (1976). Defendants have made reasonable time, place or manner restrictions in restricting speech from firefighters to the City Council to hearings arranged by the City Manager or where the firefighter has followed policy and procedures and has been properly placed upon the Council's agenda. Accordingly, it is clear that the reasonable restrictions placed on the ability of firefighters to address City Council do not constitute an absolute ban on such speech by Defendants but rather a reasonable regulation that promotes the substantial government interest in insuring that the Fire Department is able to operate efficiently in delivering much needed fire protection to the citizens of the City

of Phenix City. In this case, not only was the chain of command not exhausted in this

case, but the Plaintiff made no attempt to be placed on the City Council's public agenda.

  The Plaintiff also contends that the policies of the Defendants violate free

association rights guaranteed under the Constitution. There has been no evidence

tendered that the Plaintiff was unable to join a union, hold meetings, discuss issues of

concern and present them to his chain of command. Rather Plaintiff baldly asserts that,

"The defendants are simply wrong in their belief that public employees may be lawfully

barred from meeting with—associating with—elected municipal government leaders in a

formal and informal setting." Once again, to the extent the Plaintiff is making a prior

restraint argument, the Defendants would again refer back to the earlier analysis

regarding the prior restraint on Plaintiff's free speech claim. Simply put, the Plaintiff did

contact City Councilors and the Mayor at a time and place of his choosing. He was not

prevented from doing so by the Defendants, but rather was subjected to discipline after

the fact. So there was no prior restraint of Plaintiff's free speech or free association

rights. The Plaintiff does not cite a single case to support his contention that a free

association right exists guaranteeing one the right to meet with elected municipal

government leaders. Since Plaintiff has failed to provide any lawful authority to support

this assertion, Defendants' own assertion that such a right is not guaranteed should be

sufficient to deny Plaintiff summary judgment on this claim.

## II. Discharge of David Davis did not Violate His Right to Free Speech.

  Public employees do not surrender the right to comment on matters of public

interest by accepting a public position. Pickering v. Board of Educ., 391 U.S. 563, 568

(1968). However, the right to freedom of speech enjoyed by a public employee is not

absolute. <u>McKinley v. Kaplan</u>, 262 F.3d 1146, 1149 (11th Cir. 2001). Public employers

have an interest "in promoting the efficiency of the public services it performs through its

employees." <u>Pickering</u>, 391 U.S. at 568. Consequently, the courts must strike "a balance

between the interests of the [public employee], as a citizen, in commenting upon matters

of public concern and the interest of the State, as an employer, in promoting the

efficiency of the public services it performs through its employees." <u>Id</u>.

     Under Eleventh Circuit precedent, a public employee seeking to assert a claim for

violation of his free speech rights must prove that the public employer retaliated against

him because his speech was on a matter of public concern. <u>McCabe v. Sharrett</u>, 12 F.3d

1558, 1564 n.3 (11th Cir. 1994). Where, as in the instant case, the putative plaintiff's

employer is a public official or entity, retaliation occurs where an adverse employment

action is taken that is likely to chill the exercise of constitutionally protected speech.

<u>Goffer v. Marbury</u>, 956 F.2d 1045, 1049 n.1 (11th Cir. 1992). An adverse employment

action is "broadly defined and as a matter of law includes not only discharges, but also

demotions, refusals to hire, refusals to promote, and reprimands." <u>McCabe</u>, 12 F.3d at

1564.

     The Eleventh Circuit uses a four-part test to determine whether a public employee

has been retaliated against in violation of the First Amendment: (1) the speech must be on

a matter of public concern; (2) the employee's right to speak on the matter of public

concern must outweigh the public employer's interest in promoting the efficiency of the

services it performs through its employees; (3) the speech must play a substantial role in

the decision to take an adverse employment action; and (4) the public employer must not

have had another valid reason for the adverse employment action. <u>Kaplan</u>, 262 F.3d at

1149. To be of public concern, the subject of the speech should relate to political, social or other concerns to the community. Connick v. Myers, 461 U.S. 138, 146 (1983). This question is to be decided on the content, form and context of the speech. Id at 147-48.

Additionally, the Plaintiff's First Amendment protection is diminished due to his membership in a paramilitary organization. The Phenix City Fire Department is a quasi-military organization; thus, the Plaintiff's burden in proving his speech is constitutionally protected is greater. See Anderson v. Burke County, 239 F.3d 1216 (11th Cir. 2001). Such agencies have a heightened need for "order, loyalty, morale and harmony" due to the trust and communication required to perform dangerous tasks. Oladeinde, 230 F.3d 1293. In fact, the Eleventh Circuit has specifically held that "[i]n quasi-military organizations such as law enforcement agencies, comments concerning co-workers' performance of their duties and superior officers' integrity can directly interfere with the confidentiality, espirit de corps and efficient operation" of the organization. Busby v. City of Orlando, 931 F.2d 764, 774 (11th Cir. 1991). The Defendants' "need to secure discipline, mutual respect, trust and particular efficiency among the ranks" of the Fire Department employees must be considered in the determination of whether Plaintiff's speech is protected. Anderson, 239 F.3d at 1222 (quoting Hansen v. Soldenwagner, 19 F.3d 573, 577 (11th Cir. 1994); Abernathy v. City of Cartersville, 642 F. Supp. 529, 533 (N.D. Ga. 1986) (noting the importance of a close working relationship and the ability to destroy it with speech in reviewing fire department dismissals); Yarbrough v. City of Jacksonville, 363 F. Supp. 1176 (M.D. Fla. 1973) (recognizing quasi-military status of fire departments and the need for strict discipline and adherence to orders of a superior).

Plaintiff cannot prevail on his Motion for Partial Summary Judgment to the extent he seeks a finding that the Defendants' discharge of Plaintiff violated his First Amendment right of free speech. Plaintiff alleges that he was terminated for speaking out on a matter of public concern, namely the extension of probationary periods of employment for firefighters, by making a telephone call to Mayor Jeffrey Hardin to discuss this issue. The City's Merit System Rules and Regulations and ASOP 12 are clear that if a firefighter has a complaint or concern regarding department policy that he is to report that complaint or concern to the appropriate person within the Department's chain of command. See Defendants' Exhibit "2", City of Phenix City Merit System Rules and Regulations 2.054 and 15.023 and Defendants' Exhibit "3" excerpts from Phenix City Fire Department's Standard Operating Procedures. The Mayor of Phenix City does not fall anywhere within the chain of command for the City of Phenix City Fire Department. Furthermore, to the extent Plaintiff Davis was claiming he was contacting the Mayor in his capacity as President of the firefighters union, he knew the designated contact person for the City to approach on behalf of the union was H.H. Roberts, the City Manager of the City of Phenix City, Alabama. See Defendants' Exhibit "14", Deposition of H.H. Roberts pp. 81-82. The Plaintiff was fully aware of the Merit System Rules and Regulations at the time he decided to operate outside the chain of command entirely with his concern regarding the probationary period for firefighters. See Defendants' Exhibit "4", Deposition of David Davis pp.52-53. Furthermore, Plaintiff Davis was specifically directed by his superiors within his chain of command to follow the Merit System Rules and Regulations relating to grievances prior to the second violation, a direction he

evidently ignored.  See Defendants' Exhibit "15", Deposition of Wallace Hunter pp. 47-48.

Interestingly, while Davis contends that he was contacting the Mayor solely in his capacity as President of the Union, about the proposed change in the probationary period of newly recruited firefighters, he admitted in his deposition that he had a personal concern with the issue (page 71 lines 9 through 13, page 126 lines 13 through 25 and page 127 lines 1 through 24, deposition of David Davis).  He provides no documentation of any union action on the matter and can only think of the name of only one other union member with whom he allegedly discussed the issue of the probationary period before calling the Mayor (see pages 26 and 27, page 65 lines 10 through 25, page 66 and 67 lines 1 through 6, deposition of David Davis).  Additionally, it is undisputed that he never spoke to anyone in the chain of command about this issue.  As far as the issue being the matter of "public concern", Davis is not even a resident of the City of Phenix City and the only individuals that he can cite that allegedly had a concern about this matter are "John Q. Public" and Audrey Thomason, the Plaintiff's grandmother (see pages 4 lines 20 through 25, page 5 lines 1 through 12, page 127 lines 20-25 and page 128 lines 1 through 25).

Plaintiff's Motion for Partial Summary Judgment to the extent it seeks a finding that the Plaintiff's discharge violated his right to free speech is unwarranted because:  (1) The First Amendment protection afforded Plaintiff Davis is diminished as compared to other public employees due to his membership in a paramilitary organization; (2) The Pickering balancing test weighs in the Defendants' favor and finally (3) Plaintiff Davis engaged in insubordinate conduct by contacting the Mayor, even if the content of his

communication was constitutionally protected free speech, and therefore the Defendants were fully justified in terminating the Plaintiff from employment.

Plaintiff Davis freely admits that at the time of the alleged violation he was serving as a Sergeant in the City of Phenix City Fire Department. It is undisputed that the City of Phenix City Fire Department is a paramilitary organization; thus, the Plaintiff's burden in proving his speech is constitutionally protected is greater. See Anderson v. Burke County, 239 F.3d 1216 (11th Cir. 2001). Such agencies have a heightened need for "order, loyalty, morale and harmony" due to the trust and communication required to perform dangerous tasks. Oladeinde v. City of Birmingham, 230 F.3d 1275, 1293 (11th Cir. 2000). Plaintiff Davis sought to take his dispute with his chain of command to the City Council and the Mayor. This action, regardless of what precisely was said, constitutes a direct attack on the order of the chain of command, demonstrates a lack of loyalty to the chain of command and the resulting undermining of the authority of the chain of command contributes to a decrease in the morale and harmony of the department.

The Pickering test asks first that a determination be made as to whether or not the speech in question was on a matter of public concern or involved a matter of personal interest. Plaintiff Davis indicated that this policy change regarding probationary periods for new firefighters would affect him on the job. See Deposition of David Davis, p.127 lines 8-10. Plaintiff Davis has now claimed that the extension of probationary periods for these newly hired personnel would make it difficult to recruit qualified personnel into the fire department, that it would hurt retention and turnover rates, that it could result in further restrictions on firefighters working secondary jobs and it could undermine morale.

The Plaintiff has a personal stake in each of these issues, particularly that further restrictions might be placed on firefighters working secondary jobs. What possible public interest is implicated by a restriction for firefighters to draw two salaries, one public and one private? That is strictly a pecuniary interest of firefighters, one that would effect both new firefighters and veterans like the Plaintiff. Defendants would contend it was for these reasons personal to the Plaintiff and not the alleged public interest that was the subject of the calls placed by the Plaintiff. Therefore the content of the telephone call to the Mayor was on a matter of personal interest for Plaintiff Davis and therefore the Defendants had wide latitude in deciding how to discipline Plaintiff Davis for violating the Merit System Rules and Regulations.

        If this Court were to find that Plaintiff Davis was speaking on a matter of public concern, then the court must balance "the employee's interest in expressing h[im]self" against "any injury the speech could cause to `the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Waters v. Churchill, 511 U.S. 661, 668, 114 S.Ct. 1878 (quoting Connick, 461 U.S. at 142, 103 S.Ct. 1684). In addition to the Merit System Rules and Regulations, the Fire Department has a Standard Operating Procedure (ASOP) regarding addressing City Council. Plaintiff Davis was aware of this ASOP 12 which requires in pertinent part that any member of the Fire Department should take a concern regarding work related matters first to their supervisor, then through the chain of command and finally to the City Manager who is then authorized to schedule a hearing with the City Council. See Defendants' Exhibit "4", Deposition of David Davis, p.121, lines 1-21. Plaintiff Davis seems to suggest that because he was off-duty that the ASOP did not apply to him.

However the ASOP applies to all members of the Fire Department and makes no distinction about whether or not the complaint is lodged while on duty or off duty.  See Defendants' Exhibit "3", excerpts from Phenix City Fire Department's Standard Operating Procedures.  In point of fact, it would seem difficult for a firefighter to lodge such a complaint with the City Council while on duty.  Plaintiff Davis also suggests that the ASOP did not apply because he was acting in his capacity as President of the firefighters union.  While Defendants in no way concede that Plaintiff Davis was acting as President of the firefighters union, the ASOP makes no distinction for a union representative and furthermore the designated contact for the union was the City Manager, not the Mayor or individual members of City Council.  See Defendants' Exhibit "3", excerpts from Phenix City Fire Department's Standard Operating Procedures and Defendants' Exhibit "16", Letter from H.H. Roberts to Thomas Malone dated March 12, 2005.  The City of Phenix City Fire Department is a paramilitary organization and has a strong interest in providing its services efficiently as the protection of property and human lives often rest with the ability of the department to provide its services in as an efficient manner as possible.  Plaintiff Davis broke the chain of command and violated the Merit System Rules and Regulations and ASOP 12 for addressing City Council in making the telephone call to the Mayor that resulted in his termination.  The effect of firefighters ignoring the Merit System Rules and the ASOPs of the department undermine the authority of the chain of command and reduce the efficiency of the department in delivering its services.  The strong interest Defendants have in maintaining the efficiency of the department far outweighs whatever interest Plaintiff Davis had in expressing himself on the issue of the extension of the probationary period for new firefighters and

17

therefore even if this Court found that Plaintiff Davis was speaking on a matter of public concern, an application of the Pickering balancing test would show that it weighs strongly in favor of upholding the adverse employment action to preserve efficiency of delivery of vitally needed city services, namely fire protection.

The Defendants are not required to show that the call to the Mayor actually caused injury to delivery of city services but simply that Defendants could make a reasonable prediction of disruption. See Waters v. Churchill, 511 U.S. 661, 673, 114 S.Ct. 1878. Defendants would further invite the Court's attention to Belcher v. City of McAlester, Oklahoma 324 F.3d 1203 (10th Cir. 2003). In that case, Steve Belcher, a firefighter with the City of McAlester, Oklahoma, called three members of City Council to express his concern with a pending vote to waive the bidding process on the purchase of a new fire truck. He made these contacts despite City and Department policies which prohibited contacting Council members individually. Violations of these policies can be punishable by a written reprimand and even dismissal. Belcher was issued a written reprimand for violations of City and Departmental procedures. He filed suit claiming that the reprimand violated his First Amendment rights to speak on a matter of public concern. In upholding the summary judgment granted Defendants by the District Court, the United States Court of Appeals for the Tenth Circuit held in performing the analysis required by Pickering that:

> In performing [Pickering] balancing, [an employee's] statement will not be considered in a vacuum; the manner, time and place of the employee's expression are relevant, as is the context in which the dispute arose." Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). In considering the time, place and manner of the speech, we take into account whether the employee used "less disruptive internal channels" of communication. In the instant case, Belcher could have used "less disruptive internal channels," by explaining his concerns to his superior officers at the Fire Department and following the chain of

18

command. Instead, Belcher chose to go outside the Department, speaking directly
to Council members in violation of Department and City policy, diminishing the
level of protection his speech might otherwise enjoy. Belcher's interest in
speaking privately to the Council members must be weighed against the contrary
interests of the City and the Department in maintaining harmony among
Department employees…Because such close relationships are necessary in a fire
department, there is a "heightened governmental interest in maintaining harmony"
among fire department employees…Firefighters place their lives in each others'
hands, and it is essential that each firefighter have trust in his colleagues…In sum,
Belcher's narrow interest in expressing his concerns through external channels, in
violation of City and Department policy, when weighed against the heightened
interest of the City and the Department in maintaining harmony among
firefighters and their officers, tips the scales on the City's side. Thus, Belcher's
speech is not protected, and the district court correctly granted summary judgment
to defendants. Belcher 324 F.3d 1203 at 1208-09, 107 S.Ct. 2891.

It should be underlined here that the Plaintiff had the option of going to his chain of
command with these concerns after he had concluded from meeting with the union
membership that a complaint should be lodged regarding the proposed change in policy
on probationary periods for new hires in the fire department. The Plaintiff ignored that
option and city policy in favor of his own preferred method of addressing the problem.
There can be little doubt that allowing firefighters to disobey the SOP and Merit
System Rules and Regulations at will could reasonably be predicted to cause disruption
in the delivery of city services and therefore Plaintiff Davis should not prevail on his
Motion for Partial Summary Judgment on this issue.

Even if the Court did not find the Pickering test weighed in favor of Defendants'
actions with regard to the Plaintiff's employment, the Defendants are protected by the
"mixed-motive" defense as delineated in Mt. Healthy City School District Bd. Of Educ.
V. Doyle, 429 U.S. 274 (1977). The "mixed motive defense" is applicable where an
employer's decision regarding an employee is based upon both proper and improper
motives.

In <u>Mt. Healthy</u>, the plaintiff complained that his employment was not renewed because of his complaints to the media, in violation of his First Amendment rights. <u>Id</u> at 284. The Court concluded that, once the plaintiff showed that his speech was protected and was a "motivating factor" in the employer's decision, the burden shifted to the employer to prove that it would have made the same decision absent the consideration of the plaintiff's complaints to the media. <u>Id</u>, at 287. The court held that if the employer made the requisite showing, that the decision to not renew employment was valid for a reason separate from the protected conduct, then no constitutional violation had occurred. <u>Id</u> at 285; <u>see also Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1269 (11th Cir. 2001) (holding that in § 1983 retaliation cases employer can avoid liability by proving it would have made the same employment decision without alleged bias).

Thus, even if Davis was successful in establishing that the Defendants took retaliatory actions, the Defendants have demonstrated that the decision to terminate Davis was based upon legitimate and sufficient reasons—the fact that Davis had not followed departmental rules and policies and had been directly insubordinate regarding the counseling he received on September 20, 2005. Because the Defendants had non-retaliatory reasons to terminate Davis, even if Davis established retaliatory motives for that decision, he cannot prevail.

### III.    Defendants' Termination of Plaintiff Did Not Violate His Right to Free Association

Plaintiff's Motion for Partial Summary Judgment for this Court to find that he was retaliated against due to his association with a union should also fail. The First Amendment's right of expressive association is "the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly,

petition for the redress of grievances, and the exercise of religion." <u>McCabe v. Sharrett</u>, 12 F.3d 1558, 1564 (11th Cir. 1994). Davis must satisfy a three prong test to demonstrate that his termination was the result of his union membership. <u>See Caruso v. City of Cocoa, Fla.</u>, 260 F. Supp. 2d 1191, 1206 (M.D. Fla. 2003). Davis must first establish that he has a constitutional right to the association. <u>Id</u>. Next, he must show that "he suffered an adverse employment action for exercising that right." <u>Id</u>. Finally, should he establish the first two prongs, the Plaintiff's interest in associating with the union would be balanced against the Fire Department's interest in "promoting the efficiency of the public services it performs through its employees." <u>Id</u>. (citations omitted).

Davis's claim fails at the second prong of this test, as he cannot show that he was terminated for his union membership. The evidence establishes that Davis was terminated because he failed to follow the rules and procedures and directives of his employer. Davis also failed to allege any facts in support of his claim that Defendants violated his right of association.

Davis's claim also fails on the third prong of the test. Even if Davis could make a showing that he was terminated for his union membership, the interest of Defendants in promoting the efficiency of the public services it performs through its employees would outweigh his interest in associating in the union. The balancing analysis is the same as in the question of whether the termination violated Plaintiff's right to free speech and Defendants would refer the Court to the analysis performed by the United States Court of Appeals for the Tenth Circuit in <u>Belcher v. City of McAlester, Oklahoma</u> 324 F.3d 1203 (10th Cir. 2003).

The law regarding the filing of actions on violation of the right to free association arising under 42 U.S.C. 1983 in the federal courts of Alabama is outlined by United States District Court for the Middle District of Alabama, Northern Division in <u>Thomas v. McKee</u>, 205 F. Supp. 2d 1275 (2002) as follows:

> The Eleventh Circuit does not require plaintiffs to demonstrate that their claimed freedom of association pertains to matters of public concern. Therefore, in analyzing whether a government employee's freedom of association rights have been infringed involves a three-part test. The first step is for the court to balance an employer's interest in maintaining an efficient workplace against the weight accorded to the employee's First Amendment rights. If the First Amendment interest is of sufficient importance, plaintiffs then have the burden of showing that the protected activity was a substantial motivating factor in the decision not to promote them. If plaintiffs demonstrate this, the burden shifts to defendants to prove by a preponderance of the evidence that they would not have promoted plaintiffs, regardless of the parties' divergent political inclinations.

Plaintiff has made no allegation that his free association rights to belong to and represent the firefighter's union outweigh the City's interest in maintaining an efficient workplace. If every firefighter with a complaint about Department policy went to the Mayor instead of through the proper chain of command, the Mayor would have time for nothing but hearing the complaints of police officers, firefighters, EMTs and other City employees and would be unable to conduct City business. No showing or allegation has been made that the free association rights of the plaintiff outweigh the ability for the Mayor to perform his duties with respect to the operation of City government. So the second count of the Complaint should fail upon that basis alone.

Even if this Court were to determine that the plaintiff's interest outweighed the City's interest in maintaining an efficient workplace, the plaintiff would still fail the second prong of the <u>Thomas</u> test in that plaintiff has made no showing that the adverse employment action was related to his exercise of free association rights. In the

allegations made under the sections of the Complaint captioned "Facts" and "Common Allegations", the plaintiff alleges that the adverse employment action occurred within days of his attempt to lodge a complaint with the Mayor regarding a change in the policies of the Phenix City Fire Department. See Complaint at Paragraphs 15 through 18. It is not disputed that the reason for the termination of the plaintiff was his contact to the Mayor, which was a direct violation of the City's Merit System Rules and Regulations. The fact that he was involved with the Union was immaterial, as it would have been a violation of the Merit System Rules and Regulations whether or not he was a member of the Firefighter's Union. Therefore, the Motion for Partial Summary Judgment filed by the Plaintiff on this issue should be denied.

Plaintiff also seems to assert the bizarre claim here that he is entitled to free association with elected municipal officals. Here, as elsewhere this argument is made, no legal authority to support it is offered. So again Defendants would ask that the Court reject this argument as well.

## IV.  The Court Should Not Grant Summary Judgment to Plaintiff as to Violation of Code of Ala. § 11-43-143 by Defendants.

The law regarding the scope of review afforded a Court under Alabama law of a personnel decision upheld after a due process hearing is outlined by the Supreme Court of Alabama in Ex Parte Tuskegee, 447 So. 2d 713, 715 (1984) as follows:

> Those standards being before the trial court, the next question is: What is the scope of the trial court's review in an action brought by the person discharged under those standards? Under these circumstances, the review by the circuit court is, in effect, that of certiorari, and on such a review the circuit court is restricted to examining only the external validity of the proceeding. Ferrell v. Langley, 421 So. 2d 116 (Ala.Civ.App. 1982); cf. Guthrie v. Civil Service Board of Jasper, 342 So. 2d 372 (Ala.Civ.App. 1977), and Ex parte Hennies, 33 Ala.App. 377, 34 So. 2d 22 (1948). Thus, in this case, the circuit court is limited to a review of the record made before the Council and questions of law presented thereby. And, where there

23

was substantial evidence in support of the Council's discretionary discharge authority, the reviewing circuit court may not supplant the Council's judgment with its own.

Plaintiff has not alleged that there was any defect in the appellate proceeding he had access to before the City's Personnel Review Board. Therefore given the limited jurisdiction afforded a state Court in reviewing a violation of Alabama law that will also govern here, and given the failure of the plaintiff to plead any defect in the appellate proceeding, count three of the Complaint is due to be dismissed.

Plaintiff has alleged that Defendants infringed on his right to be a member of a labor organization, that they interfered with his right to present proposals regarding employment conditions to his employer and they coerced and discharged him with regard to his participation and leadership in Local 3668. Defendants would suggest that the Plaintiff has not articulated or shown any way by which Defendants sought to imperil his freedom of association in the firefighters union. Plaintiff has not articulated or shown any way by which Defendants took an adverse employment action against him due to his union membership or holding office in the union. The only statement made against the union by Chief Hunter that Davis has tendered was that, "the union won't help y'all" and that he was told Chief Hunter said to a third party "we done got rid of the troublemakers" after Davis was terminated. See Defendants' Exhibit "4", Deposition of David Davis pp.105-106 lines 8-25 and lines 1-10. Davis even admitted that almost all of Chief Hunter's allegedly derogatory statements about Davis in his capacity as union president were hearsay and that he could not identify any of the persons who allegedly heard these derogatory statements. See Defendants' Exhibit "4", Deposition of David Davis pp.106-107 lines 13-25 and lines 1-13. Davis admitted he was unaware of any derogatory statement made by Chief Waters regarding the union or his participation in it. See

24

<u>Defendants' Exhibit "4", Deposition of David Davis pp.107-108 lines 20-25 and lines 1-4</u>. To date, Davis has tendered no evidence outside of the unsupported allegations of his Complaint to substantiate the argument that the Defendants took action to silence Davis or otherwise prevent him from associating with labor union members. The Plaintiff always had the right to present proposals regarding employment conditions to his employer. The Plaintiff chose not to do so going through the established chain of command and that is what led to the adverse employment action. There has been no evidence that the Plaintiff was discharged or coerced with respect to his involvement in Local 3668 beyond what has already been discussed. Therefore for these reasons and the reasons outlined in this Memorandum with respect to the free association argument made elsewhere, Plaintiff's Motion for Partial Summary Judgment as to this issue should be denied.

## **CONCLUSION**

Therefore for the reasons, authorities and evidentiary submissions cited and filed herein, the Defendants respectfully request that the Plaintiff's Motion for Partial Summary Judgment be denied.

This 18th day of May, 2007.

MCKOON, THOMAS & MCKOON


*/s/James R. McKoon*

By:_____

James R. McKoon
State Bar No. MCK020


*/s/Joshua R. McKoon*

By:_____

Joshua R. McKoon

State Bar No. MCK057

925 Broad Street
Post Office Box 3220
Phenix City, Alabama 36868-3220
334.297.2300
facsimile 334.297.2777

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing Motion to Dismiss upon Counsel for the Plaintiff by placing a copy of same in First Class Mail addressed as follows:

Thomas A. Woodley                J. Michael Cooper, Esq.
Molly A. Elkin                   Fitzpatrick, Cooper & Clark, LLP
Bryan G. Polisuk                 Farley Building, Suite 600
Woodley & McGillivary            1929 Third Avenue North
1125 15th Street, N.W.           Birmingham, Alabama 35203
Suite 400
Washington, D.C. 20005

*/s/James R. McKoon*
_____

Counsel for Defendants