## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

DAVID DAVIS,                              )
                                         )        Case Number:
Plaintiff                                )
                                         )        3:06-CV-0544-WHA
v.                                       )
                                         )
PHENIX CITY, ALABAMA, et al.             )
                                         )
Defendants.                              )

### REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Phenix City, Alabama, Jeffrey Hardin, H.H. Roberts and Wallace Hunter and files this their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment and shows as follows:

### INTRODUCTION

As Plaintiff states at the outset of its Response, there is no dispute that the Plaintiff was terminated for violating the City's Merit System Rules and Regulations, namely Section 2.054 and a Standard Operating Procedure of the Fire Department, specifically ASOP 12 regarding communication of grievances through the chain of command.

Plaintiff is positively incorrect in its assertion that Section 2.054 of the City's Merit System Rules and Regulations and ASOP 12 constitute a prior restraint on free speech. The Plaintiff has not cited a single case that supports the proposition that these policies constitute a prior restraint. Plaintiff has cited numerous cases from other Circuits that involved restrictions on speech regarding employees of a Police Department

testifying on their own time on behalf of criminal defendant[1], employees of a New York agency charged with children's welfare who wished to protect confidential information[2], federal government employees who wished to receive a fee for giving speeches[3], employees of a Police Department who upon making a complaint were barred from consulting with an attorney or union representative[4], two cases involving the rights of Fire Department Chiefs to speak out on departmental needs to City officials[5], a case involving union representatives being barred from appearing on the public agenda of a City Council[6], a case involving a facial challenge to government policy regarding free speech of employees[7] which was never asserted in the Complaint filed in this case and a case where a Fire Department employee made statements to the media after he had been authorized to serve as a spokesman for the Fire Department[8].

None of these matters are similar to the case here where a Fire Department employee had a complaint regarding a proposed departmental policy and failed to even attempt to contact his chain of command and instead scheduled private meetings with City Councilors and the Mayor in direct contravention to City policy and, importantly, in direct contravention of the direction the Plaintiff was given by the Fire Chief in the wake of his September 2005 contact with the <u>Columbus Ledger-Enquirer</u>.  This September 2005 episode goes directly to the issue of what actual harm was being done to the Phenix City Fire Department by the actions of the Plaintiff.  Plaintiff attempts to advance the

---

[1] <u>Swartzwelder v. McNeilly</u>, 297 F.3d 228, 231-32, 235-36 (3rd Cir. 2002)
[2] <u>Harman v. City of New York</u>, 140 F.3d 111 (2nd Cir. 1998)
[3] <u>U.S. v. NTEU</u>, 513 U.S. 454 (1995)
[4] <u>Milwaukee Police Ass'n v. Jones</u>, 192 F.3d 742, 749-50 (7th Cir. 1999)
[5] <u>Beckwith v. City of Daytona Beach Shores</u>, 58 F.3d 1554, 1565 (11th Cir. 1995) and <u>Casey v. City of Cabool, MO</u>, 12 F.3d 799 (9th Cir. 1993)
[6] <u>Hickory Fire Fighters' Ass'n v. City of Hickory</u>, 656 F.2d 917 (4th Cir. 1981)
[7] <u>Providence Firefighters v. City of Providence</u>, 26 F.Supp.2d 350 (D.R.I. 1998)
[8] <u>Moore v. City of Kilgore</u>, 877 F.2d 364 (5th Cir. 1989)

2

argument that, "those regulatory restrictions and the defendants' actions surrounding that media report do not satisfy constitutional standards." See Plaintiff's Response to Defendant's Motion for Summary Judgment, p.3  Of course, Plaintiff did not complain that the policies in place regarding contact with the media were unconstitutional and only now raises the argument at this late date.  Furthermore, Plaintiff did not file any claim in the wake of the September 2005 incident but only filed the instant Complaint after being terminated for his contact with the Mayor in June 2006.

Next the Plaintiff seeks to advance the argument again that there is an absolute ban in place on communication between Fire Department employees and the elected Mayor and/or City Council.  That assertion is incorrect.  There are at least two avenues whereby any Fire Department employee would be able to speak to the elected Mayor and/or City Council.  First, if the employee took his complaint to his chain of command and exhausted the chain of command without a satisfactory outcome, ASOP 12 states clearly that, "If a problem cannot be solved by anyone in the chain of command, then the City Manager will arrange a hearing with the City Council."  Of course, the membership of the City Council includes the elected Mayor.  Second, the employee could apply to appear on the public agenda at a regularly scheduled called meeting of the City Council, as stated by H.H. Roberts in his Affidavit that was attached to Defendants' Reply to Plaintiff's Motion for Partial Summary Judgment.  Unfortunately for the Plaintiff, he chose to ignore these two avenues to pursue his complaint and instead chose his own method to resolve his problems with departmental policy in violation of Section 2.054 of the City's Merit System Rules and Regulations, ASOP 12 and in direct contravention of the order he had been given by his Fire Chief in the wake of the September 2005 incident.

Finally, Plaintiff's assertion that Defendants have not satisfied the four-part test outlined to determine whether discipline against a public employee related to speech issues is unconstitutional does not withstand scrutiny. The Plaintiff admitted he was concerned that the policy change in question would make it his job more difficult. This clearly brings Plaintiff's complaint in this matter into the category of a grievance. The procedure for handling such grievances is clearly defined and the Plaintiff ignored it. But even if the Court found the issue was a matter of public concern, there were several avenues that have been discussed above for Plaintiff to pursue to have this public concern addressed, both within his chain of command and to the City Council and the Mayor. The case law makes it very clear, including the <u>Moore</u> case that the Plaintiff cited in its own Memorandum of Law in Support of his Motion for Summary Judgment and the <u>Belcher</u> case Defendants cited earlier that the discipline taken against the Plaintiff for his violation of City policy was well within Constitutional bounds.

### **Defendants' Discharge of Plaintiff Did Not Violate His First Amendment Right to Free Speech**

Plaintiff is incorrect when he takes the position that he would not be personally affected by the proposed Ordinance regarding extending probationary periods for firefighters. In his deposition at Page 71, lines 3-13, the following exchange took place:

> **Q: Okay. Well if you felt like it [extending probationary periods] was going to hurt hiring, then that would hurt staffing, could it ultimately affect you?**
>
> **A: That would be correct.**
>
> **Q: Was that part of your concern?**
>
> **A: That was part of the concern of the membership.**

Q: Was it part of your concern?

A: Yes, I did have concerns.

Q: So in a way it did affect you, didn't it?

A: Well, anything in the fire surface [sic] affects me if I'm an employee.

Then again at Page 127 of Plaintiff's deposition at lines 8-10, the following exchange transpired:

Q: Well, it [extending probationary periods] would affect your job, your life-on-the-job, wouldn't it?

A: Correct.

So there is no question that the Plaintiff by his own admission agreed that this proposed policy change would personally affect him.

To the extent Plaintiff argues that the communication made by the Plaintiff was in his capacity as a representative of the firefighter's union, as Plaintiff's Response goes to great lengths to prove, then that communication should have been directed toward the City Manager, the designated contact for the union and not members of City Council and the Mayor. Defendants certainly agree with the Plaintiff that his complaints to the Mayor and City Council did not encompass any part of his duties as an employee of the Phenix City Fire Department.

Plaintiff attempts to analogize this case to Cook v. Gwinnett County School Dist., 414 F.3d 1313 (11th Cir. 2005). As Plaintiff points out, in that case the employer ordered Cook to cease discussing union activity during work hours and refused her request to insert a pro-union flyer into employees' paycheck envelopes. As Plaintiff has pointed out repeatedly in this case, Defendants terminated the Plaintiff for his prohibited contact with

the Mayor in violation of Merit System Rule 2.054, ASOP 12 and the direct order he had

received from his Fire Chief regarding following the chain of command.  It is undisputed

that the Defendants did not terminate Davis for any union activity.  The <u>Cook</u> case is

inapposite with the facts of this case and should not be considered by this Court as in any

way analogous to this matter.  It should also be noted that school bus drivers are not

members of a paramilitary organization such as the Phenix City Fire Department where

order and discipline are essential to efficient operation and a heightened government

interest in maintaining that order and discipline has been recognized by the Courts.  The

Plaintiff's citation to <u>Cook</u> that the government may not retaliate against the expression

of views it opposes illustrates again this case has no bearing on the facts of the case at

bar.  The Plaintiff in this case was not terminated because he opposed probationary

period extension; he was terminated because instead of going through his chain of

command or appearing on the public agenda at Council or presenting his membership's

concerns to the union's designated contact, he chose to contact the Mayor and City

Councilors directly.  The balancing test in <u>Cook</u> is not instructive to the Court here as the

heightened governmental interest that is triggered when the employer is a paramilitary

organization was not present in the <u>Cook</u> analysis.

      Next Plaintiff contends that the speech itself complained of by the employer has

to be shown to have caused significant disruption or impaired working relationships.

Plaintiff relies on the case of <u>Waters v. City of Philadelphia</u>, 55 F.3d 886, 897-99 (3rd Cir.

1995) in support of this contention.  While Defendants contend a showing of such actual

disruption has already been made in this case, Defendants also contend that merely an

anticipation or prediction of harm by the employer is sufficient to meet this portion of the

Pickering analysis. Defendants refer to Waters v. Churchill, 511 U.S. 661, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994), where the United States Supreme Court opined, in pertinent part that:

> Likewise, we have consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large. Few of the examples we have discussed involve tangible, present interference with the agency's operation. The danger in them is mostly speculative. One could make a respectable argument that political activity by government employees is generally not harmful, see Public Workers v. Mitchell, supra, at 99; or that high officials should allow more public dissent by their subordinates, see Connick, supra, 461 U.S. at 168-169 (Brennan, J., dissenting); Whistleblower Protection Act of 1989, 103 Stat. 16, or that even in a government workplace the free market of ideas is superior to a command economy. But we have given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern, and even though when the government is acting as sovereign our review of legislative predictions of harm is considerably less deferential.

This opinion has been cited recently to demonstrate that a mere showing of an anticipated or predicted disruption caused by speech of an employee is sufficient to take disciplinary action. In Locurto v. Giuliani, 447 F.3d 159 (2nd Cir. 2006), the Court opined specifically that the extent of the injury caused by the employee's speech need not be actual; rather the government's burden is just to show that the speech *threatened* to interfere with government operations. There is no question that the Phenix City Fire Department could reasonably predict that a firefighter who routinely flouted not only the written policies and procedures of the Fire Department but also the orders of his chain of command would cause disruption, impair harmony, weaken morale and generally undermine the efficient delivery of Fire Department services. But beyond that Chief Hunter testified repeatedly about the effect of the Plaintiff's actions in his deposition. He was asked about the comments made by the Plaintiff in the September 2005 story

published in the <u>Columbus Ledger-Enquirer</u>.  On page 37 of his deposition testimony at

lines 6-12 and lines 19-25 and page 38 lines 1-4 the following exchange illuminates the

damage done by the Plaintiff:

> **Q:      Then it [a September 20, 2005 memorandum from Chief Hunter to
> employees] goes on to say quote several firefighters made comments in the
> paper that were likely to impair discipline and harmony in the workplace,
> impede job performance and jeopardize loyalty in this department end
> quote.  You see where it says that?**
>
> **A: That's correct...**
>
> **Q:  What comments made by Mr. Davis and the other firefighters that were
> quoted in this newspaper article in your judgment impaired discipline and
> harmony in the fire department.**
>
> **A: Basically the comments about people being afraid to talk.  What was you
> afraid to talk when you're not talking to anybody?  Why would you—that's
> misleading people.  Why would you be afraid to talk when you can use the
> chain of command and come up and talk to me at any time, if you was willing
> to give me a chance.**

In addition the Defendants call the Court's attention to pages 35 through 41, line 18 of

Chief Hunter's deposition.  Fire Chief Hunter stated on several occasions in his

deposition that the actions taken by the Plaintiff were disrupting his Fire Department.

That is why he counseled Davis in September of 2005 to follow the City's Merit System

Rules and Regulations, particularly 2.054 and ASOP 12.  So Davis not only violated

those standing policies but directly flouted an order from a superior when he contacted

the Mayor and City Councilors.  So while Defendants contend this was not a matter of

public concern, even if it was the Plaintiff triggered a substantial government interest

when he failed to follow the several avenues open to air this grievance.

Plaintiff next contends he should be in no way restricted in terms of who he may

present his concerns to as a union representative.  The correspondence between the union

and the employer made it clear the union representative's contact was H.H. Roberts, the

City Manager.  Davis was limited in who he could make his presentation to regarding this

matter.  But he was not limited only to his chain of command he could also have utilized

the public agenda of a called City Council meeting or to contact H.H. Roberts, the

designated contact for the union.

Defendants agree with the Plaintiff that the Court should take a closer look at the

facts and reasoning in <u>Moore v. City of Kilgore</u>, 877 F.2d 364 (5th Cir. 1989).  The Court

explained the facts of the case as follows:

> In the early morning hours of December 26, 1985, the Kilgore Fire Department
> responded to a house fire. Although a suspected result of arson, the fighting of the
> fire was essentially routine. The fire, however, produced tragic results. One
> firefighter, Hawthorne, died of an apparent heart attack while fighting the fire,
> and a second, Captain Jackson, fell from a ladder, sustaining serious injuries
> requiring hospitalization. Media representatives approached Moore for comments
> concerning the tragedy. Moore initially demurred. He went to see the City
> Manager, Cox, for two purposes: (1) to assist in expediting the paperwork to
> secure benefits for the survivors of the deceased fireman; and (2) to inform Cox of
> the inquiry from the press and coordinate his response concerning the death with
> the City's plans.
>
> The fire chief was in Cox's office when Moore arrived on December 26, 1985.
> The two had been discussing various aspects of the fire. Moore was welcome; the
> meeting was cordial. Moore stated the reasons for his visit. As to the reporters'
> inquiries, Cox suggested that Moore limit his response to an expression of
> sympathy for the family of his deceased colleague.
>
> The following morning, December 27, 1985, the City held a press conference,
> *after* which the media representatives sought comment from Moore. Moore
> responded with a message of condolence for the family. Not surprisingly, the
> press persisted with questions about the fire reflecting back to the ongoing debate
> regarding the staffing decisions. Moore answered direct questions concerning the
> fire, firefighting techniques, and the duties of firefighters in fighting blazes.
> Specifically, the newspaper article (which was attached to the disciplinary
> memorandum discussed below that Cox eventually gave to Moore) stated:
>
> Gary Moore, president of the Kilgore Professional Fire Fighters Association, to
> which Hawthorne belonged, commented: "B. J. was a very nice man and a good
> firefighter. Firefighters get to be pretty close. We're just sickened over something

like this."

Moore said he was "not saying that B. J. wouldn't have had a heart attack" if the fire had not occurred, but contended the incident pointed out that "we don't have enough manpower."

He added that the fire department sent No. 1 engine -- a two-man company -- and No. 3 engine -- a three-man company, and then called in firefighters from Overton, Sabine and Liberty City, the Kilgore Rescue Unit and four or five off-duty firemen.

"It's common practice to have a 'butt man' to hold the ladder. Jackson didn't have that." Moore said, "The other man had to stay with the engine."

"I just want to say, 'I told you so.'" Moore added referring to his earlier charges that the fire department is understaffed following a layoff of 15 firemen in October.

City officials declined to respond to Moore's charges, other than pointing out that ice was on the ladder and concrete, making them slippery.

"We're dealing with a shortage of manpower. It may not have made a difference in B. J. Hawthorne's heart attack. We really don't know. But there was no doubt it contributed to Capt. Jackson's injury." Capt. Jackson had fallen from a ladder. The latter statement referred to the absence of a "buttman" to hold Jackson's ladder as he climbed, a fundamental practice, according to Moore.

It is important to note that Moore was authorized by the Fire Chief to speak to the media in the first place, that the Chief merely suggested what statement Moore should make to the media regarding the incident and that Moore was speaking on an actual firefighting episode that led to the death and injury of several firefighters. The speech in this case, relating to manpower and the ability of the City of Kilgore to fight fires, was ruled by the Court to be a matter of public concern. The next step in the analysis was to determine the public interest in Moore's speech. This is incredibly important in distinguishing the Moore case from the case at bar. The Court stated that, "On the freedom of expression side of the balance, both Moore and the public have a strong

interest in Moore's speech. The effectiveness of Fire Department services concerns the people of the City of Kilgore."[9] There is an important distinction here in that the Phenix City Fire Department is not understaffed nor is it having any difficulty delivering firefighting services to the community since it no longer has insubordinate officers. The Plaintiff in this case was speaking about a matter of internal departmental policy that did not have anything remotely close to the impact of the decision by the City of Kilgore to eliminate 15 firefighter positions. Plaintiff's own deposition testimony demonstrates that the alleged concern about turnover rates and recruitment was already present and that in the end the firefighters union would be willing to agree to the extended probationary period. See Deposition of David Davis, page 78, lines 17-25 and page 79, lines 1-16. So to make it plain, the plaintiff in Moore was discussing a manpower issue with the media in the wake of the elimination of 15 firefighting positions within the department against the backdrop of firefighter deaths in a recent firefight in contrast with the Plaintiff in this case who was calling City Councilors and the Mayor to complain about a potential impact on retention and recruiting of a probationary period policy which he could have complained to the City Manager, the chain of command and the City Council at a called meeting on the public agenda. Indeed a closer examination of the Moore case should make it evident why the plaintiff in that case was entitled to relief and why the Plaintiff in this matter is most certainly not entitled to any relief.

The Plaintiff also relies on Mansoor v. Trank, 189 F.Supp. 2d 426 (W.D. Va.), affirmed, 319 F.2d 133 (4th Cir. 2003). In this case, the employer had imposed the following condition on the plaintiff in order to maintain his employment with the Police Department:

---

[9] Moore v. City of Kilgore, 877 F.2d 364 (5th Cir. 1989)

> That you shall at all times refrain from any verbal or written communications to third parties, including but not limited to county employees, relating to your employment that are in any way critical or negative towards the county executive, the chief of police or other police department management or command staff, or any other county official or employee.

Mansoor 189 F. Supp. 2d 426 at 431. This absolute bar on any criticism about the county executive, chief of police or other police department personnel to any third party is in no way comparable to the reasonable limitation on communication placed on the Plaintiff in this case and is much closer to the inapposite fact situation in another of the cases Plaintiff has cited earlier, Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 749-50 (7th Cir. 1999). Mansoor was unable to make a critical statement about his employment to anyone. The Plaintiff in this case was free to speak to his chain of command, the City Manager and the Mayor and City Council within the context of the public agenda at a called meeting about his concerns regarding the probationary policy change.

Finally, Plaintiff states that Int'l Firefighters Ass'n Local 3233 v. Frenchtown Charter Township, 246 F.Supp.2d 734 (E.D. Mich. 2003) supports his claim that his termination had no constitutional basis. In Frenchtown, a policy was in place that all statements to the media had to be from the Fire Chief. Defendants' policies toward contact with the media are not at issue in this case. Plaintiff failed to state in his 39 paragraph Complaint any claim that his speech to the media was chilled, abridged or otherwise prevented by Defendants. It is simply too late to wait until the dispositive motion deadline in this case to raise this claim for the first time. The only claim made as to an adverse employment action by the Plaintiff is his termination after speaking to the Mayor and City Council. So Frenchtown does not apply to this case as it has no analysis relevant to the balancing test involved when the speech restriction applies to contact with elected officials.

The Plaintiff next takes issue with the reliance of Defendants' on <u>Belcher v. City of McAlester, OK</u>, 324 F.3d 1203 (10th Cir. 2003). In <u>Belcher</u> a firefighter with a complaint about the purchase of a fire truck premised on its ability to assist in the fighting of grass fires in particular, contacted three Council members by telephone and one in person to voice his concerns. The City of McAlester has a policy similar to that of the City of Phenix City in that firefighters, whether union representatives or not, were barred from contacting Councilors except at a public meeting. As a result of Belcher violating that policy, the Fire Chief issued him a reprimand stating that his contact of the Councilors were detrimental to the function of the Fire Department. This is similar to the September 20, 2005 memorandum Chief Hunter issued regarding the newspaper incident that preceded the Plaintiff's prohibited contact with the Mayor and City Councilors. In performing the balancing test weighing Belcher's interest in complaining about the fire truck purchase and the government's interest in maintaining harmony, the Court stated that:

> In performing [Pickering] balancing, [an employee's] statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." <u>Rankin, 483 U.S. at 388</u>. In considering the time, place, and manner of the speech, we take into account whether the employee used "less disruptive internal channels" of communication. See <u>Lytle v. City of Haysville, 138 F.3d 857, 865 (10th Cir. 1998)</u>. In the instant case, Belcher could have used "less disruptive internal channels," <u>id.</u>, by explaining his concerns to his superior officers at the Fire Department and following the chain of command. Instead, Belcher chose to go outside the Department, speaking directly to Council members in violation of Department and City policy, diminishing the level of protection his speech might otherwise enjoy.
>
> Belcher's interest in speaking privately to the Council members must be weighed against the contrary interests of the City and the Department in maintaining harmony among Department employees. "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." <u>Koch v. City of Hutchinson, 847 F.2d 1436,</u>

1452(10th Cir. 1998)(quoting <u>Connick, 461 U.S. at 151-52</u>). Because such close relationships are necessary in a fire department, there is a "heightened governmental interest in maintaining harmony" among fire department employees. <u>847 F.2d at 1452 n.22</u>(holding that fire departments are analogous to police departments in this respect). Firefighters place their lives in each others' hands, and it is essential that each firefighter have trust in his colleagues.

Just as in this case the Plaintiff had the option of using less disruptive internal channels, so did Belcher and the Court found there, as Defendants would suggest should be found here that the level of protection should be accordingly diminished when the Plaintiff fails to utilize those less disruptive internal channels. The Court did not reach the issue of whether actual disruption was required to affirm the District Court's grant of summary judgment because evidence of actual disruption had been tendered, as has been tendered in this case, namely Chief Hunter's deposition testimony. But again Defendants would reiterate that evidence of actual disruption is not required. <u>See Locurto v. Giuliani</u>, 447 F.3d 159 (2nd Cir. 2006) and <u>Waters v. Churchill</u>, 511 U.S. 661, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994). Defendants maintain that <u>Belcher v. City of McAlester, OK</u> is factually indistinguishable from the case at bar and that it clearly shows the policies and procedures at issue in this case should be found constitutionally permissible and that therefore summary judgment would be appropriate on this issue.

Plaintiff's lengthy attempt to argue that Defendants have instituted an absolute code of silence has been refuted at length in earlier briefs, but Defendants will restate their response here expeditiously. This claim results from a misunderstanding of City Manager Roberts deposition testimony. <u>See Affidavit of H. H. Roberts</u>. In addition, the City of Phenix City Fire Department policy, as outlined in ASOP 12, states in pertinent part that, "3. If a problem cannot be solved by anyone in the chain of command, then the City Manager will arrange a hearing with the City Council." Of course, the City Council

14

includes the Mayor. It is well established that a City Council may make reasonable time, place or manner restrictions on speech from any citizen, not to mention city employees. City of Madison, Joint School District No. 8 v. Wisconsin Employment Relations Commission, 429 U.S. 167, 97 S. Ct. 421, 50 L. Ed. 2d 376 (1976). Defendants have made reasonable time, place or manner restrictions in restricting speech from firefighters to the City Council to hearings arranged by the City Manager or where the firefighter has followed policy and procedures and has been properly placed upon the Council's agenda. Accordingly, it is clear that the reasonable restrictions placed on the ability of firefighters to address City Council do not constitute an absolute ban on such speech by Defendants but rather a reasonable regulation that promotes the substantial government interest in insuring that the Fire Department is able to operate efficiently in delivering much needed fire protection to the citizens of the City of Phenix City. Furthermore, the Plaintiff could have discussed any issue with the designated union contact, City Manager H.H. Roberts. In this case, not only was the chain of command not exhausted in this case, but the Plaintiff made no attempt to be placed on the City Council's public agenda or discuss his concerns with the designated union contact, City Manager H.H. Roberts.

Plaintiff briefly responds to Defendants' mixed-motive defense by stating that there was no proper reason for disciplining the employee other than the speech itself. In addition to the speech being disallowed by City policy, the Plaintiff's actions to speak to the Mayor and City Council violated a direct order from a superior within the Fire Department's chain of command. The resulting insubordination is a separate reason for disciplining the Plaintiff and therefore the mixed-motive defense does apply and may be considered by the Court in this case.

**Plaintiff's First Amendment Right of Free Association Was Not Violated by**

**Defendants**

Defendants do not agree with Plaintiff's assertion that he has a right to freely associate with the Mayor. The sole support for Plaintiff's assertion that such a right exists is <u>Beach v. City of Olathe</u>, 185 F. Supp. 2d 1229 (D. Kan. 2002). In that case, a police officer employed by the City who was a member of the Fraternal Order of Police (hereinafter "FOP") made a number of complaints to City Council and others regarding policies of the Police Department. A superior within the Police Department launched an internal affairs investigation targeting Beach and ultimately taking disciplinary action against him for violating Department procedure. Nowhere in the <u>Beach</u> case does the Court state that a police officer or a member of the FOP has a right to associate with the Mayor or City Council. All that is stated regarding associational rights is that, "[h]ere, plaintiff associated with the FOP to advance his and the FOP's mutual concerns to the Olathe City Council about officer pay, staffing and morale. In other words, plaintiff associated with the FOP to engage in an activity protected by the First Amendment -- speech." <u>Beach</u>, 185 F. Supp. 2d at 1238. Again in the case at bar the Plaintiff was disciplined for the method of contact he had with the City Council and the Mayor. He had the right to address City Council and the Mayor at a public meeting, he had the right to address grievances to the union contact, City Manager H.H. Roberts and also to his chain of command. But the Plaintiff chose to contact the Mayor and City Councilors outside of the context allowed by City policy. It was that choice, not the content of his concerns or his status as a union representative that led to his termination and that is why his claim for violation of right to free association should fail as a matter of law.

The First Amendment's right of expressive association is "the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion." McCabe v. Sharrett, 12 F.3d 1558, 1564 (11th Cir. 1994). Davis must satisfy a three prong test to demonstrate that his termination was the result of his union membership. See Caruso v. City of Cocoa, Fla., 260 F. Supp. 2d 1191, 1206 (M.D. Fla. 2003). Davis must first establish that he has a constitutional right to the association. Id. Next, he must show that "he suffered an adverse employment action for exercising that right." Id. Finally, should he establish the first two prongs, the Plaintiff's interest in associating with the union would be balanced against the Fire Department's interest in "promoting the efficiency of the public services it performs through its employees." Id. (citations omitted).

Davis's claim fails at the second prong of this test, as he cannot show that he was terminated for his union membership. The evidence establishes that Davis was terminated because he failed to follow the rules and procedures and directives of his employer. Davis also failed to allege any facts in support of his claim that Defendants violated his right of association.

Davis's claim also fails on the third prong of the test. Even if Davis could make a showing that he was terminated for his union membership, the interest of Defendants in promoting the efficiency of the public services it performs through its employees would outweigh his interest in associating in the union. The balancing analysis is the same as in the question of whether the termination violated Plaintiff's right to free speech and Defendants would refer the Court to the analysis performed by the United States Court of

Appeals for the Tenth Circuit in <u>Belcher v. City of McAlester, Oklahoma</u> 324 F.3d 1203 (10th Cir. 2003).

The law regarding the filing of actions on violation of the right to free association arising under 42 U.S.C. 1983 in the federal courts of Alabama is outlined by United States District Court for the Middle District of Alabama, Northern Division in <u>Thomas v. McKee</u>, 205 F. Supp. 2d 1275 (2002) as follows:

> The Eleventh Circuit does not require plaintiffs to demonstrate that their claimed freedom of association pertains to matters of public concern. Therefore, in analyzing whether a government employee's freedom of association rights have been infringed involves a three-part test. The first step is for the court to balance an employer's interest in maintaining an efficient workplace against the weight accorded to the employee's First Amendment rights. If the First Amendment interest is of sufficient importance, plaintiffs then have the burden of showing that the protected activity was a substantial motivating factor in the decision not to promote them. If plaintiffs demonstrate this, the burden shifts to defendants to prove by a preponderance of the evidence that they would not have promoted plaintiffs, regardless of the parties' divergent political inclinations.

Plaintiff has made no allegation that his free association rights to belong to and represent the firefighter's union outweigh the City's interest in maintaining an efficient workplace. If every firefighter with a complaint about Department policy went to the Mayor instead of through the proper chain of command, the Mayor would have time for nothing but hearing the complaints of police officers, firefighters, EMTs and other City employees and would be unable to conduct City business. No showing or allegation has been made that the free association rights of the plaintiff outweigh the ability for the Mayor to perform his duties with respect to the operation of City government. So the second count of the Complaint should fail upon that basis alone.

Even if this Court were to determine that the plaintiff's interest outweighed the City's interest in maintaining an efficient workplace, the plaintiff would still fail the

second prong of the Thomas test in that plaintiff has made no showing that the adverse

employment action was related to his exercise of free association rights. In the

allegations made under the sections of the Complaint captioned "Facts" and "Common

Allegations", the plaintiff alleges that the adverse employment action occurred within

days of his attempt to lodge a complaint with the Mayor regarding a change in the

policies of the Phenix City Fire Department. See Complaint at Paragraphs 15 through 18.

It is not disputed that the reason for the termination of the plaintiff was his contact to the

Mayor, which was a direct violation of the City's Merit System Rules and Regulations.

The fact that he was involved with the Union was immaterial, as it would have been a

violation of the Merit System Rules and Regulations whether or not he was a member of

the Firefighter's Union. So again, his claim for violation of right to free association

should fail as a matter of law.

### Defendants Did Not Violate Plaintiff's Rights and Protections Granted Under

### Section 11-43-143(b) of the Alabama Code

Since the Plaintiff has finally clarified exactly what his claim is as to this statutory

provision of the Code of Alabama, the Defendants can now clearly state he is not entitled

to relief on this question and that summary judgment should be granted Defendants.

The statute Plaintiff claims that Defendants have violated reads as follows:

(b) All fire fighters serving the state or any municipality in the state
either as paid firemen or as volunteer fire fighters who comply with the provisions
of this section are assured the right and freedom of association, self-organization
and the right to join or to continue as members of any employee or labor
organization which complies with this section, and shall have the right to present
proposals relative to salaries and other conditions of employment by
representatives of their own choosing. No such person shall be discharged or
discriminated against because of his exercise of such right, nor shall any person or
group of persons, directly or indirectly, by intimidation or coercion compel or

19

attempt to compel any fire fighter or fireman to join or refrain from joining a labor organization.

The Plaintiff has made two claims related to this statute. First he claims that because he made proposals to the Mayor on behalf of his union that he was discharged. The statute guarantees that a union may choose a representative to present proposals regarding salaries and other conditions of employment. It does not state that the union may choose to whom it may present those proposals. The union and the City of Phenix City had determined the City Manager H.H. Roberts would be the designated contact for union proposals such as those contemplated by Code of Ala. 11-43-143(b). The Plaintiff was not terminated for presenting a proposal to the Mayor, he was terminated for refusing to follow the well established policies and procedures of the City of Phenix City regarding the airing of such complaints. He could have presented his proposal to the Mayor and City Council in his capacity as a union representative at a regular meeting of City Council, or to his chain of command or to City Manager H.H. Roberts. So the Plaintiff's claim that he was terminated for presenting a proposal is patently untrue and should be dismissed.

The second claim is that the Plaintiff suffered harassment from Defendants because of his union activity. This has already been debunked in earlier briefs from Defendants but for the purposes of completeness will be set out here as well. Plaintiff has alleged that Defendants infringed on his right to be a member of a labor organization, that they interfered with his right to present proposals regarding employment conditions to his employer and they coerced and discharged him with regard to his participation and leadership in Local 3668. Defendants would suggest that the Plaintiff has not articulated or shown any way by which Defendants sought to imperil his freedom of association in

20

the firefighters union. Plaintiff has not articulated or shown any way by which Defendants took an adverse employment action against him due to his union membership or holding office in the union. The only statement made against the union by Chief Hunter that Davis has tendered was that, "the union won't help y'all" and that he was told Chief Hunter said to a third party "we done got rid of the troublemakers" after Davis was terminated. See Defendants' Exhibit "4", Deposition of David Davis pp.105-106 lines 8-25 and lines 1-10. Davis even admitted that almost all of Chief Hunter's allegedly derogatory statements about Davis in his capacity as union president were hearsay and that he could not identify any of the persons who allegedly heard these derogatory statements. See Defendants' Exhibit "4", Deposition of David Davis pp.106-107 lines 13-25 and lines 1-13. Davis admitted he was unaware of any derogatory statement made by Chief Waters regarding the union or his participation in it. See Defendants' Exhibit "4", Deposition of David Davis pp.107-108 lines 20-25 and lines 1-4. To date, Davis has tendered no evidence outside of the unsupported allegations of his Complaint to substantiate the argument that the Defendants took action to silence Davis or otherwise prevent him from associating with labor union members. The Plaintiff always had the right to present proposals regarding employment conditions to his employer. The Plaintiff chose not to do so going through the established chain of command and that is what led to the adverse employment action. There has been no evidence that the Plaintiff was discharged or coerced with respect to his involvement in Local 3668 beyond what has already been discussed.

## Conclusion

In summary, the Plaintiff has failed to show that the Defendants violated his right to free speech, free association or rights granted under Code of Ala. 11-43-143(b) and for the reasons outlined in this Reply, Defendants' Response to Plaintiff's Motion for Partial Summary Judgment and Defendants' Memorandum of Law In Support of its Motion for Summary Judgment and supporting papers attached thereto that Plaintiff's Motion for Partial Summary Judgment is due to be denied and that Defendants' Motion for Summary Judgment is to be granted.

This 25th day of May, 2007.

MCKOON, THOMAS & MCKOON

*/s/James R. McKoon*
By:_____
James R. McKoon
State Bar No. MCK020

*/s/Joshua R. McKoon*
By:_____
Joshua R. McKoon
State Bar No. MCK057

925 Broad Street
Post Office Box 3220
Phenix City, Alabama 36868-3220
334.297.2300
facsimile 334.297.2777

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing Motion to Dismiss upon Counsel for the Plaintiff by placing a copy of same in First Class Mail addressed as follows:

Thomas A. Woodley                    J. Michael Cooper, Esq.
Molly A. Elkin                       Fitzpatrick, Cooper & Clark, LLP
Bryan G. Polisuk                     Farley Building, Suite 600
Woodley & McGillivary                1929 Third Avenue North
1125 15th Street, N.W.               Birmingham, Alabama 35203
Suite 400
Washington, D.C. 20005

*/s/James R. McKoon*

_____

Counsel for Defendants