IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS,                      )
                                 )
            Plaintiff,            )
                                 )        CIVIL ACTION NO.  3:06cv544-WHA
vs.                              )
                                 )              (WO)
PHENIX CITY, ALABAMA, et al.,     )
                                 )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Partial Summary Judgment filed by the

Plaintiff, David Davis (Doc. #29), and a Motion for Summary Judgment filed by the Defendants

Phenix City, Alabama; Jeffrey Hardin; H.H. Roberts; and Wallace Hunter (Doc. #31).

David Davis filed a Complaint in this case in June 2006, bringing claims pursuant to 42

U.S.C. § 1983 for violation of his federal constitutional rights to free speech (Count I), and

association (Count II), and a claim for violation of state law (Count III).

The Defendants filed a Motion to Dismiss for failure to state a claim, which was denied

by the court.  The Defendants have now moved for summary judgment as to all of Davis's

claims, and Davis has moved for partial summary judgment on the issue of liability.

### II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

2

In resolving the present cross-Motions for Summary Judgment the court will construe the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. *Barnes v. Southwest Forest Industries*, 814 F.2d 607, 609 (11th Cir.1987).

### III.  FACTS

The admissible evidence submitted by the parties reveals the following facts, viewed in a light most favorable to the non-movant, as required by the governing standard:

The Plaintiff, David Davis ("Davis"), was hired by the fire department of Phenix City, Alabama in April 1998.

Davis became the president of a local association of fire fighters and rescue service employees in 2005.  In September 2005, a meeting was held to discuss issues of interest to association members, which a journalist attended.  An article about the meeting which appeared in the local newspaper in mid-September 2005 quoted Davis.  An investigation was conducted by the fire department.  On September 20, 2005, Fire Chief Wallace Hunter ("Hunter") issued a written directive, attaching a portion of the City's Merit System Rules and Regulations.  Davis was also issued a counseling form.

The portion of the Merit System Rules and Regulations issued with the directive provides that an employee must present any grievance through a prescribed procedure through the chain of command.  The final step of that procedure is as follows:

> The employee may submit the grievance to the City Manager in writing.  The City Manager shall put in writing the decision he/she has rendered concerning the grievance within five working days from the receipt of the written grievance from the employee.  The decision of the City Manager shall be final, and the employee shall have no further rights of administrative appeal.

Merit System Rules and Regulations § 15.023.  The Merit System Rules and Regulations govern employees of Phenix City, including firefighters.

In April 2006, Davis became aware of a proposal before the City Council to extend the probationary period of new firefighters from one year to eighteen months.  On or about April 17, 2006, while off-duty, in what he says was his capacity as association president, Davis called Defendant Mayor Jeffrey Hardin ("Hardin") to discuss the proposal.  Hardin was not available to take the call, but later returned the call and discussed the proposal with Davis.

On or about April 20, 2006, Davis was reprimanded for contacting Hardin outside of the chain of command.   The Written Warning Form issued to Davis referenced ASOP 12, which is a Standard Operating Procedure that governs the Fire Department, and which stated as follows:

> September 20, 2005–Violation of directive from Chief Wallace B. Hunter
> regarding free speech and grievances. Violation of ASOP 12: #1 If a member of
> the department has a problem with the department, another Department, or City
> operations and procedures which are work-related and finds it necessary to go
> above his/her immediate supervisor, he/she must notify the supervisor of the
> intention to do so. #3 If a problem cannot be solved by anyone in the chain of
> command, then the City Manager will arrange a hearing with the City Council.

Defendants' Exhibit 11.  The Standard Operating Procedure, referred to as ASOP 12, applies to all members of the fire department and makes no distinction between firefighters who are on or off duty.  Defendants' Exhibit 3.

The next day, Davis was told that he was being discharged for contacting Hardin to discuss the probation proposal.  Davis appealed his discharge to the City's Personnel Review Board.  On May 18, 2006, Defendant City Manager H.H. Roberts ("Roberts") determined, in accordance with the Board's recommendation, that Davis's discharge should be upheld.

4

Under the charter of Phenix City, Roberts as City Manager is responsible for enforcing laws and ordinances, and has the final decision-making authority regarding termination of an employee from the fire department.  The City Manager functions as the City's chief executive officer, and the Mayor and City Council are the legislative body.

Davis challenges his termination as violating his federal constitutional rights to free speech and association and violating a provision of state law.

## IV. <u>DISCUSSION</u>

As stated above, Davis has brought claims for violations of his federal constitutional rights and for violation of an Alabama statute.  The court will address the cross motions for summary judgment as to the federal claims first, and then turn to the state law claim.[1]

### <u>Federal Claims</u>

Davis has brought claims for violating his rights of free speech and free association.

A. Claim of Retaliation in Violation of the First Amendment Right of Free Speech

There is some dispute as to the scope of Davis's free speech claim.  In Count I, the Complaint alleges a claim of retaliation for exercise of free speech rights.  In his briefs, however, Davis has relies on *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995)("*NTEU*"), and cases applying it, in arguing that the City's Merit System Rules and Regulations and the fire department's standard operating procedures are unconstitutional.  *NTEU* arose in the context of a prior restraint on speech for a broad category of employees.  Cases applying *NTEU* arise within the context of requests to enjoin the application of a prior restraint,

---

[1] The court notes that none of the individual Defendants have asserted the defense of qualified immunity as to the federal claims.

rather than a challenge to the validity of the restraint after action is taken. In fact, the *NTEU* opinion goes to great lengths to distinguish prior restraint cases from cases of retaliation for speech. Therefore, in addition to his claim that his termination was in retaliation for exercise of his right to free speech, Davis has also argued in his briefs that the regulations relied upon by the Defendants to support Davis's termination are unconstitutional on their face and as applied.

In response to the Defendants' contention that the Complaint contains no challenges to the regulations, Davis argues that the Complaint apprised the Defendants of the facial and as-applied theories he has advanced in his briefs because it referred to the City's Merit System Rules and Regulations and the policy of the city. Davis also contends that it is the Defendants who have relied on the regulations and that it was only clear once discovery was conducted how widely the speech restrictions were imposed.

Upon review of the Complaint, the court finds that there is no language in the Complaint in the nature of the "facial" or "as applied" language that Davis uses in his briefs. The requested relief, even the requested injunctive relief, is not drafted in terms of enjoining broad application of any rules or regulations. Davis pleads a claim in Count I in terms of retaliation against him for his speech. There is no allegation that he was restrained or chilled from engaging in speech. There is no separately pled claim of prior restraint or facial invalidity.

Whether viewed as a pleading deficiency, in light of the claim specified in Count I of the Complaint, or some other impediment to the claim due to the fact that Davis engaged in the prohibited speech and was terminated, the court agrees with the Defendants that there is no prior restraint claim either facially or as applied, and this case is not governed by *NTEU*. The Complaint only alleges a retaliation for exercise of free speech in Count I. Of course, to the

extent that Davis's arguments with respect to the scope of the policies at issue are relevant, the court will consider those arguments within the context of the claim asserted in Count I, but will not consider them a basis for a separate claim.

As previously stated, Count I of the Complaint raises a First Amendment retaliation claim, which is governed by the *Pickering* balancing line of cases. Under this line of cases, a claim by a public employee that he was punished for exercising his right to freedom of speech requires the court to conduct a four part inquiry, which includes determining whether the alleged speech implicated a matter of public concern. *Watkins v. Bowden*, 105 F.3d 1344 (11th Cir. 1997)(citation omitted). If so, the court must weigh the employee's First Amendment interest against the interest of the public employer. *Id.* at 1353; *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968) (the court must balance "an employee's interest as a citizen in commenting on matters of public concern . . . against the state's interest as an employer 'in promoting the efficiency of the public services it performs through its employees.'").

If the employee prevails on the balancing test, the fact-finder determines whether the employee's speech was a substantial motivating factor in the employment decision. *Watkins*, 105 F.3d at 1353. Then, the employer must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Id.* The analysis of a claim for denial of the right to free association differs only in that a plaintiff does not have to demonstrate that the claimed freedom of association pertains to matters of public concern. *Cook v. Gwinnett County School Dist.*, 414 F.3d 1313, 1320 (11th Cir. 2005).

In deciding whether an employee's speech addresses a matter of public concern, the court must look to the content, form, and context of the employee's speech. *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir. 1989). The Eleventh Circuit has recently reiterated that speech relating to the safety of the public involves a matter of public concern. *Cook*, 414 F.3d at 1319. In that case, the Eleventh Circuit upheld a determination that an employee who was speaking on behalf of an organization spoke on a matter of public concern even though her speech about safety issues was not made to the general public. *Id.*

Davis argues that his contact with Hardin to express concern over a proposal before the City Counsel to extend the probationary periods for new firefighters was a matter of public concern because the probation proposal would make it difficult to recruit qualified personnel into the fire department, would hurt retention and turnover rates, could result in further restrictions on firefighters working secondary jobs, and could undermine morale.

The Defendants contend that the content of Davis's speech was of personal interest to Davis. They point to deposition testimony wherein Davis was asked whether because the extended probationary period hurt hiring, it would also hurt staffing, and ultimately would affect Davis, and Davis responded that that was a concern of the association membership. Davis Dep. 71: 3-13. The Defendants also point to a portion of Davis' deposition as establishing that Davis opposed the proposal because it would personally affect him and was, therefore, in the nature of a grievance. Davis's testimony, however, when asked whether a proposal affecting the people hired would affect his job, was that it would affect his job, his life, and "the safety of every person that resides in the fire protection district of the City of Phenix City." *Id.* at pages 126: 22-127: 13.

Even if Davis had some interest in the speech at issue as an employee, the mere fact that an employee may have some self-interest in speech is not determinative of the issue. Instead, the court must "consider whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." *Hartwell v. City of Montgomery*, No. 2:06cv518-MHT, 2007 WL 1492471, *7 (M.D. Ala. May 10, 2007 ) (quoting *Moore v. City of Kilgore*, 877 F.2d 364, 371-72 (5th Cir.1989)).

The Fifth Circuit has adopted a Ninth Circuit formulation of the inquiry, stating that speech by public employees is not a matter of public concern when it is clear that it concerns individual personnel disputes and grievances and that "the information would be of no relevance to the public's evaluation of the performance of governmental agencies." *Davis v. West Community Hospital*, 755 F.2d 455, 461 (5th Cir. 1985)(quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)).

In this case, Davis's speech was on a city-wide proposed ordinance which would have extended probationary periods for new hires, and which Davis contended would make it difficult to recruit qualified personnel into the fire department and would hurt retention and cause turnover. This speech appears to be a concern expressed primarily in his role as citizen, rather than as employee. *See*, *e.g.*, *Anderson v. Burke County, Ga.,* 239 F.3d 1216, 1220 (11th Cir. 2001) (stating that "understaffing in the 911 system" is a "kind of material [that] may relate to the political, social or other interest of the community," and be "a matter of public concern.").

In addition to the fact that Davis's speech concerned a proposal which he contends would affect staffing and turnover in the fire department, Davis has submitted newspaper articles and letters to the editor to demonstrate that staffing and shift arrangements of firefighters were issues

of importance in the community. *See* Exhibits to Davis' Declaration. Although these articles do not address the proposal about which Davis spoke, the court will consider them as some evidence that firefighter staffing levels was of interest to the community. *See Peterson v. Atlanta Housing Authority,* 998 F.2d 904, 917 n. 25 (11th Cir.1993) (stating that although not required, "particularized public interest is not irrelevant to this inquiry.").

Although the court considers this issue to be a close one, the court concludes that Davis's speech was on a matter of public concern. The next step in the analysis is to weigh Davis's interest as a citizen in commenting on matters of public concern against the Defendants' interest as an employer in promoting the efficiency of the public services it performs through its employees.

The Defendants take the position that Davis' First Amendment protection is diminished because he was a member of a quasi-military organization, that he acted outside of the chain of command, and that the applicable regulations do not provide for contact with Hardin. The Defendants rely on a Tenth Circuit Court of Appeals decision wherein the court stated that the individual fire department employee's interest was outweighed because he could have used less disruptive internal channels of communication and followed the chain of command in accordance with department and city policy. *Belcher v. City of McAlester*, 324 F.3d 1203 (10th Cir. 2003). The Defendants contend that here, as in *Belcher*, speech could be presented to the City Council if the proper chain of command were followed.

Davis's position is that the City's Merit System Rules and Regulations and the fire department Standard Operating Procedure prohibit firefighters, "at any time, and in any public or non-public forum, from addressing or speaking with the City's elected Mayor and the other four

10

elected members of the City Council about any issues involving the provision of fire and rescue services . . . ." Davis Declaration at ¶ 25. Davis also states in his declaration that this prohibition exists even if the firefighter exhausts the chain of command, and that the City Manager is the only person who can discuss the issues with the City Council. *Id.* Finally, Davis states that the Merit System Rules and Regulations do not authorize individual employees to challenge proposed City ordinances through departmental grievance procedures. Supplemental Declaration of David Davis ¶2.

Davis argues that deposition testimony by Hunter and Roberts support his interpretation of the applicable rules. Roberts testified in his deposition as follows:

> Q: Is a firefighter permitted to–after exhausting the chain of command on an issue affecting the fire department, is that firefighter then allowed to address the city council or city council members on that issue?
> A: Not by the Merit System, I don't think, no, sir.
> Q: So if such firefighter did that after exhausting the chain of command, that firefighter would be violating the Merit System rules and regulations?
> A: I think he would be violating the intent of the Merit System rules and regulations, I do.
> Q: Would he be violating the language of the Merit System rules and regulations?
> A: I feel like they would be, yes.

Roberts Dep. pages 83: 25-84:15.

Hunter similarly testified as follows:

> Q: Okay. So, in other words, under this ASOP 12, firefighters are not permitted to go beyond the city manager and are not permitted to address the city council as a group in a meeting; is that accurate?
> A: City Manager informed the council of anything that's going on. He would be the one that–if he had to express something that was bad, he would be the one that would meet with the city council.

Hunter Dep. page 76: 7-16.

The Defendants contest Davis's interpretation of the City's rules and have submitted a supplemental affidavit by Roberts in which he states that Davis's contention that there are no circumstances under which a firefighter can communicate concerns to the City Council and Mayor is a misinterpretation of his deposition testimony.   Roberts states that he thought the questions in the deposition were speaking of direct contact by the firefighters, and that under the policy, a firefighter could be placed on the agenda after following the chain of command and proper procedures.  Affidavit of H.H. Roberts.  According to the Defendants' argument in brief, a firefighter has two avenues to speak to the Mayor or City Council, either by taking his complaint through the chain of command, or applying to appear at a regularly scheduled called meeting. Doc. 47 at page 3.

Davis asks the court not to consider Roberts' affidavit because Roberts' deposition testimony was not subject to misinterpretation and should not be considered under *Van T. Junkins and Assoc. v. U.S. Industries*, 736 F.2d 656 (11th Cir. 1984).

In *Van T. Junkins*, the Eleventh Circuit held that when a party has given "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Id.* at 657.  Statements that do not meet that standard "create an issue of credibility or go to the weight of the evidence," and can be considered because they are not statements which are "transparent shams." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).

The contradiction between Roberts' deposition and affidavit testimony which has been pointed to by Davis is not unexplained.  Therefore, a question of material fact exists in this case

as to whether a firefighter in Phenix City is ever allowed to address the City Council or Mayor directly in any capacity.[2]

The court must now determine whether that question of fact is sufficient to preclude summary judgment in favor of any party on the issue of *Pickering* balancing in this case, even though *Pickering* balancing is a question of law.  *Jackson v. State of Alabama State Tenure Com'n,*  405 F.3d 1276, 1285 (11th Cir. 2005) ("We acknowledge that sometimes a situation might present a factual dispute which must be resolved by the jury before the trial judge is able to make the law calls required in deciding the *Pickering* balance.").

The court first notes that the Defendants have not argued that the City's interest outweighs Davis's interest under *Pickering* balancing if the Merit System Rules and Standard Operating Procedure completely preclude Davis from speaking to the Mayor and City Council. Instead, the Defendants have argued that there is no disputed fact, that Hunter's affidavit clarifies the confusion as to the scope of the free speech policy, and that Davis had less disruptive channels of communication available to him.  This court has concluded, however, that there is a question of fact as to the true nature of the policy which was in effect.  Therefore, because the court cannot merely assume that the Defendants would concede that the City's interest is outweighed by Davis's interest if the facts are viewed in a light most favorable to Davis, the court will conduct *Pickering* balancing, factoring in the disputed issue of fact.

In performing *Pickering* balancing, a court must consider several factors : (1) whether the speech at issue impeded the government's ability to perform its duties effectively; (2) the

---

[2]  While interpretation of written policies is generally a question of law, the deposition testimony in this case creates a question as to what the true practice is, whether consistent or inconsistent with the language of the written policies.

manner, time and place of the speech; and (3) the context within which the speech was made.

*Fikes v. City of Daphne*, 79 F.3d 1079 (11th Cir. 1996).  As Defendants point out, the Eleventh

Circuit has recognized a heightened government interest in securing discipline, respect, and

efficiency in organizations such as fire departments, which are paramilitary in nature.  *Anderson*

*v. Burke County, Ga.,* 239 F.3d 1216, 1222 (11th Cir. 2001).[3]

As stated above, the Defendants rely on *Belcher*, in which a firefighter was reprimanded

from calling city council members individually in violation of city policy.  The court noted that

there is a heightened government interest in maintaining harmony among firefighters.  *Belcher,*

324 F.3d 1203, 1209.  In balancing this interest against the firefighter's interest, the court was

persuaded that the firefighter could have used less disruptive channels of speech by explaining

his concerns and following the chain of command and, therefore, "diminished the level of

protection his speech might otherwise enjoy."  *Id.*    The court concluded that the firefighter's

narrow interest in expressing his concerns through external channels, in violation of city and

department policy, was outweighed by the city and department's interest in maintaining harmony

among firefighters.  *Id.*

Balancing Phenix City's heightened interest against Davis's interest in speaking on a

matter of public concern, if the facts are resolved in favor of the Defendants so that a less

disruptive avenue of speech before the City Council and Mayor was afforded to Davis by City

policy once he went through the chain of command, the court tends to agree with the Defendants

---

[3] The Eleventh Circuit has also stated that a public employer need not wait for a
disturbance to occur before acting, so this court need not address the apparent factual dispute
over whether Davis's speech actually caused a disruption for purposes of Davis' motion for
partial summary judgment.  *Anderson*, 239 F.3d at 1221.

that Davis's interest would be outweighed in this case. Therefore, summary judgment cannot be granted to Davis as to this aspect of his claim.

The court now turns to the effect on the balancing analysis if the facts are resolved in favor of Davis as a non-movant.

The Fourth Circuit analyzed a prohibition of speech by representatives of a firefighter's association at a city council meeting in *Hickory Fire Fighters Ass'n, Local 2653 of Intern. Ass'n of Fire Fighters v. City of Hickory, N. C.*, 656 F.2d 917, 921 (4th Cir. 1981). The court recognized that a public employer may limit the speech of public employees if it has a legitimate interest in promoting the efficiency of the public services. *Id.* The court concluded, however, that where the firefighters were limited to their grievance procedure and were not allowed to speak in front of the city council as citizens, the "balancing of interests required by *Pickering* thus results in a strong tilt toward allowing the speech in question, even though the speakers are public employees." *Id.*

A district court outside of this circuit also addressed a claim where a fire department employee was punished for attempting to speak on a matter of public concern at a city council meeting. *Pesek v. City of Brunswick*, 794 F. Supp. 768 (N.D. Ohio 1992). The court recognized that there was some justification for a requirement that public employees discuss matters of employment with the city council only through the city manager and to conduct city business through the chain of command. *Id.* at 787. The court concluded, however, that when public employees speak on matters of public concerns as citizens at an open city council meeting the speech is less likely to impair discipline by superiors, interfere with the employee's job duties, or impact close working relationships. *Id.* The court concluded the employee's interest in speaking

15

to the city council on a matter of public concern outweighed the city's interest in promoting efficiency. *Id.*

Also significant for purposes of this analysis is that even in *Belcher* the city policy allowed for contact with the city council when the firefighter went through the chain of command and received prior authorization. *Belcher,* 324 F.3d at 1205. In other words, even in *Belcher*, there was an avenue for presentation of speech to the City Council with prior authorization so that the policy at issue there was less restrictive than the policy in this case.

In the instant case, it is not an easy fit to analyze as a factor in *Pickering* balancing what amounts to a defensive challenge by Davis to the policies which governed his actions. This court is, however, charged with evaluating the manner, time, and place, as well as the context of speech. *Berdin v. Duggan,* 701 F.2d 909, 912 (11th Cir. 1983) ("Where private expression is at issue, the Supreme Court has indicated that the time, place, and manner of the speech are to be weighed in the *Pickering* calculus.").

Case law from other circuits, discussed above, reveals that speech may be required to be channeled through a chain of command to prevent impeding of the government's performance of its duties, but in weighing the government's interest, the court is to consider whether the city's policy precluded expression to the governing body altogether. *See*, *e.g*., *Hickory Fire Fighters Ass'n*, 656 F.2d at 921. The time, place, and manner of the employee's speech can reveal that the speech is entitled to less weight if city policy allowed for its expression to the governing body through less disruptive channels. *Belcher,* 324 F.3d at 1209. If the city policy does not make such an allowance, then it stands to reason that the balance should be struck in the employee's favor.

Viewing the disputed facts in this case in a light most favorable to Davis, the court concludes that the fire department's heightened interest in maintaining efficiency in its operations is outweighed if Davis was entirely precluded from expressing his concern to the City Council. The court acknowledges that the Defendants have argued that a distinction is to be drawn between contacting Hardin directly and, as in the *Hickory Fire Fighters* case, seeking to be placed on the City Council's agenda. Where, as here, however, the Mayor was a member of the Council, and under a view of the facts most favorable to Davis that there was no mechanism whereby Davis could have lawfully sought to be placed on the agenda, the court does not find that distinction to tip the balance in the City's favor.

Accordingly, the issue of fact created by the conflict between Roberts' and Hunter's deposition answers and Roberts' affidavit is a material issue of fact which precludes summary judgment in favor of any party on the issue of *Pickering* balancing.

The Defendants have also argued that they are entitled to summary judgment on the basis of prongs three and four of First Amendment analysis, even if Davis prevails on the first two prongs, because the decision to terminate Davis was based on the fact that Davis was insubordinate.[4] Once a court determines that, "under *Pickering*, [the employee's] interests in his speech outweighed those of the [Defendants], then the causation issues must be resolved by the jury as set forth in *Mt. Healthy*." *Kurtz v. Vickrey,* 855 F.2d 723, 734 (11th Cir. 1988). Accordingly, given the question of fact which exists in this case, the court declines to make a

---

[4] As an aside, this appears to the court to frame the inquiry relevant to the fourth prong incorrectly as the alleged insubordination is the speech itself. *See*, *e.g.*, *Pesek v. City of Brunswick*, 794 F. Supp. 768, 787 (N.D. Ohio 1992). This is an issue that the parties may want to brief more fully before trial, either in the context of a motion in limine if appropriate, or in requested jury charges.

determination as a matter of law as to prongs three and four at this time.   Summary judgment is due to be DENIED as to all parties on Count I of the Complaint.

B. Claim for Violation of Right to Free Association

There appears to be some confusion as to the scope of Davis's asserted violation of his right of free association.  The Defendants have moved for summary judgment on a claim based on a theory that Davis's association rights were infringed.  In his briefs, Davis argues that his right to free association was violated because he was fired for associating with Hardin.  He also says that because he was contacting Hardin in his capacity as the president of the association, his termination infringed on his right to represent the members of the association.  Finally, Davis argues that he submitted proposals to the City and was treated in a discriminatory manner when the Defendants responded to the proposals.

There are two types of free association claims:  "intimate" and "expressive" association. *McCabe v. Sharrett,* 12 F.3d 1558, 1562 -1563 (11th Cir. 1994).   To demonstrate that his termination was a violation of his right to free association, the plaintiff must demonstrate that he had a constitutional right and that he suffered an adverse employment action for exercising the right. *Id.* at 1562.  The court must then use the *Pickering* balancing test to determine whether the adverse employment action was permissible. *Chesser v. Sparks*,  248 F.3d 1117, 1124 (11th Cir. 2001).  The right of expressive association includes the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion.  *McCabe*, 12 F.3d at 1563.  The right of intimate association encompasses personal relationships such as marriage.  *Id.*

The Defendants argue that Davis cannot demonstrate that he has a constitutional right to associate with the mayor, that he was terminated because of his association membership, or that the *Pickering* balancing test weighs in his favor.

Davis does not appear to be arguing that he had a personal associational interest with Hardin. If he were, he would not be able to satisfy the legal standard that such associational interests govern close personal relationships. Instead, he appears to be arguing that he had a right to associate with the Mayor on behalf of the association he represented in order to express the association's interest.

The Defendants do not dispute that the First Amendment protects the rights of people to associate together in groups to further lawful interests. *Professional Ass'n of College Educators v. El Paso County*, 730 F.2d 258, 262 (5th Cir. 1984) ("This right of association encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf."), *cert. denied*, 469 U.S. 881 (1984). The Defendants argue, however, that there has been no showing that Davis was terminated because he was involved with the firefighters' association. The Defendants state that Davis was terminated for violating the Merit System Rules and Regulations and that the violation occurred regardless of whether he was a member of the association.

Davis has pointed to a statement by Hunter to him that the "union" would be the end of his career. Davis Decl. at ¶ 9. Davis also states that Assistant Chief Johansen told Davis that the union was ruining his career and that Roberts was tired of the "union's crap." *Id.* at ¶ 21.[5]

---

[5] In their Memorandum Brief in Support of the Motion for Summary Judgment, the Defendants state that almost all of Hunter's alleged statements about Davis in his capacity as association president are hearsay, but the Defendants do not identify any particular statements as

Davis has also presented the court with newspaper articles, the admissibility of which has not been objected to, which indicate that there was animosity between the firefighters' association and management of the department.  Therefore, the court concludes there is a fact issue which precludes summary judgment in favor of any party on this point.

The Defendants again assert the argument that Davis was terminated for going outside of the chain of command, so that *Pickering* balancing weighs in the City's favor.  Because of the question of fact identified above, and because the Defendants have relied on the same policies as justification for Davis's termination, the court concludes that summary judgment must also be DENIED as to all parties on this aspect of the right of association claim.[6]

With respect to the last of the alleged free association violations pointed to by Davis, namely, that he was discriminatorily treated when he provided proposals, the court concludes that that theory is not a claim in this case.  The support for Davis' argument reveals that the proposals were made when Davis was the vice president of the Association and were made to then-chief Jerry Prater.   The claim as pled in Count II of the Complaint does not rely on these facts, but instead pleads actions taken after Hunter became Chief.  Therefore, keeping in mind that allegations against the City need only meet notice pleading requirements pursuant to Rule 8, the court concludes that the claim as asserted in Count II does not include allegations which pre-date actions taken when Hunter was Chief.

_____

being inadmissible.  The Defendants have provided an Affidavit from Kenneth Johansen which states that he did not make the statements attributed to him by Davis, but the Defendants do not challenge the admissibility of the statements.  Therefore, Johansen's denial will have to be weighed by the trier of fact.

[6] Any issue of possible duplication of remedies has not been raised at this point in the proceedings, but may be something that the parties wish to address before trial.

<u>State Law Claim</u>

Davis' state law claim is for violation of *Alabama Code* § 11-43-143(b). That provision of Alabama law states as follows:

> All fire fighters serving the state or any municipality in the state either as paid firemen or as volunteer fire fighters who comply with the provisions of this section are assured the right and freedom of association, self-organization and the right to join or to continue as members of any employee or labor organization which complies with this section, and shall have the right to present proposals relative to salaries and other conditions of employment by representatives of their own choosing. No such person shall be discharged or discriminated against because of his exercise of such right, nor shall any person or group of persons, directly or indirectly, by intimidation or coercion compel or attempt to compel any fire fighter or fireman to join or refrain from joining a labor organization.

*Ala. Code* § 11-43-143.

"One claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute." *American Automobile Insurance Co. v. McDonald*, 812 So.2d 309, 311 (Ala. 2001). Davis has not made a showing that there is a private right of action for violation of this statutory provision, even assuming that the statute has been violated. Therefore, summary judgment is due to be GRANTED to the Defendants as to this claim.

## V. <u>CONCLUSION</u>

For the reasons discussed above, it is hereby ORDERED as follows:

1. The Defendants' Motion for Summary Judgment (Doc. #31) is GRANTED as to Davis's state law claim in Count III of the Complaint, and judgment is entered in favor of Phenix City, Alabama; Jeffrey Hardin; H.H. Roberts; and Wallace Hunter and against David Davis on that claim.

2.  The Defendants' Motion for Summary Judgment is DENIED as to Davis's free speech claim in Count I of the Complaint, and as to his free association claim in Count II only to the extent that it is based on his speech to Defendant Hardin, and GRANTED as to any claim in Count II based on speech preceding that.

3.  The Plaintiff's Motion for Partial Summary Judgment (Doc. 29) is DENIED.

The case will proceed on the Plaintiff's claim in Count I for retaliation in violation of his First Amendment free speech rights, and on the Plaintiff's claim in Count II for violation of his First Amendment association rights against Phenix City, Alabama and against Jeffrey Hardin, H.H. Roberts, and Wallace Hunter in their individual and official capacities.


Done this 27th day of June, 2007.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE