IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | CASE NO. 3:06-cv-00544-WHA |
| | ) | |
| PHENIX CITY, ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## *DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT*

COME NOW, Defendants, Phenix City, Alabama, H.H. Roberts and Wallace Hunter, pursuant to Rule 56 of the Federal Rules of Civil Procedure and move the Court to grant Summary Judgment for these Defendants and against the Plaintiff, on the grounds that there is no genuine issue as to any material fact and these Defendants are entitled to a judgment in their favor as a matter of law.

### Summary Judgment Standard

Under rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

PDF created with pdfFactory trial version www.pdffactory.com

to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the

PDF created with pdfFactory trial version www.pdffactory.com

nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The court will construe the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. Barnes v. Southwest Forest Industries, 814 F.2d 607, 609 (11th Cir. 1987).

## Facts

Defendants hereby incorporate by reference the "Statement of Undisputed Facts," and the exhibits offered, set forth in pages 2-5 of the Memorandum Brief in Support of Motion for Summary Judgment of Defendants, (E.C.F. Document #32) submitted April 24, 2007, and supplement with the following:

Based in part on principles of law set forth *infra*, including a Fire Department's right to promote the efficiency of the services it performs, neither defendant Hunter nor defendant Roberts believed at the time Davis

3

PDF created with pdfFactory trial version www.pdffactory.com

was terminated  that such termination was in violation of Davis's First Amendment rights.  See Defendant's Exhibit 'A', Second Deposition of H.H. Roberts, p. 45.  See Defendant's Exhibit 'B', Second Deposition of Wallace Hunter, p. 51-52.

## Arguments

### I.    Qualified Immunity

#### A.    Rules

Under the qualified immunity rule, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Hartwell v. The City of Montgomery, 487 F. Supp 2d 1313, M.D. Alabama (2007)

The court applies a two-step analysis in determining whether qualified immunity applies to an official sued in his individual capacity.

First, the defendant official must demonstrate that during the alleged conduct, he acted within the scope of discretionary authority.  Id.  Here, the inquiry is whether the defendant was performing a legitimate job-related function through means that were within his power to utilize, temporarily putting aside the question whether it was unconstitutional.  Id.

PDF created with pdfFactory trial version www.pdffactory.com

If the defendant can demonstrate that he was acting within the scope of discretionary authority, he will be shielded by qualified immunity unless the plaintiff, in the second step of the analysis, can carry his burden to demonstrate that the conduct in question violated clearly established law.  Id. For a constitutional right to be clearly established, the plaintiff must show that in light of the preexisting law, the unlawfulness of the defendant's actions was apparent.  Hope v. Pelzer, 536 U.S. 730 Supreme Court of the United States (2002).

The Eleventh Circuit has observed, under the Hansen line of decisions, that in First Amendment claims for retaliation, the Plaintiff's burden to show that the defendant violated "clearly established law" in cases dealing with retaliation by a government employer is a heavy one:

> "Because *Pickering* requires a balancing of competing interests on a case-by-case basis, our decisions tilt strongly in favor of immunity by recognizing that only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal rights.  When no bright-line standard puts the reasonable public employer on on notice of a constitutional violation, the employer is entitled to immunity except in the *extraordinary* case where *Pickering* balancing would lead to the *inevitable* conclusion that the act taken against the employee was unlawful."  Hartwell, quoting Hansen v. Soldenwagner, 19 F.3d 573, 576, 11th Cir. (1994) (emphasis from Hansen).

PDF created with pdfFactory trial version www.pdffactory.com

While the <u>Hope</u> case seems to have lightened a plaintiff's burden to show that law is "clearly established" in an 8th Amendment context, courts continue to rely on <u>Hansen</u> in First Amendment retaliation cases such as this one. <u>Hartwell v. The City of Montgomery</u>, 487 F. Supp 2d 1313, Footnote #8, M.D. Alabama (2007).

"When the law contemplates some kind of balancing test to determine the ultimate question of lawfulness or unlawfulness of an act, qualified immunity almost always applies to shield the public servant defendant: the lack of bright lines associated with balancing tests prevents the preexisting law, given the circumstances of a specific case, from having been clearly established when the public servant took the step that resulted in his later being a defendant in a lawsuit." <u>Foy v. Holston</u>, 94 F.3d 1528, 11th Cir. (1996).

**B.     Defendants Wallace Hunter and H.H. Roberts Acted Within the Scope of Their Discretionary Authority**

**i.     Wallace Hunter**

On September 20, 2005, defendant Fire Chief Wallace Hunter (hereinafter "Hunter") issued a written directive and counseling form advising and requiring the plaintiff to acknowledge in writing that the plaintiff was bound to follow City and Departmental procedures regarding

PDF created with pdfFactory trial version www.pdffactory.com

work-related grievances.  On September 20, 2005, Hunter documented

plaintiff Davis' violation of this written directive, which, in conjunction with

prior documented violations, ultimately led to a recommendation that Davis

be terminated.

The Job Description of the Phenix City Fire Chief provides under the

heading "DUTIES AND RESPONSIBILITIES" that the Fire Chief

"evaluates department operations with respect to . . . personnel," and

"reviews, revises and executes the personnel standards of the department;

issues orders necessary for administering personnel procedures."  See

Defendants' Exhibit 'C'

Section 14.03 of the City of Phenix City Merit System provides that,

"[r]emovals, suspensions and demotions for cause are effected by

department heads . . ."  See Exhibit '2' to Memorandum Brief in Support of

Motion for Summary Judgment of Defendants (E.C.F. Document # 32).

Thus, Hunter's issuance to plaintiff Davis of the directive and

counseling form, as well as Hunter's writing up of Davis and Hunter's

recommendation to the Personnel Board to terminate plaintiff Davis were all

legitimate, job related functions and well within the discretionary authority

of Chief Hunter.

### ii.    H. H. Roberts

7

On May 18, 2006, defendant City Manager H.H. Roberts (hereinafter "Roberts") upheld the Personnel Board's termination of plaintiff Davis.

Article IV, Section 4.02(2)of the Phenix City Charter provides that the City Manager is vested with the authority to "[a]ppoint and, when necessary for the good of the service, remove all officers and employees of the city except as otherwise provided by this act and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office. . ." <u>See Exhibit '1' to Memorandum Brief in Support of Motion for Summary Judgment of Defendants</u> (E.C.F. Document #32).

Article IX, Section 9.01(a) provides that "any officer or employee whose successor may be appointed by the city manager or by the head of any . . . department . . . may be removed by the manager or other appointing officer at any time. . ." <u>See Exhibit '1' to Memorandum Brief in Support of Motion for Summary Judgment of Defendants</u> (E.C.F. Document #32).

Section 1.042(B) of the Phenix City Merit System provides that "[t]he City Manager shall . . . Appoint and remove all subordinate officers and employees, subject to the provisions of the Rules and Regulations. . ." <u>See Exhibit '2' to Memorandum Brief in Support of Motion for Summary Judgment of Defendants.</u> (E.C.F. Document #32).

PDF created with pdfFactory trial version www.pdffactory.com

Section 1.042(C) further states that the City Manager shall "[m]ake the final decisions regarding acceptance, rejection or modification of advisory opinions received from the Personnel Board." ." <u>See Exhibit '2' to Memorandum Brief in Support of Motion for Summary Judgment of Defendants.</u>  (E.C.F. Document #32).   Therefore, Roberts' decision to uphold the termination of Davis was a legitimate, job related function and well within the discretionary authority of City Manager Roberts.

**C.    Plaintiff Cannot Meet His Burden to Show that Hunter and Roberts Violated Clearly Established Law**

Because Hunter and Roberts were each acting within their discretionary authority, Hunter and Roberts are entitled to the protection of qualified immunity unless the plaintiff can meet his burden to show that Hunter and Roberts violated "clearly established law."  Plaintiff cannot meet this burden because the law here is by no means "clearly established" given the depth of judicial analysis required to determine whether the plaintiff's rights were violated.  Pursuant to the decision announced in <u>Pickering v. Board of Education</u>, 391 U.S. 563 (Supreme Court of the United States, 1968), courts must undergo an analysis of several steps before determining whether the termination of a public employee based upon such employee's speech amounts to a violation of such employee's constitutional rights. This

9

PDF created with pdfFactory trial version www.pdffactory.com

analysis includes, but is not limited to, a "content, form, and context"

analysis to determine whether speech is on a matter of public concern, and

also a "balancing test" which weighs the interests of the parties.  Watkins v.

Bowden, 105 F.3d 1344, 11th Cir. (1997).

>    **i.    Public concern; "content, form and context"**

In the first step of Pickering's four-part inquiry the courts engage in a

case-specific analysis of the content, form, and context of the employer's

speech to determine whether the speech is on a matter of public concern.

In Hartwell v. City of Montgomery, 487 F.Supp 2d 1313, M.D. Ala.

(2007), the plaintiff firefighter made claims that he was unlawfully demoted

in retaliation for his First Amendment speech activity.  The plaintiff had

filed an internal grievance against another firefighter who had a tattoo

depicting a confederate flag that the plaintiff believed violated Department

policy.  The result of the internal proceedings was that no action was taken

against the other firefighter, who was promoted some time later to the rank

of District Fire Chief.  The newly promoted District Fire Chief, presumably

in retaliation for the plaintiff having filed the complaint about the tattoo,

began unfairly administering discipline to plaintiff.  When the plaintiff then

issued a memo to the Assistant Chief containing complaints of being

mistreated by the District Chief, the District Chief wrote up the plaintiff for

PDF created with pdfFactory trial version www.pdffactory.com

not following the chain of command and also for making what the District Chief determined to be "false statements" about the District Chief related to his treatment of the plaintiff. Plaintiff was demoted as a result, and filed a §1983 suit for retaliation based on protected First Amendment speech. Id.

In its analysis, the Hartwell court considered the "content, form, and context" of the speech to determine whether it was speech by "a citizen on a matter of public concern." Id. This question consisted of an inquiry "whether the main thrust of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was." Id. After a lengthy analysis, and after noting that the "issue is a close one" the court concluded that the plaintiff had been speaking as a citizen on a matter of public concern. Id.

The court then addressed the issue of whether the District Chief was shielded by qualified immunity. After holding that the District Chief had acted within his discretionary authority, the Hartwell court addressed the issue whether the plaintiff met the burden of showing that the District Chief's conduct violated clearly established law, noting that this would require a showing, pursuant to Hope v. Pelzer that "in the light of pre-existing law the unlawfulness must be apparent." The court held that the

11

PDF created with pdfFactory trial version www.pdffactory.com

plaintiff failed to meet this burden, whether applying the <u>Hope</u> or <u>Hansen</u>

standards, and that qualified immunity applied, noting:

> "As stated, the question of whether Hartwell spoke as a citizen
> on a matter of public concern was a close one for this court.
> Had the court gone the other way, [the District Chief's]
> retaliation would not have implicated [the plaintiff's]
> constitutional right to free speech.  Because the court finds it
> difficult to define the contours of the constitutional right in
> question, it cannot expect that a reasonable district fire chief at
> the fire department would know that [the plaintiff's] complaint
> was protected by the first amendment. . . . This court weighed
> several factors, as the law instructs, applied them to the facts of
> this case, and ultimately concluded that Hartwell was speaking
> as a citizen on a matter of public concern.  But a reasonable
> government official might weigh the factors differently and
> reach the opposite conclusion."  <u>Hartwell v. City of</u>
> <u>Montgomery</u>, 487 F.Supp 2d 1313, 1331 M.D. Ala. (2007)

This honorable Court has stated, in its Memorandum Opinion and

Order following the plaintiff's and defendants' prior dispositive motions,

that "[a]lthough the court considers this issue to be a close one, the court

concludes that Davis's speech was on a matter of public concern."  <u>See</u>

<u>Memorandum Opinion and Order, P. 10.</u> (E.C.F. Document #49)  As in the

<u>Hartwell</u> case, it stands to reason that if this Court considered the question to

be close and could only arrive at a decision after a learned judicial analysis,

it cannot be true that the law was "clearly established" such that Hunter and

Roberts would be aware that terminating plaintiff Davis in this situation

would deny him his First Amendment rights.  Hunter and Roberts

PDF created with pdfFactory trial version www.pdffactory.com

"weigh[ed] the factors differently" and determined that plaintiff Davis'
speech about internal Fire Department policies and procedures was in the
nature of a grievance and was not speech made in Davis' capacity as a
citizen on a matter of public concern.  For this reason, plaintiff cannot meet
his burden, and qualified immunity applies to shield Hunter and Roberts
from liability.

### ii.    Balancing test

In cases in which a plaintiff sues a government employer for
retaliatory termination based on protected speech, the courts must engage in
a balancing test to determine whether the plaintiff's interest in making the
implicated speech outweighs the interest of the government employer in
"promoting the efficiency of the public services it performs through its
employees."  Pickering.  Because a case-specific, learned judicial balancing
test is required to determine whether the plaintiff's rights were violated, the
law in this area is not "clearly established," and therefore the defendants are
entitled to the defense of qualified immunity. See Foy v. Holston, 94 F.3d
1528, FN #8, 11th Cir. (1996).

### iii.    Belcher precedent

Davis cannot carry his burden of showing that Defendants violated
"clearly established law" because of case law, to wit Belcher v. City of

PDF created with pdfFactory trial version www.pdffactory.com

McAlester, Oklahoma, 324 F.3d 1203, 10th Cir. (2003), which supports the
defendants' decision to terminate the plaintiff.   Belcher held that even if a
plaintiff's speech is on a matter of public concern, the City and the Fire
Department are nevertheless justified in disciplining or dismissing the
plaintiff if the plaintiff fails to use "less disruptive channels" of
communication which are available to air his grievances.

In Belcher, a fire fighter was fired after he called three city council
members, in violation of City and Department policy, to express concerns
regarding the purchase of a fire truck by his department.  He was
reprimanded and filed a suit claiming that this reprimand violated his First
Amendment rights.  Defendants were granted summary judgment which the
10th Circuit Court of Appeals upheld.

The Belcher court explains:

> In performing [Pickering] balancing, [an employee's] statement
> will not be considered in a vacuum; the manner, time and place
> of the employee's expression are relevant, as is the context in
> which the dispute arose." Rankin v. McPherson, 483 U.S. 378,
> 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).  In considering the
> time, place and manner of the speech, we take into account
> whether the employee used "less disruptive internal channels"
> of communication.  In the instant case, Belcher could have used
> "less disruptive internal channels," by explaining his concerns
> to his superior officers at the Fire Department and following the
> chain of command.  Instead, Belcher chose to go outside the
> Department, speaking directly to Council members in violation
> of Department and City policy, diminishing the level of
> protection his speech might otherwise enjoy.  Belcher's interest

PDF created with pdfFactory trial version www.pdffactory.com

in speaking privately to the Council members must be weighed against the contrary interests of the City and the Department in maintaining harmony among Department employees…Because such close relationships are necessary in a fire department, there is a "heightened governmental interest in maintaining harmony" among fire department employees…Firefighters place their lives in each others' hands, and it is essential that each firefighter have trust in his colleagues…In sum, Belcher's narrow interest in expressing his concerns through external channels, in violation of City and Department policy, when weighed against the heightened interest of the City and the Department in maintaining harmony among firefighters and their officers, tips the scales on the City's side.  Thus, Belcher's speech is not protected, and the district court correctly granted summary judgment to defendants.  Belcher 324 F.3d 1203 at 1208-09, 107 S.Ct. 2891.

In the present case, plaintiff Davis chose to air his grievances by disobeying the Fire Department's SOP and the City Merit System Rules and Regulations and directly addressing members of City Council and the Mayor.  Davis did this in direct violation of the orders he received and acknowledged by signing the counseling form September 21, 2005.  He also did this in direct violation of the Fire Department ASOP #12 and City Merit System policies.  Hunter and Roberts reasonably feel that insubordination and violations of the Merit System and SOP are disruptive and threaten the Fire Department's ability to efficiently render its services.  Furthermore, less disruptive channels were available to the plaintiff.  Davis could have proceeded properly up the chain of command, which according to ASOP 12

PDF created with pdfFactory trial version www.pdffactory.com

would ultimately have resulted in Roberts arranging a hearing with City Council.

Although the decision of a Tenth Circuit Court of Appeals is not binding precedent on the Middle District of Alabama, it is nonetheless persuasive precedent, and at the very least provides a sound basis for defendants to believe that their actions were not in violation of "clearly estabished law."  Thus, for the plaintiff to prevail on the issue of qualified immunity, he must show that it is "clearly established" that the Eleventh Circuit would disagree with the Tenth circuit if confronted with the question presented in Belcher.  Because the Eleventh Circuit has not yet had an opportunity to establish a rule on the situation presented in Belcher and in the present case, plaintiff Davis cannot meet this burden.

## II.    Prior Restraint

**Neither the City's Merit System Rules and Regulations Nor the Fire Department Standard Operating Procedures Constitute a Prior Restraint on Free Speech.**

The Defendants do not take the position that they have authority to gag employees before they speak on issues covered by the Merit System Rules and Regulations and the Fire Department Standard Operating Procedures.  The Rules and SOPs provide guidance to employees on how to

PDF created with pdfFactory trial version www.pdffactory.com

air grievances and complaints without risking after the fact penalties ranging from a reprimand all the way to termination. The Rules and SOPs do not provide for gagging or restraint while speech is in progress but rather provide penalties for violations after the offending speech is made. As stated by the U.S. Court of Appeals for the Fifth Circuit in <u>Moore v. Kilgore</u>, 877 F.2d 364, 392-93:

> True, the City did ask its employees to seek permission *before* they spoke. But offending employees are penalized after-the-fact, by the loss of their jobs. They are not gagged or subjected to an injunction. Demotion and suspension was the fate suffered by Moore, and the event that precipitated this suit. Kilgore did not stop him from getting his message out.

> The difference is crucial. The great evil of a prior restraint is that it prevents the public from receiving the information possessed by the gagged speaker, and so from judging the information's worth and the speaker's case. If a sanction is instead applied after-the-fact, angry voters may vindicate the speaker's rights, by removing from office those who imposed the sanction. Prior restraints are constitutionally suspect because they deprive speakers of recourse to the people, who are inevitably the ultimate, and the most important, protector of justice in American politics.

To the extent the Plaintiff is claiming that the overbreadth doctrine applies to this case, he has not alleged in his Complaints, in his extensive deposition testimony or in the exhaustive briefs placed before this Court by his learned counsel that he is asserting the rights of third parties who had their speech chilled by the Rules or SOPs at issue. There is no reason that

PDF created with pdfFactory trial version www.pdffactory.com

has been placed before this Court why the Rules and/or the SOPs at issue would have any different impact on the free speech rights of third parties as they do upon the Plaintiff.  Since that is the case, the Court may look to <u>City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984), in which the Supreme Court of the United States opined that:

> "[T]his is not . . . an appropriate case to entertain a facial challenge based on overbreadth. For we have found nothing in the record to indicate that the ordinance will have any different impact on any third parties' interests in free speech than it has on [the Plaintiff]."

Therefore since the Rules and SOPs at issue do not constitute a prior restraint on speech and since the overbreadth doctrine is inapplicable to this case, Defendants should be granted summary judgment as to the Plaintiff's prior restraint claims.

### III.    Plaintiff's Remaining Claims Should Be Dismissed Due to His Failure to Utilize Less Disruptive Internal Channels.

Defendants reiterate their position taken in the First Motion for Summary Judgment that the <u>Belcher</u> decision makes it clear that public employees have a duty to utilize less disruptive internal channels available to them in exercising their right to speak freely on a matter of public concern.

PDF created with pdfFactory trial version www.pdffactory.com

In <u>Janusaitis v. Middlebury Volunteer Fire Department</u>, 607 F.2d 17, 26 (2d

Cir. 1979), the U.S. Court of Appeals for the Second Circuit was presented

with a case where a firefighter was terminated for making public his

criticisms of the practices of his superior officers in the Middlebury

Volunteer Fire Department.  In ruling that the termination did involve

speech on a matter of public concern, the Court went forward with an

analysis under Pickering, concluding in part that:

> Treating the case on appeal as a mixture of public and private speech,
> we assume that when the relationship of superior and subordinate "is
> of such a personal and intimate nature that certain forms of public
> criticism of the superior by the subordinate would seriously
> undermine the effectiveness of the working relationship between
> them" Pickering, supra, 391 U.S. at 570 n.3, 88 S. Ct. at 1735 n.3, the
> balance tips against the employee.

> Contrary to the assertions of the Plaintiff, the Plaintiff was not

terminated from the Phenix City Fire Department solely for contacting the

Mayor concerning the issue of probationary time.  As the testimony of

Wallace Hunter, Chief of the Phenix City Fire Department, clearly indicated

> "That one infraction didn't get Sergeant Davis terminated.  It was the
> multiple infractions and the Group II Offenses in Section 14 of the
> Merit System that didn't allow for him to go over those two different
> things that led to his termination.  It wasn't the one thing; it was the
> second.
> That's why I had the meeting with Sergeant Davis in September, to
> prevent this.  He knew he already had one Group II Offense.  And
> knowing the Merit System, that was what we was trying to do, make
> sure that we prevented anybody from going over their infractions that

PDF created with pdfFactory trial version www.pdffactory.com

they're allowed.  In the group, we have three offenses, three groups of offenses in the Merit System.  Part of our job is when we see a person, in trying to keep an employee from getting to that point, we have counseling sessions or whatever it takes to prevent that, because you don't want to terminate anybody.  And that's what happened when this particular infraction happened.  It pushed it to the second Group II, which is not allowed.  That led to his termination. (Deposition of Wallace Hunter page 79 line 12 through page 80 line 7).

In addition, when asked directly if the telephone conversation with Mayor Hardin was the cause of the Plaintiff's termination, Chief Hunter responded as follows:

No.  He wasn't terminated for that.  He was written up for that.  He was written up for that action.  What got him terminated was the amount of Group II Offenses that he had in his file.  Which if you go down to August – if you'll go down to the third paragraph right there on the same page, that one thing got – warranted a write-up.  That one thing didn't get him terminated.  (Deposition of Wallace Hunter page 81 lines 17 through 24).

Indeed, Plaintiff, Davis, had a history of violating policy and procedures as summarized on the Written Warning Form dated April 20, 2006 and signed on April 21, 2006. See Exhibit '11' to Memorandum Brief in Support of Motion for Summary Judgment of Defendants (E.C.F. Document # 32).  In August 2005, Davis, was given a warning for a Group II Offense, wherein he had made threatening gestures towards Assistant Chief Kristin Kennedy.  In September 2005, he had met with a newspaper reporter to air grievances without first trying to resolve these grievances

PDF created with pdfFactory trial version www.pdffactory.com

within the Chain of command at the Fire Department.  While this could have

resulted in severe disciplinary action, Chief Hunter acted prudently and with

restraint in trying to counsel Davis and remind him of his obligations to use

the Chain of command as per the Merit System and ASOP 12 of the Fire

Department.  The statements made by Davis disrupted and impaired morale

in the Fire Department.  This is made clear by the testimony of Wallace

Hunter.

> Q.    What comments made by Mr. Davis and the other firefighters
>        that were quoted in this newspaper article in your judgment
>        impaired discipline and harmony in the fire department?
>
> A.    Basically the comments about people being afraid to talk.  What
>        was you afraid to talk when you're not talking to anybody?
>        Why would you – that's misleading people.  Why would you be
>        afraid to talk when you can use the chain of command and
>        come up and talk to me at any time, if you was willing to give
>        me a chance.
>
> Q.    But my question really is focused on – and as you just
>        indicated, a number of the firefighters, including Mr. Davis,
>        expressed fears about potential retaliation and discipline.  So on
>        that isolated issue, how would that comment by Mr. Davis in
>        the newspaper article impair discipline and harmony in the fire
>        department?
>
> A.    It was misleading statements.  Who had been disciplined for
>        anything during my tenure – short tenure so far?  That's
>        misleading.
>
> Q.    But he expressed fear about potential discipline and, in fact, he
>        was fired later on as we know, but—

PDF created with pdfFactory trial version www.pdffactory.com

A.    Well, no.  That – this right here was to prevent anything.  This

was to prevent us from even being here today.

. . .

A.    ...that's a disruption itself when you haven't given the people
that you're working for any type of opportunity or chance to
discuss these things.

Davis caused further disruption, according to Hunter, when he tried to
force others in the Fire Department to complain.

A.    ... Brandon Wilkerson, ... said that he was being bullied by
David Davis to make phone calls and complain

. . .

A.    as fire chief, I wasn't given a chance to go over any of these
issues or to talk about them.

(See Exhibit 'D', First Deposition of Wallace Hunter page 37 line 19

through page 41 line 1)

Next, after being counseled and reminded of his obligations to use the

Chain of command, Davis violated both the grievance procedure and ASOP

12 by going directly around his superiors to the Mayor and the Members of

City Council concerning the issue of extending probationary periods for new

hires, again, jeopardizing morale and under minding the authority of his

superiors.

PDF created with pdfFactory trial version www.pdffactory.com

This pattern of speaking in a disrespectful and undermining way about his superiors at the Fire Department was underscored by Deputy Fire Chief Mickeal D. Hanson, who explained:

> David [Davis] has always been a complainer.  He complains about most everything, especially if something new happens.  He's always been - - he always refers to us [the officers in the Fire Department] as white shirts versus the blue shirts and stuff like that.  And he just - - he has - - to me, he has an overall negative opinion for, I guess, authority or for the upper ranks of the department.  <u>See Exhibit 'E,' Deposition of Mickeal Hanson, page 7.</u>

The Phenix City Fire Department is a relatively small department having approximately 50 members.  It is responsible for the fire protection of approximately 30,000 citizens.  Morale and harmony among co-workers is extremely important in such a para-military organization.  The continued and repetitive actions of Davis in failing to follow the Chain of command amounted to insubordination and a direct challenge to the authority of his superiors within the department.  Relationships between fellow employees in a department of this size are generally of a personal nature and public criticism of a superior by a subordinate seriously under minds the effectiveness of the working relationship between them.  Such as the case here.  As stated in <u>Janusaitis</u>:

> In applying these guidelines we distinguish between the rights of a school teacher who expresses views essentially as a citizen and for

PDF created with pdfFactory trial version www.pdffactory.com

whom the target is the institution or proposition rather than the person or where the person attacked is far removed from the situation (Pickering; Givhan, supra) and a fireman who attacks verbally the very persons with whom he must function in the closest coordination. When lives may be at stake in a fire, an Esprit de corps is essential to the success of the joint endeavor.  Carping criticism and abrasive conduct have no place in a small organization that depends upon common loyalty "harmony among coworkers," Pickering, supra, 391 U.S. at 570, 88 S. Ct. 1731.

Davis not only engaged in activity that was insubordinate, such as the incident with Assistant Chief Kennedy, but in conduct that was directly and publicly critical of his superiors in the fire department by airing grievances in the newspaper.  The nature of those grievances as stated implied wrongful intent on the part of his superiors and attempted to paint them in a bad light publicly.  See Exhibit 'F', Columbus Ledger-Enquirer article, "Three Alarm Turmoil".  Again, all of this was done without ever giving any superior the opportunity to address the problem in spite of an "open door" policy maintained by Deputy Chief Waters of the Phenix City Fire Department. See Exhibit 'G', Deposition of David Davis, Page 70, Lines 14-19.  Lastly, after knowing about the proposed change in probationary period for at least a few weeks prior to action by the City Council to change the probationary policy for new hires, Davis, again chose to go around his superiors without so much as ever mentioning any objection to the policy in advance.

24

PDF created with pdfFactory trial version www.pdffactory.com

While Defendants contend that Davis would have eventually had a hearing before City Council regarding the probationary period if he had followed procedure, even if Plaintiffs were able to prove Davis would not have been able to go before City Council he had numerous other less disruptive channels available to make his concerns known and to have them acted upon and he ignored every one of those channels.  Taking the Janusaitis and Belcher cases together, it is clear that given that the Plaintiff ignored the numerous less disruptive channels of communication available to make his concerns regarding the probationary policy known, and since his criticism has seriously undermined the effectiveness of his working relationships with his immediate superiors and indeed throughout the Phenix City Fire Department, the Plaintiff's entire complaint should be dismissed as the Pickering balance as a matter of law favors the employer's interest in maintaining order and discipline in the Phenix City Fire Department.

## CONCLUSION

For the reasons and authorities cited hereinabove, the Defendants respectfully request the Summary Judgment be granted in their favor and against the Plaintiff.

PDF created with pdfFactory trial version www.pdffactory.com

/s/    *James R. McKoon, Jr.*
_____

JAMES R. McKOON, JR. (MCK020)
JOSHUA R. McKOON
Attorneys for Defendants
McKoon & Associates
Post Office Box 3220
Phenix City, Alabama  36868-3220
(334) 297-2300

**OF COUNSEL:**
JAMES P. GRAHAM, JR.
Post Office Box 3380
Phenix City, Alabama  36868-3380
334 291-0315

### *CERTIFICATE OF SERVICE*

    I hereby certify that on this the 7th day of December, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:


Thomas A. Woodley, Esq.
Molly A. Elkin, Esq.
Bryan Polisuk, Esq.
Douglas Steele, Esq.
Woodley & McGillvary
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005

PDF created with pdfFactory trial version www.pdffactory.com

Gary Brown, Esq.
Fitzpatrick, Cooper & Clark
Farley Building, Suite 600
1929 Third Avenue North
Birmingham, Alabama  35203

/s/ James R. McKoon, Jr.

_____

OF COUNSEL

PDF created with pdfFactory trial version www.pdffactory.com