IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 3:06-cv-00544-WHA |
| | ) | |
| PHENIX CITY, ALABAMA, et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff David Davis respectfully submits this memorandum of points and authorities in support of his motion for partial summary judgment as to defendants' liability. The plaintiff's Amended Complaint involves violations of his constitutional rights to free speech (Count I) and free association (Count II) under the First and Fourteenth Amendments, and also unconstitutional prior restraints which violate the First Amendment rights of free speech and free association (Count IV). The instant motion is concentrated on Count IV regarding defendants adoption and enforcement of policies and practices which establish unconstitutional prior restraints.

## I. INTRODUCTION AND BACKGROUND

This case concerns the defendants' unconstitutional prior restraints imposed on the free speech and association rights of David Davis and other Phenix City fire fighters,

as well as the unlawful discharge of Davis for engaging in protected speech and associational activity in violation of the First and Fourteenth Amendments to the U.S. Constitution.

The plaintiff filed a previous motion for partial summary judgment as to defendants' liability on several claims including the 'prior restraint' issues addressed herein.  In its Memorandum Opinion and Order filed on June 27, 2007 (Document 49), this Court determined that the plaintiffs original Complaint did not allege a prior restraint claim involving the City's policies and practices, either facially or as applied (pp. 5-7). For that reason, the Court declined to consider that claim.  Since then, the Court granted plaintiff leave to amend his Complaint, and Count IV in that Amended Complaint plainly alleges that the City's policies, as adopted, implemented and enforced, impose an unconstitutional prior restraint on the First Amendment rights of free speech and free association.  Thus, it is appropriate for the Court to consider this claim on its merits in light of the applicable law.

Specifically, the defendant City has adopted and applied policies and regulations that have imposed unconstitutional restrictions on Davis and other similarly situated City employees, prohibiting and restricting them from exercising their free speech rights with the media, as well as exercising their free speech and association rights with the elected Mayor and City Council members.  In applying these unlawful regulations and policies, the defendants illegally terminated Davis, an 8-year veteran fire fighter, because, while off-duty and in his capacity as a citizen and the President of the fire

fighters' labor association, he spoke to Mayor Hardin about a matter of public concern involving the City's fire department.

Accordingly, applying the governing law to the record of facts set forth in the depositions of City representatives and the submitted declarations (and accompanying exhibits), compels the conclusion that the instant motion for partial summary judgment should be granted.

## II.  STATEMENT OF MATERIAL FACTS

The plaintiff submits the following statement of material facts as to which there is no genuine issue:

1.     Plaintiff David Davis was hired by the defendant Phenix City (hereafter "City"), and its fire department in April, 1998.  In May, 2003, Davis was promoted to the rank of Driver-Engineer (Sergeant).  (Amended Complaint, ¶7, Answer, ¶7, Davis Decl., ¶1; Hunter Dep., p. 14 line 14 to p. 15 line 11).  As a fire fighter for the City, Davis received very favorable evaluations for his job performance; as late as February, 2006, the fire department reported that Davis was doing an "outstanding job" and had "a very positive and professional attitude".  (Waters Dep., p. 17 line 14 to p. 19 line 1; p. 21 lines 13 to 23; Hunter Dep., p. 15 line 17 to p. 17 line 5; Roberts Dep., p. 25 lines 1 to 17; Davis Decl., ¶1, Exhs. 1, and 12)[1].

---

[1]   The references to "Decl. ¶_____" are to the paragraphs of the sworn Declaration of plaintiff David Davis and Thomas Malone.  The "Exh. _____" references are to the numbered exhibits appended to those Declarations.  The "Dep. p. _ line _____" references are to the transcript pages and lines of the depositions of defendants and City representatives.  The reference to "Supp. Dep." is to the supplemental depositions of City Manager Roberts, Chief Hunter and Mayor Hardin.

2.      In 2005, plaintiff Davis became the President of the Phenix City Firefighters Association, Local 3668, International Association of Fire Fighters (hereafter "Local 3668"), a local labor organization comprised of fire fighters and rescue service employees employed in the City's fire department.  (Davis Decl, ¶2; Hunter Dep., p. 19 lines 1 to 15).

3.      Plaintiff Davis is also a resident of the Phenix City area.  At all time material herein, Davis has been a "person" within the meaning of 42 U.S.C. §1983, and a "fire fighter" within the meaning of the Alabama State Code, §11-43-143(b). (Amended Complaint, ¶3, Answer, ¶3).

4.      Defendant Phenix City is an incorporated municipality under the laws of the State of Alabama.  The City is a "person" within the meaning of 42 U.S.C. §1983, and a "person" within the meaning of the Alabama State Code, §11-43-143(b). (Amended Complaint, ¶4, Answer, ¶4).

5.      Defendant H.H. Roberts is the City Manager of Phenix, and he is actively engaged in the management, supervision and control of the operations, activities, affairs, finances, property, personnel, compensation and employment conditions of the City.  Defendant Roberts is a "person" within the meaning of 42 U.S.C. §1983 and a "person" within the meaning of the Alabama State Code, §11-43-143(b).  (Amended Complaint, ¶5, Answer, ¶5; Roberts Dep., p. 8 line 1 to p. 11 line 9).

6.      Defendant Wallace Hunter is the Chief of the City's fire department, and he is actively engaged in the management, supervision and control of operations, activities, affairs, finances, property, personnel, compensation and employment

4

conditions of the City's fire department.  Defendant Chief Hunter is a "person" within the meaning of 42 U.S.C. §1983 and a "person" within the meaning of the Alabama State Code, §11-43-143(b).  (Amended Complaint, ¶6, Answer, ¶6; Hunter Dep., p. 11 line 21 to p. 12 line 16).

7.      The City Council of Phenix City consists of five members elected by the citizens, including the Mayor.  (Davis Decl., ¶3, Exh. 2, §§3.01, 3.02; Hardin Dep., p. 8 line 13 to p. 9 line 2; Roberts Dep., p. 7 lines 15 to 25).  All matters of City policy are vested in the Council.  (Davis Decl., ¶3, Exh. 2, §3.07; Hardin Dep. p.11 lines 10 to 23; Roberts Dep., p. 7 line 15 to p. 8, line 20).

8.      The City Manager is subject to appointment to, and removal from, that position by a majority vote of the City Council. (Davis Decl., ¶4, Exh. 2, §§3.08, 3.09; Hardin Dep., p. 11 lines 15 to 23; Roberts Dep., p. 8 lines 7 to 20).  Pursuant to the City's Charter, the City Manager is responsible for the supervision and administration of the officers of the City, which includes enforcing laws and ordinances, supervision and control over all officers and employees of the City, and the appointment and termination of City employees.  (Davis Decl., ¶4, Exh. 2, §§4.02, 9.01(a); Hardin Dep., p. 12 line 1 to p. 13 line 9; Roberts Dep., p. 8 line 1 to p. 11 line 9).  The City Manager has the final decision-making authority regarding the termination of an employee from the fire department.  (Hunter Dep., p. 12 line 5 to p. 13 line 15; Roberts Dep., p. 10 line 3 to p. 11 line 9).

9.      On September 13, 2005, Davis and other leaders and members of Local 3668 attended a union meeting to discuss understaffing in the Phenix Fire Department;

poor employee morale; the safety of fire fighters and the public; fire and rescue services; and their fears of retaliation and discipline for speaking out publicly or otherwise about their serious concerns.  (Davis Decl, ¶8).  Chuck Williams, a journalist employed by the newspaper Columbus Ledger-Enquirer, asked and was allowed to attend the Local 3668 meeting to interview Davis and the other members for the purpose of doing an article on the issues of concern in the Phenix Fire Department. (Id.).

As a result of that discussion, an extensive article appeared in that newspaper in mid-September, 2005 which addressed concerns expressed by Davis and others regarding fire fighter and public safety; understaffing in the fire department; high turnover and the lack of retention of experienced fire fighters; the elimination of "swap" or trading of time among the fire fighters; and threats to change shift schedules.  Plaintiff David Davis, as President of Local 3668, was quoted in the article expressing his public concerns that "[m]orale is at the lowest point since I've been here."  He also stressed: "We are reluctant to talk because of significant fear of retaliation, being disciplined or fired".  (Davis Decl., ¶8, Exh. 4; Hardin Dep., p. 37 line 12 to p. 38 line 17; Roberts Dep., p. 50 line 7 to p. 55 line 22; Hunter Dep., p. 24 line 23 to p. 29 line 21).  Fire Chief Hunter was also interviewed and quoted in the article about the issues impacting the Phenix fire department.  (Id.).

During this time period, a number of letters to the editor were published in local newspapers in which citizens expressed their views on a number of fire department

issues.  (Davis Decl., ¶8, Exh. 5; Hunter Dep., p. 34 line 19 to p. 35 line 12; Hardin

Dep., p. 37 line 12 to p. 38 line 17; Roberts, p. 58 lines 4 to 12).

      10.    Immediately after the newspaper article appeared in the <u>Columbus</u>

<u>Ledger-Enquirer</u> in mid-September, 2005, and with the concurrence of City Manager

Roberts, defendant Fire Chief Hunter and Assistant Chief Johansen conducted an

"investigation", taking statements from Davis and eight other fire fighters who were

named in the article. (Davis Decl., ¶'s 9 and 10, Exhs. 6 and 7; Hunter Dep., p. 48 line

13 to p. 50 line 6; Roberts Dep., p. 58 lines 13 to line 20).  Davis' statement, dated

September 20, 2005, noted:  "On Tuesday, September 13, 2005, on my off duty day

and acting as President of the Phenix City Firefighters Association, Local 3668, I met

with and gave an interview with the local media on issues of the Phenix City Firefighters

Association."  (Davis Decl., ¶9, Exh. 6).  In his interrogation, Davis told Hunter that he

spoke to the newspaper reporter about matters of public concern and as the President

of Local 3668; Hunter told Davis that the "union" will be the end of his career.  (Davis

Decl., ¶9).

      11.    Fire fighter Robert Gaskin also participated in the discussion with the

media representative; he too was interrogated by Assistant Chief Johansen about the

newspaper article, and he gave the following statement to fire department officials:

> "On this date, September 20, 2005, at  or near 9:30 A.M., I was
> instructed by Assistant Chief Johansen to write this statement.
>
> The purpose of this statement, according to Assistant Chief Johansen,
> was to specify what authorization I obtained to speak about city
> policies and procedures.

> I was not aware that I needed to gain authorization to exercise my
> right to free speech.  I firmly feel that everyone in the United States
> has this right or freedom.  I feel pressured to write this statement, and
> feel that my rights are being questioned.  Assistant Chief Johansen
> stated that lawyers (I assume for the City) are going to be looking at
> this statement, so I may seek legal counsel myself."

> (Davis Decl., ¶10, Exh. 7; Hunter Dep., p. 51 line 24 to p. 52 line 20).

12.     Also on September 20, 2005, Chief Hunter issued a written directive to all members of the Phenix fire department which stated, in part:  "Recently there was an article in the Ledger-Enquirer Newspaper regarding our department.  Several fire fighters made comments in the paper that were likely to impair discipline and harmony in the workplace, impede job performance and jeopardize loyalty in this department."  Chief Hunter attached the portion of the City's merit systems rules and regulations titled "Free Speech".  He stressed in his directive that "[t]hese rules **must** be followed", (emphasis in original), and that "[f]ailure to follow the rules in the future will be dealt with in accordance with the merit system".  Davis and each fire department employee had to sign this Memorandum acknowledging receipt, and it was placed in the employee's personnel file.  (Davis Decl., ¶11, Exh. 8; Hunter Dep., p. 36 line 21 to p. 37 line 16; Roberts Dep., p. 71 line 22 to p. 72 line 14; Goodwin Dep., p. 19 line 20 to p. 20 line 6).  If a fire fighter spoke to the media about issues of public concern involving the fire department, he/she would violate this directive and be subjected to discipline, including termination.  (Hunter Dep., p. 42 line 19 to p. 46 line 25; Goodwin, Dep., p. 20 line 21 to p. 21 line 7).

13.    The same directive (with the attached copy of the "Free Speech" section of the City's merit system rules and regulations) was distributed by City Manager Roberts to "All Employees" of the City, also on September 20, 2005.  (Davis Decl., ¶12, Exh.  9; Roberts Dep., p. 72 lines 12 to 20; Goodwin Dep., p. 18 line 14 to p. 19 line 5, and p. 21 line 10 to p. 23 line 14).

14.    As a result of the investigation into the newspaper article, plaintiff Davis was issued a "Counseling Form" on September 20, 2005 by Chief Hunter and Assistant Chief Johansen which stated, in part:  "Sgt. David Davis was counseled by Chief Hunter and Assistant Chief Johansen on 20th of September, 2005, concerning him making or publishing statements to the local media."  Davis was instructed to sign and date this form, acknowledging that he understood this official notice will become a part of his personnel file.  (Davis Decl., ¶13, Exh. 10; Hunter Dep., p. 51 line 24 to p. 52 line 13; Roberts Dep., p. 59 lines 2 to 20).  Fire fighter Robert Gaskin was given the same warning form and it was placed in his personnel file. (Davis Decl., ¶13, Exh. 10, p. 2, Hunter Dep., p. 51 line 24 to p. 52 line 13).  This investigation and the "corrective actions" for Davis and Gaskin were approved by City Manager Roberts.  (Hunter Dep., p. 49 lines 10 to 22).

15.    Fire Fighter Karl Taylorson also spoke to the reporter from the Columbus Ledger-Enquirer and was identified in the newspaper's article dated September 18, 2005.  (Hunter Supp. Dep., p. 8, line 10 to p. 10, line 21).  He too was interrogated, by Assistant Chief Hanson, and issued a written form indicating he contravened the Merit System Rules and Regulations.  (Id).  Specifically, the form stated that Taylorson "had

9

not received nor requested permission from any fire department supervisors to speak with a member of the news media concerning issues within the fire department." (Hunter Supp. Dep., p. 17, line 20 to p. 20, line 4).  The form emphasized that the City "would not put up with another episode of speaking to the media without prior approval." (Id., p. 18, line 24 to p. 20, line 9; Roberts Supp. Dep., p. 16, line 11 to p. 17, line 17).  It was made clear that if Taylorson spoke again to the media without prior clearance, he would be subject to further discipline, up to possible termination.  (Id.).

16.    The City's Merit System Rules and Regulations (the so-called "Free Speech" section 2.054) prohibit Davis and other City fire fighters from speaking directly to the media or publicly, at any time, about issues involving the provision of fire and rescue services by the Phenix City fire department, including the following matters:

- Inadequate staffing in the fire department;

- Safety and health of fire fighters;

- Inadequate fire department equipment and vehicles;

- Insufficient financial/budgetary resources for the fire department;

- Emergency response times and dispatching procedures;

- Employee morale in the fire department;

- Corruption by fire department officials; and

- The fire department's protection of public safety.

(Davis Decl., ¶14, Exh. 11; Roberts Dep., p. 67 line 10 to p. 71 line 5; Hunter Dep., p. 42 line 19 to p. 46 line 25; p. 56 line 2 to p. 58 line 3; Goodwin Dep., p. 17 line 11 to p. 21 line 7).

10

If a City fire fighter should speak to the media about these issues, he/she is subject to discipline, up to and including termination.  (Id.).

17.    Davis and other fire fighters are not permitted to communicate with the media about any issues affecting the fire department without prior approval of the City's Fire Chief.  (Hunter Supp. Dep., pp. 13, line 15 to p. 15, line 22).  Specifically, a fire fighter can not speak to the media as a citizen about subjects of public concern—such as fire department staffing, response times, dispatching procedures, adequate protective gear and equipment, etc.—unless and until he/she first obtains prior clearance from the City.  (Roberts Supp. Dep., p. 15, lines 7 to 23).  If Davis or other fire fighters communicate with the media on any fire department issues without that prior clearance, it is a violation of the City's merit system rules and regulations.  (Id, p. 18, line 24 to p. 19, line 8).

18.    On January 31, 2006, Harold Schaitberger, General President of the International Association of Fire Fighters, sent a letter to City Manager Roberts (with copies also sent to Chief Hunter and Mayor Hardin) underscoring concerns about the mistreatment and harassment of Local 3668 President David Davis, including the fact that Davis was "issued a counseling form and threatened with loss of his job, for having spoken to the local media regarding [fire] Department operations and other matters of public concern."  (Malone Decl., ¶4, Exh. 2; Roberts Dep., p. 73 line 8 to p. 75 line 16; Hardin Dep., p. 39 line 21 to p. 42 line 25).  Mr. Schaitberger further articulated the First Amendment rights and protections afforded local government employees to freely associate and to speak out about matters of public concern without unlawful retaliation.

11

He cited federal court rulings on these issues, emphasizing that "few subjects are of more public concern . . . than the provision of basic fire and rescue services".  Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1564 (11th Cir. 1995)". (Id.). Schaitberger's letter asked the City and Manager Roberts to take actions that would ensure that the constitutional rights of Davis and other leaders and members of Local 3668 will be respected and safeguarded when they engage in lawful associational activities and speak out on matters of public concern.  (Id.).

19.     When Roberts and Chief Hunter received IAFF General President Schaitberger's letter, Deputy Chief Roy Waters was instructed to promptly meet with Davis and inquire about what generated the Schaitberger correspondence.  Following that meeting, Waters gave Chief Hunter a Memorandum dated February 6, 2006, reporting on his investigation of Davis and the Schaitberger letter.  Waters remarked that Davis did not have any individual complaints and that he did not generate the letter; Waters noted that he believed Davis on this point.  Deputy Chief Waters emphasized at the end of his Memo to Chief Hunter:  "As I have communicated to you on several occasions, David Davis is doing an outstanding job for me and has a very positive and professional attitude".  (Davis Decl., ¶15, Exh. 12; Hunter Dep., p. 15 line 17 to p. 17 line 5; Waters Dep., p. 17 line 14 to p. 19 line 1).

20.     On or about April 16, 2006, plaintiff Davis learned that the City Council, in the next two days, would be giving final consideration to adopting an Ordinance (No. 2006-13) amending the City's Merit System Rules and Regulations extending the probation period for new hires in the fire department from one year to 18 months.  Davis

and others understood that the proposed change would not personally affect him because he had been employed in the fire department for eight (8) years. (Davis Decl., ¶17, Exh. 14; Hardin Dep., p. 50 line 9 to p. 51 line 13; Roberts Dep., p. 77 line 13 to p. 78 line 15; Hunter Dep., p. 58 lines 4 to 19; Goodwin Dep., p. 29 lines 8 to 18).

21.     On Monday, April 17, 2006, while off-duty, and in his capacity as President of Local 3668 and a citizen, Davis contacted a number of his fellow union members regarding the proposed City Ordinance. They were all opposed to the proposed change, expressing concerns that it would adversely affect recruitment of qualified persons into the City's fire department; harm the ability to retain qualified personnel; make it more difficult to maintain adequate staffing levels in the fire department; and potentially hurt the fire fighters' ability to work secondary jobs to bolster income for themselves and their families. (Davis Decl., ¶18).

22.     On the afternoon of April 17, 2006, while off-duty and in his capacity as President of Local 3668 and as a citizen, Davis telephoned Mayor Hardin's office to discuss the proposed Ordinance and related issues. Mayor Hardin was not available and Davis left a message asking that the Mayor call him back. (Davis Decl., ¶19, Exh. 15; Hardin Dep., p. 43 line 1 to p. 45 line 1).

23.     Later that evening, Mayor Hardin called Davis back. In that telephone conversation, Davis stated that he called the Mayor as President of Local 3668 and on behalf of its members to express the concerns of the membership and the public about the proposed City Ordinance enlarging the probation period for new hires. Davis spelled out those concerns, and offered proposals and other options for consideration

13

by the Mayor and other City Council members (such as, making sure that fire department employees who are disciplined or promoted are not placed on probation because of the adverse impact it could have regarding the retention of experienced personnel, reductions in adequate staffing, prohibitions against holding secondary jobs to make a reasonable living, etc.). (Davis Decl., ¶20, Hardin Dep., p. 30 lines 5 to 30; p. 44 line 16 to p. 48 line 20; Waters Dep., p. 28 lines 2 to 24).  Mayor Hardin thanked Davis for the input and said that he and other Council members would consider these points.  (Davis Decl., ¶20).

24.     During this period of time, Davis and City and fire department officials understood that the proposed Ordinance extending the probation period for future new hires from one year to 18 months would have no effect whatsoever on Davis as a City employee because he had already been employed in the fire department for eight (8) years.  As a result, when he communicated with the Mayor and the two Council members, he was not pursuing his individual complaint or grievance as an employee of the City.  (Davis Decl., ¶22; Hardin Dep., p. 50 line 9 to p. 51 line 13; Roberts Dep., p. 77 line 13 to p. 78 line 15; Hunter Dep., p. 58 lines 4 to 19; Waters Dep., p. 24 lines 12 to 22).

25.     Mayor Hardin informed City Manager Roberts that Davis had a conversation with him about the proposed City Ordinance enlarging the probation period (Hardin Dep., p. 61 lines 6 to 19; Roberts Dep., p. 79 lines 2 to 9).  Personnel Director Goodwin also learned of the conversation between the Mayor and Davis, and she, in turn, informed Chief Hunter.  (Id.; Hunter Dep., p. 64 line 9 to p. 65 line 20).  With

14

Roberts concurrence, an investigation was ordered, and Chief Hunter directed Deputy

Chief Waters to meet with Davis on the subject. (Hunter Dep., p. 65 line 21 to p. 68 line

25; Waters Dep., p. 26 line 17 to p. 27 line 8). Deputy Waters immediately met with

Davis on April 19, 2006 and asked him to prepare a written statement concerning his

telephone conversation with the Mayor about the proposed Ordinance. (Davis Decl.,

¶23; Waters Dep., p. 27 line 9 to p. 28 line 1). Davis typed-up and handed the following

signed statement to Deputy Chief Waters:

> 4/19/06
> Wallace Hunter, Fire Chief
>
> On Monday, April 17, 2006, I placed a call to Mayor Hardin's office.
> As President of the Phenix City Firefighters Association/Local-3668, I
> made this call in regards to some labor issues in which I had concerns
> with. Mayor Hardin returned my call later that evening and we
> discussed the issues in which I wanted to address.
>
> Respectively,
>
> David P. Davis.

(Davis Decl., ¶23, Exh. 16; Waters Dep., p. 29 lines 2 to 24; Hunter Dep., p. 69 lines 1

to 18; Goodwin Dep., p. 32 line 25 to p. 33 line 9).

     26.    Chief Hunter then submitted a report to City Manager Roberts dated April

20, 2006 (with a copy to Goodwin). Hunter stated, in pertinent part, as follows:

> "This memo is to inform you about a conversation between Personnel
> Director Barbara Goodwin and myself about the city's new probation
> time for new hires for Public Safety. During this conversation, I was
> informed that one of our firefighters, Sgt. David Davis, called Mayor
> Hardin to discuss or complain about the new policy. This is a clear
> violation of our Merit System and S.O.P.'s. Sgt. David Davis was
> counseled on this type of violation in September 2005 and he signed
> indicating his understanding of this violation.

> On Wednesday, April 19, 2006, Deputy Chief Roy Waters met with Sgt Davis and asked him why he violated the chain of command and Merit System to call Mayor Hardin.  His response was that as president of the Phenix City Firefighters Association/Legal-3668; he made a call in regards to labor issues in which he had concerns with. Mayor Hardin returned his call later that evening and they discussed the issues in which he wanted to address."

(Davis Decl., ¶24, Exh. 17; Hunter Dep., p. 71 line 9 to p. 73 line 14; Roberts Dep., p. 80 line 9 to p. 82 line 6).

At the end of this Memorandum to Manager Roberts, Chief Hunter was very critical of Mayor Hardin.  Specifically, he said that "Mayor Hardin should refer any employee violating the chain of command, as indicated in our merit system back to their department head, personnel department or city manager. Failing to do so is in violation of our city charter . . . ."  (Id.).

27.    The City's Merit System Rules and Regulations (the so called "Free Speech" section 2.054), as well as a fire department Standard Operating Procedure (ASOP 12), prohibit Davis and other City fire fighters, at any time, and in any public or non-public forum, from addressing or speaking with the City's elected Mayor and the other four elected members of the City Council about any issues involving the provision of fire and rescue services by the City's fire department — including the subjects listed above in para. 16.  (Davis Decl., ¶25, Exh. 11; Roberts Dep., p. 83 line 2 to p. 85 line 6; Hunter Dep., p. 75 line 13 to p. 77 line 23).

28.    City Manager Roberts made the final decision that Davis be discharged from his job for contacting the Mayor regarding the proposed Ordinance extending the probation period for new hires employed in the fire department.  (Roberts Dep., p. 10

16

line 3 to p. 11 line 9; p. 12 line 8 to p. 14 line 1; Roberts Supp. Dep., p. 43, line 25 to p. 44, line 18; Hunter Dep., p. 12 line 5 to p. 13 line 15; Hardin Dep., p. 31 line 1 to line 24; Waters Dep., p. 12 line 19 to p. 13 line 3).

29.    Chief Hunter prepared a Written Warning Form and notice of discharge dated April 20, 2006.  That document states that Davis violated the Merit System Rules and Regulations when "[o]n April 17, 2006 at 12:30 p.m.. Driver Engineer David Davis called Mayor Hardin regarding City proposals".  (Davis Decl., ¶26, Exh. 18; Hunter Dep., p. 80 line 24 to p. 83 line 12; p. 84 lines 8 to 14; p. 86 lines 12 to 17; p. 89 line 6 to p. 90 line 8; Waters Dep., p. 30 line 3 to p. 33 line 9; Goodwin Dep., p. 38 line 3 to p. 40 line 6).  This was considered a "Group II Offense ("negligence or omission in complying with the requirements as set forth in miscellaneous rules"), and a "Group III Offense" ("Insubordination by the refusal to perform work assigned/to comply with written or verbal instructions of the supervisory force").  (Id.).  This discharge document also referred to a prior "corrective action" involving the discussion Davis had in mid-September 2005 with the newspaper journalist and the resulting article regarding various issues of public concern.  (Id.).

30.    Deputy Chief Waters ordered Davis to come to the Personnel Director's office on April 21, 2006, a day when Davis was off-duty.  Davis went to that office where Goodwin, Chief Hunter and Deputy Chief Waters were waiting for him.  Davis was handed the discharge form and told he was terminated. The form was already signed by Goodwin, Hunter and Waters. On the lines available for the "Employee's comments", Davis filled in the following statement:

"In regards to contacting the Mayor, I was acting in my capacity as
President of the Phenix City Firefighters Association, Local 3668 and
not as a Driver Engineer with the City of Phenix City.  I will seek
review board hearing".

Davis was also handed an "End of Employment Form" which confirmed that

Davis was "dismissed" on April 21, 2006; that form was signed by Goodwin, Hunter, and

Davis.  (Davis Decl., ¶27, Exh. 19; Goodwin Dep., p. 35 line 12 to p. 41 line 3; Hunter

Dep., p. 86 line 21 to p. 91 line 1; Waters Dep., p. 33 line 10 to p. 36 line 18).

Davis was told to go to his station, clear out his locker, turn in his gear, and leave

the station.  (Davis Decl., ¶27; Waters Dep., p. 36 line 19 to p. 37 line 16).

31.     Davis pursued an appeal of his dismissal before the City's Personnel

Review Board, consisting of members appointed by the City.  (Davis Decl., ¶28, Exh.

20).  At the hearing before the Board, on May 16, 2006, Roberts was called as a

witness by the City and gave testimony in support of Davis' discharge.  (Roberts Dep.,

p. 87 line 2 to p. 89 line 11).  After the hearing concluded, the Board recommended to

City Manager Roberts that the earlier decision (made by Roberts himself) be upheld.

(Davis Decl., ¶28, Exh. 21; Roberts Dep., p. 88 lines 15 to 20).  Two days later, on May

18, 2006, City Manager Roberts sent Davis a letter indicating that he accepted the

recommendation of the City's Personnel Review Board, and that Davis' termination "is

upheld".  (Davis Decl., ¶28, Exh. 22; Roberts Dep., p. 88 lines 15 to 20).

32.     In his supplemental deposition taken on November 6, 2007, City Manager

Roberts made it clear that, because of the City's Merit System Regulations and Fire

Department ASOP-12, a fire fighter could not speak directly to the City Council, while

18

off-duty and as a citizen, in a public meeting, about any issues affecting the Fire

Department.  (Roberts Supp. Dep., p. 25, line 16 to p. 26, line 15).

     33.    In the six (6) years Roberts has been the City Manager, he has never

given permission for a fire fighter, or any City employee, to address the City Council.

(Roberts Supp. Dep., p. 24, line 14 to p. 25, line 4).  Chief Hunter has never given his

approval for a fire fighter to speak to City Council members.  (Hunter Supp. Dep., p. 37,

lines 15 to 18).  Neither a fire fighter, nor any other City employee, has addressed the

City Council at a public meeting about any Fire Department or City-related issues.

(Bush Dep., p. 17, lines 2 to 8).

## III.  ARGUMENT

### A.  Standards Governing Consideration of a Motion for Summary Judgment

     Summary judgment is appropriate when there is no genuine dispute of material

fact and when the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Twiss v. Kury, 25

F.3d 1551, 1554 (11th Cir. 1994).  "Summary Judgment procedure is properly regarded

as not a disfavored procedural shortcut, but rather as an integral part of the Federal

Rules as a whole, which are designed "to secure the just, speedy and inexpensive

determination of every action'".  Celotex Corp. v. Catrett, 477 U.S. 317, 327

(1986)(citation omitted).

**B. The Defendants' Restrictive Regulations and Policies Impose an Unlawful Prior Restraint on the Exercise Free Speech Rights Safeguarded by the First Amendment**

**1.  The Appropriate Standards of Judicial Scrutiny**

It is well settled that "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values." Connick v. Meyers, 461 U.S. 138, 145 (1983). While a public employee does not have a constitutional right to his job, a public employer "cannot condition public employment on a basis that infringes the employee's constitutionality protected interest in freedom of expression'." Connick, 461 U.S. at 142. Government employees have the First Amendment right to speak out about matters of public concern without having their employers prohibit those communications or retaliate for the exercise of free speech. U.S. v. NTEU, 513 U.S. 454, 468 (1995); Rankin v. McPherson, 483 U.S. 378, 383 (1987).

There are two distinct contexts in which local government employers can violate the constitutional protections guaranteed to public employees regarding free speech. The first is where a municipal government imposes a policy and practice of **'prior restraint'** which prohibits or prevents employees from engaging in free speech.  The second context is where a local government engages in *post hoc* discipline against an employee who has already spoken out about a matter of public concern.  The instant motion addresses the prior restraint issues in this case.

**2.  The City's Regulations, Policies and Practices Impose an Unconstitutional 'Prior Restraint' on Free Speech**

The federal courts have been diligent in striking down unlawful prior restraints on government employees' constitutional rights of free expression.  See U.S. v. NTEU, 513

20

U.S. 454 (1995); <u>Milwaukee Police Ass'n v. Jones</u>, 192 F.3d 742, 749-50 (7th Cir. 1999);

<u>Harman v. City of New York</u>, 140 F.3d 111 (2nd Cir. 1998); <u>Providence Firefighters v.</u>

<u>City of Providence</u>, 26 F.Supp.2d 350 (D.R.I. 1998).

Where, as here, a local government employer imposes a *prior restraint* on free

speech, it must carry a much heavier burden to justify its restrictions.  Relying on the

Supreme Court's decision in <u>NTEU</u>, the appellate court in <u>Milwaukee Police Ass'n.</u>, 192

F.3d at 750, articulated the appropriate standard:

> With a prior restraint, the impact is more widespread than any single
> supervisor decision would be, and the action chills potential speech
> instead of merely punishing actual speech already communicated.  *Id.*
> [<u>NTEU</u>] at 468, 115 S. Ct. 1003.  Thus, the court held [in the <u>NTEU</u>
> case] that in the context of a prior restriction on expression, the
> government has a greater burden than it has where an isolated
> disciplinary action is involved.  The government in such a case must
> demonstrate that "the interests of both potential audiences and a vast
> group of present and future employees in a broad range of present
> and future expression are outweighed by the expression's 'necessary
> impact on the actual operation' of the Government."  [quoting, <u>NTEU</u>,
> 513 U.S. at 468].

<u>See</u>, <u>Harman</u>, 140 F.3d at 118 (applying <u>NTEU</u> standard to strike down agency rule

forbidding employees from talking to media without prior clearance by agency official)<sup>2</sup>.

The four-step analysis set forth in <u>Pickering v. Board of Educ.</u>, 391 U.S. 563

(1968) in actions involving retaliation against an employee for exercising free speech,

---

<sup>2</sup>  Accord:  <u>Swartzwelder v. McNeilly</u>, 297 F.3d 228, 231-32, 235-36 (3rd Cir.
2002)(applying <u>NTEU</u> standard to invalidate department policy that required a police
officer's communication to the public to be cleared by the Chief of Police); <u>Weaver v.</u>
<u>U.S. Information Agency</u>, 87 F.3d 1429, 1439 (D.C. Cir. 1996)(<u>NTEU</u> test applied where
restraint on speech achieve through a generally applicable regulation); <u>Providence</u>
<u>Firefighters</u>, 26 F.Supp.2d at 355-57 (D.R.I. 1988)(applying <u>NTEU</u> to invalidate a rule
requiring fire fighters to get prior permission to speak to public about fire department

does not apply in assessing 'prior restraint' issues.  See, Milwaukee Police Ass'n, 192

F.3d at 749-50; Int'l Ass'n of Fire Fighters v. Frenchtown Charter Township, 246

F.Supp.2d 734, 739-41 (E.D. Mich. 2003).  "A prior restraint rule that forces a person to

ask permission to speak bears a heavier presumption against constitutionality than one

that merely penalizes people who have already spoken."  Providence Firefighters, 26

F.Supp.2d at 355, citing NTEU, 513 U.S. at 468, and Auburn Police Union v. Carpenter,

8 F.3d 886, 903 (1st Cir. 1993).  Consequently, cases such as Anderson v. Burke

County, GA., 239 F.3d 1216 (11th Cir. 2001) and Belcher v. City of McAlester, 324 F.3d

1203 (10th Cir. 2003), which involve *post hoc* disciplinary actions against employees for

having spoken out, are inapplicable in the prior restraint context where the courts apply

the more exacting NTEU level of scrutiny.

### A. The City's Ban on Any Communications with the Media is Plainly Unconstitutional.

Here, the defendant City has adopted, and enforced, regulations and policies

which clearly impose unconstitutional prior restraints on free speech rights in several

respects.  According to the deposition testimony of defendants City Manager Roberts

and Fire Chief Wallace Hunter[3], as well as that of Personnel Director Goodwin, the

City's Merit System Rules and Regulations (Section 2.054) prohibit the fire fighters from

communicating with the media or publicly, at any time, about any issues involving the

---

"matters").

[3] Chief Hunter and City Manager Roberts were designated as the City's Rule 30(b)(6) witness to provide authoritative and knowledgeable deposition testimony on behalf of the City on the issues in this case.  (Hunter Dep., p. 7 line 7 to p. 9 line 12; Hunter Supp. Dep., p. 5 line 21 to p. 8 line 9; Roberts Supp. Dep., p. 5 line 13 to p. 8 line 15).

City's provision of fire and rescue services.  (Facts, ¶22).[4]  This ban covers a variety of subjects of public concern including:  inadequate staffing in the City's fire department; fire fighters safety and health; inadequate fire department equipment and vehicles; insufficient financial/budgetary resources in the fire department; emergency response times and dispatching procedures; employee morale in the fire department; corruption by fire department officials; and the fire department's protection of public safety.  (Facts, ¶'s 22 and 16).  This ban applied to the plaintiff David Davis, and it continues to apply to all fire fighters and other City employees.

The City has recently argued in this case that its restrictive regulations are acceptable because they merely require a fire fighter to obtain prior approval from the Fire Chief before communicating with the media about any Fire Department issues. The courts have <u>uniformly</u> rejected that contention and held that such prior clearance requirements impose an unconstitutional prior restraint on fire fighters, police and other government employees.[5]  "Employees who are critical of the agency will naturally hesitate to voice their concerns if they must first ask permission from the very people whose judgment they call into question."  <u>Harman</u>, 140 F.2d at 120.

---

[4]    The references to "Facts, ¶___ " are to the paragraphs set forth above in the Statement of Facts.

[5]    <u>Swartzwelder</u>, 297 F.3d at 231-32, 235-36 (invalidating prior clearance requirement by Police Chief); <u>Providence Firefighters</u>, 26 F.3d at 355-57 (prior permission requirement struck down); <u>Int'l Ass'n of Fire Fighters v. Frenchtown Charter Township</u>, 246 F.Supp.2d 734, 736 (E.D. Mich. 2003)(summary judgment granted to fire fighters invalidating local government ordinance imposing before-the-fact deterrent, chilling fire fighters' speech on fire department-related issues); <u>Wolf v. City of Aberdeen</u>, 758 F.Supp. 551, 558 (D.S.D. 1991)(finding city ordinance that forbade fire fighters from commenting on "internal business" decisions and department rules without first obtaining permission was unconstitutional); <u>Harman</u>, 140 F.3d at 118.

Where, as here, local governments argue that the 'chain of command' in fire and police departments justify pre-clearance restrictions, the Courts have consistently ruled that such assertion does not satisfy the heightened NTEU standard that governs in the 'prior restraint' context.  The contention that a fire department is a paramilitary organization which desires discipline and order, is not a sufficient interest under the heightened NTEU standard to justify a requirement to obtain prior permission to speak.[6]

Furthermore, it is well settled that the public has a right to know about important issues implicating the delivery of the vital fire and rescue services, and the news media and the fire fighters are in the best positions to keep citizens informed.[7]  When confronted with such a restrictive regulation **on its face**, the courts have consistently struck down the local government's regulation as an unconstitutional prior restraint on

---

[6]  Manzoor v. Trank, 189 F.Supp.2d 426, 436 (W.D. Va. 2002), aff'd 319 F.3d 133 (4th Cir. 2003)(preserving the 'chain of command' can not be used to restrict communications by police officer to Board of Supervisors and third parties about departmental matters); Providence Firefighters, 26 F.Supp.2d at 356; Frenchtown Charter Township, 246 F.Supp.2d at 742-44.  Accord:  Pesek v. City of Brunswick, 794 F.Supp. 768, 774, 786-87 (N.D. Ohio 1992); Fire Fighters' Assn. v. District of Columbia, 742 F.Supp. 1182, 1195 n. 25 (D.D.C. 1990).

[7]  It is well understood that there is widespread interest in the "ability of the [public's] Fire Department to respond quickly and effectively to a fire."  Moore v. City of Kilgore, 877 F.2d 364, 370 (5th Cir. 1989), cert. denied, 493 U.S. 1003 (1990)(fire fighter had protected right to articulate concerns about understaffing to the press).  Accord: Beckwith v. City of Daytona Beach Shores, 58 F.3d 1544, 1465 (11th Cir. 1995)("few subjects are of more public concern to the average citizen than the provision of basic fire and rescue services"); Casey v. City of Cabool, MO, 12 F.3d 799 (9th Cir. 1993)(employee's speech regarding disapproval of certain fire department policies is a matter of public concern); Hickory Fire Fighters' Assn. v. City of Hickory, 656 F.2d 917, 920-21 (4th Cir. 1981)("working conditions of the fire fighters are a matter of public concern which the Association's representatives are especially well qualified to address").

free speech.  See cases cited supra, pp. 21-24.  The same result should be reached here regarding Section 2.054 of the City's regulations.

### B.  The City's Restrictive Regulation and Practices Are Unconstitutional as Actually Applied.

In addition, this same City regulation (ironically titled "Free Speech") has actually been **applied** to punish and chill the free speech rights of Davis and other fire fighters to communicate with the media.  As noted above, Local 3668 President Davis and other members of their labor association met on September 13, 2005 to discuss a number of issues implicating public and fire fighter safety in the Phenix fire department.  (Facts, ¶9).  At that time, they approved a request of Charles Williams, a reporter from the Columbus Ledger-Enquirer, to speak with them about a host of troublesome issues affecting the fire department for a long time.  Davis, fire fighter Robert Gaskin, Karl Taylorson, and six other fire fighters spoke to the journalist involving concerns of inadequate staffing and high turnover in the fire department, and other public safety issues.  A detailed article then appeared in that newspaper in mid-September 2005, in which Davis, as the Local 3668 President, was quoted about his concerns over poor morale in the fire department, and fears of retaliation by the City because the fire fighters had spoken to the press.[8]

Davis' fears proved to be well-founded.  Upon reading the newspaper article, City Manager Roberts and Fire Chief Hunter initiated an "investigation".  (Facts, ¶10).  Davis

---

[8]  In his initial deposition, City Manager Roberts observed that poor fire department morale has been a continuous problem "since the 90's".  (Roberts Dep., p. 53, line 25 to p. 53 line 10).  However, Roberts also said he was "annoyed" about the publicity in the newspaper article.  (Id., p. 50 line 14 to p. 51 line 10).

and **each of the fire fighters named in the article** were interrogated about the union meeting and their comments to the newspaper reporter, and they were required to give written and signed statements.[9]  In his statement, Davis noted that "[o]n Tuesday, September 13, 2005, on my off duty days and acting as President of the Phenix City Firefighters Association, Local 3668 I met and gave an interview with the local media on issues of the Phenix City Firefighters Association."  (Facts, ¶10).  Significantly, fire fighter Gaskin emphasized in his statement about the newspaper article that he was asked by Assistant Chief Johansen "what authorization" he obtained "to speak about city policies and procedures".  (Facts, ¶11).[10]

Upon concluding these interrogations, Chief Hunter issued Davis, Gaskin and Taylorson warning notices (described as "Counseling Forms") on September 18 and 20, 2005 concerning "making or publishing statements to the local media concerning fire department issues."  (Facts, ¶'s 14 and 15).  They were instructed to sign and date these notices acknowledging receipt, and they were placed in their personnel files. Indeed, Taylorson was threatened that the City "would not put up with another episode of speaking to the media without prior approval."  (Facts, ¶15).

The City's actions to deter further contacts with the media did not stop there. Chief Hunter issued a written directive to "All members of the Phenix City Fire Department" dated September 20, 2005, essentially telling them that the Merit System

---

[9]  One intimidated employee, Lance Wagner, felt compelled to say in his statement that he has dropped out of the fire fighters' association.  (Davis Decl, ¶9, Exh. 7).

[10]  Notably, Gaskin also properly stated:  "I was not aware that I needed to gain authorization to exercise my right to free speech."  (Facts, ¶11).

Regulations precluded talking to the media.  (Facts, ¶12).  That directive noted that several fire fighters had made comments in the recent <u>Ledger-Enquirer</u> newspaper that, in Chief Hunter's opinion, could "impair discipline and harmony in the workplace, impede job performance and jeopardize loyalty in this department".  (Facts, ¶12). Pointedly, he attached the "Free Speech" section of the Merit System Regulations and fire department ASOP 12; he emphasized that "these rules **must** be followed" (emphasis in original) and that "[f]ailure to follow these rules in the future will be dealt with in accordance with the merit system."  (<u>Id</u>.).  Every fire department employee was obligated to sign this directive acknowledging receipt, and it was placed in their personnel files.  (<u>Id</u>.).  As Personnel Director Goodwin indicated in her deposition, the message conveyed to the fire fighters was unmistakable — if you speak to the media about any topics involving the fire department, you will violate Chief Hunter's directive, and be disciplined or fired.  (Goodwin Dep., p. 20 line 21 to p. 21 line 7).

City Manager Roberts decided to expand the prior restraint on media communications when he distributed essentially the same directive to "All Employees" of the City on September 20, 2005, with the attached "Free Speech" section of the City's Merit System Regulations.  (Facts, ¶13).

The defendants' imposed restrictions have caused substantial harm.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976).  Accord: <u>Jackson v. City of Columbus</u>, 194 F.3d 737, 747 (6th Cir. 1999); <u>Providence Firefighters</u>, 26 F.Supp.2d at 354.

In short, it is difficult to imagine broader restrictions intended to completely

silence fire fighters and other City employees from discussing any Fire Department and

City-related issues with media representatives.  No court has found that such strong

restrictions on media communications is consistent with the free speech safeguards of

the First Amendment.  Accordingly, as written and as applied, these regulations,

directives, and practices should be declared unconstitutional and unenforceable.

### C.  The City's Regulations and Practices Restricting Fire Fighters from Communicating with the Mayor and City Council Members Are Also Clearly Unconstitutional.

Equally unconstitutional are the City's regulations and practices which restrict fire

fighters (including plaintiff Davis) and other City employees from communicating with

the City's elected Mayor and Council members.  Once again, the deposition testimony

of City Manager Roberts and Chief Hunter confirm that both the Merit System

Regulations and the fire department's Standard Operating Procedures (ASOP 12) or

restrict Davis and other fire fighters, at any time, and in any public or non-public forum,

from speaking with the Mayor and City Council members about any subject involving

fire and rescue services — including public and fire fighter safety, staffing, equipment,

emergency response times, employee morale, corruption by fire department officials,

etc..  (Facts, ¶'s 27 and 16).  In other words, the City Manager can screen-out or filter

any fire fighter concerns that could implicate fire department functions.  Indeed, a clear

indication of how seriously the City enforces this ban is best illustrated by the fact that

Davis was abruptly fired because he spoke with the Mayor, while Davis was off-duty and as a citizen, about a matter of public concern (see, Facts, ¶'s 21-31).[11]

No court has sustained such a far-reaching ban on municipal workers communicating with elected officials. In Local 2106 v. City of Rock Hill, 660 F.2d 97 (4th Cir. 1981), the appellate court held that the city violated the First Amendment when it sought to limit the fire fighters' rights to speak to City Council members.  The Court reasoned that '[w]here state action seeks to limit the exercise of first amendment rights, the state must meet the exacting standard of strict judicial scrutiny, advancing a compelling justification for denying a particular person or entity the right to speak." 660 F.2d at 100-01.  The Court rejected the notion that allowing fire fighters to speak to City Council members would "interfere with the operation of the fire department."  660 F.2d at 101.  Accord:  Hickory Fire Fighters Association v. City of Hickory, 656 F.2d 917, 921 (4th Cir. 1981)(City Manager's refusal to permit representatives of a fire fighters' association to address City Council members at a meeting violated First Amendment where City failed to show a 'compelling justification'); Henrico Prof. Fire Fighters v. Board of Supervisors, 649 F.2d 237, 243 (4th Cir. 1981)(prohibition against representatives of the fire fighters' association speaking to board of supervisors violates First Amendment rights of the association and its members of free speech, association and the right of petition); Pesek v. Brunswick, 794 F.Supp. 768 (N.D. Ohio 1992)(public

---

[11]     In its Memorandum Opinion and Order entered on June 27, 2007, this Court determined that Davis spoke to Hardin as a citizen (not an employee), and about matters of public concern (pages 9-10).

employee's First Amendment rights to free speech were violated when he was restricted in speaking to city council members).[12]

The City contends (now) that Davis and other fire fighters can pursue the 'chain of command' or grievance procedures and possibly gain an avenue to address the City Council.  This pre-condition is unavailing as a matter of law.  No court has held that municipal employees, wanting to speak as <u>citizens</u> to elected officials about matters of public concern, must first pursue a chain of command or grievance procedures that apply solely to their capacity as <u>employees</u>.

Moreover, the deterrent impact of the City's policies and practices is perhaps best demonstrated by the fact that no fire fighter—indeed, no city employee—has **ever** spoken to the City Council about Fire Department or City issues.  (Facts, ¶33).  This unbroken record of non-communication with the City Council members strongly supports the conclusion that the City's policies and practices have imposed a chilling affect on free speech.

Finally, there are fundamental principles involved which support the protection of free speech rights and the nullification of the defendants' restrictive regulations and practices.  Local government employees "are often in the best position to know what ails

---

[12]    As noted above (Facts, ¶'s 2 and 9), Davis was the elected President and spokesperson of the Phenix Firefighters Association consisting of members who are employed by the City.  The broad ban imposed on Davis also prevented him from speaking on behalf of the Association and its members.  Speech is equally protected where the public employee is speaking on behalf of an association or its membership.  <u>See</u> <u>First National Bank of Boston v. Bellotti</u>, 435 U.S. 765, 777 (1978)("[t]he inherent worth of speech in terms of its capacity for informing the public does not depend upon the identify of its sources, whether corporation, association, union or individual"); <u>Allee v. Medrano</u>, 416 U.S. 802, 819 n. 13 (1973).

the agencies for which they work; public debate may gain much from their informed opinions." <u>Cromer v. Brown</u>, 88 F.3d 1315, 1327 (4th Cir. 1996).  <u>Moore v. City of Kilgore</u>, 877 F.2d at 372 (the "informed speech" of fire fighters can provide "valuable information"); <u>Providence Fire Fighters</u>, 26 F.Supp.2d at 356 (public interest is a substantial weight that hangs in the <u>NTEU</u> balance against the fire department's rules).  When elected municipal leaders are more fully informed about agency problems, they can do a better job, and the public is better served.  Indeed, in Mayor Hardin's deposition in this case (p. 59 lines 9 to 17), he acknowledged that receiving information from City employees enables him to do a better job for the citizens in Phenix City.  In stark contrast, imposing restrictions and pre-conditions on fire fighters only establishes a "device for the suppression of the communication of ideas and permits the official to act as a censor." <u>Moore v. City of Kilgore</u>, 877 F.2d at 387, quoting <u>Cox v. Louisiana</u>, 379 U.S. 536, 557 (1965).  <u>See</u>, <u>Harman</u>, 140 F.3d at 120.

In short, Section 2.054 of the City's Merit System Regulations, ASOP 12 of the fire department, and related policies and practices impose unconstitutional restrictions on Davis and other fire fighters communicating with the Mayor and City Council members about issues affecting the City's fire department and the public.  Under <u>NTEU</u>, the City can not carry its heavy burden of demonstrating that the interests of both potential audiences and a vast group of present and future employees in present and future expression are outweighed by the "expression's necessary impact on the actual operation of the Government."  513 U.S. at 468.  Applying well-established authorities, these regulations, policies and actions should be found unconstitutional and invalid.

### D.  The City's Restrictive Regulations and Policies Also
####    Violate the First Amendment Right of Free Association

The plaintiff's freedom of association claim parallels his free speech claim.

Indeed,  "the right to association in order to express one's views is 'inseparable' from

the right to speak freely."  Thomas v. Collins, 323 U.S. 516, 530,  As the Supreme Court

explained in Roberts v. United States Jaycees:

> An individual's freedom to speak, to worship, and to petition
> the government for the redress of grievances could not be
> vigorously protected from interference by the State unless
> a correlative freedom to engage in group effort toward
> those ends were not also guaranteed . . . . Consequently,
> we have long understood as implicit in the right to engage
> in activities protected by the First Amendment a
> corresponding right to associate with others in pursuit of a
> wide variety of political, social, economic, educational,
> religious, and cultural ends.  Id., at 622, 468 U.S. 609; see
> also NAACP v. Alabama, et rel. Patterson, 357 U.S. 449,
> 460-61, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

> 468 U.S. 609, 622 (1984)

Following the same analytical approach used in the prior restraint/free speech

decisions cited above, the defendants must carry a heavy burden for justifying the

restrictions against Davis and other City employees exercising their associational rights

in the future with respect to City Council members.

As this Court has previously noted (June 27, 2007 Memorandum and Order, p.

18), "the right of expressive association includes the freedom to associate for the

purposes of engaging in activities protected by the First Amendment, such as speech,

assembly, petition for the redress of grievances, and the exercise of religion.  McCabe,

12 F.3d at 1563."  Without repeating the facts detailed above, in the circumstances

presented here, the plaintiff is also entitled to partial summary judgment with regard to the prior restraint imposed on the First Amendment right of free association.

In sum, where City regulations, policies and practices plainly impose an unconstitutional prior restraint, the proper remedy is to declare them void and enjoin their enforcement.  <u>See</u>, <u>e.g.</u>, <u>Providence Firefighters</u>, 26 F.Supp.2d at 357.


**IV. <u>CONCLUSION</u>**

Based on the material facts and the applicable legal principles set forth above, plaintiff David Davis respectfully submits that this motion for partial summary judgment should be granted.

Respectfully submitted,


/s/ Thomas A. Woodley
Thomas A. Woodley
Molly A. Elkin
Bryan G. Polisuk
WOODLEY & McGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C.  20005
Tel: (202) 833-8855
Fax:  (202) 452-1090



/s/ Gary Brown
Gary Brown, Esq.
FITZPATRICK & BROWN LLP
Farley Building, Suite 600
1929 Third Avenue North
Birmingham, Alabama 35203
Telephone (205) 320-2255
Fax:  (205) 320-7444

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS,                          )
                                      )
            Plaintiff,                )
                                      )
      vs.                             )        CIVIL ACTION NO. 3:06-cv-00544-WHA
                                      )
PHENIX CITY, ALABAMA, et al.          )        Judge W. Harold Albritton
                                      )
            Defendants.               )
_____)

## CERTIFICATE OF SERVICE

This is to certify that on December 10, 2007, I electronically filed Plaintiff's

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial

Summary Judgment using the CM/ECF system which will send notification of such filing

to defendants' counsel:

Joshua Robert McKoon
McKoon, Thomas, & McKoon
925 Broad Street
P.O. Box 3220
Phenix City, AL 36868


/s/ Thomas A. Woodley
Thomas A. Woodley
Attorney for Plaintiff

35