IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS, )
)
    Plaintiff, )
)
vs. ) CIVIL ACTION NO. 3:06-cv-00544-VPM
)
PHENIX CITY, ALABAMA, et al. )
)
)
    Defendants. )
)

## DECLARATION OF DAVID DAVIS

I, David Davis, under the penalty of perjury, do hereby swear that the following is true and correct:

    1.    I am the plaintiff in this court action. I was hired by the defendant Phenix City (hereafter "City"), and its fire department in April, 1998. In May, 2003, I was promoted to the rank of Driver-Engineer (Sergeant). As a fire fighter for the City, I received favorable job performance evaluations; as late as February, 2006, Deputy Chief Roy Waters reported that I was doing an "outstanding job" and had "a very positive and professional attitude". (Exhs. 1 and 12 appended hereto).

    2.    In 2005, I became the President of the Phenix City Firefighters Association, Local 3368, International Association of Fire Fighters (hereafter "Local 3668"), a local labor organization comprised of fire fighters and rescue service employees employed in the City's fire department.

3. The City Council of Phenix City consists of five members elected by the citizens, including the Mayor. All matters of City policy are vested in the Council. (Exh. 2 appended hereto).

4. The City Manager is subject to appointment to, and removal from, that position by a majority vote of the City Council. The City Manager is responsible for the supervision and administration of the officers of the City, which includes enforcing laws and ordinances, supervision and control over all officers and employees of the City, and the appointment and termination of City employees. (Exh. 2 appended hereto).

5. In my capacity as an officer and leader of Local 3668, the Phenix City Firefighters Association, I have been the representative and spokesperson for the other members of that labor organization employed in the City's fire department, and I have tried to speak out on matters of public concern regarding public safety, fire fighters safety and health, fire and rescue services, adequate fire department staffing, employee morale, and other subjects.

6. In my former position as the Vice President of Local 3668, I presented a memorandum and proposal to the previous City Fire Chief Jerry Prater (on behalf of the members of Local 3668) requesting a meeting to discuss safety and health issues, employee morale, department "swap" or trading of time, communications, discipline, salaries, and other conditions of concern. (Exh. 3 appended hereto).

7. In response to my memorandum and proposal, then-Chief Prater had me picked up at my fire station in a Chief's car (without me knowing why or what for). I was

transported to Chief Prater's office where City Personnel Director Goodwin was also waiting. The meeting lasted only a short time.

8. On September 13, 2005, I and other leaders and members of Local 3668 attended a union meeting to discuss understaffing in the Phenix Fire Department; poor employee morale; the safety of fire fighters and the public; fire and rescue services; and their fears of retaliation and discipline if they spoke out publicly or otherwise about their serious concerns. Chuck Williams, a journalist employed by the newspaper <u>Columbus Ledger-Enquirer</u>, asked to attend the Local 3668 meeting to interview me and the other members for the purpose of doing an article on the issues of concern in the Phenix Fire Department.

As a result of that discussion, an extensive article appeared in that newspaper in mid-September, 2005 which addressed concerns expressed by me and others regarding fire fighting and public safety; understaffing in the fire department; high turnover and the lack of retention of experienced fire fighters; the elimination of "swap" or trading of time among the fire fighters; and threats to change shift schedules. (Exh. 4, appended hereto). I, as President of Local 3668, was quoted in the article expressing my public concerns that "[m]orale is at the lowest point since I've been here." I stressed: "We are reluctant to talk because of significant fear of retaliation, being disciplined or fired". Fire Chief Hunter was also interviewed and quoted in the article about the issues impacting the Phenix fire department.

During this time period, a number of letters to the editor were published in local newspapers in which citizens expressed their views on fire department issues. (Exh. 5 appended hereto).

9. Immediately after the newspaper article appeared in the <u>Columbus Ledger-Enquirer</u> in mid-September, 2005, Fire Chief Hunter and Assistant Chief Johansen conducted an investigation taking statements from me and eight other fire fighters who were named in the article. (Exhs. 6 and 7 appended hereto). My statement, dated September 20, 2005, noted: "On Tuesday, September 13, 2005, on my off duty day and acting as President of the Phenix City Firefighters Association, Local 3668, I met with and gave an interview with the local media on issues of the Phenix City Firefighters Association". (Exh. 6 appended hereto). During questioning by Chief Hunter, I told him that I spoke to the newspaper reporter about matters of public concern and as the President of Local 3668; Chief Hunter told me that the "union" will be the end of my career.

10. Fire fighter Robert Gaskin also participated in the discussion with the media representative; he too was interrogated by Assistant Chief Johansen about the newspaper article, and he gave the following statement to fire department officials:

> "On this date, September 20, 2005, at or near 9:30 A.M., I was instructed by Assistant Chief Johansen to write this statement.
>
> The purpose of this statement, according to Assistant Chief Johansen, was to specify what authorization I obtained to speak about city policies and procedures.
>
> I was not aware that I needed to gain authorization to exercise my right to free speech. I firmly feel that everyone in the United States has this right or freedom. I feel pressured to write this statement, and

4

feel that my rights are being questioned. Assistant Chief Johansen stated that lawyers (I assume for the City) are going to be looking at this statement, so I may seek legal counsel myself."

(Exh. 7 appended hereto).

11. Also on September 20, 2005, Chief Hunter issued a written directive to all members of the Phenix fire department which stated, in part: "Recently there was an article in the Ledger-Enquirer Newspaper regarding our department. Several fire fighters made comments in the paper that were likely to impair discipline and harmony in the workplace, impede job performance and jeopardize loyalty in this department." Chief Hunter attached the portion of the City's merit systems rules and regulations titled "Free Speech". (Exh. 8 appended hereto). He stressed in his directive that "[t]hese rules **must** be followed", (emphasis in original), and that "[f]ailure to follow the rules in the future will be dealt with in accordance with the merit system". Each fire department employee had to sign this Memorandum acknowledging receipt, and it was placed in the employee's personnel file. (Exh. 8, appended hereto).

12. The same directive (with the attached copy of the "Free Speech" section of the City's merit system rules and regulations) was distributed by City Manager Roberts to "All Employees" of the City, also on September 20, 2005. (Exh. 9 appended hereto).

13. As a result of the investigation into the newspaper article, I was issued a "Counseling Form" on September 20, 2005 by Chief Hunter and Assistant Chief Johansen which stated, in part: "Sgt. David Davis was counseled by Chief Hunter and Assistant Chief Johansen on 20th of September, 2005, concerning him making or

5

publishing statements to the local media." (Exh. 10 appended hereto). I was instructed to sign and date this form, acknowledging that I understood this official notice will become a part of my personnel file. Fire fighter Robert Gaskin was given the same written form and it was placed in his personnel file. (Exh. 10 appended hereto, p. 2).

About this same time, Assistant Chief Johansen told me that the "union" was ruining my career and that City Manager Roberts was tired of the union's "crap".

14. The City's Merit System Rules and Regulations (the so-called "Free Speech" section 2.054; Exh. 11 appended hereto) prohibit me and other City fire fighters from speaking directly to the media or publicly, at any time, about issues involving the provision of fire and rescue services by the Phenix City fire department, including the following matters:

- Inadequate staffing in the fire department;
- Safety and health of fire fighters;
- Inadequate fire department equipment and vehicles;
- Insufficient financial/budgetary resources from the fire department;
- Emergency response times and dispatching procedures;
- Employee morale in the fire department;
- Corruption by fire department officials; and
- The fire department's protection of public safety.

If a City fire fighter should speak to the media about these issues, he/she is subject to discipline, up to and including termination.

6

The City's position is that even if a fire fighter raises these issues of public concern through the chain of command, he/she still does not have the right to discuss those issues with the media at any time.

15. When City Manager Roberts and Chief Hunter received a letter from IAFF General President Schaitberger's letter dated January 31, 2006, Deputy Chief Roy Waters met with me and inquired about what generated the Schaitberger correspondence. Following that meeting, Waters gave Chief Hunter a Memorandum dated February 6, 2006, reporting on his investigation of me and the Schaitberger letter. Waters remarked that I did not have any individual complaints and that I did not generate the letter. Deputy Chief Waters stressed at the end of his Memo to Chief Hunter: "As I have communicated to you on several occasions, David Davis is doing an outstanding job for me and has a very positive and professional attitude". (Exh. 12 appended hereto).

16. In a reply letter from City Manager Roberts to Schaitberger dated February 14, 2006, Mr. Roberts observed that the Deputy Chief had spoken to me and said that I did not have any individual complaints. (Exh. 13 appended hereto).

17. On or about April 16, 2006, I learned that the City Council, in the next day or two, would be giving final consideration to adopting an Ordinance (No. 2006-13) amending the City's Merit System Rules and Regulations extending the probation period for new hires in the fire department from one year to 18 months. I understood that the proposed change would not affect me personally because I had been employed in the fire department for eight (8) years. (Exh. 14 appended hereto).

18. On Monday, April 17, 2006, and while off-duty, and in my capacity as President of Local 3668, I contacted a number of my fellow fire fighters and union members regarding the proposed City Ordinance. They were all opposed to the proposed change, expressing concerns that it would adversely effect recruitment of qualified persons into the City's fire department; harm the ability to retain qualified personnel; make it more difficult to maintain adequate staffing levels in the fire department; and possibly hurt the fire fighters' ability to work secondary jobs to bolster their family income.

19. On the afternoon of April 17, 2006, while off-duty and in my capacity as President of Local 3668 and as a citizen, I telephoned Mayor Hardin's office to discuss the proposed Ordinance and related issues. Mayor Hardin was not available and I left a message asking that the Mayor call me back. (Exh. 15 appended hereto).

20. Later that evening, Mayor Hardin called me back. In that telephone conversation, I stated that I called the Mayor as President of Local 3668 and on behalf of its members to express public concerns about the proposed City Ordinance enlarging the probation period for new hires. I spelled out those concerns, and offered proposals and other options for consideration by the Mayor and other City Council members (such as, making sure that fire department employees who are disciplined or promoted are not placed on probation because of the adverse impact it could have regarding the retention of experienced personnel, reductions in adequate staffing, prohibitions against holding secondary jobs to make a reasonable living, etc..). He thanked me for the input and said he and other Council members would consider these points.

21. I had similar telephone conversations on April 17, 2006 with City Council members Ray Bush and Arthur Sumbry while off duty, and in my capacity as President of Local 3668 and as a citizen.

22. During this period of time, I and City and fire department officials understood that the proposed Ordinance extending the probation period for future new hires from one year to 18 months would have no effect whatsoever on me as a City employee because I had already been employed in the fire department for eight (8) years. As a result, when I communicated with the Mayor and the two Council members, I was not pursuing my individual complaint or grievance as an employee of the City.

23. Deputy Chief Waters met with me on April 19, 2006 and asked me to prepare a written statement concerning my telephone conversation with the Mayor. I typed-up and handed the following signed statement to Deputy Chief Waters:

> 4/19/06
> Wallace Hunter, Fire Chief
>
> On Monday, April 17, 2006, I placed a call to Mayor Hardin's office. As President of the Phenix City Firefighters Association/Local-3668, I made this call in regards to some labor issues in which I had concerns with. Mayor Hardin returned my call later that evening and we discussed the issues in which I wanted to address.
>
> Respectively,
>
> David P. Davis.

(Exh. 16 appended hereto).

24. Chief Hunter then submitted a report to City Manager Roberts dated April 20, 2006 (with a copy to Ms. Goodwin). Chief Hunter stated, in part, as follows:

9

> "This memo is to inform you about a conversation between Personnel Director Barbara Goodwin and myself about the city's new probation time for new hires for Public Safety. During this conversation, I was informed that one of our firefighters, Sgt. David Davis, called Mayor Hardin to discuss or complain about the new policy. This is a clear violation of our Merit System and S.O.P.'s. Sgt. David Davis was counseled on this type of violation in September 2005 and he signed indicating his understanding of this violation.
>
> On Wednesday, April 19, 2006, Deputy Chief Roy Waters met with Sgt Davis and asked him why he violated the chain of command and Merit System to call Mayor Hardin. His response was that as president of the Phenix City Firefighters Association/Legal-3668; he made a call in regards to labor issues in which he had concerns with. Mayor Hardin returned his call later that evening and they discussed the issues in which he wanted to address."

At the end of this Memorandum to City Manager Roberts, Chief Hunter was very critical of Mayor Hardin. Specifically, he said that "Mayor Hardin should refer any employee violating the chain of command, as indicated in our merit system back to their department head, personnel department or city manager. Failing to do so is in violation of our city charter . . . ." (Exh. 17 appended hereto).

25. The City's Merit System Rules and Regulations (the so called "Free Speech" section 2.054), as well as a fire department Standard Operating Procedure (ASOP 12), prohibit me and other City fire fighters, at any time, and in any public or non-public forum, from addressing or speaking with the City's elected Mayor and the other four elected members of the City Council about any issues involving the provision of fire and rescue services by the City's fire department — including the subjects listed above in para. 14. These prohibitions remain applicable even if a fire fighter should

10

first pursue and exhaust the chain-of-command in the fire department. (Exh. 11 appended hereto).

If a fire fighter wants an issue related to fire and rescue services raised with the City Council, he/she must submit that request to the City Manager who is the only City representative that is permitted to discuss the issue with the members of the City Council.

26.   Personnel Director Goodwin prepared a Written Warning Form and notice of discharge dated April 20, 2006. That document states that I violated the Merit System Rules and Regulations when "[o]n April 17, 2006 at 12:30 p.m.. Driver Engineer David Davis called Mayor Hardin regarding City proposals". (Exh. 18 appended hereto). This was considered a "Group II Offense ("negligence or omission in complying with the requirements as set forth in miscellaneous rules"), and a "Group III Offense" ("Insubordination by the refusal to perform work assigned/to comply with written or verbal instructions of the supervisory force"). This discharge document also referred to a prior "corrective action": namely, the discussion I had in mid-September 2005 with the newspaper journalist and resulting article regarding various issues of public concern.

27.   Deputy Chief Waters ordered me to come to the Personnel Director's office on April 21, 2006, a day when I was off-duty. I went to that office where Ms. Goodwin, Chief Hunter and Deputy Chief Waters were waiting for me. I was handed the discharge form and told I was terminated. (Exh. 18 appended hereto). The form was already signed by Ms. Goodwin, Chief Hunter and Deputy Chief Waters. On the lines available for the "Employee's comments", I filled in the following statement:

> "In regards to contacting the Mayor, I was acting in my capacity as President of the Phenix City Firefighters Association, Local 3668 and not as a Driver Engineer with the City of Phenix City. I will seek review board hearing".

I was also handed an "End of Employment Form" which confirmed that I was "dismissed" on April 21, 2006; that form was signed by Ms. Goodwin, Chief Hunter, and me. (Exh. 19 appended hereto).

I was told to return to my fire station, clear out my locker, turn in my gear, and leave the station.

28. I pursued an appeal of my dismissal before the City's Personnel Review Board, consisting of members appointed by the City. (Exh. 20 appended hereto). After a hearing on May 16, 2006, the Board recommended to City Manager Roberts that the earlier decision (made by City Manager Roberts himself) be upheld. (Exh. 21 appended hereto). Two days later, on May 18, 2006, City Manager Roberts sent me a letter indicating that he accepted the recommendation of the City's Personnel Review Board, and that my termination "is upheld". (Exh. 22 appended hereto).

29. Following my termination, local newspapers and other media reported on my termination. (Exh. 23 appended hereto).

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and based on my personal knowledge and belief.

_____
David Davis

Date: ___04/11/2007___