# DEPOSITION OF H. H. ROBERTS

1

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE MIDDLE DISTRICT OF ALABAMA

3                      EASTERN DIVISION

4

5    DAVID DAVIS,                          COPY

6          Plaintiff,

7    vs.                    CASE NO. 3:06-CV-0054-VPM

8    CITY OF PHENIX CITY, ALABAMA,

9    et al.,

10         Defendants.

11

12

13              * * * * * * * * * * *

14

15      DEPOSITION OF H.H. ROBERTS, taken pursuant to

16   stipulation and agreement before Shannon M.

17   Williams, Certified Court Reporter and Commissioner

18   for the State of Alabama at Large, in the offices of

19   City Hall, 601 12th Street, Phenix City, Alabama, on

20   Wednesday, April 4, 2007, commencing at

21   approximately 12:37 p.m. EST.

22

23              * * * * * * * * * * *

24

25

APPEARANCES

1

2   FOR THE PLAINTIFF:

3   THOMAS A. WOODLEY
    Woodley & McGillivary
4   1125 15th Street N.W.
    Suite 400
5   Washington, D.C.  20005

6   FOR THE DEFENDANTS:

7   JAMES P. GRAHAM, JR.
    712 13th Street
8   P.O. Box 3380
    Phenix City, Alabama  36868-3380

9

10  JAMES R. MCKOON, JR.
    McKoon & Thomas
11  925 Broad Street
    P.O. Box 3220
12  Phenix City, Alabama  36868-3220

13

14  ALSO PRESENT:

15  David Davis
    Wallace Hunter

16

17

18

19

20

21

22

23

24

25

3

STIPULATIONS

1                              STIPULATIONS

2           It is hereby stipulated and agreed by and

3    between counsel representing the parties that the

4    deposition of H.H. ROBERTS is taken pursuant to the

5    Federal Rules of Civil Procedure and that said

6    deposition may be taken before Shannon M. Williams,

7    Certified Court Reporter and Commissioner for the

8    State of Alabama at Large, without the formality of

9    a commission; that objections to questions other

10   than objections as to the form of the questions need

11   not be made at this time but may be reserved for a

12   ruling at such time as the deposition may be offered

13   in evidence or used for any other purpose as

14   provided for by the Federal Rules of Civil

15   Procedure.

16           It is further stipulated and agreed by and

17   between counsel representing the parties in this

18   case that said deposition may be introduced at the

19   trial of this case or used in any manner by either

20   party hereto provided for by the Federal Rules of

21   Civil Procedure.

22             * * * * * * * * * *

23

24

25

*Causey Peterson Reporting, Inc.*
*Post Office Box 81*
*Columbus, Georgia 31902*
*(706) 317-3111*

4

1                    H.H. ROBERTS

2           The witness, having first been duly sworn

3    or affirmed to speak the truth, the whole truth and

4    nothing but the truth, testified as follows:

5           THE REPORTER:  Usual stipulations?

6           MR. GRAHAM:  We do want to read and sign.

7                         EXAMINATION

8    BY MR. WOODLEY:

9       Q.   Could you state your full name for the

10   record, please?

11      A.   Herbert Hayes Roberts.

12      Q.   Mr. Roberts, I know you've been sitting in

13   on the two depositions that we had earlier this

14   morning, correct?

15      A.   That's correct.

16      Q.   But for the record of your deposition, I

17   want a couple things to be clear.  First of all, my

18   name is Tom Woodley, and I'm one of the plaintiff's

19   attorneys representing David Davis in this lawsuit.

20   You understand that?

21      A.   I do.

22      Q.   Okay.  Have you ever had your deposition

23   taken before in a previous case?

24      A.   I have.

25      Q.   Is that more than one previous case?

5

1     A.   Yes, sir.

2     Q.   How many?  Ten?

3     A.   I have been with the city 34 years.  I'm ex

4  law enforcement and I've had several depositions.

5     Q.   In light of that experience, I take it

6  you're familiar with the procedures we'll be

7  following in this deposition?

8     A.   Yes, sir.

9     Q.   And have you had an opportunity before

10  today to discuss with the city attorneys the nature

11  of this lawsuit and the issues that are involved?

12     A.   I have.

13     Q.   Well, again, I'll be asking you a number of

14  questions, and we expect you to give the best

15  answers that you're able to give.  You understand

16  that?

17     A.   Yes, sir.

18     Q.   And everything that you and I say will be

19  taken down by this court reporter.

20     A.   Yes, sir.

21     Q.   And she will put it in a transcript form,

22  and we should have that available perhaps as early

23  as next week.  Do you understand that?

24     A.   I understand that.

25     Q.   If at any time you don't hear or understand

1    one of my questions, stop me right away and I'll be

2    glad to repeat or rephrase that question.  Do you

3    understand that?

4         A.   Yes, sir.

5         Q.   And, of course, most importantly, you are

6    under oath, sworn to tell the truth under the

7    penalty of perjury.  Do you understand that,

8    Mr. Roberts?

9         A.   I understand that fully, sir.

10        Q.   All right.  Let's get into it.  What is

11   your current position that you hold with the city?

12        A.   City manager.

13        Q.   And how long have you held the position of

14   city manager?

15        A.   I was first appointed in 2002.  Latter part

16   of 2001, excuse me -- 2002 -- five years.

17        Q.   Were you appointed by the city council?

18        A.   Yes, sir, I was.

19        Q.   Okay.  And did you work for the city in

20   another capacity before that?

21        A.   I did.

22        Q.   What was that?

23        A.   I was assistant city manager as well as

24   director of code enforcement.

25        Q.   How long did you hold that job?

1      A.    Since 1973 as an enforcement guy, and as

2    assistant city manager since 1998 -- or '96, excuse

3    me.

4      Q.    In your job as a city manager, what are

5    your basic duties and responsibilities?

6      A.    The basic day-to-day operations of the

7    city.

8      Q.    Okay.  Let me invite your attention to a

9    binder of exhibits which you have in front of you,

10   Mr. Roberts, and Mr. Graham also has a full set of

11   these exhibits available to him.  And Exhibit

12   Number 8 is the charter of the City of Phenix City;

13   is that right?

14     A.    That's correct.

15     Q.    Okay.  I take it you're pretty familiar

16   with the provisions of this city charter?

17     A.    Fairly familiar, yes, sir.

18     Q.    And, as I understand it, the city council

19   consists of five members; is that true?

20     A.    That's correct.

21     Q.    And one of those members is the mayor of

22   the city?

23     A.    That's correct.

24     Q.    And those are elected positions?

25     A.    Yes, sir.

8

1      Q.   Okay.  If you could turn to Section 4 of
2  the city code which deals with the powers and duties
3  of the city manager.  And I take it it's true that
4  you're familiar with those provisions of the charter
5  as well?
6      A.   I am, sir.
7      Q.   And is it accurate to say that you, as the
8  city manager, are the head of the administrative
9  branch of the city government?
10     A.   Yes, sir.
11     Q.   And you're accountable and responsible to
12 the city council?
13     A.   Yes, sir.
14     Q.   Are you accountable or responsible in any
15 way to the city's mayor?
16     A.   Not as a whole, no, sir.
17     Q.   And when you say not as a whole, what do
18 you mean by that?
19     A.   I work for the entire city council.  I
20 answer to all of them equally.
21     Q.   And under the city code, particularly
22 Section 4, you are responsible as the city manager
23 to enforce the laws and ordinances?
24     A.   I am.
25     Q.   And do you have the authority to appoint

9

1    officers and employees of the city?

2       A.  I do.

3       Q.  And when it says appoint, does that mean

4    hire?

5       A.  The appointed -- you appoint your division

6    heads and, of course, your department heads, which

7    is different from your Merit System employees.  I

8    appoint those.

9       Q.  What about a person that wants to be hired

10    in the city fire department?  Who has that hiring

11    authority?

12       A.  I would ultimately okay it.  That's given

13    down to each of the chiefs or department heads.

14       Q.  Okay.  So if Fire Chief Hunter wants to

15    hire a person in the fire department, he sends that

16    up to you, you approve it, and then he's authorized

17    to hire?

18       A.  Let me explain that to a great degree.

19       Q.  Sure.

20       A.  Once they have went through that process of

21    testing, the chief or any department head will hire

22    their own employee.  I try not to get involved in

23    the hiring of the day-to-day everyday employees.

24    That's between the personnel director, the personnel

25    department, and the various departments.  I do

1 approve or hire all department heads or appointed

2 division chiefs.

3     Q.   All right.   What about with regard to a

4 possible termination or discharge of an employee in

5 the fire department?   What's your role in that?

6     A.   The Merit -- the charter, of course, says

7 that I'm responsible for all hires and terminations,

8 as you are well aware.   However, there is a section

9 where I can delegate that hiring and terminations to

10 the department heads, of which I have done.   I let

11 the department heads manage their own affairs within

12 the department.

13     The reasons for that is probably two-fold.

14 Number one, if there's an appeal process that's

15 going to take place, the ultimate decision is going

16 to come back to me, and then that's when I really

17 try to get more involved during the normal course of

18 any termination or any disciplinary action.

19     Q.   And specifically with regard to the

20 plaintiff, David Davis, in this case, were you the

21 ultimate decision maker on his termination of

22 employment?

23     A.   I was the ultimate decision maker.

24     Q.   Okay.   You want to add something?

25     A.   No, that's good.

11

1    Q.  I'm sure we'll cover that again, so if you

2    have another thought, you'll have a chance to

3    express it.

4        Then going on to Section 9 of the city charter

5    which, in part, addresses the removal of officers

6    and employees.  Does that Section 9.01 also give you

7    the authority, as the city manager, to remove

8    employees of the city?

9    A.  Yes, sir, it does.

10   Q.  Okay.

11   A.  It will also say subject to the approval of

12   such -- if you have a Civil Service board, which we

13   do not.  We have a Merit System.  We have a

14   Personnel Review Board that would review any of the

15   classified workers, which is anything other than the

16   department heads or the division chiefs.

17   Q.  What's your understanding as the difference

18   between a Civil Service commission or board and a

19   Personnel Board that sits here?

20   A.  Usually a Civil Service board is what we

21   had when we was under the old commission form of

22   government, three-man, and usually it dealt

23   specifically with usually police and fire in our

24   instances as a three-man commission form of

25   government.

1    When we changed forms of government and became

2    under a council/manager form of government, we had

3    no protection or anything as far as our other

4    employees were concerned, and we chose to go -- or

5    the council at the time chose to go to a Merit

6    System which covered everyone and we did away with

7    the Civil Service board.

8    Q.   Okay.  Under the current system and the

9    system that applied to Mr. Davis's termination, it

10   was a Personnel Board procedure; is that correct?

11   A.   It was an appeal to the Personnel Review

12   Board, and they made the decision, and I upheld the

13   decision.

14   Q.   Just so I understand the process,

15   Mr. Davis, for example, a firefighter employed in

16   the city's fire department, was terminated.  Then he

17   had the right to appeal that decision to the

18   Personnel Board, correct?

19   A.   That's correct.

20   Q.   And he, in fact, did that --

21   A.   He did.

22   Q.   -- correct?  And then after that decision

23   of the Personnel Board, it goes to your desk as a

24   city manager to make the final decision on the

25   termination such as in the case of Mr. Davis?

13

1      A.   That's correct.

2      Q.   And when that decision involving Mr. Davis

3  came from the Personnel Board to you, did you have

4  the authority to approve the decision of the board

5  or disapprove as well?

6      A.   I could have overruled the board or I could

7  have approved the board.  In this case, I listened

8  to the case.  I went along with the board's reading

9  and followed their advice.

10     Q.   The board's decision, does that come as a

11 recommendation to you?

12     A.   Yes, sir, it does.

13     Q.   So it's not a decision as such; it's a

14 recommendation to the city manager?

15     A.   It's a recommendation to me that I can

16 either accept or deny.  If I deny, then, of course,

17 it would go before the full council for a hearing.

18     Q.   But if you approve the Personnel Board's

19 recommendation as you did in the Davis case, that's

20 the end of the matter?

21     A.   Yes, sir, it is.

22     Q.   So Mr. Davis did not have the opportunity

23 or the right to go to the city council to appeal his

24 termination?

25     A.   That's correct, sir.  When I say that's the

14

1    end of it, of course, you know, the civil process.

2        Q.   What do you mean civil process?

3        A.   Court procedures.

4        Q.   Which is where we find ourselves.

5        A.   Unfortunately.

6        Q.   Does the mayor play any role in the

7    termination of city employees?

8        A.   No, sir, he does not, unless it's a city

9    manager.  I know of no one since '77 since we've

10   been under this form which has not followed a

11   recommendation of the Personnel Review Board.  That

12   would be the only way -- and I'm not going to say

13   mayor, but that would be the only way a council

14   would be involved in a termination --

15       Q.   Okay.

16       A.   -- or suspension.  It could be either/or.

17           MR. GRAHAM:  Let's go off the record a

18       minute.

19           MR. WOODLEY:  Sure.

20   (Discussion held off the record.)

21           MR. WOODLEY:  Back on the record.

22       Q.   In the particular case of Mr. Davis and his

23   termination -- and we've already covered the ground

24   of what the Personnel Board did, and you upheld that

25   recommendation -- what would have happened, if

15

1   anything, if a couple of the city council members

2   wanted to take up the termination of Mr. Davis?

3   Would they have the authority under the city charter

4   or any other law to take up that matter?

5       A.   My understanding is that they do not.

6       Q.   Okay.  And the mayor himself, as mayor,

7   doesn't have the authority to overrule your decision

8   upholding the termination of Mr. Davis, does he?

9       A.   No, sir, he does not.

10       Q.   Okay.  Now, let me ask you -- we have an

11   exhibit if you want to refer to it; it happens to be

12   Exhibit 4 -- there is an Alabama State Code

13   provision that gives firefighters in the State of

14   Alabama the right to belong to a labor organization

15   or to choose not to belong to a labor organization.

16   Are you aware of that?

17       A.   I am aware of that.

18       Q.   Are you aware that that same Alabama State

19   Code provision gives firefighters the right, through

20   their representatives such as a labor organization,

21   to make proposals to their employers concerning

22   salaries and other conditions of employment?

23       A.   I'm very much aware of that.

24       Q.   Okay.  And are you aware that that same

25   Alabama State Code provision prohibits a person from

16

1    discharging or discriminating against any

2    firefighter when he or she may exercise the rights

3    to belong to or lead a local labor association or to

4    make proposals?

5         A.   Yes, sir.  I understand that.

6         Q.   And how long have you understood that

7    roughly?

8         A.   I have been a IBEW member since I was 19

9    years old.

10        Q.   Are you still an IBEW member?

11        A.   No, sir.  I've had my 30 years.

12        Q.   Thirty years?  Did you work as an

13   electrician?

14        A.   Yes, sir.  I'm a master electrician.

15        Q.   Are you still working as an electrician?

16        A.   I have my state license, yes, sir, but I'm

17   not allowed to do any side work.

18        Q.   Have you ever been a member of another

19   union before?

20        A.   No, sir.

21        Q.   Are you aware that the firefighters here

22   employed by the City of Phenix City have their own

23   labor organization?

24        A.   I am.

25        Q.   Do you know how long that has existed?

17

1     A.    They have had a local here for quite
2   awhile.   I don't know the exact number of years, but
3   they've had a local for quite awhile.
4     Q.    Are you aware that the police employed by
5   the City of Phenix City also have an association?
6     A.    I've been a member of the FOP, sir.
7     Q.    You've been a member of the FOP?
8     A.    Yes, sir.
9     Q.    Because you worked in the police
10  department?
11    A.    Yes, sir.
12    Q.    Are you still a member of the FOP?
13    A.    No, sir, not since I moved up here.   I
14  still hold my law enforcement certification due to
15  retirement purposes with the state, but I -- in a
16  management level, I felt that would be
17  inappropriate.
18    Q.    In your last three years, I think it was,
19  as city manager here in the city, have you had
20  occasions to meet with leaders or members of the
21  FOP --
22    A.    I have -- go ahead.   Excuse me.   I'm
23  sorry.
24    Q.    -- meet with leaders or members of the
25  FOP?

18

1     A.   I have daily contact with some of the FOP

2    members.  I have not met with them.  I have, since I

3    have been back, met with some of the International

4    Association of Firefighters.

5     Q.   Okay.  Has the FOP ever made any proposals

6    to you, as the city manager, concerning the salaries

7    or working conditions of police officers?

8     A.   No, sir.

9     Q.   Has the International Association of

10    Firefighters or the local affiliate here in Phenix

11    City ever made any proposals to you concerning

12    firefighter salaries or employment conditions?

13     A.   Yes, sir.

14     Q.   As I understand it, Mr. Roberts, the fire

15    chief here in the city reports and is accountable to

16    you as the city manager; is that correct?

17     A.   Yes, sir.

18     Q.   Does the fire chief have the right, if he

19    wanted to, to bypass you as the city manager and

20    address the city council on issues that he may

21    consider important in the fire department?

22     A.   I'm going to answer this in this way.  I

23    would hope that he wouldn't bypass me.  In a

24    paramilitary organization, you certainly don't want

25    someone subordinate going around you.  I have never

19

1    had that to happen under our tenure.  They're given

2    a chance -- the department heads are given a chance

3    to express their budget shortfalls -- or any

4    department head, not just the fire department -- at

5    proper times.

6        I would also like to add that if there's any

7    problem within any of the departments, I would hope

8    that I would go or either follow the proper

9    procedure to look into what their complaint is or

10   their shortcomings may be.

11       Q.   What would happen if Fire Chief Hunter next

12   month did not discuss an issue with you first but

13   went directly to a city council meeting about a fire

14   department operations issue and spoke to the city

15   council?  Would he be subject to discipline or

16   charged with violating the charter of the city or

17   the Merit System --

18       A.   Well --

19       Q.   -- let me finish -- or the Merit System

20   regulations?

21       A.   Number one, the fire chief and division

22   chiefs are not covered under the Merit System, by

23   Attorney General opinion and, also, you know,

24   they're an at will employee.  They work strictly for

25   me.

1    I would hope that I would not have a department

2 head to do that.  If he did, then I would probably

3 take the appropriate actions probably according to

4 what he discussed with them or something of that

5 magnitude.

6    Q.   When you say appropriate action, what would

7 be the range of actions that you could take?

8    A.   You know, it could come down to a

9 counseling or maybe a termination.  It's -- you

10 know, that's hypothetical.

11    Q.   And what is it that might be violated if

12 the chief went directly to the council on an issue

13 affecting the fire department?  Is it a charter code

14 provision or is there something else in writing?

15    A.   No, sir, it's not.  No, it's not.

16    Q.   Under the Merit System rules and

17 regulations, are disciplinary actions such as

18 dismissals from employment subject to review as

19 grievances?

20    A.   I would have to look at -- there are

21 certain ways that we have to do a grievance.  I

22 really need to read the exact procedures that goes

23 in.  Some may be a grievance that's going on within

24 the city that I would act on myself rather than a

25 Personnel Review Board hearing.  Usually anything