# DEPOSITION OF WALLACE HUNTER

1

<pre>
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE MIDDLE DISTRICT OF ALABAMA

 3                     EASTERN DIVISION

 4

 5   DAVID DAVIS,                    COPY

 6          Plaintiff,

 7   vs.                  CASE NO. 3:06-CV-0054-VPM

 8   CITY of PHENIX CITY, ALABAMA,

 9   et al.,

10          Defendants.

11

12

13              * * * * * * * * * * *

14

15     DEPOSITION OF WALLACE BURNS HUNTER, SR., taken

16   pursuant to stipulation and agreement before Shannon

17   M. Williams, Certified Court Reporter and

18   Commissioner for the State of Alabama at Large, in

19   the offices of City Hall, 601 12th Street, Phenix

20   City, Alabama, on Wednesday, April 4, 2007,

21   commencing at approximately 10:45 a.m. EST.

22

23              * * * * * * * * * * *

24

25
</pre>

2

```
 1                        APPEARANCES

 2   FOR THE PLAINTIFF:

 3   THOMAS A. WOODLEY
     Woodley & McGillivary
 4   1125 15th Street N.W.
     Suite 400
 5   Washington, D.C.  20005

 6   FOR THE DEFENDANTS:

 7   JAMES P. GRAHAM, JR.
     712 13th Street
 8   P.O. Box 3380
     Phenix City, Alabama  36868-3380

 9

10   ALSO PRESENT:

11   David Davis
     H.H. Roberts

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

STIPULATIONS

1
2      It is hereby stipulated and agreed by and
3  between counsel representing the parties that the
4  deposition of WALLACE BURNS HUNTER, SR., is taken
5  pursuant to the Federal Rules of Civil Procedure and
6  that said deposition may be taken before Shannon M.
7  Williams, Certified Court Reporter and Commissioner
8  for the State of Alabama at Large, without the
9  formality of a commission; that objections to
10 questions other than objections as to the form of
11 the questions need not be made at this time but may
12 be reserved for a ruling at such time as the
13 deposition may be offered in evidence or used for
14 any other purpose as provided for by the Federal
15 Rules of Civil Procedure.
16      It is further stipulated and agreed by and
17 between counsel representing the parties in this
18 case that said deposition may be introduced at the
19 trial of this case or used in any manner by either
20 party hereto provided for by the Federal Rules of
21 Civil Procedure.
22              * * * * * * * * *
23
24
25

4

1                    WALLACE BURNS HUNTER, SR.

2           The witness, having first been duly sworn

3    or affirmed to speak the truth, the whole truth and

4    nothing but the truth, testified as follows:

5              THE REPORTER:  Usual stipulations?

6              MR. GRAHAM:  We do want to read and sign.

7        He's our designated 30(b)(6).

8              MR. WOODLEY:  I'm going to go into that in

9        just a couple minutes for the Record.

10                    EXAMINATION

11   BY MR. WOODLEY:

12       Q.   Mr. Hunter, could you please state your

13   full name for the Record, please, sir?

14       A.   Wallace Burns Hunter, Sr..

15       Q.   You're currently the fire chief of Phenix

16   City Fire Department?

17       A.   Yes, sir.

18       Q.   Chief Hunter, my name is Tom Woodley, and

19   I'm one of the attorneys representing the plaintiff,

20   David Davis, in this pending federal court action.

21   And I assume that you're aware that you are named as

22   an individual defendant in your individual capacity

23   as well as your official capacity in this lawsuit;

24   is that correct?

25       A.   Yes, sir.

5

1      Q.   Are you at least in general familiar with
2  the allegations and the issues that have been raised
3  in this lawsuit?
4      A.   Yes, sir.
5      Q.   Have you had an opportunity to spend some
6  time with the city attorneys about the issues in the
7  lawsuit and the procedures that we'll be following
8  today in your deposition?
9      A.   Yes, sir.
10     Q.   Have you ever had your deposition taken
11  before in another case?
12     A.   Yes, sir.
13     Q.   Is that more than one other case?
14     A.   I guess it was basically -- yes, it was
15  one, I guess, or -- two cases were basically
16  combined, yes.
17     Q.   So in light of that experience and the
18  chance that you have had to spend with the city
19  attorneys, is it fair to say that you are familiar
20  with the procedures that we're going to be following
21  today in your deposition?
22     A.   Yes, sir.
23     Q.   Again, you sat in on the earlier deposition
24  of the mayor and so you saw how that went.  I'll be
25  asking questions.  We expect you to give full,

6

1    complete, and honest answers.  Do you understand

2    that?

3         A.   Yes, sir.

4         Q.   And then we have one of the most able

5    reporters here in the State of Alabama, and she'll

6    be taking down everything that's said today by me

7    and by you.  Do you understand that?

8         A.   Yes, sir.

9         Q.   And then she will have a chance to put that

10   together in a written transcript form which you'll

11   have an opportunity to read and sign.  Do you

12   understand that?

13        A.   Yes, sir.

14        Q.   And you must give verbal responses because

15   the reporter can't take down nods of the head.

16        A.   Yes, sir.

17        Q.   If at any time you don't hear or understand

18   one of my questions, please stop me immediately, and

19   I'll be more than happy to repeat or rephrase that

20   question.  Do you understand that?

21        A.   Yes, sir.

22        Q.   Chief Hunter, are you under any medication

23   or do you have any kind of health condition that

24   might prevent you or impair you from understanding

25   any of my questions?

1      A.   No, sir.

2      Q.   And, of course, lastly, you're obviously

3   under oath and therefore sworn to tell the truth

4   under the potential penalty of perjury.  Do you

5   understand that, Chief Hunter?

6      A.   Yes, sir.

7      Q.   Okay.  Let's refer to the notice of

8   depositions because the city has designated you as

9   the Rule 30(b)(6) deponent.  And you can turn to the

10  binder of exhibits that we have in front of you,

11  which the first exhibit is Exhibit Number 1.  And on

12  page two of that Notice of the Deposition, it

13  indicates certain paragraphs that you have been once

14  again selected by the city and the other defendants

15  as the Rule 30(b)(6) representative to give

16  knowledgeable and authoritative testimony on the

17  issues that are involved in this case.

18      And I want to summarize those areas just so you

19  are again aware of the subjects that you have been

20  authorized to be the Rule  30(b)(6) witness.  And

21  that would be the employment of plaintiff David

22  Davis and the circumstances surrounding his

23  termination by the Phenix City Fire Department.  Do

24  you understand that, sir?

25      A.   Yes, sir.

1    Q.    And then in subparagraph (b) of the notice,

2    it also indicates that you're the representative

3    witness giving testimony on any communications that

4    Mr. Davis has had with the mayor, the city council,

5    persons in the city manager's office, persons in the

6    city's Human Resource Department and directors or

7    persons in the city Fire Department.  Do you

8    understand that as well?

9    A.    Yes, sir.

10   Q.    And the third area would be communications

11   that Mr. Davis has had regarding staffing in the

12   fire department, health and safety of fire and

13   rescue service personnel, the adequacy and

14   efficiency of fire department operations to protect

15   the citizens in this city, and response times and

16   other personnel and employee morale in the fire

17   department.  Do you understand that as well, Chief

18   Hunter?

19   A.    Yes.

20   Q.    The additional area that you have been

21   designated is communications about fire department

22   matters involving the employees and other issues.

23   You're aware of that as well?

24   A.    Yes, sir.

25   Q.    And then you've also been designated as the

9

1   witness concerning communications that relate in any

2   way to the phone conversation that Mr. Davis had

3   with one of the other defendants, Mayor Jeffrey

4   Hardin, on or about April 17, 2006, regarding the

5   proposed extension of the probationary period.  Do

6   you understand that as well, Chief Hunter?

7       A.   That's correct, yes, sir.

8       Q.   And then lastly would be the subject of the

9   facts and documents which relate in any way to the

10  chain of command within the fire department.  You're

11  aware of that as well, Chief Hunter?

12      A.   Yes, sir.

13      Q.   Let me invite your attention to another

14  exhibit within the binder in front of you.  And I

15  should say again for the Record that the city

16  attorney also has a full set of these exhibits for

17  his review during the deposition.

18      Exhibit 6, Chief Hunter, appears to be a job

19  description of the job title of fire chief that has

20  been furnished to me by the city in this case.  Are

21  you familiar with this job description?

22      A.   Yes, sir.

23      Q.   As far as you know, Chief Hunter, is this

24  an accurate job description of what you do as the

25  fire chief?

10

1      A.   Yes.

2           MR. GRAHAM:   Make sure you read it now.

3      Q.   Again, Chief Hunter, when I ask you about

4  these papers and exhibits, make sure that you have

5  an adequate time to review them before you respond

6  to my questions.

7      Chief Hunter, have you had an adequate time to

8  review your job description?

9      A.   Hold on one second.

10     Q.   Okay.  I'm sorry.

11     A.   Yes, sir.

12     Q.   Okay.  So the general question I have, is

13  this a fairly accurate and complete description of

14  your job as the fire chief?

15     A.   Somewhat.  It's always if the city manager

16  give you any other details to do, any extra, it may

17  not be written in here but you have --

18     Q.   And in line of authority, this job

19  description says you, as the fire chief, report to

20  the city manager; is that correct?

21     A.   That is correct.

22     Q.   And how long have you been the fire chief?

23     A.   Since -- officially, since May of 2005.

24     Q.   Okay.  Why don't you just go back and trace

25  for us your career in the city's fire department,

1    how you moved up to the top position?

2        A.    Okay.  I started here in June of 1986.  I

3    worked as a firefighter until April of -- I think it

4    was April of '89, I believe.  And I worked as a

5    driver/engineer from April of '89 until 1995, I

6    became a captain through promotions.  And I worked

7    as a captain until 1998.  I became an assistant

8    chief.  And then from '98 to 2001 -- in 2001, I

9    became interim fire chief, and for a brief time in

10   2001, I was the fire chief.

11       And I went from there, from being fire chief, I

12   stepped out of that position and I went to being a

13   deputy chief.  And I stayed at the deputy chief

14   until my current appointment as fire chief.

15       Q.    Okay.  And you may have said this, but I

16   may have missed it.  When were you first appointed

17   as the fire chief?

18       A.    This time?

19       Q.    Yes.

20       A.    In May of 2005.

21       Q.    Okay.  And within your duties and

22   responsibilities as a fire chief here in the city,

23   are you responsible for the recruitment, selection,

24   and hiring and promotion of personnel within the

25   fire department?

1          A.    That's correct.

2          Q.    Do you have the final decisionmaking

3      authority as to hiring in the fire department?

4          A.    That's correct.

5          Q.    Do you have the final decisionmaking

6      authority as to terminations of employees in the

7      fire department?

8          A.    As far as recommendations as far as

9      termination.

10         Q.    So you make a recommendation if an

11     individual should be terminated from the fire

12     department?

13         A.    Yes, sir.

14         Q.    And who do you make that recommendation to?

15         A.    I make that recommendation to the city

16     manager.

17         Q.    And is it your understanding that the city

18     manager has the final decisionmaking authority to

19     terminate an employee from the fire department?

20         A.    Basically the way I have done things since

21     I have been in as chief is make the recommendation

22     and always run things through the city attorney.

23         Q.    I'm sorry?

24         A.    We make a recommendation -- I make a

25     recommendation to the city manager, and we always

13

1    try to make sure we run things through the city
2    attorney.
3        Q.   Okay.  But in terms of the individual who
4    has the final decisionmaking authority within the
5    city's structure concerning a possible termination
6    of a City employee, is it your understanding that it
7    is the city manager who makes that final decision?
8        A.   Well, I just can't put that on the city
9    manager.  I make a recommendation.  It's my
10   department.  And when it's reached that point, if it
11   reach that point for terminate action, we go through
12   the city manager to make sure it's okay.
13       Q.   But who has the final sign off on somebody
14   being fired in the fire department?
15       A.   I guess it would be the city manager.
16       Q.   Okay.
17       A.   I guess.
18       Q.   Do you, as fire chief, have authority to
19   issue other forms of discipline without the input
20   and approval of the city manager such as suspensions
21   or written reprimands?
22       A.   Yes, sir.
23       Q.   And where does your authority stop?  Is it
24   at the level of someone being terminated where you
25   say the city manager has to make that choice?

1    A.   Well, that's a last resort that you want to

2    go to is termination.  So when you get to that

3    point, you must always make sure you go through the

4    city manager with that, let him know that.

5    Q.   But if you as fire chief wanted to suspend

6    someone, you don't have to go through the city

7    manager to suspend a firefighter, do you?

8    A.   No.  But I inform the city manager.

9    Q.   And as a long-time veteran employee of the

10   city's fire department, are you aware that the

11   plaintiff, David Davis, had worked for a number of

12   years for the city Fire Department?

13   A.   Yes, sir.

14   Q.   Do you know how many years he was employed

15   in the city Fire Department?

16   A.   I think it was about 8 years --

17   Q.   Okay.

18   A.   -- if I'm correct.

19   Q.   If I mention that Mr. Davis was hired in

20   the city Fire Department in April of 1998, would

21   that sound about right to you?

22   A.   Yes, sir, somewhere in there.

23   Q.   Are you aware that Mr. Davis was promoted

24   to the rank of sergeant in the city Fire Department?

25   A.   That's correct.

15

1  Q. Did you have any input into that promotion

2 of Mr. Davis?

3  A. That's correct.

4  Q. Did you recommend that he be promoted to

5 sergeant?

6  A. That's correct.

7  Q. And why did you do that?

8  A. Because he had met the requirements.

9  Q. Did you think he was doing a good job and

10 deserved to be promoted to sergeant?

11  A. That's correct.

12  Q. Do you remember approximately when that

13 was, at least the year that he was promoted to

14 sergeant?

15  A. I guess somewhere around -- if I'm correct,

16 2002 or 2003, somewhere in there.

17  Q. Okay.  Let me invite your attention to

18 another exhibit, Chief Hunter, which would be

19 Exhibit 18, and this appears to be a memo from

20 Deputy Chief Roy Waters addressed to yourself as the

21 fire chief dated February 6, 2006.  And the re line

22 is, quote, letter to Mr. H.H. Roberts, end quote.

23  A. Hold on.  Let me see.

24  Q. Exhibit 18.

25  A. Okay.  Yes.  I got it.

1      Q.   And it's addressed to you, so I assume you

2   received this on or about February 6, 2006; is that

3   correct?

4      A.   Yes.

5      Q.   Okay.  And you'll see at the very tail-end

6   at the bottom of this first page of this memo from

7   Deputy Chief Waters to yourself, he indicates,

8   quote, as I have communicated to you on several

9   occasions, David Davis is doing an outstanding job

10  for me and has a very positive and professional

11  attitude, end quote.  Do you see where it says that?

12     A.   Yes, sir.

13     Q.   As far as you know, was Deputy Chief Roy

14  Waters speaking honestly and truthfully when he made

15  that statement to you in the memo?

16     A.   I believe so.

17     Q.   Okay.  And did you, sir, agree with that

18  statement coming from your Deputy Chief, Mr. Waters,

19  about the job performance of Mr. Davis up to at

20  least February 6, 2006?

21     A.   I was happy about it.

22     Q.   You were happy about it?

23     A.   Yes, sir.

24     Q.   But did you agree with it as far as you

25  knew as the fire chief, that Mr. Davis was doing a

1  good job and had a very positive and professional

2  attitude?

3      A.  I took Chief Waters' word for that, yes.

4      Q.  Did you have any reason to disagree?

5      A.  No, sir.

6      Q.  Okay.  Does the city and its fire

7  department have a policy of giving annual

8  evaluations of the firefighters employed in the

9  department?

10      A.  That's correct.

11      MR. WOODLEY:  Okay.  Let's go off the

12  record for a second.

13  (Discussion held off the record.)

14      MR. WOODLEY:  We can go back on the record.

15      Q.  Chief Hunter, let me move to a different

16  subject matter.  At some point in time, were you

17  aware that the Phenix City Fire Department employees

18  formed a labor organization in which they became

19  members of the labor association?

20      A.  Yes, sir.  I was a part of it.

21      Q.  You were a part of it yourself?

22      A.  Yes, sir.

23      Q.  You were a member?

24      A.  Yes, sir.

25      Q.  Do you remember when you first became a

18

 1   member of the firefighters' local union?

 2        A.   It was back when they began it, when it

 3   began.  I couldn't tell you the exact date.

 4        Q.   Is this years ago or --

 5        A.   Yes, sir.  Current -- current association

 6   that's in place.

 7        Q.   And would that be Local 3668 affiliated

 8   with the International Association of Firefighters?

 9        A.   That is correct.

10        Q.   Are you still a member of that union?

11        A.   I'm in International now.  International

12   Fire Chiefs Association.

13        Q.   Okay.  So at some point in time, you

14   dropped out of the local union that consisted of the

15   firefighters?

16        A.   Yes, sir.

17        Q.   Do you remember roughly when you left that

18   local firefighters' organization?

19        A.   When I became an officer.  It was somewhere

20   in -- I can't remember the exact date, but --

21        Q.   Okay.  Did it come to your attention at

22   some point in time that Mr. David Davis became a

23   vice-president of the firefighters' local labor

24   organization?

25        A.   Yes, sir.

19

1      Q.   Did it also come to your attention at some
2   point that Mr. Davis became the president of the
3   firefighters' local labor organization?
4      A.   Yes, sir.
5      Q.   And do you remember roughly when that was
6   that you were informed that he was the new president
7   of the local union?
8      A.   I can't tell you an exact date, but I
9   remember, you know, knowing about it, you know, not
10  too much.
11     Q.   Do you remember how it came to your
12  attention?  Did someone tell you he was the new
13  president of the local union?
14     A.   I believe so.  I probably overheard some
15  talk in the stations.
16     Q.   Does the city recognize the firefighters'
17  local union as a representative of the firefighters?
18     A.   No, sir.
19     Q.   And why not?
20     A.   Mr. Roberts explained that in the letter.
21     Q.   Have you ever had meetings or conversations
22  with David Davis, in his capacity as the president
23  of the local labor organization, about any issues or
24  concerns that the firefighters had?
25     A.   Have I had a meeting with him?

20

1    Q.   Yes.

2    A.   No, sir.

3    Q.   Have you had any conversations with

4    Mr. Davis in his role as the president of the local

5    union about issues that were of concern to the

6    members of the fire department?

7    A.   No, sir.  I never was given a chance to.

8    Q.   Okay.  Well, could you elaborate on that?

9    A.   Just -- I just never was given a chance.

10   If it was some concerns from that direction, I never

11   was given -- was asked to have a meeting.

12   Q.   Was what?

13   A.   No one ever asked to have a meeting with

14   me.

15   Q.   So Mr. Davis never asked to sit down with

16   you and talk about morale or staffing levels or any

17   issues like that?

18   A.   No, sir.

19   Q.   Have you ever had collective meetings with

20   the firefighters about issues of concern they might

21   have in the fire department?

22   A.   The way the chain of command work, mostly

23   any issues or concerns that firefighters have, they

24   are to give those to the captains and they'll pass

25   it on to the assistant chiefs, and the assistant