# DEPOSITION OF ARTHUR L. SUMBRY

1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION

DAVID DAVIS,

     Plaintiff,

vs.              CASE NO. 3:06-CV-0054-VPM

CITY OF PHENIX CITY, ALABAMA,

et al.,

     Defendants.

* * * * * * * * * * *

DEPOSITION OF ARTHUR L. SUMBRY, taken pursuant to stipulation and agreement before Shannon M. Williams, Certified Court Reporter and Commissioner for the State of Alabama at Large, in the offices of City Hall, 601 12th Street, Phenix City, Alabama, on Wednesday, November 7, 2007, commencing at approximately 10:28 a.m. EST.

* * * * * * * * * * *

2

1                              APPEARANCES

2    FOR THE PLAINTIFF:

3    THOMAS A. WOODLEY
     Woodley & McGillivary
4    1125 15th Street N.W.
     Suite 400
5    Washington, D.C.   20005

6    FOR THE DEFENDANTS:

7    JAMES P. GRAHAM, JR.
     712 13th Street
8    P.O. Box 3380
     Phenix City, Alabama   36868-3380

9

10   JAMES R. MCKOON, JR.
     McKoon & Associates
11   925 Broad Street
     P.O. Box 3220
12   Phenix City, Alabama   36868-3220

13

14   ALSO PRESENT:

15   Cole Dugan
     Wallace Hunter
16   H.H. Roberts

17                          EXAMINATION INDEX

18       BY MR. WOODLEY                           4

19

20

21

22

23

24

25

3

STIPULATIONS

It is hereby stipulated and agreed by and between counsel representing the parties that the deposition of ARTHUR L. SUMBRY is taken pursuant to the Federal Rules of Civil Procedure and that said deposition may be taken before Shannon M. Williams, Certified Court Reporter and Commissioner for the State of Alabama at Large, without the formality of a commission; that objections to questions other than objections as to the form of the questions need not be made at this time but may be reserved for a ruling at such time as the deposition may be offered in evidence or used for any other purpose as provided for by the Federal Rules of Civil Procedure.

It is further stipulated and agreed by and between counsel representing the parties in this case that said deposition may be introduced at the trial of this case or used in any manner by either party hereto provided for by the Federal Rules of Civil Procedure.

*  *  *  *  *  *  *  *  *  *

4

1                   ARTHUR L. SUMBRY

2          The witness, having first been duly sworn

3 or affirmed to speak the truth, the whole truth and

4 nothing but the truth, testified as follows:

5                  EXAMINATION

6 BY MR. WOODLEY:

7    Q.  Mr. Sumbry, could you please state your

8 full name for the Record?

9    A.  Arthur L. Sumbry.

10    Q.  Spelled S-U-M-B-R-E-Y?

11    A.  Just B-R-Y.

12    Q.  B-R-Y, okay.  Just a couple of preliminary

13 points before I get into some substantive questions

14 that I want to ask you about.  My name is Tom

15 Woodley, W-O-O-D-L-E-Y, and I'm one of the attorneys

16 representing the plaintiff, David Davis, in this

17 court action that's been filed against the City of

18 Phenix City and also against two individual

19 defendants, Chief Hunter and City Manager Roberts.

20 And have you had an opportunity to spend some time

21 perhaps with Mr. McKoon to discuss the nature of

22 this court action?

23    A.  No.

24    Q.  You have not?

25    A.  No.

5

1      Q.   Okay.  Have you ever had your deposition
2  taken before?
3      A.   Yes.
4      Q.   More than once?
5      A.   I know in federal court, Sumbry versus
6  Russell County.
7      Q.   Okay.  So do you have a general
8  understanding of the procedures we'll be following
9  here in this deposition?
10     A.   No, I don't.
11     Q.   You don't?  Okay.  Well, I'm going to be
12 asking you some questions and, to the best of your
13 ability, we want you to respond and answer those
14 questions.  And if at any time you don't hear or
15 understand any of my questions, stop me and let me
16 know that, and I'll be glad to repeat or rephrase
17 those questions.  Do you understand that, sir?
18     A.   Yes.
19     Q.   And you'll have to wait until I complete my
20 question and then start with your answer, because we
21 have this most valuable player court reporter here,
22 and she's going to be taking down everything that we
23 say here today.  Do you understand that?
24     A.   Uh-huh.
25     Q.   And then you'll have a chance, if you want,

1    to look at the transcript of your deposition today

2    and review it to make sure it's correct.  Do you

3    understand that?

4         A.   Yes.

5         Q.   And, of course, you've just been sworn

6    under oath, so you're obligated to tell the truth.

7    Do you understand that?

8         A.   Yes.

9         Q.   As I understand, you're a city council

10   member?

11        A.   Yes, I am.

12        Q.   How long have you held that position?

13        A.   Twenty-two and a half years.

14        Q.   Those are four-year terms?

15        A.   It was three years when I first started.

16        Q.   And now they're currently four years?

17        A.   Now they're four years, uh-huh.

18        Q.   And what, basically, are the duties and

19   responsibilities of a council member?

20        A.   Well, I represent District Three.

21        Q.   District Three here in Phenix City?

22        A.   Yes, I do.

23        Q.   And is the council considered the

24   legislative body the city?

25        A.   Yes, uh-huh.

1      Q.   And is it your understanding that the city

2    manager, Mr. Roberts, is considered essentially the

3    chief executive officer of the city?

4      A.   Yes, I do.

5      Q.   And is he in charge and has full

6    responsibility with regard to employment conditions

7    and the employees who work for the city?

8      A.   Yes, he do.

9      Q.   Do you play any role as a council member

10   with regard to the employees of the city?

11     A.   No, I don't.

12     Q.   Let me invite your attention back to -- if

13   I may, back to the month of April 2006.  And there

14   was apparently a proposed ordinance that came before

15   the city council, which suggested the enlargement of

16   the probationary period for firefighters and police

17   officers and code enforcement officers, expanding

18   the probation period from one year to 18 months.  Do

19   you remember that proposed ordinance?

20     A.   No, I don't.

21     Q.   You don't?

22     A.   Huh-uh.

23     Q.   Okay.  Do you remember having a

24   conversation with David Davis, my client, concerning

25   the subject of a proposed ordinance expanding the

8

1  probationary period?

2      A.   I don't remember that either.

3      Q.   You don't?

4      A.   No, sir.

5      Q.   You don't remember that he perhaps gave you

6  a telephone call and weighed in on behalf of his

7  union members against the proposed ordinance?

8      A.   Can I give you a answer?

9      Q.   Yes, sure.

10     A.   Really, when a client come to me, I tell

11  them they have to see the city manager; I'm not

12  hiring and I don't fire.  So I don't get involved in

13  that.

14     Q.   Well, my question really was related to

15  this expansion of the probationary period.  And I

16  know you don't have a lot of recollection about

17  that.  But it's my understanding that David Davis

18  had a chance to call you up and talk to you about

19  expanding the probationary period in the fire

20  department.  Does that ring a bell at all to you?

21     A.   No, it doesn't.

22     Q.   Doesn't?  As a council member, do you have

23  sort of an open door policy where you welcome

24  citizens to contact you and speak about issues of

25  concern?

9

1      A.   I do.

2      Q.   Have you maintained that for the 22 years

3  you've been a council member?

4      A.   Yes, I have.

5      Q.   And would that include city employees as

6  well?  You welcome them to contact you if they have

7  any concerns about city issues?

8      A.   Well, I talk to them, but I tell them --

9  refer my questions back to the city manager.

10     Q.   But do you talk to them on occasion?

11     A.   Yes, sir.

12     Q.   Have you talked to David Davis about any

13  issue relating to the fire department at any time?

14     A.   Not that I remember, sir.

15     Q.   What about any other firefighters?  Have

16  you had any conversations with other firefighters

17  about fire department issues?

18     A.   No.

19     Q.   You don't remember any?

20     A.   No.

21     Q.   Did it come to your attention in April of

22  2006 that David Davis, who was an eight-year veteran

23  of this fire department, was terminated largely

24  because he had a contact with Mayor Hardin?

25     A.   No.

10

1      Q.   That was never brought to your attention?

2      A.   Not to my attention.

3      Q.   Do you know that today, that he was fired?

4      A.   No, I don't.

5      Q.   Do you know who David Davis is?

6      A.   No, I don't.

7      Q.   If he was sitting here today, you wouldn't

8   recognize him?

9      A.   I couldn't recognize him.

10     Q.   Have you ever heard that he was an

11  eight-year veteran of this fire department?

12     A.   No, I haven't.

13     Q.   Now, do you have another occupation besides

14  being a city council member?

15     A.   Yes, I do.

16     Q.   What would that be?

17     A.   Mortician.

18     Q.   I'm not going to tell any death or

19  mortician jokes here.  That wouldn't be appropriate,

20  right?  You've probably heard them all anyway.

21     A.   Yes.

22     Q.   Is that a family business, sir?

23     A.   It is.

24     Q.   Okay.  Are you aware that the firefighters,

25  at some point in time, formed a union of

11

 1    firefighters?

 2        A.   No, I'm not.

 3        Q.   Are you aware that police officers have a

 4    union?

 5        A.   No, I'm not.

 6        Q.   Now, as I understand it, the city council

 7    meets -- is it every other week?

 8        A.   First and third Tuesday.  First and third

 9    Tuesday.

10        Q.   And do citizens have an opportunity to

11    address the council on issues?

12        A.   They do.

13        Q.   Is that usually done in the work sessions?

14        A.   Mostly work sessions.

15             MR. WOODLEY:  I don't think I have any

16        further questions.  Thank you, Mr. Sumbry.

17             MR. MCKOON:  You can go.  Thank you so much

18        for coming.

19    (The deposition concluded at 10:34 a.m.)

20                  * * * * * * * * * *

21

22

23

24

25