## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

DAVID DAVIS,                                       )
                                                   )      Case Number:
Plaintiff                                          )
                                                   )      3:06-CV-0544-VPM
v.                                                 )
                                                   )
PHENIX CITY, ALABAMA,                              )
                                                   )
H.H. ROBERTS, named in his individual              )
and official capacities,                           )
                                                   )
and                                                )
                                                   )
WALLACE HUNTER, named in his individual            )
and official capacities,                           )
                                                   )
Defendants.                                        )

## RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW Defendants Phenix City, Alabama, H.H. Roberts and Wallace Hunter and files this their Response to Plaintiff's Motion for Partial Summary Judgment and shows as follows:

## INTRODUCTION

Common sense and the law concerning the exercise of "free speech" as it applies to an employee with a work related grievance in a paramilitary organization such as a fire department dictates that such speech may be subjected to reasonable restrictions.  In short one cannot run a fire department from the bottom up.  Like any successful organization the Chief of a fire department should at least have the opportunity to address complaints and personnel problems within the department before a subordinate repeatedly obviates that chain of command in an attempt to undermine the authority of the Fire Chief.  The

Plaintiff in this case is seeking the Court to validate his repeated insubordination by wrapping himself in the First Amendment. Finally the Defendants would point out despite the wide ranging brief filed by the Plaintiff, he has only moved for judgment as a matter of law as to Count IV of his Complaint. In response the Defendants say as follows:

## STATEMENT OF DISPUTED MATERIAL FACTS

Defendants incorporate by reference the "Statement of Undisputed Facts", and the exhibits offered, set forth in pages 2-5 of the Memorandum Brief in Support of Motion for Summary Judgment of Defendants (E.C.F. Document #32) and the "Facts" portion of the Defendant's Memorandum of Law in Support of Their Renewed Motion for Summary Judgment (E.C.F. Document #90).

There are a number of factual contentions made by the Plaintiff in the supporting Memorandum underlying his Motion for Partial Summary Judgment with which the Defendants disagree and which will be outlined below.

1.

Defendants dispute the contention in Paragraph 9 of Plaintiff's Statement of Material Facts that Chuck Williams asked and was allowed to attend the Local 3668 meeting. The sole support for that contention is the uncorroborated statement of the Plaintiff. Mr. Williams has not been asked about the meeting and it could very well be shown that it was the Plaintiff who initiated contact with Mr. Williams regarding the union meeting that became the subject of the article, "Three Alarm Turmoil".

2.

Defendants dispute the contention in Paragraph 16 of Plaintiff's Statement of Material Facts that firefighters are prohibited at any time to speak to the media or in public about the various matters outlined therein. See ASOP 12; Roberts Dep. 67:20-71:5; Hunter Dep. 46:17-25; Roberts Supplemental Dep. 18:22-19:18; Roberts Supplemental Dep. 22:1-25:13; Affidavit of H.H. Roberts dated May 18, 2007 (E.C.F. Document #44, Exhibit A).

3.

Defendants dispute the contention of Paragraph 17 which suggests a pre-clearance process, when the record supports the contention of Defendants that firefighters must exhaust the internal procedures outlined in ASOP 12 before going to the media. See ASOP 12; Roberts Dep. 67:20-71:5; Hunter Dep. 46:17-25; Roberts Supplemental Dep. 18:22-19:18; Roberts Supplemental Dep. 22:1-25:13; Affidavit of H.H. Roberts dated May 18, 2007 (E.C.F. Document #44, Exhibit A).

4.

Paragraph 18 of Plaintiff's Statement of Material Facts is correct in its description of the communication sent to the City Manager from Harold Schaitberger, but crucially omits the fact of the letter sent to Thomas Malone, Field Representative for the International Association of Firefighters dated March 15, 2005 by the City Manager in which it is made clear that the City Manager will be the designated point of contact for union concerns. This letter was sent in response to a letter sent by Thomas Malone to the City Manager seeking such a point of contact. See Exhibit A, Letter from H.H. Roberts

to Thomas Malone, dated March 15, 2005.  See Exhibit B, Letter from Thomas Malone
to H.H. Roberts, dated March 7, 2005.

5.

Paragraph 19 of Plaintiff's Statement of Material Facts that describes the response
of the City Manager and the Fire Chief also omits the letter sent to Malone clearly
identifying the City Manager as the point of contact for union concerns.  This letter was
sent in response to a letter sent by Thomas Malone to the City Manager seeking such a
point of contact.  See Exhibit A, Letter from H.H. Roberts to Thomas Malone, dated
March 15, 2005.  See Exhibit B, Letter from Thomas Malone to H.H. Roberts, dated
March 7, 2005.

6.

Paragraph 20 of Plaintiff's Statement of Material Facts suggests that Davis would
not be affected by the proposed change in probationary periods for firefighters.  That is
incorrect as the alleged purpose for the union's alleged concern was adequate manpower
in the department which would have, in the opinion of Davis and ostensibly other union
members, negatively affected the currently employed firefighters.  See Davis Dep. 71:3-
13.

7.

Paragraph 24 of Plaintiff's Statement of Material Facts also asserts that Davis
would be unaffected by the probationary period change but as stated above he would
clearly have been affected.  That was the nature of his alleged concern and the alleged
concern of his fellow union members.  See Davis Dep 71:3-13.

8.

Paragraph 27 of Plaintiff's Statement of Material Facts is incorrect in stating that firefighters are prohibited at any time from addressing or speaking with the Mayor and City Council about any fire and rescue service issue.    See ASOP 12; Roberts Dep. 67:20-71:5; Hunter Dep. 46:17-25; Roberts Supplemental Dep. 18:22-19:18; Roberts Supplemental Dep. 22:1-25:13; Affidavit of H.H. Roberts dated May 18, 2007 (E.C.F. Document #44, Exhibit A).

9.

Paragraph 29 of Plaintiff's Statement of Material Facts omits the discipline the Plaintiff faced due to his insubordinate conduct toward Assistant Chief Kennedy and suggests he was terminated solely for his contact with Mayor Hardin, which is incorrect. See Hunter Dep. 79:12-80:7; Hunter Dep. 81:17-24; Exhibit 6 to Defendants Memorandum Brief in Support of Motion for Summary Judgment of Defendants (E.C.F. Document #32).

10.

Paragraph 32 of Plaintiff's Statement of Material Facts is asserting that the City Manager stated that a fire fighter could not ever speak directly to City Council, which is completely incorrect.  In his supplemental deposition, the City Manager made it clear that ASOP-12 allows for an aggrieved member of the fire department may speak to City Council after exhausting the chain of command.  See ASOP 12; Roberts Supplemental Dep. 24:5-25:13.

11.

As to Paragraph 33 of Plaintiff's Statement of Material Facts, it states that the

City Manager has never given permission for a firefighter to address the City Council.

The implication is that the City Manager has denied a request from firefighters to address

the City Council. However, as the cited testimony indicates, the City Manager has never

been presented with a request to address City Council so of course he could not grant

permission to a request that has never been made of him. <u>See</u> Roberts Supplemental Dep.

24:14-25:4.

<b><u>ARGUMENT</u></b>

**I.    <u>Defendants' Regulations and Policies Do Not Constitute Unlawful Prior
Restraint of Free Speech</u>**

As to all of the argument made by the Plaintiff, in addition to the discussion and

authority cited in Defendants' Response, Defendants would cite the Court to the authority

and argument of Defendants' Brief/Memorandum in Support of Their Second Motion for

Summary Judgment (E.C.F. Document #90). <u>See</u> all evidentiary submissions filed in this

case.

The Plaintiff opens his argument by claiming that the City of Phenix City's Merit

System Rules and Regulations impose an unconstitutional prior restraint on free speech.

In support of this contention the Plaintiff refers the Court to several cases. The first of

these cases, <u>U.S. v. NTEU</u>, 513 U.S. 454 (1995) was a case challenging the

Constitutionality of a federal statute barring federal government employees from

receiving honoraria for making an appearance or speech or writing an article. In that case

the Court found the statute to be unconstitutional because it constituted, "a wholesale

deterrent to a broad category of expression by a massive number of potential speakers..."

6

which meant that the Government's burden to show a public interest in such a wholesale

prohibition would be, "even greater than it was in Pickering and its progeny, which

usually involved individual disciplinary actions taken in response to particular

government employees' actual speech." Id at 454.

The case at bar is one like Pickering and the cases that followed it, a particular

government employee, David Davis, actually contacted the Mayor and members of the

City Council and complained about a policy change regarding probationary periods for

new firefighters and was disciplined for that actual speech. Even if one was to concede

that the City's policies constituted a wholesale ban on a wide array of topics, which

Defendants do not concede, this case would still be distinguishable from the NTEU

decision because the policy targets a specific and narrow class of government employees,

namely firefighters.

Similarly, Plaintiff cites in support of his argument Milwaukee Police Ass'n v.

Jones, 192 F.3d 742, 749-50 (7th Cir. 1999). In that case, the Court was presented with a

memorandum issued from the Chief of Police that any Complaint made by an officer

would be deemed confidential and the officer would be barred from discussing it with

anyone, including their union representative and their attorney. Once again this was an

extreme ban on contact with any party regarding a wide array of potential subjects and

the Court stated, "in weighing the interests of the government as employer against that of

the employees, we do not have the opportunity to consider the actual nature of the speech

that was communicated and the impact it had on the workplace; instead, we are presented

with a general prohibition against speech rather than an isolated communication that

already occurred." Id at 749-50. To distinguish the case before the Court, the Plaintiff in

this case was free to discuss his complaints with his fellow union members, the hierarchy of the union, his chain of command and the City Manager. Had the Plaintiff chosen to voice his concern as specified in ASOP 12, he would ultimately have been entitled to a hearing before City Council to voice his concerns to the Mayor and all of the members of City Council. Also in the case at bar the individual adverse employment action was taken in response to a communication that had already occurred, therefore <u>Pickering</u> and not <u>NTEU</u> should supply the standard by which the Court judges the conduct of Defendants.

<u>Harman v. City of New York</u>, 140 F.3d 111 (2nd Cir. 1998) is cited by the Plaintiff in support of his prior restraint argument as well. In that case, the New York City Human Resources Administration (HRA) put into action a blanket prohibition of communication to the media without first obtaining inter-agency clearance in order to protect the confidentiality of reports and information related to the individuals served by the HRA. The case at bar is easily distinguishable in that the City of Phenix City Fire Department is a paramilitary organization where discipline is essential to proper operation and delivery of the public service entrusted to it, as contrasted with the New York City Human Resources Administration which is clearly not a paramilitary organization.

The Plaintiff claims the case of <u>Swartzwelder v. McNeilly</u>, 297 F.3d 228, 231-32, 235-36 (3rd Cir. 2002) supports his position regarding clearance procedures for speech. However in <u>Swartzwelder,</u> the Court was presented with a departmental pre-clearance procedure regarding testimony by department employees when appearing as defense witnesses in a criminal case. Restricting speech of employees as expert witnesses is not in any way comparable to restricting speech on matters of departmental policy, which of course is the matter before this Court.

The Plaintiff refers to <u>Providence Firefighters v. City of Providence</u>, 26 F.Supp.2d 350 (D.R.I. 1998) in support of this position that the City of Phenix City was unconstitutionally imposing a prior restraint on free speech. In that case the Defendants could not point to any concrete harm that was averted by implementing their policies. In the case at bar the Fire Chief for the City of Phenix City, Wallace Hunter, has testified that when Davis violated the City's policies regarding Fire Department employee speech, actual harm occurred. Hunter Dep. 37:19-43:5. Also, the policy at issue in <u>Providence</u> stated that:

> In accordance with the Rules and Regulations governing the Department this General Order is issued to serve notice to all members that only the Chief of Department has the authority to discuss for publication, matters concerning the Department. This general order is also to serve notice that only the Chief of Department may deliver any address, lecture or speech on Providence Fire Department matters. Members shall not participate in the above stated activities without the approval of the Chief of Department. Failure to comply with these stated Rules and Regulations of the Department shall result in the preferral of Departmental Charges...23. Members shall not discuss for publication matters concerning the Department without the approval of the Chief of Department. 24. Members shall not deliver any address, lecture or speech on Providence Fire Department matters without the approval of the Chief of the Department. Request for such approval shall be forwarded through official channels.

By contrast the policies at issue in this case, Section 2.054 of the City's Merit System Rules and Regulations and ASOP 12 do not contain any language requiring approval from the Fire Department before firefighters speak to the media or anyone else for that matter about any concern of theirs. It is made clear in those policies that disciplinary action can be taken if the speech impairs discipline and harmony in the workplace, breaches confidentiality, impedes job performance or jeopardizes close personal loyalty. But that disciplinary action may only be implemented after the fact and no clearance procedure is outlined in either Section 2.054 or ASOP 12. So as far as a facial challenge

to the regulations and procedures of Defendants being an unconstitutional prior restraint, even the <u>Providence</u> decision does not support a finding that the regulations and procedures on their face are unconstitutional.

The Plaintiff has identified some new authority in an attempt to support his argument regarding prior restraint. He cites <u>Weaver v. U.S. Information Agency</u>, 87 F.3d 1429, 1439 (D.C. Cir. 1996) as an example of the <u>NTEU</u> test being administered where restraint on speech is achieved through a generally applicable regulation. This case involved an employee of the U.S. Information Agency challenging the pre-publication review process of the agency. While the Voice of America program and certainly the programs of the U.S. Information Agency writ large are undoubtedly important, once again the Plaintiff is pointing to a case that does not involve an employee of a paramilitary organization like the Phenix City Fire Department. Even though the case is clearly distinguishable from the case before the Court, the Defendants would point out a few facts about <u>Weaver</u> insofar as the Plaintiff is relying on it to support his position. The majority in <u>Weaver</u> applies the <u>Pickering</u> test to the pre-publication restraint, so the Plaintiff's argument that <u>Pickering</u> analysis should not be conducted in review of prior restraint procedures is not supported by this case. Also, the Court upheld the dismissal of the Plaintiff's Complaint finding that the policy, like the policies at issue in this case does not forbid any speech. <u>Weaver v. U.S. Information Agency</u>, 87 F.3d 1429, 1440 (D.C. Cir. 1996). Again it is the gagging or prevention of making the speech in the first place that is a prior restraint, not cases like this one which solely involve after the fact disciplinary actions.

The Plaintiff also cites Int'l Ass'n of Fire Fighters v. Frenchtown Charter
Township, 246 F. Supp.2d 734, 739-41 (E.D. Mich. 2003). Once again, the policy at
issue here is fundamentally different from the policies of the Phenix City Fire
Department. In Frenchtown, the policy at issue banned all firefighters from disclosing
any information about the fire department to anyone at any time. The policies at issue
here are limited in scope, ASOP 12 covering grievances of fire fighters; 2.054 and 15.02-
15.023 of the Merit System Rules and Regulations, which cover only four areas of
speech: speech which impairs discipline and harmony, speech which breaches
confidentiality, speech which impedes job performance and speech which jeopardizes
close personal loyalty. Also firefighters in the Phenix City Fire Department are free to
speak to their chain of command, the City Manager and ultimately the City Council about
any grievance or complaint per ASOP 12. The Plaintiff also cites Auburn Police Union
v. Carpenter, 8 F.3d 886, 903 (1st Cir. 1993) in support of his position. In that case the
constitutionality of a Maine statute prohibiting solicitations to benefit law enforcement
officers was at issue. Of course, those facts are so far from the case before this Court that
the underlying prior restraint analysis, which is scant, should not be looked to as
controlling in this case.

## II.     The City Has Not Banned All Communication With The Media and the Restrictions in Place Are Constitutional

The Plaintiff next argues that the City's ban on any communication with the
media is plainly unconstitutional. The factual support for the Plaintiff's contention that
there is such a complete ban is his statement of material facts at Paragraphs 22 and 16.
Paragraph 22 of the Plaintiff's Statement of Material Facts involves his telephone call to
Mayor Hardin and has no information regarding the City's policies and procedures with

respect to communication with the media. Paragraph 16 baldly asserts that the Plaintiff

and other firefighters are prohibited from speaking to the media or publicly at any time

about a wide array of issues. The support cited within Paragraph 16 is the deposition

testimony of the City Manager, the Fire Chief and the Personnel Director. The sections

cited need to be scrutinized by the Court to determine what was actually said by the

deponents versus what the Plaintiff would have the Court believe they stated. Plaintiff's

counsel is questioning the City Manager about the incident relating to the September

2005 publication of a newspaper article entitled "Three Alarm Turmoil" that aired

various grievances fire fighters had with the Phenix City Fire Department.

     In a discussion beginning with the necessity of following the chain of command,

the City Manager stated it would be a violation of the Merit System to approach the

media about a wide array of issues **if he did not first follow the chain of command**.

This is not a ban on contact with the media. It is a procedure designed to resolve issues

within the Phenix City Fire Department first, then within the City government of Phenix

City. The Plaintiff can cite to the Court no policy, written or oral, express or implied that

after following the chain of command and exhausting the internal remedies available to

him, that a firefighter with a grievance is prohibited from approaching the media.

     In the deposition of the Fire Chief, Plaintiff's counsel asks similar questions and

the Fire Chief responded by stating that the reason contact with the media would be a

violation is that:

     "they didn't give me an opportunity to come in there. And this right here is going

     to – is going to disrupt your normal operation." Hunter Dep. 43:3-5.

After asking a series of questions about various areas of communication to the media that would be considered a merit system violation, Plaintiff's counsel clarifies the position taken by the Fire Chief stating that:

> Q. Okay. And I take it with regard to that series of questions that I just asked you about the rules and regulations, that your position and the position of the city is that a firefighter must route any of those expressions of concerns through the chain of command within the city Fire Department before they speak to a media representative; is that correct?
>
> A. Yes, sir. We should be given a chance. Hunter Dep. 46:17-25.

Again it is made perfectly clear that there is no ban on communication with the media, but rather there is a procedure designed to resolve grievances without airing the same publicly by going through the chain of command, the City Manager and the City Council. Then if a resolution cannot be reached using less disruptive internal channels, the firefighter is free to speak to the press.

Finally the deposition testimony of the Personnel Director is cited by the Plaintiff. The cited testimony refers to a directive issued by the Fire Chief in the wake of the "Three Alarm Turmoil" story which simply directed City Employees to look to the appropriate policies regarding free speech and grievances in handling their communications with the media. This is in no way inconsistent with the deposition testimony of the Fire Chief and City Manager that without following procedure firefighters risk disciplinary action when airing grievances through the media. Again, after those procedures have been exhausted and if the problem is not resolved, there is no city policy preventing firefighters from going to the press with their concerns. Having

definitively shown that the Plaintiff's cited evidence only demonstrates again that a procedure must be followed before approaching the media and not as Plaintiff claims that there is a total ban on any communication with the media, it is now appropriate to turn to the legal authority cited by the Plaintiff.

The same analysis applies to Plaintiff's cited authority of Swartzwelder, Providence Firefighters, Int'l Assn of Fire Fighters v. Frenchtown Charter Township and Harman that is articulated above. The only new authority cited by the Plaintiff is Wolf v. City of Aberdeen, 758 F.Supp. 551, 558 (D.S.D. 1991). In that case, the Defendant City had a blanket policy applicable to all city employees requiring prior approval before making remarks to the media or commenting on internal business of the City. Of course, the ASOP 12 here is a policy applicable only to firefighters. Another crucial difference is the policy in Wolf required prior approval from department heads. None of the policies as written which are at issue in this case require prior approval for speech. They only delineate speech in certain areas that could result in after the fact discipline, particularly if the procedure outlined in ASOP 12 is not followed by the Plaintiff or others similarly situated. Plaintiff again argues the NTEU standard should be applied as he asserts this "media ban" is a prior restraint. Again it is clear that the Pickering test should apply since this is not a prior restraint but rather a constitutionally permissible sanction for speech that falls within certain carefully defined categories. It should be reiterated that again these policies are for the Phenix City Fire Department, a paramilitary organization with a greater need for order and discipline that ordinary departments of municipal government, and that the challenge being made to the policies are by a former firefighter.

The Plaintiff cites the cases of <u>Beckwith v. City of Daytona Beach Shores</u>, 58 F.3d 1554, 1565 (11th Cir. 1995) and <u>Casey v. City of Cabool, MO</u>, 12 F.3d 799 (9th Cir. 1993) to support this argument. They are distinguishable from the case at bar as they address adverse employment action toward department heads, namely Fire Chiefs. In both of those cases, the Fire Chief of the Defendant City was terminated due to making complaints regarding City policy toward their department. The Plaintiff in this case was not the Fire Chief and was subject to ASOP 12 and Section 2.054 just like every other firefighter in the City of Phenix City. Another case cited by Plaintiff in support of this position is <u>Hickory Fire Fighters' Assn v. City of Hickory</u>, 656 F.2d 917 (4th Cir. 1981). That case dealt with union representatives seeking the opportunity to speak on the public agenda at a City Council meeting and also an ordinance related to picketing and/or striking. It did not deal, as this case does with a firefighter who seeks to privately contact members of City Council and the Mayor without first going through the chain of command as required by City policy. The <u>Hickory</u> case has nothing whatsoever to do with a facial challenge to the constitutionality of the Defendants' policies.

Plaintiff cited in its original Motion for Summary Judgment arguing that the City's policies amounted to a prior restraint on free speech the case of <u>Moore v. City of Kilgore</u>, 877 F.2d 364 (5th Cir. 1989). In that case the Court ruled that the City of Kilgore unconstitutionally restricted Moore's free speech by subjecting him to discipline after he made certain statements to the media regarding staffing in the wake of a fatal firefighting incident. His initial contact with the media had been authorized by the Fire Chief, the discipline resulted from statements that went beyond what the Chief had approved. Needless to say this factual situation is distinguishable from the case at bar

where the Plaintiff took his complaints directly to City Councilors and the Mayor instead

of following the chain of command.  The rule which Moore sought to be adjuged facially

unconstitutional that had been imposed by the City of Kilgore was Article 4.2A(40) of

the Rules and Regulations of the Kilgore Fire Department which directs firefighters to,

"Refrain from furnishing information relative to department policy, practices, or business

affairs except as authorized by the Chief of the Department." Moore 877 F.2d at 368.

The Plaintiff suggests that the City of Kilgore and City of Phenix City's policies are

similar.  The Defendants agree, except to state that the policies of the Defendants afford

more freedom to firefighters than the rule at issue in Moore, and to the extent that the

Plaintiff suggests that the City of Phenix City has policies in place that comprise a prior

restraint on free speech, I would turn the Court's attention to the majority opinion on that

issue in Moore, which stated in pertinent part that:

> Nor, finally, is the rule a prior restraint. The department does not pretend to have
> authority to gag its employees before they speak. It claims the right to fire,
> demote, or suspend them after they speak. That is not a prior restraint; it is an
> after-the-fact sanction. The Kilgore fire department is not proposing to do
> anything that is analogous to shutting down the presses, as the government sought
> to do in New York Times Co. v. United States, 403 U.S. 713, 91 S. Ct. 2140, 29
> L. Ed. 2d 822 (1971), and Near v. Minnesota, 283 U.S. 697, 51 S. Ct. 625, 75 L.
> Ed. 1357 (1931). Nor does the Kilgore rule authorize police to interrupt speech in
> progress, as happens when a city rule allows police officers to disperse a
> demonstration or to muffle a loudspeaker.
>
> True, the City did ask its employees to seek permission *before* they spoke. But
> offending employees are penalized after-the-fact, by the loss of their jobs. They
> are not gagged or subjected to an injunction. Demotion and suspension was the
> fate suffered by Moore, and the event that precipitated this suit. Kilgore did not
> stop him from getting his message out.
>
> The difference is crucial. The great evil of a prior restraint is that it prevents the
> public from receiving the information possessed by the gagged speaker, and so
> from judging the information's worth and the speaker's case. If a sanction is
> instead applied after-the-fact, angry voters may vindicate the speaker's rights, by
> removing from office those who imposed the sanction. Prior restraints are

constitutionally suspect because they deprive speakers of recourse to the people, who are inevitably the ultimate, and the most important, protector of justice in American politics.

These concerns are not implicated by Kilgore's rule. And, indeed, it is difficult to see how any government employer could regulate speech without, more or less directly, carving out an exception for speech approved by the employer. Employees will sometimes have to act as spokespeople. Speech that would be damaging to the department if made without supervisory approval may be essential to the department if made with approval. Moore 877 F.2d 364 at 392.

It is clear from the Court's analysis that neither the City of Kilgore's Article 4.2A(40) nor the City of Phenix City's ASOP 12 nor Section 2.054 of the Merit System Rules and Regulations constitute a prior restraint on free speech as defined by Plaintiff's own case authority.

The Plaintiff also relies on Mansoor v. Trank, 189 F.Supp. 2d 426 (W.D. Va.), affirmed, 319 F.2d 133 (4th Cir. 2003). In this case, the employer had imposed the following condition on the plaintiff in order to maintain his employment with the Police Department:

That you shall at all times refrain from any verbal or written communications to third parties, including but not limited to county employees, relating to your employment that are in any way critical or negative towards the county executive, the chief of police or other police department management or command staff, or any other county official or employee.

Mansoor 189 F. Supp. 2d 426 at 431. This absolute bar on any criticism about the county executive, chief of police or other police department personnel to any third party is in no way comparable to the reasonable limitation on communication placed on the Plaintiff in this case and is much closer to the inapposite fact situation in another of the cases Plaintiff has cited earlier, Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 749-50 (7th Cir. 1999). Mansoor was unable to make a critical statement about his employment to anyone. The Plaintiff in this case was free to speak to his chain of command, the City

Manager and the Mayor and City Council about his concerns regarding the probationary

policy change so long as he followed the procedure outlined in ASOP 12.

Plaintiff also points to <u>Pesek v. City of Brunswick</u>, 794 F.Supp. 768, 774, 786-87

(N.D. Ohio 1992) in support of his argument. However in <u>Pesek</u> the firefighter was not

allowed to speak at a meeting open to the public on an item on the public agenda related

to the fire department. That does not match up with the circumstances of this case, where

a firefighter privately contacted the Mayor and members of the City Council about a

concern without going to his chain of command or the City Manager as outlined in ASOP

12 and the letter from the City Manager to Thomas Malone dated March 15, 2005.[1] This

distinction has been recognized by the United States Court of Appeals for the First

Circuit in <u>Curnin v. Town of Egremont</u>, 2007 U.S. App. LEXIS 27524 (1st Cir. 2007)

where the Court cited and <u>distinguished</u> <u>Pesek</u>, stating, "<u>Pesek v. City of Brunswick</u>, 794

F.Supp. 768 (N.D. Ohio 1992) (resident prevented from speaking during public comment

portion of city council meeting on grounds that he was also a town employee)."

Finally in this section of Plaintiff's argument he cites <u>Fire Fighters' Assn v.</u>

<u>Barry</u>, 742 F.Supp. 1182, 1195 n.25 (D.D.C. 1990).[2] Again, the cited case addresses a

requirement for prior approval from the Public Affairs Officer for contact with the media

which again is not the policy of the Defendants in the case at bar. Also, it should be

noted that the <u>Barry</u> case dealt with again not only a prior restraint policy but a prior

restraint policy with unlimited scope.[3] The Phenix City Fire Department has no rule or

---

[1] It bears repeating that Davis, as President of the local firefighters' union, was authorized to take his concerns directly to the City Manager without speaking to his chain of command per the correspondence between the City Manager and Thomas Malone.

[2] Plaintiff cites this case as <u>Fire Fighters' Assn v. District of Columbia</u>, but a Lexis search reveals the proper style of the case is <u>Fire Fighters Ass'n v. Barry</u>.

[3] The policy at issue addressed the use of bumper stickers on personal vehicles, granting interviews to the press without prior consent and the unlimited scope of the policy is elaborated by the <u>Barry</u> court:

regulation requiring prior approval of any contact with the media. The Department does have a policy to address grievances within the Department that is to be followed before airing such grievances in a public forum. Even then, the policy concerning the addressing of grievances does not prohibit speech to the media but rather provides for disciplinary action after the fact only if the content of the speech violates the policy.

The Plaintiff next takes issue with the reliance of Defendants' on Belcher v. City of McAlester, OK, 324 F.3d 1203 (10th Cir. 2003). In Belcher a firefighter with a complaint about the purchase of a fire truck premised on its ability to assist in the fighting of grass fires in particular, contacted three Council members by telephone and one in person to voice his concerns. The City of McAlester has a policy similar to that of the City of Phenix City in that firefighters, whether union representatives or not, were barred from contacting Councilors except at a public meeting. As a result of Belcher violating that policy, the Fire Chief issued him a reprimand stating that his contact of the Councilors were detrimental to the function of the Fire Department. This is similar to the September 20, 2005 memorandum Chief Hunter issued regarding the newspaper incident that preceded the Plaintiff's prohibited contact with the Mayor and City Councilors. In performing the balancing test weighing Belcher's interest in complaining about the fire truck purchase and the government's interest in maintaining harmony, the Court stated that:

> In performing [Pickering] balancing, [an employee's] statement will not be considered in a vacuum; the manner, time, and place of the employee's expression

---

Memorandum 38 requires that any interview given by a member of the Fire Department be pre-approved by the Public Affairs Officer. No standards guide the officer's decision to grant or deny a request. The officer is free to withhold permission based on his or her own criteria of what information should be released to the public. The officer need not even provide a reason for his denial. The vesting of such unbridled discretion in one Fire Department official, over the access of Fire Department employees to a free press, creates an unconstitutional prior restraint.

are relevant, as is the context in which the dispute arose." <u>Rankin, 483 U.S. at 388</u>. In considering the time, place, and manner of the speech, we take into account whether the employee used "less disruptive internal channels" of communication. See <u>Lytle v. City of Haysville, 138 F.3d 857, 865 (10th Cir. 1998)</u>. In the instant case, Belcher could have used "less disruptive internal channels," <u>id.,</u> by explaining his concerns to his superior officers at the Fire Department and following the chain of command. Instead, Belcher chose to go outside the Department, speaking directly to Council members in violation of Department and City policy, diminishing the level of protection his speech might otherwise enjoy.

Belcher's interest in speaking privately to the Council members must be weighed against the contrary interests of the City and the Department in maintaining harmony among Department employees. "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." <u>Koch v. City of Hutchinson, 847 F.2d 1436, 1452(10th Cir. 1998)</u>(quoting <u>Connick, 461 U.S. at 151-52</u>). Because such close relationships are necessary in a fire department, there is a "heightened governmental interest in maintaining harmony" among fire department employees. <u>847 F.2d at 1452 n.22</u>(holding that fire departments are analogous to police departments in this respect). Firefighters place their lives in each others' hands, and it is essential that each firefighter have trust in his colleagues.

Just as in this case the Plaintiff had the option of using less disruptive internal channels, so did Belcher and the Court found there, as Defendants would suggest should be found here that the level of protection should be accordingly diminished when the Plaintiff fails to utilize those less disruptive internal channels. The Court did not reach the issue of whether actual disruption was required to affirm the District Court's grant of summary judgment because evidence of actual disruption had been tendered, as has been tendered in this case, namely Chief Hunter's deposition testimony. But again Defendants would reiterate that evidence of actual disruption is not required. <u>See Locurto v. Giuliani</u>, 447 F.3d 159 (2nd Cir. 2006) and <u>Waters v. Churchill</u>, 511 U.S. 661, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994). Defendants maintain that <u>Belcher v. City of McAlester, OK</u> is factually indistinguishable from the case at bar and clearly shows the policies and procedures at issue in this case should be found constitutionally permissible.

### III.    The City's Regulation and Practices Are Constitutional as Actually Applied.

The Plaintiff leads off this section of his argument by stating that the City has applied its regulations to punish and chill the free speech rights of Davis and other firefighters. First as stated in an earlier brief on behalf of the Defendants, Davis has provided no support for any suggestion that he is representing other firefighters who felt their free speech rights had been chilled by the conduct of the Defendants. The Plaintiff's current Motion and supporting materials do not offer any substantive support for such allegations. Defendants would show that the Plaintiff has not made any submission to prove that the policies at issue would have any different impact on the free speech rights of third parties as they do upon the Plaintiff. <u>City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 104 S. Ct. 2118, 80 L.Ed.2d 772 (1984) makes it clear that such a challenge based on third parties will not be considered where there is no evidence to indicate the third parties would be treated differently from the Plaintiff:

> [T]his is not…an appropriate case to entertain a facial challenge based on overbreadth. For we have found nothing in the record to indicate that the ordinance will have any different impact on any third parties' interests in free speech that it has on [the Plaintiff}.

So the Defendants will confine their brief to a discussion of the application of the regulations as to the Plaintiff only.

The facts belie any notion that the Plaintiff was in any way chilled or refrained from exercising his free speech rights during his tenure with the Phenix City Fire Department. The Plaintiff allowed Chuck Williams from the <u>Columbus Ledger-Enquirer</u> to sit in on a union meeting, knowing that an article would be published as a result. The Plaintiff granted Williams an interview and in the interview aired many grievances, some of which were included in the story, "Three Alarm Turmoil". The Plaintiff did so

21

knowing that he had not gone through the proper grievance procedure but he evidently did not hesitate in any way to allow Mr. Williams the opportunity to report on the grievances and name him as a source in his story. The subsequent counseling he received consisted simply of providing him with a copy of the relevant policies and asking that he follow those policies in the future. The Plaintiff did not hesitate the next time an issue came up that concerned him and ostensibly his union membership to totally ignore the policies he had been counseled on in his pursuit of totally unabridged free speech with respect to his contact with the Mayor and attempted contacts with members of City Council. Since absolutely no evidence has been tendered that the Plaintiff in any way scaled back the exercise of his free speech in response to the policies of the Defendants, there can be no claim that his free speech was chilled by the conduct of the Defendants. And as already stated no evidence has been brought forward to suggest any third party's free speech rights were chilled.

Plaintiff's counsel again misstates the deposition testimony of the personnel director in page 27 of its supporting Memorandum by stating, "the message conveyed to the fire fighters was unmistakable – if you speak to the media about any topics involving the fire department, you will violate Chief Hunter's directive and be disciplined or fired." The deposition testimony is clear – Plaintiff's counsel asked if a firefighter who violated the conditions set forth in the memorandum citing 2.054 of the Merit System Rules and ASOP 12 could **potentially be subject to discipline**. The Personnel Director responded that yes, a firefighter who violated the policy could potentially be subject to discipline. The policy was not an absolute prohibition regarding speech to the media but rather that the procedure outlined in ASOP 12 should be followed first, this is confirmed by the

testimony of the City Manager and Fire Chief. Implicit in her answer is the fact that

firefighters may not be disciplined or fired for violation of the policy, that in fact such

violations are examined after the fact on an ad hoc basis to determine what, if any,

discipline will be meted out to the offender. The City Manager did not expand any

restraint in distributing the memorandum to all city employees, he simply reminded them

of the City's policy on free speech that has been in place for quite some time.

The only additional authority cited by the Plaintiff in support of this argument is

Elrod v. Burns, 427 U.S. 347, 373 (1976) and Jackson v. City of Columbus, 194 F.3d

737, 747 (6th Cir. 1999). The Elrod case addressed the constitutionality of dismissing

employees on the basis of their political party affiliation within the Cook County, Illinois

Sheriff's Office. It seems clear enough that is far removed from the facts of this case.

The Jackson case involved a court order prohibiting Jackson, a police official, from

commenting on an ongoing corruption investigation for which he was the primary target.

Again this is so far afield from the facts of the case at bar as to make further comment

unnecessary.

The policies of the Defendants as applied to Plaintiff Davis did not silence him, in

fact provided him with multiple avenues to voice his concerns and ultimately would have

allowed him to air those concerns in the press if he did not receive satisfaction in

exhausting the internal channels available to him. As applied these regulations are well

within the recognized constitutional limitations on free speech for members of para-

military organizations. Defendants refer the Court back to the Moore opinion cited in

Plaintiff's own Memorandum of Law in Support of its Motion for Partial Summary

Judgment. Here the Defendants did not seek an injunction or otherwise gag the Plaintiff.

Instead the Defendants implemented sanctions against the Plaintiff after he violated the policies and procedures of the City of Phenix City with respect to his contact with the Mayor and City Council. It is that adverse employment action the Plaintiff complains of, not of any counseling he received as a result of his contact with Chuck Williams of the Columbus Ledger-Enquirer in September of 2005.

The Plaintiff had an absolute guarantee under ASOP 12 if he followed the prescribed procedure and did not receive satisfaction that he would have a hearing scheduled with the City Council. The hearing would be open to the public, including the media, meaning that even if the allegation made by Plaintiff that there is a de facto prior approval policy in place that any firefighter would have the opportunity to air their concerns in a public forum that would undoubtedly be covered by the local media, thereby making any prior approval regime irrelevant.

## IV.    The City's Regulations and Practices Regarding Firefighter Contact with the Mayor and City Council are Constitutionally Permissible

Once again, to the extent Davis now for the first time tries to assert the interests of third party city employees or firefighters the Court should not entertain such a claim as there has been no evidence put forward to support it. The only submission that has been made in support of such a claim is that one firefighter quit the union after the "Three Alarm Turmoil" incident and that no firefighter has used the procedures available to avail themselves of an audience with the City Council or the media. Defendants would show that the Plaintiff has not made any submission to prove that the policies at issue would have any different impact on the free speech rights of third parties as they do upon the Plaintiff. City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 104 S. Ct. 2118, 80 L.Ed.2d 772 (1984) makes it clear that such a challenge based on third

parties will not be considered where there is no evidence to indicate the third parties would be treated differently from the Plaintiff:

> [T]his is not…an appropriate case to entertain a facial challenge based on overbreadth. For we have found nothing in the record to indicate that the ordinance will have any different impact on any third parties' interests in free speech that it has on [the Plaintiff}.

Plaintiff's counsel once again misstates deposition testimony in an attempt to make it fit the case law he has cited. Plaintiff's counsel states that the deposition testimony of the City Manager and Fire Chief confirm his assertion that firefighters are not allowed at any time from speaking with the Mayor and City Council about fire and rescue services. That is simply not true. Repeatedly throughout the deposition testimony the City Manager makes it clear that if the procedure outlined in ASOP 12 is followed that a hearing with City Council will be scheduled on any matter brought to the chain of command which would obviously include fire and rescue services. See Roberts Dep. 67:20-71:5; Hunter Dep. 46:17-25; Roberts Supplemental Dep. 18:22-19:18; Roberts Supplemental Dep. 22:1-25:13; Affidavit of H.H. Roberts dated May 18, 2007 (E.C.F. Document #44, Exhibit A).

Davis was terminated because of his accumulation of offenses under the Merit System and ASOPs, the final offense being the contact with the Mayor. This contact was not only a breach of the Merit System Rules and ASOP 12, but in direct contravention of an order he had received from his Fire Chief on communication of grievances. So to suggest that his termination was merely due to his contact with the Mayor in a vacuum absent his prior behavior is simply incorrect. See Hunter Dep. 79:12-80:7; Hunter Dep. 81:17-24; Kennedy Dep. 7:20-12:1, attached as Exhibit "C" and incorporated by

reference herein; Hanson Dep. 8:13-9:4, attached as Exhibit "D" and incorporated by reference herein.

Plaintiff relies on <u>International Asso. of Firefighters v. Rock Hill</u>, 660 F.2d 97 (4th Cir. 1981)[4] to support his assertion that it is considered a violation when the city sought to limit fire fighters' rights to speak to City Council members.  In fact, <u>Rock Hill</u> stands for the proposition that fire fighters seeking the right to speak at a public forum created by a city council will not be refused the right to speak.  Again, a procedure exists in ASOP 12 to allow any firefighter in the Phenix City Fire Department to take any grievance through the chain of command to the City Council and have an audience with the Mayor and all members of City Council on that issue.  The <u>Rock Hill</u> case in no way spoke to the issue of the right to firefighters having private telephone contact with the Mayor and Council as was the issue in this case.

Plaintiff also relies on <u>Henrico Prof. Fire Fighters v. Board of Supervisors</u>, 649 F.2d 237, 243 (4th Cir. 1981) which again is a case involving an absolute prohibition on speech by firefighters to the City Council.  It should be underlined that Plaintiffs have cited no case law that has found a procedure involving first pursuing less disruptive internal channels of communication before speaking before City Council unconstitutional.

By way of a footnote, the Plaintiff cites <u>First National Bank of Boston v. Bellotti</u>, 435 U.S. 765, 777 (1978) to support a claim that speech is equally protected when the public employee is speaking on behalf of an association or its membership.  The <u>Bellotti</u> case was brought by a consortium of banks and financial institutions seeking to invalidate

---

[4] Once again, the case is the same as the case cited by Plaintiff to be <u>Local 2106 v. City of Rock Hill</u>, however a Lexis search indicates the correct citation is the one provided above.

a Massachusetts statute that made it a criminal act for banks and financial institutions to make contributions to influence the vote on certain referendum proposals. Of course the policies at issue here do not in any way implicate the ability of the Plaintiff, the union or any other entity from making political contributions.

In the same footnote, Plaintiff cites <u>Allee v. Medrano</u>, 416 U.S. 802, 819 n. 13 (1973). The cited portion of that case refers to standing for a union to file suit. The only Plaintiff in this case is David Davis and there has been no attempt by the Plaintiff to make the IAFF or the local chapter at the Phenix City Fire Department a party to this action, leaving Defendants unsure of the relevance of the citation of that authority to the Court.

The final support for Plaintiff's argument that the policy regarding addressing City Council and the Mayor is unconstitutional is that since no one has evidently utilized the procedure that no one can or that employees are afraid to utilize it. Essentially the Plaintiff would ask the Defendant to prove a negative, that every firefighter and city employee in Phenix City has not had their free speech rights chilled by City policy. Asserting the absence of firefighters employing the remedy available to air grievances to City Council is not proof that anyone, including the Plaintiff, has had their constitutional rights violated. The burden of proof, particularly in this summary judgment context falls squarely on the shoulders of the Plaintiff.

## V.    The City's Regulations and Policies Do Not Violate the Right of Free Association

The First Amendment's right of expressive association is "the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of

religion." <u>McCabe v. Sharrett</u>, 12 F.3d 1558, 1564 (11th Cir. 1994). Davis must satisfy a three prong test to demonstrate that his termination was the result of his union membership. <u>See Caruso v. City of Cocoa, Fla.</u>, 260 F. Supp. 2d 1191, 1206 (M.D. Fla. 2003). Davis must first establish that he has a constitutional right to the association. <u>Id</u>. Next, he must show that "he suffered an adverse employment action for exercising that right." <u>Id</u>. Finally, should he establish the first two prongs, the Plaintiff's interest in associating with the union would be balanced against the Fire Department's interest in "promoting the efficiency of the public services it performs through its employees." <u>Id</u>. (citations omitted).

Davis's claim fails at the second prong of this test, as he cannot show that he was terminated for his union membership. The evidence establishes that Davis was terminated because he failed to follow the rules and procedures and directives of his employer. Davis also failed to allege any facts in support of his claim that Defendants violated his right of association.

Davis's claim also fails on the third prong of the test. Even if Davis could make a showing that he was terminated for his union membership, the interest of Defendants in promoting the efficiency of the public services it performs through its employees would outweigh his interest in associating in the union. The balancing analysis is the same as in the question of whether the termination violated Plaintiff's right to free speech and Defendants would refer the Court to the analysis performed by the United States Court of Appeals for the Tenth Circuit in <u>Belcher v. City of McAlester, Oklahoma</u> 324 F.3d 1203 (10th Cir. 2003).

The law regarding the filing of actions on violation of the right to free association arising under 42 U.S.C. 1983 in the federal courts of Alabama is outlined by United States District Court for the Middle District of Alabama, Northern Division in <u>Thomas v. McKee</u>, 205 F. Supp. 2d 1275 (2002) as follows:

> The Eleventh Circuit does not require plaintiffs to demonstrate that their claimed freedom of association pertains to matters of public concern. Therefore, in analyzing whether a government employee's freedom of association rights have been infringed involves a three-part test. The first step is for the court to balance an employer's interest in maintaining an efficient workplace against the weight accorded to the employee's First Amendment rights. If the First Amendment interest is of sufficient importance, plaintiffs then have the burden of showing that the protected activity was a substantial motivating factor in the decision not to promote them. If plaintiffs demonstrate this, the burden shifts to defendants to prove by a preponderance of the evidence that they would not have promoted plaintiffs, regardless of the parties' divergent political inclinations.

Plaintiff has made no allegation that his free association rights to belong to and represent the firefighter's union outweigh the City's interest in maintaining an efficient workplace. If every firefighter with a complaint about Department policy went to the Mayor instead of through the proper chain of command, the Mayor would have time for nothing but hearing the complaints of police officers, firefighters, EMTs and other City employees and would be unable to conduct City business. No showing or allegation has been made that the free association rights of the plaintiff outweigh the ability for the Mayor to perform his duties with respect to the operation of City government. So the second count of the Complaint should fail upon that basis alone.

Even if this Court were to determine that the plaintiff's interest outweighed the City's interest in maintaining an efficient workplace, the plaintiff would still fail the second prong of the <u>Thomas</u> test in that plaintiff has made no showing that the adverse employment action was related to his exercise of free association rights. In the

29

allegations made under the sections of the Complaint captioned "Facts" and "Common Allegations", the plaintiff alleges that the adverse employment action occurred within days of his attempt to lodge a complaint with the Mayor regarding a change in the policies of the Phenix City Fire Department.  See Complaint at Paragraphs 15 through 18. It is not disputed that the reason for the termination of the plaintiff was his contact to the Mayor, which was a direct violation of the City's Merit System Rules and Regulations. The fact that he was involved with the Union was immaterial, as it would have been a violation of the Merit System Rules and Regulations whether or not he was a member of the Firefighter's Union.  Therefore, the Motion for Partial Summary Judgment filed by the Plaintiff on this issue should be denied.

Plaintiff also seems to assert the bizarre claim here that he is entitled to free association with elected municipal officials at a time and place of his choosing.  Here, as elsewhere this argument is made, no legal authority to support it is offered.  So again Defendants would ask that the Court reject this argument as well.

### CONCLUSION

At a minimum, there is a genuine issue of material fact on the issues underlying Count IV of the Plaintiff's Complaint, the only count upon which the Plaintiff has requested judgment as a matter of law.  Therefore the Defendants respectfully request that the Plaintiff's Motion for Partial Summary Judgment be denied.

This 31st day of December, 2007.

MCKOON & ASSOCIATES

*/s/ Joshua R. McKoon*

By:_____

Joshua R. McKoon
State Bar No. MCK057

                                           */s/ James R. McKoon, Jr.*
                                    By:_____
                                           James R. McKoon, Jr.
                                           State Bar No. MCK020

                                    THE GRAHAM LEGAL FIRM

                                           */s/ James P. Graham, Jr.*
                                    By:_____
                                           James P. Graham, Jr.
                                           State Bar No. GRA030

925 Broad Street
Post Office Box 3220
Phenix City, Alabama 36868-3220
334.297.2300
facsimile 334.297.2777

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing Motion to Dismiss upon Counsel for the Plaintiff by placing a copy of same in First Class Mail addressed as follows:

Thomas A. Woodley
Molly A. Elkin
Bryan G. Polisuk
Woodley & McGillivary
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005

Gary Brown, Esq.
Fitzpatrick & Brown
Farley Building, Suite 600
1929 Third Avenue North
Birmingham, Alabama 35203

*/s/Joshua R. McKoon*

_____

Counsel for Defendants