IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS,
Plaintiff,
vs. CASE NO. 3:06-CV-0054-VPM
CITY OF PHENIX CITY, ALABAMA,
et al.,
Defendants.

***********

DEPOSITION OF MICKEAL D. HANSON, taken pursuant to stipulation and agreement before Shannon M. Williams, Certified Court Reporter and Commissioner for the State of Alabama at Large, in the offices of City Hall, 601 12th Street, Phenix City, Alabama, on Wednesday, November 7, 2007, commencing at approximately 11:31 a.m. EST.

***********



APPEARANCES

FOR THE PLAINTIFF:
THOMAS A. WOODLEY
Woodley & McGillivary
1125 15th Street N.W.
Suite 400
Washington, D.C. 20005

FOR THE DEFENDANTS:
JAMES P. GRAHAM, JR.
712 13th Street
P.O. Box 3380
Phenix City, Alabama 36868-3380

JAMES R. MCKOON, JR.
McKoon & Associates
925 Broad Street
P.O. Box 3220
Phenix City, Alabama 36868-3220

ALSO PRESENT:
Cole Dugan
Wallace Hunter
H.H. Roberts




CONDENSED COPY



STIPULATIONS

It is hereby stipulated and agreed by and between counsel representing the parties that the deposition of MICKEAL D. HANSON is taken pursuant to the Federal Rules of Civil Procedure and that said deposition may be taken before Shannon M. Williams, Certified Court Reporter and Commissioner for the State of Alabama at Large, without the formality of a commission; that objections to questions other than objections as to the form of the questions need not be made at this time but may be reserved for a ruling at such time as the deposition may be offered in evidence or used for any other purpose as provided for by the Federal Rules of Civil Procedure.

It is further stipulated and agreed by and between counsel representing the parties in this case that said deposition may be introduced at the trial of this case or used in any manner by either party hereto provided for by the Federal Rules of Civil Procedure.

**********



MICKEAL D. HANSON

The witness, having first been duly sworn or affirmed to speak the truth, the whole truth and nothing but the truth, testified as follows:

EXAMINATION

BY MR. WOODLEY:

Q. Mr. Hanson, could you please state your full name for the Record?

A. It's Michael Duane Hanson.

Q. Mr. Hanson, my name is Tom Woodley. I'm one of the attorneys representing David Davis in this court action that's been pursued against the City and Chief Hunter and City Manager Roberts. Let me ask you some preliminary questions. Have you ever had your deposition taken before?

A. Yes.

Q. In other cases?

A. Yes, sir.

Q. Have you had an opportunity to spend some time with Mr. McKoon or Mr. Graham about the nature of this lawsuit and the nature of the deposition procedures?

A. Yes.

Q. If at any time you don't hear one of my questions or you don't understand one of my

questions, let me know immediately and I'll be glad to repeat it or rephrase that. Do you understand that?

A. Yes.

Q. And you'll have to wait until I finish my questions before you begin your answer so we can have an accurate record taken by this reporter.

A. No problem.

Q. And, of course, you're now sworn under obligation to tell the full truth. Do you understand that?

A. Yes, I do.

Q. What is your current position within the city fire department?

A. My current position is deputy fire chief.

Q. When did you first come on board with the city fire department? What year?

A. January 28th of 1987.

Q. Then you were promoted up the chain of command?

A. I was promoted, yes.

Q. Did you ever have any supervisory responsibility over David Davis when he was working his eight years here in the fire department?

A. Yes, I did.



Q. Were you his deputy chief?

A. No, sir. That -- I was the battalion chief. I was on shift work at that time.

Q. What shift was that?

A. Well, I have been on various shifts, but I think at that moment -- the last time I had David on my shift was when he was on A shift. If I'm not mistaken, it was A shift he was on.

Q. And did you have occasion to give him evaluations of his job performance as a firefighter?

A. I did not. His captain of his station did.

Q. Okay. But you did not?

A. No, sir, I didn't.

Q. Let me invite your attention to an exhibit there in the blue binder in front of you. Mr. McKoon has a set of exhibits as well. And this would be Exhibit 18. This is an internal memo from then Deputy Chief Roy Waters to Fire Chief Hunter dated February 6, 2006, and it deals with David Davis. Just read that to yourself. It's only one page.

Have you had a chance to read that?

A. Yes, sir.

Q. If you notice the last sentence, Deputy Chief Waters is telling Chief Hunter, "David Davis



is doing an outstanding job for me and has a very positive and professional attitude."

Do you see where it says that, Chief Hanson?

A. Yes. The last sentence in the paragraph.

Q. Would you agree with the observation and description by Chief Waters that David Davis was doing an outstanding job as a firefighter and had a positive and professional attitude?

A. Well, this is -- the way I understand it, this is Chief Waters' opinion about him, and I guess this is what he thought about.

Q. Would you agree with that?

A. I would not, no.

Q. Why do you say no?

A. Well, David has always been a complainer. He complains about most everything, especially if something new happens. He's always been -- he always refers to us as white shirts versus the blue shirts and stuff like that. And he just -- he has -- to me, he has an overall negative opinion for, I guess, authority or for the upper ranks of the department.

Q. Have you ever had occasion to discipline David Davis concerning his job?

A. If I'm not mistaken, I have, yes.



Q. What was that?

A. I was trying to think. I believe it may have been when he made a statement, and that may have been just a verbal reprimand. I remember I had -- I've had to go to a personnel hearing for him.

Q. On what issue?

A. That's what I was trying to remember, it's been so long ago.

Q. Did that involve Ms. Kennedy?

A. I'm just not sure. I'll have to look at the paperwork, it's been so long ago. I don't know.

Q. Can you recall any other adverse performance issues involving Mr. Davis when he was doing his job in the fire department?

A. Other than I remember the situation where we were meeting with the shift personnel, and I think Chief Kennedy was speaking at that point and he -- David jumped up as though he was coming out of his seat yelling some words like, what are you doing trying to punk me. Probably not in exact words, but that was a problem.

Q. Have you talked to Ms. Kennedy in the last week about that situation?

A. I have not, no. Not that I can recall, I