IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DAVID DAVIS, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 3:06-cv-00544-VPM |
| PHENIX CITY, ALABAMA, et al. | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff David Davis respectfully submits this reply to defendants' response to plaintiff's motion for partial summary judgment. Most of the arguments advanced by the defendants have already been addressed in plaintiff's opening memorandum and supporting papers, and need not be repeated here.

The record before the Court demonstrates that Section 2.054 of the City's Merit System Rules and Regulations and Fire Department ASOP 12, as well as the application of those regulations by City and Fire Department officials, have clearly imposed unconstitutional 'prior restraints' on the exercise of First Amendment rights by Davis and other City employees who are admittedly covered by those regulations. In similar cases, where such restrictive governmental policies have been challenged on their face and as applied, the courts have struck down those policies on summary

judgment.[1] As shown in plaintiff's opening brief and below, the same result should be reached here.

I. **Summary Judgment Principles**

Summary Judgment may be entered where there is no genuine issue of material fact. Twiss v. Fury, 25 F.3d 1551, 1554 (11th Cir. 1994). An issue of fact is **"material"** if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). It is **"genuine"** if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id..

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular issue before it. Anderson, 477 U.S. at 254. Summary judgment may be granted if the nonmovant fails to adduce evidence which would support a jury finding in its favor. Id. at 254-55.

---

[1] E.g., Mansoor v. Trank, 189 F.Supp.2d 426, 438 (W.D. Va. 2002), affirmed, 319 F.3d 133 (4th Cir. 2003); Harman v. City of New York, 140 F.3d 111 (2nd Cir. 1998); Providence Firefighters Local 799 v. City of Providence, 26 F.Supp.2d 350 (D.R.I. 1998); Int'l Ass'n of Fire Fighters Local 3233 v. Frenchtown Charter Township, 246 F.Supp.2d 734 (E.D. Mich. 2003).

Additionally, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. Id.

## II. Under the Heightened NTEU Standard, Defendants Shoulder a Heavy Burden in Trying to Defeat Plaintiff's 'Prior Restraint' Claims

Defendants miss the mark when they contend that plaintiff Davis must, in effect, satisfy the four-part test enunciated in Pickering v. Board of Educ., 391 U.S. 563 (1968), in order to prevail on his 'prior restraint' claim. That test applies only in situations where a local government has **disciplined** an employee for making a particular statement **in the past**. Claim IV in plaintiff's Amended Complaint involves a **prior restraint** on the **future** exercise of First Amendment rights of free speech, and the governing standard is the one set forth in U.S. v. NTEU, 513 U.S. 454 (1995). (See cases cited in plaintiff's opening brief, pp. 21-23). Moreover, the burden of proof in the prior restraint context is a heavy one which rests squarely on the defendants. As the Court stressed in Mansoor v. Trank, 319 F.3d 133, 137 (4th Cir. 2003), "'the Government's burden is greater' in cases like that at hand, involving 'potential speech before it happens' than in cases involving 'an adverse action taken in response to actual speech.'. NTEU, 513 U.S. at 468, 115 S.Ct. 1003." That heightened standard is as follows: "the Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by

3

that expression's necessary impact on the actual operations of the Government." NTEU, 513 U.S. at 468.

The defendants mistakenly argue that they can defeat the plaintiff's motion for partial summary judgment if they simply satisfy the 'balancing' test enunciated in Pickering. Indeed, they try to create their own measurement: the City's interest in "efficiency" and the "chain of command" outweighs and essentially trumps the constitutional right to engage in future free speech about all issues of public concern. No court has adopted any standard like that in a 'prior restraint' context.[2] On the contrary, **every** court has applied the more exacting standard articulated in NTEU when confronted with a restriction which "chills potential speech before it happens." NTEU, 513 U.S. at 468. (See, cases cited in plaintiff's opening brief, pp. 20-22).

The defendants have devoted almost three-quarters of their opposition memorandum trying to factually distinguish the growing number of court decisions that have nullified a variety of restrictions imposed by local governments on the exercise of free speech rights. According to defendants, **not one** of those cogent rulings safeguarding First Amendment protections applies here. Actually, the defendants' efforts in this vein further underscore how diligently the federal courts have been in rejecting a wide spectrum of ways in which municipal governments have attempted to limit the exercise of free expression by fire fighters, police officers, and other city workers.

In contrast to the substantial body of precedent cited by plaintiff in support of his prior restraint claim, notably, the defendants have not referred to a single court decision

---

[2] How could a Court possibly balance the respective interests of an employee and a city employer with regard to a hypothetical, future statement that might conceivably be made in unknown circumstances?

4

supporting their counter-arguments on this issue. The defendants' reliance on the Tenth Circuit's opinion in <u>Belcher v. City of McAlester, OK</u>, 324 F.3d 1203 (10th Cir. 2003) is misplaced, especially in the prior restraint context which, as noted above, invokes the stricter standard of <u>NTEU</u>, and not the four-part <u>Pickering</u> test. In <u>Belcher</u>, a fire fighter was reprimanded after he voiced to city officials his personal complaint against the purchase of a new rescue truck, asserting that there was "the possibility of corruption and kickbacks." 324 F.3d at 1205. A number of other fire fighters were upset with Belcher's individual objections because they needed the new rescue truck to do their jobs and because he had gone outside the fire department to register his unshared criticisms. Significantly, Belcher had admitted that his strident comments and approach "caused controversy or friction within the fire department and made other fire fighters distrust him." <u>Id</u>., at p. 1209. On those very different facts, the Tenth Circuit ruled that under the <u>Pickering</u> balancing test, the mild discipline of a reprimand was justified because there was "actual disruption" in fire department operations which outweighed Belcher's interest in aggressively pressing his personal complaint.

 Clearly, the <u>Belcher</u> holding in the *post-hoc* discipline context has nothing at all to do with the 'prior restraint' issue now before the Court on plaintiff's pending motion for partial summary judgment. Moreover, as the record reveals here, and as this Court has already found (Doc. No. 49), Davis was acting in his capacity as a **citizen** and he spoke on matters of public concern, expressing the collective views of the fire fighters' Association about a City-wide Ordinance that the Council was about to vote on. Also, there is no showing that his brief telephone conversation with the Mayor about the proposed Ordinance had any appreciable disruption on fire department functions.

5

Accordingly, the one case cited by defendants in their response provides no authority for denying plaintiff's motion with respect to Count IV of his Amended Complaint.

In contrast, of the many court decisions supporting the plaintiff's position, <u>Int'l Fire Fighters Ass'n. Local 3233 v. Frenchtown Charter Township</u>, 246 F.Supp.2d 734 (E.D. Mich. 2003) is perhaps the most instructive. There, the Township adopted ordinances restricting fire department personnel from releasing information "regarding fire department matters, fires or other emergencies" to the public and news media. 246 F.Supp.2d at 736. All questions and concerns regarding "the business or policy affairs of the fire department" had to be pursued through the Fire Chief. <u>Id</u>. at 736-738. The Township argued, like the defendants do here, that under <u>Pickering</u>, it should be able to restrict speech which dealt only with "internal" fire department business. The court rejected that contention because "speech affected by the restrictions clearly touches upon matters of public concern." <u>Id</u>. at 738. Citing cases from various circuits, the court correctly found that "the 'business or policy affairs of the fire department' covers topics of public concern." <u>Id</u>. The Court also rejected the Township's efforts to place a narrow interpretation on the restrictions because they "contravene the clear language of the Ordinance. . . ." 246 F.Supp.2d at 739. The Court granted summary judgment to the fire fighters' association, finding that the local government's generally stated apprehensions about inefficiency, disharmony and disruptions did not meet the higher <u>NTEU</u> standard of providing concrete "evidence of actual harm that would be caused by Plaintiffs' [future] speech." <u>Id</u>. at 744.[3] This reasoning applies with equal force here.

---

[3] Accord: <u>Providence Firefighters Local 799</u>, 26 F.Supp.2d at 356 (The fire department's interest as a 'paramilitary organization' in efficiency, harmony and discipline, do not count for much under the elevated <u>NTEU</u> standard; "suppression of free speech" and the "harm resulting to the public far outweigh any harm to the government").

In addition, public employers have been unsuccessful in their efforts to prohibit or limit access of fire fighters who wish to speak with elected City Council members about questions of public concern.  Local 2106 v. City of Rock Hill, 660 F.2d 97 (4th Cir. 1981)(Court rejected the notion that allowing fire fighters to speak to City Council members would "interfere with the operation of the fire department."); Hickory Fire Fighters Association v. City of Hickory, 656 F.2d 917, 921 (4th Cir. 1981)(City Manager's refusal to permit representatives of a fire fighters' association to address City Council members violated First Amendment where City failed to show a 'compelling justification'); Pesek v. Brunswick, 794 F.Supp. 768 (N.D. Ohio 1992)(public employee's First Amendment rights to free speech were violated when he was prohibited from speaking to city council members).

In short, as demonstrated in the plaintiff's briefs, the courts have not been reluctant to declare regulations, policies and practices, like the ones at issue here, to be unconstitutional and unenforceable.

### III. The Material and Undisputed Facts  in This Record Shows a Clear Violation of First Amendment Rights

#### A. Defendants Have Imposed Unconstitutional Restrictions on Communications with the Media

The factual record is clear with regard to the ban and/or restrictions imposed by the defendants concerning communications with the media.  As the City's Rule 30(b)(6) witness, Chief Hunter, emphasized in his first deposition, the fire fighters "still don't have the right" to speak to the media about matters of obvious public concern, even if they exhaust the chain of command.  (Doc No. 30, Hunter Dep., p. 56 lines 2 to 13).  In his supplemental deposition, Hunter reaffirmed that only he, as the Chief, and City Manager

7

Roberts, should ever speak with the media. (Doc. No. 98, Attach. No. 5, page 11, line 22 to page 13, line 3, page 22, line 3 to page 24, line 4). He stressed that if a firefighter speaks to a media representative about any issues affecting the fire department **without prior approval**, he would violate the Merit System Rules and Regulations and be subject to discipline, including termination. (Doc. No. 98, Attach No. 5 , page 13 lines 15 to 25; page 18, line 14 to page 20, line 9).

City Personnel Director Goodwin also confirmed in her deposition that in light of the City's policy and written directives to all employees, "any communications with the media . . . go through our City Manager" and employees who departed from that mandate would be subject to discipline and termination. (Doc. No. 99, Attach. No. 5, Goodwin, page 17 line 11 to page 21 line 7). In his first deposition, City Manager Roberts fully agreed with Chief Hunter and Ms. Goodwin with regard to the City's ban on media communications, and the likelihood of discipline, including discharge, for any violations of the Merit System Regulations. (Doc. No. 30, Roberts Dep., p. 67 line 10 to p. 71 line 5). In his supplemental deposition, Roberts also stated that any fire fighter contacts with the media about issues of public concern (fire department staffing, training, equipment, dispatching, response times, etc.), without prior approval from the Chief or himself, would contravene the Merit System Regulations and result in disciplinary action. (Doc. No. 95, Attach. No. 10, page 12, line 25 to page 15, line 23).[4]

---

[4] Roberts also indicated that these regulatory restrictions apply across-the-board to all City employees. (Id., page 16, line 11 to 18). Like so much of the conflicting testimony given by Roberts, in his supplemental deposition, Roberts modified his statement to say that if he received a request by a fire fighter to speak with the media, he would forward it to the City Council for review as to whether it would be permitted. (Doc. No. 95, Attach. No. 10, page 18, line 22 to page 19, line 18). Having to get prior approval at the highest level of City government is exactly the type of pre-clearance condition that the courts have uniformly found to be unconstitutional. See discussion infra, pp. 14-15.

Clearly, the deposition testimony from defendants and City representatives leaves no doubt as to the meaning and effect of the City's broad restrictions on communications with the media.

Moreover, the defendants' behavior supplies more uncontested evidence as to how the City has, in fact, applied its Merit System Regulations to bar—and punish— employee contacts with the media.  When Davis, Gaskin, and other fire fighters were interviewed in a local newspaper article dated September 18, 2005, about issues of public concern in the fire department, they were immediately interrogated, reprimanded and threatened with discharge if they ever did that again.  (Id., Facts ¶'s 9-15).[5]  In his written reprimand, fire fighter Karl Taylorson was threatened that the City "would not put up with another episode of speaking to the media without prior approval." (Doc No. 91, Facts. ¶15).  The defendants certainly understood that "[t]he threat of dismissal from public employment is . . . a potent means of inhibiting speech."  Edwards v. City of Goldsboro, 178 F.3d 231, 246 (4th Cir. 1999), quoting Pickering v. Board of Educ., 391 U.S. 563, 574 (1968).

At the same time that Davis and other fire fighters were being reprimanded and threatened, Chief Hunter issued a warning notice to **all members** of the fire department, drawing attention to the fire fighters' "comments" in the newspaper article.  (Doc No. 91, Facts, ¶12).  He attached a copy of Section 2.054 of the Merit System Rules and Regulations restricting "free speech" and emphasized that another "[f]ailure to follow the rules will be dealt with in accordance with the merit system."  (Id.). He ordered each fire fighter to sign the Memo, and it was "placed in the employee's personnel file." (Id.,).

---

[5] The references to "Facts, ¶_____" are to the numbered factual paragraphs in plaintiff's opening brief.

9

City Manager Roberts distributed the same Memo to "All" City employees. (Id., Facts ¶13). The plain message from defendants was unmistakable, if a City employee speaks with the media—even off-duty, as a citizen, and about any City-related matters of legitimate public concern—disciplinary action, including termination, will be the consequence.

Lastly, since the newspaper article appeared on September 18, 2005, more than two years ago, not a single fire fighter or other City employee has talked to a media representative about any concerns related to the fire department or the City. The deterrent effect created by the defendants could not be more complete or widespread. As one Court aptly reasoned: "Vigilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions, but simply because superiors disagree with the content of employees' speech." Edwards v. City of Goldsboro, 178 F.3d 231, 246 (4th Cir. 1999), quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987). In sum, under controlling law, the defendants' prior restraints on the right of free expression with the media are plainly unconstitutional and unenforceable.

### B. Defendants Have Also Imposed Unconstitutional Restrictions on Communications with the City Council

The evidentiary record—particularly the City's policies and the sworn deposition testimony given by Chief Hunter and City Manager Roberts—show that Section 2.054 of the Merit System Rules and Regulations and Fire Department ASOP 12 barred Davis and other City employees from addressing the City Council about any fire department or City-related issues. Fire Chief Hunter was designated as the defendants' Rule 30(b)(6) witness to give knowledgeable and binding testimony with respect to, inter alia, the

chain of command and related policies, and fire department operations. (Doc No. 30; Attach. No. 4, Hunter Dep., p. 7, lines 7 to 25; p. 8, line 20 to p. 9, line 12). In that authoritative capacity, Chief Hunter was asked in his deposition whether ASOP 12 would permit a fire fighter to go beyond the City Manager and address the City Council as a group in a meeting. His direct response was: "City Manager informs the council of anything that's going on. He would be the one that—if he had to express something that was bad, he would be the one that would meet with the city council." (Id., p. 76, lines 12 to 16). He also emphasized that under ASOP 12, a fire fighter would never speak to the City Council at a meeting—"a place you would never get to because it stops at the City Manager." (Id., p. 76 lines 1 to 6).

Chief Hunter's testimony certainly reinforces what Roberts testified to under oath, at least the first time in his sworn deposition. Roberts was given ample opportunity in his deposition to explain if there were any circumstances—even after exhausting the initial 'chain of command'—in which a fire fighter could address the City Council about issues of public concern, in a formal meeting of the Council or otherwise. In unambiguous words, Roberts testified "not to my knowledge"; "not by the Merit System"; he, as the City Manager, would raise any fire fighter concerns with the Council; if a fire fighter exhausted the chain of command and spoke to the Council as a group, or to its individual members, he/she would violate both the "language" and "intent" of the Merit System Regulations, and would be subject to discipline, "including termination".[6] Clearly, Roberts' initial deposition testimony is not susceptible to misinterpretation.

---

[6] (Doc No. 30, Attach. No. 10, page 83 line 2 to page 85 line 6).

In his supplemental deposition taken on November 6, 2007, and without qualification, Roberts once again addressed the ban on fire fighters addressing the City Council:

> Q. Mr. Roberts, as a city manager, do you believe or feel that a city employee like a fire fighter, speaking as a citizen and while off duty and out of uniform, has the right to address the city council?
> A. On matters other than pertaining to the fire department or to the police department or issues within the work force, yes, sir, I do.
> Q. So a firefighter could go directly to the city council while off duty and as a citizen and speak to the city council in an open public meeting about issues that affect the fire department?
> A. Not about issues that affect the fire department, sir.
> Q. Okay. Then I'm sorry. I didn't understand your earlier response. So that's out of bounds? A firefighter cannot go to the city council, as a citizen off duty, and speak about issues that affect the fire department?
> A. That is my understanding, sir, of the merit system and the SOPs.
> Q. And when you say the merit system, those are the regulations and the ASOP-12 that would preclude that from happening?
> A. Yes, sir.
>
> (Doc. No. 97, Attach. No. 5, Roberts Supp. Dep., p. 25, line 16 to p. 26, line 15)

The language of both Section 2.054 of the City's regulations and ASOP 12 is consistent with this sworn testimony. Section 2.054 gives unbridled discretion to City officials to bar "free speech" if they alone determine that it "impairs discipline and harmony in the workplace", "impedes job performance", or "jeopardizes close personal loyalty." (Doc. No. 94, Attach No.7, Exh. 8). ASOP 12 mandates that there be no communications with City Council members; instead, all "<u>work-related</u>" matters affecting

the fire department must be submitted within the chain of command.[7] If a problem cannot be solved, inside the fire department, the City Manager is the person mentioned who will handle it with the City Council. (Id.). The strict wording of these written policies is consistent with the deposition testimony of both Hunter and Roberts as to how the regulations have been applied.

Of course, the reliable axiom that 'actions speak louder than words' provides further evidence about the ban on free speech. When Davis spoke to Mayor Hardin on a proposed City-wide Ordinance (found by this Court to be in his capacity as a citizen on a matter of public concern, Doc. No. 49), he was immediately fired for doing so. Terminating an 8-year veteran of the Phenix Fire Department, for contravening Section 2.054 and ASOP 12, did not go unnoticed by other City employees. Indeed, it is undisputed that no other City employee—**not one**—has ever communicated with City Council members about City-related issues (in a public or non-public forum). Defendants have not produced any evidence to dispute this fact. (Facts, ¶33). This record speaks volumes about the absolute intolerance that City and Fire Department officials have with respect to any contacts by City workers with elected City Council members.

Measured against this mountain of undisputed evidence is the intervening Affidavit (Doc. No. 47, Attach. No. 1) submitted by Roberts where he tried to distance himself from his own deposition (deposition testimony which has been given both

---

[7] Chief Hunter testified that "work-related business" broadly encompasses staffing, equipment and other subjects of public concern. (Doc. No. 98, Attach. No. 6, page 33, lines 11-22).

13

before, and after, the filing of his Affidavit by defendants' counsel).[8] When compared to the clear wording in his deposition, Roberts efforts to back away from his testimony under the guise of "misinterpretation" does not pass the test of common sense. It is well settled that a party cannot thwart the purpose of Fed.R.Civ.Pro 56 by attempting to create fact-based issues that contradict his deposition testimony. <u>Van T. Junkins and Associates, Inc. v. U.S. Industries</u>, 736 F.2d 656, 657 (11th Cir. 1984)(affidavit should be disregarded as a "sham" where it contradicts previous and unambiguous deposition testimony); <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946, 960 (4th Cir. 1984).

Succinctly stated, on this record, defendants have imposed unlawful prior restraints on the protected First Amendment right to communicate with elected City Council members.

**IV.  The Pre-Clearance Restrictions Imposed by Defendants on
the Exercise of Free Speech Rights Are Plainly Unconstitutional**

Even assuming <u>arguendo</u> that Roberts' Affidavit recanting his conflicting deposition testimony is to be considered reliable—to the effect that Davis and other similarly situated fire fighters can address the media and City Council after pursuing the fire department's 'chain of command' or City grievance procedures—those are precisely the types of pre-clearance conditions which the Courts have consistently invalidated as improper restrictions on First Amendment rights. Policies and practices that mandate clearing public employees' speech through supervisors, and empowering a city manager to screen what is presented to the media or elected City leaders, do not pass

---

[8] The conflicting Affidavit is dated May 18, 2006, shortly after the plaintiff filed his earlier summary judgment papers (Doc. No. 30) pointing out Roberts plain deposition testimony that fire fighters were barred from speaking to the media and Council members even if they first exhausted the chain of command. Evidently there was no compunction about drafting and filing an Affidavit that said exactly the opposite of Roberts' earlier sworn deposition testimony.

14

constitutional muster.[9]. Regardless of the labels assigned to those pre-conditions ('grievance procedures'; 'chain-of-command'; etc.), they operate to impede the protected right to speak as a citizen on matters of legitimate public concern. "Pre-clearance procedures constitute prior restraint that 'chills potential speech before it happens'." Providence Firefighters, 26 F.Supp.2d at 355, quoting NTEU, 513 U.S. at 468.

The defendants erroneously believe that requiring Davis and other fire fighters to secure prior approval from a department head or other City officials help them to resist a finding of unconstitutional prior restraints on free speech. In rejecting that unprecedented viewpoint, the Court in Wolf v. City of Aberdeen, 758 F.Supp. 551, 555, n.1 (D.S.D. 1991) put it best:

> Both parts of the ordinance contain a clause which allows employees to speak if prior approval is received from the department head. This does not save the ordinance and arguably contributes to its unconstitutionality. The ordinance does not define how the department head is to consider employee's requests to speak. An ordinance which places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, ____, 110 S.Ct. 596, ___, 107 L.Ed.2d 603, 618 (1990). This is constitutionally impermissible. *Hynes v. Mayor and Council of the Borough of Oradell*, 425 U.S. 610, 617, 96 S.Ct. 1755, 1759, 48 L.Ed.2d 243 (1976).

As the defendants are all too aware, they have effectively imposed a 'prior restraint' on the fire fighters' right to engage in freedom of expression—a scheme the courts have consistently rejected under First Amendment law. E.g., Milwaukee Policy

---

[9] See cases cited in plaintiffs' opening memorandum, (Doc. No. 91, pp. 22-24, 29-30. Accord: Int'l Firefighters Assn. Local 3233, Frenchtown Charter Township, 246 F.Supp.2d 734 (E.D. Mich. 2003); Providence Firefighters Local 799 v. City of Providence, 26 F.Supp.2d 350, 355-57 (D.R.I. 1998); Wolf v. City of Aberdeen, 758 F.Supp. 551, 558 (D.S.D. 1991).

Ass'n v. Jones, 192 F.3d 742, 749-50 (7th Cir. 1999). As the Fifth Circuit reasoned in a similar fire fighter case, a City's "desire to control the flow of information" should carry "no weight". Moore v. City of Kilgore, 877 F.2d 375-76 (5th Cir. 1989), cert. denied, 493 U.S. 1003 (1990). The deterrent effect of the defendants' policies and practices will continue indefinitely into the future, unless and until this Court intervenes to hold the defendants accountable for the egregious violations of the constitutional right of free expression.

## V. The Defendants' Restrictive Policies Also Violate Plaintiff's First Amendment Right of Free Association

The defendant's abbreviated opposition to the plaintiff's 'prior restraint' claim with respect to the constitutional right of free association incorporates the same contentions they advance as to his free speech claim. As indicated in plaintiff's opening brief, Davis has been the elected President and spokesperson for the fire fighters' Association with respect to matters of concern to the Association members. The far-reaching language of the offensive policies and the defendants' practices precluded him from contacting or meeting with the media and City Council members.[10] When he did associate with fellow union members, a newspaper reporter, and Mayor Hardin as a citizen about public concern issues, he was reprimanded, threatened and ultimately fired. In these

---

[10] Without any cited authority, defendants boldly contend that associating with Mayor Hardin or other elected City Council members is somehow excluded from the right of free association built into the First Amendment. It is not surprising that there is no authority to sustain the extraordinary notion that there is no constitutional protection regarding associating with elected local government leaders who need information and input to effectively do their jobs in the interests of the public. Henrico Prof. Fire Fighters v. Board of Supervisors, 649 F.2d 237, 243 (4th Cir. 1981)(prohibition against representatives of the fire fighters' association speaking to board of supervisors violates First Amendment rights of the association and its members of free association, free speech, and the right of petition).

circumstances, it is hard to imagine a more intrusive and obvious violation of the First Amendment right to freely associate.

## VI. Conclusion

In sum, "where the facts and the law will reasonably support only one conclusion" summary judgment is appropriate. <u>McDermott Int'l. Inc. v. Wilander</u>, 498 U.S. 337, 356 (1991). Here, the defendants have failed to carry their substantial burden under the <u>NTEU</u> standard to justify the 'prior restraint' that their regulations, policies and practices have imposed on the fundamental First Amendment rights of free speech and free association. As the Supreme Court has held, where a party has failed to make the requisite showing sufficient to establish an element essential to its case, and on which the party would bear the burden of proof at trial, "there can be no genuine issues as to any material facts . . . . The moving party is entitled to judgment as a matter of law'." <u>Celotex</u>, 477 U.S. at 322-23.

For the reasons set forth above and in plaintiff's earlier submissions, and based on this record, it is respectfully submitted that plaintiff's motion for partial summary judgment with regard to Count IV of the Amended Complaint should be granted.

Respectfully submitted,


/s/ Thomas A. Woodley
Thomas A. Woodley
Molly A. Elkin
Bryan G. Polisuk
WOODLEY & McGILLIVARY
1125 15th Street, NW, Ste. 400
Washington, DC 20005
Tel: (202) 833-8855
Fax: (202) 452-1090


/s/ Gary Brown
Gary Brown, Esq.
FITZPATRICK & BROWN
Farley Building, Suite 600
1929 Third Avenue North
Birmingham, Alabama 35203
Tel: (205) 320-2255
Fax: (205) 320-7444

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DAVID DAVIS, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 3:06-cv-00544-VPM |
| PHENIX CITY, ALABAMA, et al. | ) Judge W. Harold Albritton |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

This is to certify that on January 7, 2008, I electronically filed Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing. Service has also been made by regular U.S. mail to counsel for defendant:

Joshua Robert McKoon
McKoon, Thomas, & McKoon
925 Broad Street
P.O. Box 3220
Phenix City, AL 36868

/s/ Thomas A. Woodley
Thomas A. Woodley
Attorney for Plaintiff