04/28/2006

Barbara Goodwin/Personnel Director,

I am humbly requesting an appeal hearing to the personnel board for the disciplinary actions and termination that was taken against me April 21, 2006. I respectively ask that this hearing not occur until after May 12, 2006, for I will be out of town. In addition, I will be using legal counsel and ask that you inform me in writing, that I will be allowed to use legal representation during this appeal hearing.

Respectively,

David P. Davis
185 Lee Road 236
Phenix City, AL 36870
(334) 291-1927



**WRITTEN WARNING FORM**

| Emp. # | 1299 | | |
|---|---|---|---|
| Employee | David Davis | Date | April 20, 2006 |
| Date of Hire | 4/27/1998 | SS# | |
| Department | Fire Rescue Services | Division | Operations |

This written warning was issued to the above named employee this date for the following violation(s) of the Merit System Rules and Regulations:

Group  II          Line #      4  which states:

"Negligence or omission in complying with the requirements as set forth in miscellaneous rules".  **AND** Group III Line #6 which states: "Insubordination by the refusal to perform work assigned/to comply with written or verbal instructions of the supervisory force".

**DETAILS OF MERIT SYSTEM VIOLATION**

Document detailed description of violation including date, time and nature of each occurrence:

On April 17, 2006 at 12:30 p.m. Driver Engineer David Davis called Mayor Hardin regarding City proposals.  Mayor Hardin was not in and David Davis asked to leave a message for Mayor Hardin to return his phone call. David Davis stated he would not speak with anyone else.

Prior Verbal or Written Corrective Actions (give date, reason and action)

September 20, 2005- Violation of directive from Chief Wallace B. Hunter regarding free speech and grievances.  Violation of ASOP 12: #1 If a member of the department has a problem with the department, another Department, or City operations and procedures which are work-related and finds it necessary to go above his/her immediate supervisor, he/she must notify the supervisor of the intention to do so. #3  If a problem cannot be solved by anyone in the chain of command, then the City Manager will arrange a hearing with the City Council.

August 22, 2005- Counseling Memorandum:  David Davis ordering a firefighter to do 25 pushups for forgetting his uniform shirt when reporting for duty.  August 3, 2005- Written Warning Form, Group II Line 2 which states "threatening, intimidating, coercing, or interfering with fellow employees or supervisors at anytime, including abusive language".  March 15, 2005- letter addressed to Mr. Thomas H. Malone, Jr. in regards to handling of personnel issues.  October 25, 2004- Counseling Form: Group I Line 13 Violating a safety rule or safety practice.  August 2, 2004- Counseling Form: Backing the fire apparatus without proper placement of guides resulting in a vehicle accident. September 19, 2002- Written Reprimand: Mistakes due to carelessness.
Current Corrective Action Taken

Discharge as per Merit System Rules and Regulations for second Group II Offense.  Discharge as per Merit System Rules and Regulations for first Group III Offense (pages 53 and 54).

Employee's comments to written warning:

In regards to contacting the Mayor I was acting in my capacity of President of the Phenix City Fire Fighters Association Local 3668 and not as a Driver Engineer with the City of Phenix City. I will seek a review board hearing

(Over)

Additional Comments:

This written warning is intended to give you an opportunity to correct your work performance and conduct in the future. Failure to do so will subject you to further corrective action as stated in the Merit System Rules and Regulations and could result in your dismissal from employment with the City of Phenix City.

4 - 21 - 06
_____
Date

_____
Supervisor's Signature

I acknowledge this written warning has been discussed with me and understand this notice will become part of my personnel file. I further acknowledge I have been informed of my right to appeal the disciplinary action taken against me to the Appeals Board or the Personnel Review Board. My request must be submitted in writing to the Personnel Director within three (3) working days for the Appeal Board and within ten (10) working days for the Personnel Review Board. Probationary employees are not entitled to a Personnel Review Board Hearing as stated in Section 15.011 of the Merit System Rules and Regulation.

_____
Employee Signature

04/21/2006
_____
Date

_____
Personnel Director

April 21, 2006
_____
Date

_____
Department Head

21 April 2006
_____
Date

Routing:        _____Personnel File     _____Personnel Director        _____Employee

 

# Phenix City Fire /Rescue Services

*1111 Broad Street*
*Phenix City, Alabama 36867*
*(334) 448-2817 Fax (334) 291-4755*

*H.H. Roberts, City Manager*

| | | |
|---|---|---|
| *Roy Waters*<br>*Deputy Chief* | *Wallace B. Hunter*<br>*Fire Chief* | *Kristin Kennedy*<br>*Assistant Chief/Fire Prevention* |
| *Kenneth Johansen  Mickeal Hanson*<br>*Assistant Chief    Assistant Chief* | *James Jackson*<br>*Assistant Chief* | *Bobby Brooks*<br>*Captain/Training Officer* |

# Memo

To:     H.H. Roberts, City Manager

From:   Wallace B. Hunter, Fire Chief *WBH.*

Date:   April 20, 2006

CC:     Barbara Goodwin, Personnel Director

Re:     Sergeant David Davis Merit System and S.O.P. Violations

This memo is to inform you about a conversation between Personnel Director Barbara Goodwin and myself about the city's new probation time for new hires for Public Safety. During this conversation, I was informed that one of our firefighters, Sgt. David Davis, called Mayor Hardin to discuss or complain about the new policy. This is a clear violation of our Merit System and S.O.P.'s. Sgt. David Davis was counseled on this type of violation in September 2005 and he signed indicating his understanding of this violation.

On Wednesday, April 19, 2006, Deputy Chief Roy Waters met with Sgt. Davis and asked him why he violated the chain of command and Merit System to call Mayor Hardin. His response was that as president of the Phenix City Firefighters Association/Legal-3668; he made a call in regards to labor issues in which he had concerns with. Mayor Hardin returned his call later that evening and they discussed the issues in which he wanted to address.

David Davis has made it clear that he will not adhere to our Merit System grievance process or the department and city's standard operating procedures. Mayor Hardin should refer any employee violating the chain of command, as indicated in our merit system back to their department head, personnel department or city manager. Failing to do so is a violation of our city charter. This continued disrespect of the city's policies and procedures from Sgt. Davis has made it very difficult for me to expect other members of the fire department or the city to adhere to any

policies and procedures if he's allowed to continue any further with this type behavior.

I also feel very strongly that someone should speak with Mayor Hardin about this sensitive issue of interfering with the jobs that department heads are trying to do to keep their departments running smoothly and effectively.

# COUNSELING FORM

**Employee Name:** **David P. Davis**                    **Date:** **21 September 2005**
**Date of Hire:**       **27 April 1998**                 SS# **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**          .
**Department:**         **Fire**                          **Division**_____

*A counseling session was conducted to the above named employee this date for the following reasons:*

Sgt. David Davis was counseled by Chief Hunter and Assistant Chief Johansen on 20th of September 2005, concerning him making or publishing statements to the local media concerning fire department issues which has resulted in impaired discipline and harmony, also speech which has jeopardized close personal loyalties in the workplace. Sgt. Davis was advised of his freedom of speech and the merit system rules and regulations.

Sgt. Davis was also counseled for continuous attempts to force unwanted attention through intimidation, coercing or interfering with a co-worker. (FF B. Wilkinson)

Fire Fighter B. Wilkinson informed Sgt. Davis that IAFF derogatory statements and comments directed towards him would not be tolerated.

A counseling session has been discussed with me and I understand this notice will become part of my personnel file.

_____        ___09_/_20_/_2005_____
Employee Signature                        Date

_____        _20th Sept 2005_____
Supervisor Signature                      Date



*City of* **PHENIX CITY** *Alabama*

**601-12th STREET**
**PHENIX CITY, ALABAMA 36867**

JEFF HARDIN
MAYOR

RAY BUSH
COUNCIL MEMBER AT LARGE

JOHN STOREY
COUNCIL MEMBER DISTRICT 1

GAIL BRANTLEY
COUNCIL MEMBER DISTRICT 2

ARTHUR SUMBRY
COUNCIL MEMBER DISTRICT 3

H. H. (Bubba) ROBERTS
CITY MANAGER

BARBARA GOODWIN
PERSONNEL DIRECTOR

WALLACE HUNTER
FIRE CHIEF

**TO:**        Member of the Phenix City Fire Department

**FROM:**    Wallace Hunter, Fire Chief  W.B.H.

**DATE:**     September 20, 2005

Recently there was an article in the Ledger-Enquirer Newspaper regarding our department. Several fire fighters made comments in the paper that were likely to impair discipline and harmony in the workplace, impede job performance and jeopardize loyalty in this department.

While the City and this department recognize the right to free speech, that speech must be exercised in accordance with the merit system rules and regulations. This is especially true in a para-military organization such as our fire department. If any fire fighter has a specific grievance, it shall be presented in accordance with the procedure provided by the merit system. I encourage anyone with a grievance to follow the grievance procedure.

It occurred to me that some department members might not be as familiar as they should be with the merit system rules in regard to free speech and grievances. Therefore, I have attached hereto some of the pertinent merit system rules as they relate to free speech and grievances. These rules **must** be followed. The best way to build and maintain an effective and harmonious work environment is for everyone to know and follow these rules. Failure to follow the rules in the future will be dealt with in accordance with the merit system.

Copy of Merit System Rules and Regulations Section 2.054 Free Speech and Section 15.02 Employee Complaints and Grievances was received by employee on this date. Signed acknowledgement will be placed in employee's personnel file.

Employee Name   D. Davis                          Date   09/20/2005

The information contained in this memo is legally privileged and confidential information intended only for the individual or entity named above. If the reader of this memo is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this memo is strictly prohibited.

department head status, may contact his department head for advice and counseling, and an answer shall be given to the employee within three working days. If the employee is not satisfied with the answer, he shall follow the next step in the procedure. **Note:** If the matter involves sexual harassment, follow procedures in section 15.024 below.

B.    If the grievance is not resolved by the immediate supervisor to the satisfaction of the employee, or if the decision has not been made by the immediate supervisor within three days, the employee may discuss the matter with the next higher level of management. An answer shall be given to the employee within three working days. If the employee is not satisfied with the answer he/she shall follow the next step in the procedure.

C.    The employee may submit the grievance to the department head in writing. The department head, within five working days, shall render a written decision which shall state the problem, the applicable policy or regulation, and the reasons for applying the policy and decision. Copies of the department head's decision shall be forwarded to the employee, division head, immediate supervisor, and the Personnel Director. If the employee is not satisfied with the answer, he/she shall follow the next step in the procedure.

D.    The employee may submit the grievance to the City Manager in writing. The City Manager shall put in writing the decision he/she has rendered concerning the grievance within five working days from the receipt of the written grievance from the employee. The decision of the City Manager shall be final, and the employee shall have no further rights of administrative appeal

15.024  PROCEDURE FOR PRESENTATION OF A GRIEVANCE INVOLVING SEXUAL HARASSMENT

A.    Any employee having a complaint involving sexual harassment may, but is not required to, inform the immediate supervisor. If the complaint involves the supervisor the employee will by-pass supervisory channels and report the matter to the department head, Personnel Director or City Manager as appropriate.

B.    Any official or supervisor who receives a complaint or has knowledge of an allegation of sexual harassment will advise the Personnel Department the same working day. No other discussion or disclosure of the allegation is permitted.

C.    The Personnel Department will immediately log the allegation and will open a file.

D.    The Personnel Director or designated representative will interview the complainant within 24 hours and will obtain specific information regarding the time, place, and circumstances of the above incident.

City Manager within three days of the completion of the hearing.

G.  In cases of disciplinary actions, the City Manager may accept the findings and opinion of the Personnel Board or may determine that the disciplinary action needs to be modified; the City Manager shall recommend a course of action to the Personnel Board. Within seven days after receiving the request, the Personnel Board shall reaffirm or modify its original findings and opinion in writing to the City Manager. The decision of the Personnel Board shall be final unless appealed by the City Manager to the City Council. The employee shall have no further right of administrative appeal. The employee and all parties affected shall be promptly notified in writing of the final decision.

H.  The City Attorney shall be present and represent the city at all Personnel Review Board hearings

## 15.02  EMPLOYEE COMPLAINTS AND GRIEVANCES

Disciplinary actions, dismissals, demotions, suspensions, fines, reduction in pay, position classifications and allocations shall not be subject to review as grievances.

Other complaints and grievances which an employee may have because of an action affecting his status or conditions of employment shall be handled in the procedure outlined in this section.

### 15.021  PURPOSE OF A GRIEVANCE

The primary purpose of a grievance procedure shall be to determine _what_ is right rather than _who_ is right. Free discussion between employees and supervisors will lead to a better understanding by both of practices, policies and procedures which affect employees. This will tend to identify and eliminate conditions which may cause misunderstanding and grievances. The intended purpose is defeated if a spirit of conflict enters into the consideration of a grievance. Supervisors and employees alike shall recognize the true purpose of a grievance procedure if it is to be of value in promoting the well-being of the City Service.

### 15.022  DEFINITION OF A GRIEVANCE

A grievance is a complaint--a view or opinion pertaining to employment conditions, to relationships between employees and supervisors, or to relationships with other employees. Disciplinary actions, dismissals, demotions, suspensions, fines, reduction in pay, position classifications and allocations shall not be subject to review as a grievance. (See Employee Appeals, Section 15.01)

### 15.023  PROCEDURE FOR PRESENTATION OF A GRIEVANCE

A.  Any employee having a complaint, (a view or opinion supported by facts), pertaining to employment conditions or relationships with his immediate supervisor or other employees (not involving sexual harassment) shall first discuss the matter with his immediate supervisor. The supervisor, if not

### 2.053   LIBERTY INTEREST

The city recognizes that each employee has a liberty interest in his or her employment and will not disclose the reasons for any adverse personnel action without due process as provided in 2.051 above.

### 2.054   FREE SPEECH

The city will not discharge an employee for the exercise of his or her right to free speech unless the city can show a compelling interest in abridgement of this rights and the employee has been granted due process.  The right of employees to freedom of speech will not be abridged except in the following situations:

A.     Speech which impairs discipline and harmony in the workplace.

B.     Speech which breaches confidentiality or privileged information.

C.     Speech which impedes job performance.

D.     Speech which jeopardizes close personal loyalty.

### 2.055   EQUAL PROTECTION

The city will not discriminate against any classification of individuals regardless of whether the classification is prohibited or not prohibited by statutes.

### 2.056   FREEDOM OF ASSOCIATION

The city upholds the right of free association for employees which includes the right to join or not to join political parties and other groups.

### 2.057   THE RIGHT TO PRIVACY

The city will conduct workplace searches including drug testing only on the basis of reasonable suspicion that a prohibited activity may be taking place.  Where public safety is involved however, such as with police officers, fire fighters and emergency medical technicians the city may conduct blanket or random drug testing.

**CITY OF PHENIX CITY**
**FIRE DEPARTMENT**                                                    **ASOP 12**

## ADDRESSING CITY COUNCIL

**PURPOSE**: *To insure the orderly handling of <u>work-related</u> business of the Fire Department personnel.*

**SCOPE**: *This procedure shall be followed by all members of the Phenix City Fire Department.*

**PROCEDURE**:

1. *If a member of the Fire Department has a problem with the Department ,a Department, or City operations or procedures which are <u>work-related</u> and finds it necessary to go above his/her immediate supervisor, he/she must notify the supervisor of the intention to do so.*

2. *If a member of the Fire Department finds it necessary to go outside the Department, the Fire Chief will be given a reasonable time to make an appointment with the Public Safety Director.*

3. *If a problem cannot be solved by anyone in the chain of command, then the City Manager will arrange a hearing with the City Council.*

4. *If any Fire Department member appears before the City Council or directly contacts City Council members about <u>work-related problems</u> without following these procedures, they will be subject to disciplinary action in accordance with Section VIX of the City of Phenix City Personnel Policies.*

*If a member of the Fire Department has a grievance, that member must follow the grievance procedures as outline in Section XV of the City of Phenix City Personnel Policies.*

JANUARY 1998

**COPY**




*Phenix City Fire /Rescue Services*

*1111 Broad Street*
*Phenix City, Alabama 36867*
*(334) 448-2817*

*H. H. Roberts, City Manager*

| | | |
|---|---|---|
| *Roy Waters* | *Wallace B. Hunter* | *Kristin Kennedy* |
| *Deputy Chief* | *Fire Chief* | *Assistant Chief/Fire Prevention* |

| | | | |
|---|---|---|---|
| *Kenneth Johansen* | *Mickeal Hanson* | *James Jackson* | *Bobby Brooks* |
| *Assistant Chief* | *Assistant Chief* | *Assistant Chief* | *Captain/Training Officer* |

# *Memo*

TO:       Wallace B. Hunter, Fire Chief

FROM:   Roy Waters, Deputy Chief

DATE:    February 6, 2006

RE:       Letter to Mr. H. H. Roberts

On Monday, February 6, 2006, I met with D/E David Davis at Station #3. The purpose of the meeting was to discuss the letter Mr. Roberts received from Mr. Schaitberger. I asked David how he thought everything in the department was going. David told me everything was going good and he didn't have any complaints.

I asked David about the letter from Mr. Schaitberger and David told me he did not have anything to do with the letter. David also told me, Mr. Thomas Malone called him on Saturday, February 4, 2006 and told him about the letter, so he wouldn't be caught off guard.

David informed me that the letter was generated by Mr. Malone as a result of him not being allowed to remain at and participate in the administrative hearing that took place during the Fall of 2005.

I am convinced that David Davis is being honest and forthright, concerning the letter sent to Mr. Roberts. As I have communicated to you on several accessions, David Davis is doing an outstanding job for me and has a very positive and professional attitude.

.cc D/E David Davis
    file

# INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS®

HAROLD A. SCHAITBERGER                                VINCENT J. BOLLON
General President                                      General Secretary-Treasurer

January 31, 2006


Mr. H.H. Roberts
City Manager
City of Phenix City
601 12th Street
Phenix City, Alabama 36867


Dear City Manager Roberts:

I have recently received complaints indicating a disturbing pattern of mistreatment of International Association of Fire Fighters ("IAFF") Local 3668 officers and members by certain City officials and management personnel of the Phenix City Fire & Rescue Department (hereinafter "Department"). These complaints allege that:

- David Davis, President of IAFF Local 3668, was suspended for twenty-four (24) hours without pay back in August 2005 for speaking on behalf of the membership of the Local regarding the Department's continued threats to implement eight (8)-hour shifts for fire fighters;

- the "offense" for which President Davis was disciplined – that is, his assuming an "aggressive" posture when discussing with a superior officer the Department's continued threats to implement eight (8)-hour shifts – was nothing more than a pretext to dissuade President Davis and other officers and members of Local 3668 from speaking out on matters important to Department fire fighters;

- the Department has on a number of occasions threatened to retaliate against Local 3668 members by, among things, implementing an eight (8)-hour shift and the basis for such threatened retaliation is that some of these fire fighters have reportedly submitted to the local newspaper letters regarding Department operations and other fire and rescue-related matters of public concern;

- during the administrative hearing regarding President Davis's then-proposed twenty-four (24)-hour suspension, IAFF District Field Service Representative Thomas Malone, Jr., who attended the hearing to represent President Davis, was abruptly directed to leave the hearing; even though



Mr. H.H. Roberts
January 31, 2006
Page 2 of 3

the City's attorney was allowed to remain at and participate in the
hearing; and,

■ President Davis was, on September 20, 2005, issued a counseling form and
threatened with loss of his job for having spoken to the local media
regarding Department operations and other matters of public concern.

Assuming these allegations are true, I am writing to inform you that the
IAFF will not tolerate this inappropriate and unlawful treatment of Local 3668 officers
and members.

It is well established that the First Amendment right of free association includes
the right to belong to, and to actively participate in, labor organizations. *See* Shelton v.
Tucker, 364 U.S. 479 (1960); Thomas v. Collins, 323 U.S. 516 (1945). "The right . . . to
discuss, and inform people concerning the advantages and disadvantages of unions and
joining them is protected not only as part of free speech, but as part of free assembly."
Id. at 532.

Moreover, although there is no "right" or "entitlement" to government
employment, the denial or deprivation of a job and related benefits may not be based on
one's exercise of First and Fourteenth Amendment rights. Rutan v. Republican Party,
497 U.S. 62, 72-73 (1990); Pickering v. Board of Educ. of Township High School, Dist.
205, 391 U.S. 563 (1968). In this regard, individuals have the First Amendment right to
speak out about matters of public concern without having government employers
retaliate against them for the exercise of their right of free speech. Rankin v.
McPherson, 483 U.S. 378, 383 (1987). "Retaliation by a government employer against an
individual who exercises his First Amendment rights constitutes a First Amendment
violation." Perry v. McGinnis, 209 F.3d 597, 604 (6th Cir. 2000). Indeed, "few subjects
are of more public concern . . . than the provision of basic fire and rescue services."
Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1564 (11th Cir. 1995).
Accordingly, it would clearly violate the First and Fourteenth Amendments of the
United States Constitution for City officials and Department management personnel to
retaliate against President Davis and other Local Union officials and members for
engaging in lawful associational activities and for speaking to the local media regarding
matters relevant to the provision of fire and rescue services in the community.



Mr. H.H. Roberts
January 31, 2006
Page 3 of 3

As General President of the IAFF, which represents over 270,000 fire fighters, paramedics, and emergency responders across North America, I can tell you that this organization has encountered on a number of occasions the problem of management representatives of fire departments, municipalities and other government entities attempting to interfere with the legitimate interests of firefighters in engaging in constitutionally-protected associational activities and for speaking out on matters of public concern. This organization has demonstrated time and again that it will protect the legal rights of its members. In this regard, I have asked our Legal Department to review this matter thoroughly.

The IAFF will continue to closely monitor this matter. I trust that you will act immediately to ensure that any activities undertaken by City officials or Department management personnel to dissuade Local 3668 officers and members from engaging in lawful Union activities and from speaking out on matters of public concern will cease forthwith.

Sincerely,

*Harold A. Schaitberger*

Harold A. Schaitberger
General President

HAS/DPD:sg

cc.    The Honorable Jeff Hardin, Mayor, City of Phenix City, Alabama
       Wallace Hunter, Fire Chief, Phenix City Fire & Rescue Department
       Danny Todd, 14th District Vice President, IAFF
       Thomas Malone, Jr., 14th District Field Service Representative, IAFF

# COUNSELING FORM

Employee Name __David Davis__          Date __10/25/04__
Date of Hire __4/27/1998__             SS# __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__
Department __Fire__                    Division _____

A counseling session was conducted and issued to the above named employee this date for the following violation(s) of the Merit System Rules and Regulations:

Group __I__ Offense   Line # __13__ which States:

__Violating a safety rule or Safety Pratice__

## DETAILS OF MERIT SYSTEM VIOLATION(S)

Document detailed description of violation including date, time and nature of each occurrence:

__10/25/04 @ 1034 Am, 1109 11th street (Structure fire) Failure to remove civilians away from area considered the hot zone. Civilians were not in danger of fire, but were in the area where fire department personnel were using or operating equipment that could have caused harm to civilians. An all clear had not been given allowing civilians or fire department personnel to enter area considered the hot zone. No PPE in hot zone. (pants)__

Action Taken:
__Counseling__

Employee's reaction or comments to counseling session: _____

Additional Comments: Counseling session lasted for several hours. Employee has a better understanding of the need to remove all non-essential people from the hot-zone. Employee also has a better understanding of the department personnel not entering the hot-zone unless an all clear is given

A counseling session and violation(s) has been discussed with me and I understand this notice will become part of my personnel file.

Employee Signature

Date    10/25/2004

Supervisor Signature

Date    10/25/04

## WRITTEN WARNING FORM

Employee Name David Davis                Date September 22, 2002
Date of Hire 4-27-98                      SS# 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
Department Fire                           Division Public Safety

This written warning was issued to the above named employee this date for the following
violation(s) of the Merit System Rules and Regulations:

Group __I__ Offense    Line # __7__ which states:

Mistakes due to carelessness.

## DETAILS OF MERIT SYSTEM VIOLATION

Document detailed description of violation including date, time and nature of each occurrence:

At approx. 1920 hrs on September 19, 2002 F/F David Davis was pulling
Engine 4 out the engine room bay at Station #3 when the rear passenger
door located behind the driver position swung open and struck the
bay door tracking shearing off the door handle. The door handle
will need to be replaced in order for the door to operate properly
from the exterior of vehicle.

Prior Verbal or Written Corrective Actions (give date, reason and action taken)
On September 7, 2002 at approx. 2300 hrs. F/F David Davis was driving
Engine 1 from Station #1. Engine crew responded to a medical call at
1200 12th Ave. as David was positioning the apparatus in the parking lot
when he struck a concrete pillar that he did not see in the darkness.

Current Corrective Action Taken: Written reprimand with 8 hrs suspension
without pay.

Revised by Personnel Review Bd. w/ Consent of Max Wilkes acting
City Manager to READ: Written reprimand. Next offense within a
thirty day period shall result in 8 hrs. suspension without
pay for a Group I Offense —over— or Instruction and 24 hr.
suspension without pay for a Group II offense, depending
on the circumstances of the offense.
Signed: Barbara Goodwin
Personnel Director                    DAVID P. DAVIS

Employee's comments to written warning: _I was never informed that I recieved a verbal warning for the first accident I also have never been aware of any policy that states, I must be suspended for having an accident within 30 days of each other. I due regret that I damaged city vehicles, but I believe that the punishment is not justified due to no warning of the consequences for an accident. I want to use the panel board_ The review board to decide this matter

Additional Comments: _Due to this being the second accident involving F/F David Davis it was felt that these actions needed to be done. David is a bright and upcoming employee with the department that puts everything into his duties and responsibilities._

This written warning is intended to give you an opportunity to correct your work performance and conduct in the future. Failure to do so will subject you to further corrective action as stated in the Merit System Rules and Regulations and could result in your dismissal from employment with the City of Phenix City.

_9-22-02_
Date

_Micheal Hanson_
Supervisor's Signature

I acknowledge this written warning has been discussed with me and understand this notice will become part of my personnel file. I further acknowledge I have been informed of my right to appeal the disciplinary action taken against me to the Appeals Board or the Personnel Review Board. My request must be submitted in writing to the Human Resources Director within three (3) working days for the Appeal Board and within ten (10) working days for the Personnel Review Board.

_____
Employee Signature

_09/22/02_
Date

_____
Human Resources Director

_____
Date

_____
Department Head

_____
Date

Routing: _____ Personnel File          _____ Accounting
         _____ Human Resources Director  _____ Employee

## Counseling Form

Employee Name _David P. Davis_          Date _8-2-04_
Date of Hire _4-27-98_          SS# _256A1294_
Department _Fire_          Division _Public Safety_

A counseling statement was issued to the above named employee this date for the following reason (s):

_This counseling was discussed with D. Davis following an accident that occurred on July 30, 2004 at 1409 Fletcher Drive with Engine 4 following the conclusion of an medical emergency incident on Fletcher Drive._

_We discussed a different approach to backing the apparatus when there is only a three person crew. This would entail stopping the apparatus when necessary as it is backing and turning to ensure 360 degrees clearance around apparatus and moving the (B) rear guide to the front of apparatus to ensure proper clearance as the apparatus makes a turn._

Employee's reaction or comments to counseling statement: _Due to inadequate staffing in the Fire Department was attempted to do the best backing procedure possible, according to the S.O.P.'s. After being told I must adapt when working short and adjust backing procedure or post facto is not helpful when attempting to follow current S.O.P.'s. With proper staffing this would not have happen. In conclusion, in the past Company officers have not been counseled for P/E accidents. This is not consistent with past procedures. In addition due to lack of promotion I was acting in a paygrade above my regular duties._

Employee Signature _____          Date _08/02/2004_

Supervisor _M Hanson_          Date _8-2-04_



# *Phenix City Fire /Rescue Services*

*1111 Broad Street
Phenix City, Alabama 36867
(334) 448-2817*



*Wallace B. Hunter
Chief*

*Kristin H. Kennedy
Fire Marshal*

*August 5, 2005*

*Wallace B. Hunter
Phenix City Fire Chief
1111 Broad Street
Phenix City, Alabama 36867*

*Dear Chief Hunter:*

*This letter is to recall the discussion and events of August 3, 2005 involving myself, the Assistant Chiefs (Hanson, Jackson, Johansen), and Sergeant David Davis as well as further discussions in the office of the Personnel Director, Barbara Goodwin.*

*Around 0830 hours the meeting in which we were asked by the Fire Chief to relay information to the crew was taking place. We had previously spoken with the other two shifts concerning the new work schedule. As I was speaking to Sergeant Davis, he rose up in his chair towards me, stuck out his chest in a quick motion and made the comment, "well do it and don't punk me out or stop punking me out." At the time I was shocked and surprised that he had done this and did not know what he meant by the comment. I felt that it was not appropriate behavior. I also felt that he was trying to be threatening, challenging, and intimidating with his body language due to the intensity of the subject.*

*After the meeting was adjourned, I immediately went to the Assistant Chiefs and asked each of them if they saw and heard the same thing as I did? Their response was definitely that they saw and heard the same thing and they too felt that it was inappropriate and insubordinate. I also felt that Sergeant Davis was insubordinate but more than that I feel by his actions and tone that he was trying to be threatening and he needed to be made aware of his actions. I then looked through the Merit System and completed a Written Warning form. It was turned into Chief Hunter and taken to Personnel.*

*Around 1330 to 1400 hours, I, Fire Chief Hunter, Chief Johansen, and Barbara Goodwin met*

*with Sergeant Davis to discuss the Written Warning.  Chief Hunter began the meeting by advising Sergeant Davis as to the reason he was present and the Written Warning.  Shortly thereafter I was able to address Sergeant Davis and explain my reasons for the Written Warning. I explained to him in a clam manner that" he did not have to like me or respect me but he would respect my rank and position as an officer in this department."  I further advised him that when he made that gesture and comment that I felt it was disrespectful, threatening, and intimidating due to the subject matter of the meeting and that he was disagreeing with the subject.  I also told him that" in this formal setting I could not allow him to be disrespectful to me in front of his peers."  He stated that "in this formal setting I could not allow him to be disrespectful to me in front of his peers."  He stated that "he has respect for me and that he did not mean it in that way."  I asked him to look at it from our perspective because there was no reason for that type of behavior.  He did not deny what he had done but wanted to restate the comment in his own words.*

*Chief Johansen addressed Sergeant Davis next and advised him that if he had made the gesture and comment to him directly that he would have been taken out of the meeting at that point.  He also told him that he perceived his actions the same as Captain Kennedy.  Sergeant Davis acknowledged that he has a problem with anger at home as well as at work and that gets him into trouble.  At one point Chief Johansen asked Sergeant Davis a question and Sergeant Davis turned away from him and began speaking to Mrs. Goodwin about another subject.  Chief Johansen pointed out to Sergeant Davis that type of behavior was part of what gets him into trouble and that he was showing it again.*

*I asked Sergeant Davis near the end of the meeting if he could please allow Chief Hunter to run the department.  Chief Hunter is a new, young, and vibrant Chief and can communicate with the city leaders and that it is only fair to give him this respect and right to do his job.  I advised him that if he has concerns he feels needs to be addressed then he could send them up the Chain of Command and they would be addressed.  I also told Sergeant Davis that he was an influential person in this department especially with the younger persons and he could use that influence in a positive manner to help the department.*

*Sergeant Davis asked Mrs. Goodwin if this could be reduced to a lesser charge and she told him no, that it was already lesser because he could have been dismissed due to insubordination.  I stated at that time that" I did not want him to loose his job but to be made aware of how I perceived his actions."  I also stressed to him again that he was insubordinate but more than that his actions seemed to be threatening and intimidating.  He stated that" he did not want something crazy like this in his record."  He was also concerned that this would not be over when we left the room.  I stated to him" that as far as I was concerned it was over."  Mrs. Goodwin also told him that we would not discuss this situation and if it was discussed it was because he told his co-workers.  I put out my hand as a gesture of good will to shake Sergeant Davis' hand and we did shake hands.  I felt that this matter was over but that was not the case.*

*During the meeting with the other shifts no one acted in the same manner as Sergeant Davis.  All employees were given the same opportunity to voice their opinion and ask questions but no one else jumped at a supervisor for an answer that they did not like.  Sergeant Davis admitted that he has a problem with anger and his actions proved that he may have a problem with authority as*

*well, especially if the message is not coming from him or he does not agree with it.  In our organization there is a Chain of Command and a need for supervisors and no supervisor should be treated with disrespect much less be intimidated for trying to relay information.*

*Sincerely,*

*Kristin H. Kennedy*
*Fire Marshal*

 

### *Phenix City Fire /Rescue Services*
*1111 Broad Street*
*Phenix City, Alabama 36867*
*(334) 448-2817*

*Kristen Kennedy*
*Fire Marshal*

*Wallace B. Hunter*
*Fire Chief*

*Bobby Brooks*
*Captain/Training Officer*

## *Memo*

To:     H.H. Roberts, City Manager; Barbara Goodwin, Personnel Director

From:   Wallace B. Hunter, Fire Chief

Date:   August 3, 2005

CC:     file

Re:     Sgt. David Davis Written Warning

On the afternoon of Monday, August 1, 2005; I met with the Management Team consisting of all three Asst. Chiefs and Capt. Kennedy to discuss the state of our department. Some of the topics discussed were loyalty gratitude, disruption, staying out of City politics, working as a team under a para military organization, etc. I felt that I had one main complaint from the three shifts and that was that information was given to them in three different ways at three different times. To alleviate this, I asked all the Management team and Staff Captain Kennedy to meet with all three shifts to find out why there seems to be ongoing disruptions from our department with Fire Chiefs and city government over the past several years. Our Fire Department is constantly in the news and it has damaged our reputation. I felt that this management team ranging from 16-21 years of service should be able to relate to the personnel in which they are managing.

At approximately 1030 am on the morning of August 3, 2005; I called Fire Station #1 to talk to the Assistant Chief Johansen. I started this conversation by saying "Good Morning" and Chief Johansen stated that he was getting ready to call me because there was a problem at his staff meeting that morning. The management was meeting with A-Shift as it had previously met with B and C shifts on Monday and Tuesday of that week. Asst. Chief Johansen informed me of Sgt. Davis' behavior towards Capt. Kennedy and I went to Station #1. Upon my arrival, I found all three Chiefs and Capt. Kennedy in the Asst. Chiefs office and they explained the situation as it had occurred to me. The three Asst. Chiefs were preparing their statements and Capt. Kennedy was preparing her written warning. They were all in agreement as to what had happened in the meeting so I told Asst. Chief Johansen and Capt. Kennedy to meet me at the Personnel Director's

Office. Asst. Chief Johansen stopped by Station #3 to pick up Sgt. Davis to bring him to the Personnel Director's Office so that the written warning and suspension could be explained to him. We tried to talk to him about this problem and he explained that he's just an abrasive person and that he has this same problem at home. Chief Johansen and Capt. Kennedy spoke to Sgt. Davis about his lack of respect for the Management Team.

He told us that he hoped that this would be the end of this situation once he left this meeting and we all agreed to do better from this point forward. He basically lied to us because he did not end the situation at that meeting but later returned to file an appeal.

It is my opinion that Sgt. Davis has a problem with any person in an authoritative position. We have tried to counsel him on his behavior in the past as he has made comments about not caring whether Chief Hanson and Capt. Hutchinson were killed while riding together and referring to Chief Hunter as "Osama Bin Hunter."

To whom it may concern:

On August 3, 2005 a shift meeting was held at station #1. The events which will be recalled in this statement are as close to accurate as I George Bennett remember.

A meeting was held and in attendance were Chiefs Johansen, Jackson and Hanson along with Captain Kennedy and "A" shift personnel. This meeting was being conducted to discuss the changes which need to and will take place in the department. During this meeting a confrontation Captain Kennedy and Sgt. David Davis Both parties during this discussion seemed to become agitated at each other. During this discussion Captain Kennedy made statements about the department going to a different work schedule, during the discussion Sgt. Davis stated that they could go ahead and change the schedule today and that he was not going to leave the department. Sgt. Davis at some point said that he would not be "punked out" and he made a slight lunging motion of approximately 6-12 inches from where he was sitting, he never left his seat but used a sort of jerking motion in the direction of Captain Kennedy while talking to her. Captain Kennedy continued to address Sgt. Davis's questions during the meeting. Chief Hanson stepped in and to the crew that we had run over 300 calls for the month and was saying how great of an accomplishment this was for the department. Sgt. Davis interrupted and asked if this was the kind of meeting which was necessary to obtain this type of praise, Chief Johansen then stepped in and to Sgt. Davis that his sarcasm was not needed and that he needed to stop!

Sgt. George Bennett



# Memo

**To:**    Chief Hunter

**From:**  Sergeant Johnson  ‍SωJ

**Date:**  August 6, 2005

**Re:**    Letter concerning meeting on August 3, 2005

---

On the morning of August 3, 2005 all stations were called to station one for a mandatory meeting. During our meeting we were discussing fire department issues. During this discussion Captain Kennedy and Sergeant D. Davis had a difference of opinion. Captain Kennedy was standing approximately six feet from Sergeant D. Davis directly in front of him. Sergeant D. Davis was sitting in a chair. Captain Kennedy stated that "if the bickering, letters to the news paper, stabbing people in the back and things like that did not stop we were probably going to see a schedule change like eight hour shifts." Sergeant D. Davis stated back at her, " I'm tired of being  punked out so quit threatening us with the eight hour shifts and go ahead and do it, where do I sign up for it?" The conflict ended and the meeting continued until an emergency call came in.

1

Mrs. Barbara Goodwin,                                                                August 04, 2005

I, Sergeant David P. Davis, of Phenix City Fire Rescue, in accordance with the Phenix City Merit System:
Section 15, am requesting an employee appeal for disciplinary actions taken against me on August 03,
2005. I would also respectively request that upon receipt of this appeal request, that all facts of this incident
and disciplinary action notice be sent in writing to me. In addition, I also request that documentation be
given to me in writing, as to what the financial cost of this disciplinary action is, as it incurs towards me. I
humbly ask, at this time, that I be given ample time to prepare my defense in this appeal, after I receive the
requested documentation above.

Respectively,

David P. Davis, Sergeant
185 Lee Road 236
Phenix City, Alabama 36870
(334) 291-1927

# Memorandum

**To:**   Chief Hunter

**From:**   Assistant Chief Johansen

**Date:**   7/28/2005

**Re:**   Sgt. Davis

On this date Sgt. Davis was counseled concerning an issue that had taken place concerning FF Martin on 22nd August 2005. FF Martin contends that Sgt. Davis told him to do 25 pushups for forgetting his duty uniform shirt. Sgt. Davis contends that he asked FF Martin if he had his duty uniform shirt, since the crew was scheduled to perform pre-fire surveys. FF Martin stated that he did not have it. Sgt. Davis then stated "you owe me 25."   Sgt. Davis stated that FF Martin was never ordered to do pushups and never did any pushups. Sgt. Davis was advised that if a employee shows up for duty without proper uniforms or anything else that violates departmental SOP's or merit system regulations, that the employee will be dealt with in accordance to the city's merit system. Sgt. Davis stated that he was regretful that something that people done voluntarily in good nature was misinterpreted in a negative way. Sgt. Davis stated that it was something they did in good spirit and they would say "I guess, I will get smart or get strong" if I keep forgetting to do something. Sgt. Davis stated that he understood and that personnel would be dealt with according to the merit system.

# Memorandum

**To:**     Chief Prater, Deputy Chief Hunter

**From:**   Assistant Chief K. Johansen

**Date:**   10/26/2004

**Re:**     Safety violations

**Consensus of incident: CPT Hamby, Sgt. Johnson and Sgt. D. Davis**

On October 25, 2004 at 1034 Hours, Stations One and Three were dispatched to a structure fire at 1109 11th Street. Sgt. Johnson arrived on the seen in Q3 and gave a size-up. Sgt. Johnson donned proper PPE and went to the structure. Light smoke was coming from the doorway. Resident stated that the fire was out. Sgt. Johnson checked in the structure. Civilian people were at the corner of the structure, only away from the apartment in questioned if on fire. Sgt. Johnson was exiting the hot zone and CPT Hamby was entering it with his crew. Civilians were allowed to congregate back in front of the apartment that had the fire. Crewmembers were bringing equipment past civilians while in the hot zone. CPT Hamby stated that he was in the structure and was unaware that people had re-congregated near the apartment, until he exited it. CPT Hamby called IC and stated that fire was out. Some time after this announcement Sgt. D. Davis went to get some information from the residents. Sgt. Johnson and myself saw Sgt. D. Davis leaving the hot zone with the clipboard. He was walking with two fire fighters. I started talking back to Sgt. Johnson. Sgt. D. Davis then approached Brush 4 and asked for the thermal Image Camera. He walked back between Q3 and E1 where the fire fighters were standing. I went back to talking to Sgt. Johnson. I then noticed Sgt. D. Davis walking back to the structure with the imager and with a fire fighter. I then thought that I might have not heard the all clear. I called and asked CPT Hamby if all was clear. Sgt. D. Davis stated while he was up at the structure CPT Hamby stated that he needed a flashlight. Sgt. Davis stated to him that FF Averett had one. CPT Hamby then stated that he needed the thermal image camera and a pike pole. Sgt. Davis went and retrieved the thermal image camera that was requested by CPT Hamby. Sgt. Davis was following the request of the Captain. All three supervisors violated a safety rule. Letting all non-essential personnel or civilians in the area considered the hot zone. Sgt Davis had entered the hot zone some time after the fire was announced that it was out, but not all clear. Caption Hamby stated that fire was out, but he forgot to announced all clear until I had asked about it being all clear   Sgt. Davis stated that on the other two shifts that after the announcement of fires out, he was able to pursue getting information for the report. He stated that he was not accustomed to the all clear.   The communication had broken down to command

**Summary:** Sgt. Johnson was the first to arrive and initiated Incident Command. He was the first fire department supervisor on the scene that entered the hot zone and could see the civilians and failed to remove them at least 50 feet radius from the structure. The second supervisor that arrived on the scene   was Captain Hamby who also entered the hot zone and failed to remove the civilians. The third supervisor was Sgt. Davis who entered the hot zone without proper PPE and failed to remove civilians from the hot zone. From my viewpoint I could see only the end of the one apartment building. When  the all clear was given, I approached the structure and noticed around a dozen

1