IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS,                          )
                                      )
              Plaintiff,              )
                                      )        CIVIL ACTION NO.  3:06cv544-WHA
vs.                                   )
                                      )              (WO)
PHENIX CITY, ALABAMA, et al.,         )
                                      )
              Defendants.             )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Partial Summary Judgment filed by the

Plaintiff, David Davis (Doc. #88), and a Renewed Motion for Summary Judgment filed by the

Defendants Phenix City, Alabama; H.H. Roberts; and Wallace Hunter (Doc. #89).

David Davis filed a Complaint in this case in June 2006, bringing claims pursuant to 42

U.S.C. § 1983 for violation of his federal constitutional rights to free speech (Count I), and

association (Count II), and a claim for violation of state law (Count III).

The Defendants filed a Motion to Dismiss for failure to state a claim, which was denied

by the court.  The Defendants then moved for summary judgment as to all of Davis's claims, and

Davis moved for partial summary judgment on the issue of liability.  The Plaintiff's motion was

denied, and the Defendants' motion was denied as to Counts I and II and granted as to Count III.

The case was set for trial on the Plaintiff's claims in Count I for retaliation in violation of his

first amendment free speech rights, and in Count II for violation of his first amendment

association rights, against Phenix City, Alabama and against H.H. Roberts and Wallace Hunter

in their official and individual capacities.

The Defendants then moved the court for leave to amend their answer to assert the affirmative defense of qualified immunity on behalf of the individual defendants.  The court allowed for the amendment, giving the Plaintiff the option to seek a continuance of the trial.  The court granted the Plaintiff's subsequent request for a continuance, setting the trial for March of 2008.

The Plaintiff then filed a Motion to Amend the Complaint to add a claim in Count IV of the Amended Complaint that the City of Phenix City's Merit System Rules and Regulations and Standard Operating Procedures impose unconstitutional prior restraints on free speech.  Although it was not clear from the original Complaint that the Plaintiff had intended to assert a prior restraint claim separate from a retaliation claim, the court concluded that the facts as alleged in the original Complaint fairly encompassed such a theory of relief, and allowed the amendment.

The Plaintiff's Motion for Partial Summary Judgment concerns the prior restraint claims, while the Defendants' Second Motion for Summary Judgment concerns the merits of *Pickering* balancing with respect to the retaliation claims, the defense of qualified immunity with respect to the individual capacity claims against the individual Defendants, and the merits of the prior restraint claim or claims in Count IV.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In resolving the present cross-Motions for Summary Judgment the court will construe the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or inferences are required. *Barnes v. Southwest Forest Industries*, 814 F.2d 607, 609 (11th Cir.1987).

## III.  FACTS

The admissible evidence submitted by the parties reveals the following facts, viewed in a light most favorable to the non-movant, as required by the governing standard:

The Plaintiff, David Davis ("Davis"), was hired by the fire department of Phenix City, Alabama in April 1998.

Davis became the president of a local association of firefighters and rescue service employees in 2005.  In September 2005, a meeting was held to discuss issues of interest to association members, which a journalist employed by the *Columbus Ledger-Enquirer* attended. An article about the meeting which appeared in the local newspaper in mid-September 2005 quoted Davis.  An investigation was conducted by the fire department.  On September 20, 2005, Fire Chief Wallace Hunter ("Hunter") issued a written directive, attaching a portion of the City's Merit System Rules and Regulations.  The same directive was distributed to all employees of the City.  Davis was also issued a counseling form.

The portion of the Merit System Rules and Regulations issued with the directive provides that an employee must present any grievance through a prescribed procedure through the chain of command.  The final step of that procedure is as follows:

> The employee may submit the grievance to the City Manager in writing.  The City Manager shall put in writing the decision he/she has rendered concerning the grievance within five working days from the receipt of the written grievance from

the employee.  The decision of the City Manager shall be final, and the employee shall have no further rights of administrative appeal.

Merit System Rules and Regulations 15.023.

The Merit System Rules and Regulations at 2.054 also provide as follows:

The city will not discharge an employee for the exercise of his or her right to free speech unless the city can show a compelling interest in abridgement of his rights and the employee has been granted due process.  The right of employees to freedom of speech will not be abridged expect in the following situations:
  A.  Speech which impairs discipline and harmony in the workplace.
  B.  Speech which breaches confidentiality or privileged information.
  C.  Speech which impedes job performance.
  D.  Speech which jeopardizes close personal loyalty.

Defendants' Exhibit 2, Doc. # 33-3.

The Merit System Rules and Regulations govern employees of Phenix City, including firefighters.

In April 2006, Davis became aware of a proposal before the City Council to extend the probationary period of new firefighters from one year to eighteen months.  On or about April 17, 2006, while off-duty, in what he says was his capacity as association president, Davis called Defendant Mayor Jeffrey Hardin ("Hardin") to discuss the proposal.  Hardin was not available to take the call, but later returned the call and discussed the proposal with Davis.

On or about April 20, 2006, Davis was reprimanded for contacting Hardin outside of the chain of command.   The Written Warning Form issued to Davis referenced ASOP 12, which is a Standard Operating Procedure that governs the Fire Department, and which stated as follows:

September 20, 2005–Violation of directive from Chief Wallace B. Hunter regarding free speech and grievances. Violation of ASOP 12: #1 If a member of the department has a problem with the department, another Department, or City operations and procedures which are work-related and finds it necessary to go above his/her immediate supervisor, he/she must notify the supervisor of the

5

intention to do so. #3 If a problem cannot be solved by anyone in the chain of command, then the City Manager will arrange a hearing with the City Council.

Defendants' Exhibit 11.  ASOP 12 further provides, "If any Fire Department member appears before the City Council or directly contacts City Council members about work-related problems without following these procedures, they will be subject to disciplinary action . . . ." Defendants' Exhibit 3, Doc. #33-6 (emphasis in original).  The Standard Operating Procedure, referred to as ASOP 12, applies to all members of the fire department and makes no distinction between firefighters who are on or off duty.  *Id.*

The next day, Davis was told that he was being discharged for contacting Hardin to discuss the probation proposal.  Davis appealed his discharge to the City's Personnel Review Board.  On May 18, 2006, Defendant City Manager H.H. Roberts ("Roberts") determined, in accordance with the Board's recommendation, that Davis's discharge should be upheld.

Under the charter of Phenix City, Roberts as City Manager is responsible for enforcing laws and ordinances, and has the final decision-making authority regarding termination of an employee from the fire department.  The City Manager functions as the City's chief executive officer, and the Mayor and City Council are the legislative body.

## IV. DISCUSSION

The court first will address the merits *Pickering* balancing argument by the Defendants, then the  assertion of qualified immunity as a defense to all claims brought against individual Defendants in their individual capacities, and finally the cross-motions for summary judgment as to the merits of the prior restraint claims.

A. *Pickering* balancing

6

The Defendants have requested that this court grant summary judgment as to the retaliation claims on the basis of *Pickering* balancing. The Defendants specifically argue that even if Davis demonstrates that he was precluded from speaking with the City Council, so that the policy pursuant to which he was disciplined was unconstitutional, he had less disruptive channels of speech, so that this case is like *Belcher v. City of McAlester, Ok*, 324 F.3d 1203 (10th Cir. 2003). The less disruptive channels of speech referred to by the Defendants, however, are not in reference to less disruptive channels of speaking before the City Council, but in pursuing less disruptive channels before engaging in speech such as criticism in the newspaper. *See* Doc. #90 at page 24. The Defendants state that these prior actions on behalf of Davis were also part of the decision to terminate Davis, so that *Pickering* balancing weighs in the Defendants' favor on the claim based on his termination. This court does not agree. Under the view of the facts most favorable to the Plaintiff, i.e., that the City's policy would have precluded him from speaking directly to the City Counsel on a matter of public concern, the court cannot conclude as a matter of law at this time that the interests of the Defendants in enforcement of an unconstitutional policy aimed at achieving efficiency in the fire department outweigh the interests of a public employee in speaking as a citizen on a matter of public concern. The court will conclude *Pickering* balancing based on all the evidence at trial in the event the jury finds as a fact that Davis was prohibited by City policy from speaking directly to the City Council on a matter of public concern even if he first went through the chain of command.

### B. Qualified Immunity as to Counts I and II of the Amended Complaint

Qualified immunity is a protection designed to allow government officials in their individual capacities to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d

1339, 1345 (11th Cir.1991).  As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred.  *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988).  Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler*  323 F.3d 872, 878 (11th Cir. 2003).

 Requiring that a constitutional right be clearly established means that personal liability only attaches to a government official if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997).  In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

 In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their conduct violates clearly established law:  an "obvious clarity case," *id.* at 1350, a case controlled by case law that espouses "broad statements of principle . . . that are not tied to particularized facts." *id.* at 1351, and a case in which case law ties a particular type of conduct to the specific facts of the case.  *id.*

 1. Claim of Retaliation in Violation of the First Amendment Right of Free Speech

Count I of the Amended Complaint filed by the Plaintiff in this case raises a first amendment retaliation claim, which is governed by the *Pickering* balancing line of cases. There is apparently no dispute that the individual Defendants were acting within their discretionary authority. This court has also concluded that there is a set of facts under which, if proved, the Defendants retaliated against Davis pursuant to a policy which is itself violative of the first amendment, so that the enforcement of the policy through termination was unconstitutional as well. The next question is whether, even if such facts are proved, the individual Defendants violated clearly established law.

The Defendants have urged this court to follow Eleventh Circuit cases which held that qualified immunity applies in a first amendment case except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the act against the employee was unlawful. *See, e.g., Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994). These cases, however, pre-date the Supreme Court's decision in *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Although the Defendants have cited to district court cases which analyze qualified immunity under the *Hansen* rule after *Hope*, the Eleventh Circuit has not adopted that approach. *See, e.g.*, *Akins v. Fulton Co., Ga.*, 420 F. 3d 1293 (11th Cir. 2005).[1]

As the Defendants point out, in ruling on the previous cross motions for summary judgment, this court concluded that the determination of whether Davis spoke on a matter of public concern was a close one. Another judge of this court has found that where the issue of speech being a matter of public concern is a close question, that that weighed in favor of

---

[1] The *Akins* court analyzed the facts of that case and determined, using the *Hope* standard, that there was fair warning that speech the main thrust of which is to report bidding irregularities to a public official in a meeting requested for that purpose is protected by the first amendment. *Akins*, 420 F.3d at 1308.

qualified immunity. *Hartwell v. City of Montgomery*, 487 F. Supp. 2d 1313, 1331 (M.D. Ala. 2007) (Thompson, J.) (denying qualified immunity under *Hope*). The question before this court, therefore, is whether, resolving the factual issue in favor of Davis that the relevant regulations and rules which were applied to him when he was terminated did not allow him to speak directly to the City Council, the Defendants had fair warning that their actions in terminating Davis for speaking violated his constitutional rights.

Davis has cited this court to Eleventh Circuit case law[2] as establishing that a public employer may not retaliate against an employee for an "exercise of constitutionally protected speech." *Cook v. Gwinnett County School Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005).[3] *Cook* also noted that under *Hope*, general statements of the law are capable of giving fair warning. *Id.* at 1320. The court in *Cook*, however, also concluded that in that case "the *Pickering* balance tilted conclusively in favor of Cook such that the defendants had fair and clear warning that their actions were unconstitutional." *Id.* Significantly, *Cook* did not involve a para-military organization as employer.

The Eleventh Circuit has instructed that in conducting *Pickering* balancing on the merits of a free speech claim, "a paramilitary organization, such as a fire department. . . " has an

---

[2] Davis has also cited the court to correspondence from Harold Schaitberger, General President of the International Association of Fire Fighters to the Defendants, which Davis said explained the First Amendment rights and protections afforded government employees. Qualified immunity is governed by an objective reasonableness standard and the court does not find this evidence relevant to objective reasonableness for purposes of *Pickering* balancing, as discussed *infra*.

[3] It is unclear whether in using the formulation, "constitutionally protected," the court intended to state that the law is clearly established that one may not retaliate against a plaintiff if the speech is both on a matter of public concern and *Pickering* balancing weighs in favor of the plaintiff.

interest in efficiency which is different from other public employers. *Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1222 (11th Cir. 2001). In *Anderson*, a plaintiff, an employee of the emergency management agency, in his capacity as union president, distributed a questionnaire to candidates for political office. The plaintiff was informed by the chief of the department that any other occurrences of that nature would result in demotion or termination. Thereafter, the President of the International Association of Fire Fighters wrote a letter to the chief expressing concerns. The plaintiff was then disciplined. The Eleventh Circuit concluded that there was some, although not strong, public concern expressed in the plaintiff's speech, and conducted *Pickering* balancing. *Id.* at 1220. In so-doing, the court concluded that the government did not have to present evidence of disruption or disturbance before acting. *Id.* at 1220-21. The court concluded that the plaintiff could not sustain a claim for retaliation because the government's interest in promoting efficiency outweighed the plaintiff's interest. *Id.* at 1222.[4]

In light of the *Anderson* court's determination on the merits, and the fact that the instant case also involves a paramilitary organization's interest in efficiency, which is not necessarily governed by the same cases regarding public employers generally, this court concludes that this is not a case in which general statements of law are sufficient to give fair warning for purposes of qualified immunity.

In addition, the termination of Davis was, if not solely, at least in substantial part, a result of enforcement of City policy by City officials. The Eleventh Circuit has applied the *Hope* qualified immunity analysis in a prior restraint case and concluded that "[a]lthough we find

---

[4] The court alternatively held that the individual defendants were entitled to qualified immunity, *see Anderson*, 239 F.3d at 1222, but this court does not rely on this alternative holding because the analysis was conducted prior to the decision in *Hope*. The fact of that chronology, however, does not affect the court's holding on the merits of the claim.

today that portions of Canon 7 and the Rule 27 cease and desist request are unconstitutional, we do not believe that this unconstitutionality was 'clearly established' in 1998 so that a reasonable person would have known that enforcing these laws was unconstitutional." *Weaver v. Bonner,* 309 F.3d 1312, 1324 (11th Cir. 2002). Similarly, in *Cooper v. Dillon,* 403 F.3d 1208, 1221 (11th Cir. 2005), the court concluded that an officer was entitled to qualified immunity where a statute he enforced had not been previously declared unconstitutional and was not grossly and flagrantly unconstitutional.

The court also finds persuasive the reasoning of the Seventh Circuit in a recent decision finding that an individual defendant was entitled to qualified immunity where the defendant issued a pre-clearance directive to public employees. *See Wernsing v. Thompson*, 423 F.3d 732 (7th Cir. 2005). In that case, the court acknowledged that "while the constitutional limits of restraints applicable to the general public are well-settled, and while the Supreme Court has struck down formal statutory bans of certain speech activity by government employees, *see NTEU*, 513 U.S. 454, 115 S.Ct. 1003, the prerogatives of a government supervisor in managing the communications of his own staff are far less clear." *Id.* at 748; *see also Scott v. Goodman*, 961 F. Supp. 424, 447 (E.D. N.Y. 1997)(qualified immunity applied where cases did not clearly establish a first amendment right "in the face of the varying needs and missions of government agencies."), *aff'd sub. nom, Scott v. Meyers*, 191 F.3d 82 (2d Cir.1999).

Therefore, in this case, where there was not speech of strong public interest, where the discipline of the employee was enforcement of a policy that had not been ruled unconstitutional, and given the strong government interest recognized by the Eleventh Circuit, *Pickering* balancing does not tilt conclusively in favor of Davis such that the Defendants had fair warning

12

that their actions were unconstitutional. *Cook*, 414 F.3d at 1320. The Defendants' Renewed

Motion for Summary Judgment is, therefore, due to be GRANTED as to the individual

Defendants in their individual capacities on the claim in Count I.

### 2. Claim for Violation of Right to Free Association

Although the Defendants have asserted qualified immunity as to all of the claims asserted

against individual Defendants in their individual capacities, their brief in support of the Renewed

Motion for Summary Judgment does not specifically address application of that defense to the

right of free association claim by Davis. Therefore, the court has consulted the parties'

statement of the claims in the Pre-Trial Order, Doc. #128, as well as the briefs on the original

cross-motions for summary judgment, in analyzing the application of qualified immunity.

Davis's claim, as stated in the Pre-Trial Order which takes the place of the pleadings, is

that Defendants violated his right of free association by "retaliating against and terminating him

for his active participation in, and leadership of, the Phenix City Fire Fighters Association." *Id.*[5]

The Defendants have argued, for purposes of *Pickering* balancing analysis on the merits, that the

City's interest in maintaining an efficient workplace outweighs the Plaintiff's interest because

the Mayor would spend all of his time hearing complaints and would be unable to conduct City

business if the Plaintiff had unfettered access to the Mayor. Doc. #32 at page 18. The claim

proceeding to trial, therefore, is a claim that Davis was retaliated against and terminated for his

---

[5] The Plaintiff also contends in the Pre-Trial Order that he had rights to associate with the mayor. Doc. #128. As expressed in the earlier Memorandum Opinion and Order, and as re-stated here both in the context of qualified immunity, and *infra*, as to the prior restraints claims, the court finds no legal basis for such a claim in addition to Davis's claim based on his leadership of the firefighters' association.

active participation and leadership of the firefighters' association through speech on behalf of the association.[6]

This court certainly agrees with Davis that the Eleventh Circuit has stated that the law is clearly established that public employees have a first amendment right to engage in associative activity without retaliation, and that this right includes membership in organizations such as labor unions. *See Cook v. Gwinnett County School Dist.,* 414 F.3d 1313, 1320 (11th Cir. 2005).[7] This case presents facts beyond mere membership in an organization, however.  *Cf. McMullen v. Carson*, 754 F.2d 936, 939 (11th Cir. 1985) (noting that there is a distinction to be drawn between "mere membership in an organization" and a person's active participation in advocacy of the illegal conduct of the organization for purposes of *Pickering* balancing).  The claim in Count II is for termination in retaliation for active participation in and leadership of the association, not for mere membership.

Throughout this case, Davis, see Doc. #128 at page 5, and the Defendants have maintained that the free association claim is intertwined with and requires the same analysis as the free speech claim, except that there is no requirement that Davis spoke on a matter of public concern to establish violation of free association rights.   Accordingly, the court finds the same to be true with respect to qualified immunity analysis.  Consistent with the qualified immunity analysis of the claim in Count I, therefore, where the public employer's action in response to an exercise of associational rights was enforcement of a policy that had not been ruled

---

[6] There is no allegation that the policies were selectively applied on the basis of Davis's membership in an association.

[7]  The court notes that the associative activities at issue there did not violate policies of the public employer and *Cook* did not involve an employee of a paramilitary organization.  *Cook*, 414 F.3d at 1320.

unconstitutional, and given the interest of efficiency of fire departments as paramilitary organizations recognized by the Eleventh Circuit, *Pickering* balancing does not tilt conclusively in favor of Davis such that the Defendants had fair warning that their actions violated Davis's constitutional right to freedom of association. Stated another way, this court cannot conclude that the difference between the facts of Count I and Count II, namely, the difference between a constitutional violation arising from speech on a matter of public concern and a violation arising from association activities, so clarifies *Pickering* balancing that qualified immunity must be denied as to the claim in Count II. The Defendants' Renewed Motion for Summary Judgment is, therefore, due to be GRANTED as to the individual capacity claims against the individual Defendants in Count II, on the basis of qualified immunity.

### C. Prior Restraint Claims

As previously stated, Davis seeks to hold the City of Phenix City accountable for City policies which he claims constitute unconstitutional prior restraints on his speech and association.[8] The procedural history of this case has caused some confusion as to the nature and scope of this claim, or claims. By way of background, Davis has contended that even if he violated the City's Merit System Rules and Regulations, and ASOP 12, because those policies are unconstitutional, the enforcement of those policies through his termination was also unconstitutional. Through the amendment of his complaint, he has now added a separate prior

---

[8] Davis also asserts a free association prior restraint claim, but merely challenges the same policies as preventing him from associating with fellow union members, the media, and the city council, which appears on these facts to merely be another way to say that he was prevented with speaking with those persons or entities. Because he does not contend that the policies were any different depending on one's association with the firefighters association, and because he only seeks a prospective injunction against enforcement of the policies, the court finds no need to engage in additional analysis on this theory and summary judgment is due to be GRANTED as to any separately asserted prior restraint free association claim.

restraints claim or claims.  This amendment does not seek to add to his claims for damages in this case, but merely prospective injunctive relief if he prevails at trial.  Davis does not assert this claim against Roberts and Hunter in their individual capacities.

In moving for summary judgment, the City disputes that the facts of this case can present a prior restraints challenge.  The City argues that under its policies, a sanction may be imposed after speech has been engaged in, but that there is no injunction of speech before it is made, so that the facts of this case cannot be analyzed under prior restraints analysis.  In so-arguing, the City points to *Moore v. Kilgore*, 877 F.2d 364 (5th Cir. 1989).  The Fifth Circuit *Moore* case relied on by the Defendants, however, predates *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995)("*NTEU*").

In *NTEU*, the Supreme Court set forth a new method of analysis to be applied to certain prior restraints on government employee speech.  *Id.* at 468.  In that case, Congress had passed a ban on federal employees receiving honoraria for speaking outside of the workplace.  The Court considered that ban to be a prior restraint on speech.  *Id.*  The Court explained that to restrain such speech, the Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by the expression's necessary impact on the operation of the Government.  *Id.*

The Third Circuit examined the applicability of *NTEU* in the context of a rule which required a police officer to seek permission before engaging in speech.  *See Swartzwelder v. McNeilly*, 297 Fl3d 228 (3d Cir. 2002).  In *Swartzwelder*, written by then-Judge Alito, the court explained that application of the *NTEU* standard, rather than the traditional *Pickering* balancing standard generally applied in public employment  first amendment cases, "turns on whether a

government employee's expression is restricted 'through a generally applicable statute or regulation, as opposed to a particularized disciplinary action'." *Id.* at 237.  The court in *Swartzwelder* held that *NTEU* applied even though the order at issue applied to a narrow category of speech, expert testimony, and only to a single city department.  *Id.*

Other circuits have also applied *NTEU* under circumstances similar to this case.  For example, the Second Circuit determined that *NTEU* applied when an employee was disciplined for violating a policy which required permission before speaking to the media regarding activities of the agency.  *Harman v. City of New York*, 140 F.3d 111 (2d Cir. 1997).  The court reasoned that the city should bear the burden of demonstrating that its policies are necessary to the efficient operation of the agencies where the issue is not just an isolated disciplinary action taken in response to one employee's speech, but is a blanket policy designed to restrict expression by a large number of potential speakers.  *Id.* at 118; s*ee also Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 750 (7th Cir. 1999) (applying *NTEU* when police officers were given directives not to discuss charges against other officers); *but see Belcher v. City of McAlester, Ok*, 324 F.3d 1203, 1206 n. 3 (10th Cir. 2003) (applying *Pickering* rather than *NTEU*, finding that the restriction at issue was more narrowly tailored than that in *NTEU*).[9]

This court is persuaded to follow that approach in this case.   Under *NTEU* a court must determine (1) whether there is speech involving matters of public concern; and (2) if so, whether the interests of both potential audiences and present and future employees engaging in present and future expression are proved by the government to be outweighed by the necessary impact of

---

[9]  The Defendants rely on the *Belcher* decision to support the argument that *NTEU* does not apply, but the court makes clear in *Belcher* that only private comments were restricted and that speech made in public was expressly permitted, which is significantly different from the policies in this case. *Belcher*, 324 F.3d 1206 n.3.

the speech on the government's actual operation. *Harman v. City of New York,* 945 F. Supp. 750, 760 (S.D. N.Y. 1996) (citing *NTEU*, 513 U.S. at 468), *aff'd*, *Harman v. City of New York*, 140 F.3d 111 (2d Cir. 1997).

There are two forms of speech which Davis apparently contends are placed under unconstitutional prior restraints: speech before the City Council and speech to the media which takes place outside of the context of a City Council meeting.

The City policy entitled "Free Speech" is Merit System Rule 2.054 and identifies prohibited speech as that which impairs discipline and harmony in the workplace, breaches confidentiality or privileged information, impedes job performance, and jeopardizes close personal loyalty.

When asked about the scope of the Merit System Rule 2.054 in his deposition, specifically when asked whether it applies to speech on issues such as fire department safety and the health and welfare of the firefighters, Hunter answered, "If it's something that's going to impede or harm the operation of the department, yes, sir." Hunter Dep. at page 43: 10-19. The Defendants also argue in brief that ASOP 12, which requires speech to be presented through the chain of command, "does not apply only to grievances, but also to statements to the City Council about operations and procedures of the department, which are work related." Doc. #119 at page 14. Therefore, it appears that the City policy regarding both speech to the media and speech to the City Counsel applies even if the firefighter is speaking on a matter of public concern.

The next issue before the court is the weight to be afforded the competing interests at issue. The first logical step in that analysis is to define the nature of the restriction.

With respect to speech before the City Council, although there is a written policy which requires speech which is work-related be presented through the chain of command, the precise scope of that policy is unclear because, as discussed in the court's previous Memorandum Opinion and Order, there is a question of fact as to whether exhaustion of the chain of command will ultimately allow the firefighter to address the City Council directly on a matter of public concern.

With regard to speech to the media, Barbara Goodwin, the Personnel Director, stated in her deposition that "It's the policy of the City for any communications with the media go through our City Manager." Goodwin Dep. at page 17:15-7. Although there does not appear to be a written Merit System Rule or regulation specifically about when firefighters may speak to the media, the evidence before this court indicates that the policies applied to speech before the City Council also apply to speech to the media. When firefighters were interviewed by a newspaper, Hunter issued a memorandum in response which stated that firefighters were to pursue grievances through the grievance procedures of the City. Exhibit 8 to Davis Decl. He attached to this memorandum sections of the Merit System Rules which outline requirements that firefighters pursue grievances through their chain of command, and ASOP 12 which governs addressing the City Council. He also attached 2.054 of the Merit System Rules, the section entitled "Free Speech." When applied to speech to the media, however, it is unclear what the scope of the policy is.

Davis contends that the City's policies do not allow firefighters to speak to the media without receiving permission through the chain of command. The City disputes Davis's characterization of the relevant policies as requiring "pre-clearance," rather than requiring an

exhaustion of "internal procedures outlined in ASOP 12 before going to the media." Doc. #107 at page 3.

The court has carefully considered all of the evidence on this issue to which it has been pointed by the parties, which comes primarily from testimony of Hunter and Roberts. There is some evidence which supports the City's position. For instance, Hunter was asked whether his position "and the position of the city is that a firefighter must route any of those expressions of concerns through the chain of command . . . before they speak to a media representative" to which Hunter responded, "Yes, sir. We should be given a chance." Hunter Dep. at page 46: 17-25. Similarly, in his initial deposition Roberts stated that it would be a violation of the Merit System rules and regulations for a fire fighter to speak directly with the media without pursuing the chain of command. Roberts Dep. at page 68: 6-12.

During his supplemental deposition, however, Hunter was asked whether, if a firefighter spoke to the media on his own about issues affecting the fire department without his prior approval, that would be a violation of the merit system rules and regulations to which Hunter responded, "Yes, sir." Hunter Supp. Dep. at page 13: 15-22. Hunter also answered, when asked if it would violate the merits system rules if a firefighter spoke directly to the media about inadequate staffing, "As far as our rules and regulations, we have persons who can talk to the media about staffing that handles that." Hunter Dep. page 44: 4-12.

Roberts responded, "yes," to the following question: "Now, is it your position that before a firefighter can speak with the media about issues–any issues affecting the fire department, that the firefighter has to pursue the chain of command and get prior permission before talking to the media?" Roberts Supp. Dep. at page 15: 7-12. Roberts also answered "yes, sir," when asked

whether various topics were subjects "that the firefighter would have to get prior clearance through the chain of command in the city before he or she could speak on those issues to a media representative." *Id.* at page 15: 18-23. When asked whether he would have given his permission had Davis or other firefighters sought permission before being interviewed for a newspaper article,[10] Roberts explained the procedure as being that if the firefighters had requested permission through the chain of command to speak to the media Roberts would "look at the substance" and if he felt it was "of concern and of good intent," then he would forward it to the city council, and then the firefighter could voice the concern to the council and "then probably from there, the city council would give the okay or could give the okay." *Id.* at page 18:24-19:15. When the questioner clarified whether the city council's okay would be "to the firefighter as to whether he could speak to the media," Roberts answered, "That is correct." *Id.* at page 19: 16-8.

The court concludes from this evidence that the factual disputes about the individual Defendants' understanding of the City's policies prevents resolution by the court of the terms of the City's policies. *See Weaver v. U.S. Information Agency*, 87 F.3d 1429, 1436 (D.C. Cir. 1996). The court will, therefore, analyze the motions for summary judgment under both potential interpretations by City officials of their policies.

Although the court is not aware of Eleventh Circuit authority on this point, there are cases which have analyzed prior restraint claims against government employers and appear to find significant the distinction between pre-clearance and notification policies. In *Harman v.*

---

[10] Although this testimony is about speech about which the court has not made a ruling as to whether it was on a matter of public concern, that does not diminish the fact that this testimony could be viewed by a reasonable fact finder as evidence of a policy which applied when speech was on a matter of public concern.

*City of New York*, 140 F.3d 111 (2d Cir. 1997), for example, employees of child welfare and social services agencies were required to obtain permission before speaking to the media. *Id.* at 115. One employee in particular was disciplined for violating this policy. The city's asserted interests in the policy were to protect confidential information it was required by law to keep confidential and the efficient and effective operation of the agencies. The court reasoned that "a blanket approval process suppresses substantially more speech than is necessary to accomplish" the aim of promoting efficiency. *Id.* at 124; *see also Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1435-6 (D.C. Cir. 1996) (noting that statute requiring pre-publication review, rather than preclearance, poses constitutional concerns).

In *Latino Officers Association v. Safir*, 170 F.3d 167 (2d Cir. 1999), the Second Circuit was again asked to review a policy restricting speech, this time of police officers. The policy at issue required police officers to provide notice that they were going to speak to the media, obtain permission to speak, and provide the substance of their speech. After the district court ordered relief, the city stipulated that it would withdraw from its appeal of the district court's order the portion of city policy which required prior permission. The Second Circuit found the *NTEU* analysis to be relevant even where the regulations did not purport to ban speech, but only to impose indirect burdens on speech. *Id.* at 172. In balancing the competing interests under the *NTEU* standard, the court found that the absence of the requirement that the officer obtain permission before speaking distinguished the case from *Harman*, and that the plaintiff, therefore, had not established a likelihood of success on the merits to obtain a preliminary injunction. *Id.*

In this case, when viewed in a light most favorable to the Defendants as non-movants, the policy at issue merely requires that certain procedures be followed, but does not prohibit

firefighters from speaking thereafter in public at the City Council meetings or to the media. The City has pointed to the effects of speaking outside the chain of command as being deleterious on morale and the ability of the Fire Department to properly function as its interests in its policies. As stated above, policies which merely require employees to provide notice of intent to speak to the media have been found to be constitutional, when weighed against the strong interests of the government as employer. *Latino Officers Assoc.*, 170 F.3d at 172. In this case, if the policies only required that certain procedures be followed, and ultimately allowed speech, the indirect burden on speech posed by the policies is outweighed by the concerns of the employer as a paramilitary organization. *See Anderson v. Burke County, Ga.*, 239 F.3d 1216, 1222 (11th Cir. 2001). Therefore, the court finds that the Plaintiff's Motion for Partial Summary Judgment is due to be DENIED.

On the other hand, viewing the evidence in a light most favorable to the Plaintiff for purposes of deciding the Defendants' motion, the policy requires permission before a firefighter can speak on a matter of public concern to the media, or that a firefighter can be prevented from speaking on a matter of public concern directly to the City Council, even after pursuing the chain of command. As stated above, a policy which requires prior approval by a government employer has been held to be an unconstitutional restraint on speech. *Harman,* 140 F.3d at 120. Under a view of the facts most favorable to the Plaintiff, therefore, discipline of Davis would have been pursuant to an unconstitutional prior restraint, and the Defendants' Renewed Motion for Summary Judgment is due to be DENIED as to this claim.

## V. <u>CONCLUSION</u>

For the reasons discussed above, it is hereby ORDERED as follows:

1.  The Defendants' Renewed Motion for Summary Judgment (Doc. #89) is DENIED as to Davis's prior restraint on freedom of speech claim against the City and Defendants H.H. Roberts and Wallace Hunter is their official capacities, in Count IV of the Amended Complaint.

2.  The Defendants' Renewed Motion for Summary Judgment (Doc. #89) is GRANTED as to the individual capacity claims against the individual Defendants in Counts I and II of the Amended Complaint, and as to all Defendants on the free association claim in Count IV of the Amended Complaint.  Judgment is entered against the Plaintiff and in favor of H.H. Roberts and Wallace Hunter in their individual capacities on Counts I and II of the Amended Complaint, and also in favor of all Defendants on the free association claim in Count IV of the Complaint.

3.  The Plaintiff's Motion for Partial Summary Judgment (Doc. #88) is DENIED.

The case will proceed on Plaintiff David Davis's claims against Phenix City, Alabama, and H.H. Roberts and Wallace Hunter in their official capacities only, in Count I of the Amended Complaint for retaliation in violation of his first amendment free speech rights, Count II for violation of first amendment free association rights, and Count IV for injunctive relief, based on prior restraints of speech.

Done this 12th day of February, 2008.


/s/ W. Harold Albritton_____
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE