IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DAVID DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 3:06-cv-00544-VPM |
| ) | |
| PHENIX CITY, ALABAMA, et al. ) | Judge Vanzetta Penn McPherson |
| ) | |
| Defendants. ) | |

# ATTACHMENT B

# MEMO


DEFENDANT'S EXHIBIT
3 6

TO: Deputy Chief W. Hunter

FROM: Asst. Chief M. Hanson

DATE: July 15, 2002

RE: Meeting with Captain Sumbry and Fire Fighter David Davis

The following personnel were in attendance at a meeting held at Fire Station #3 on July 9, 2002 at approx. 1300 hours: Deputy Chief Wallace Hunter, Assistant Chief Mike Hanson, Captain Leo Sumbry, and Fire Fighter David Davis.

The issue of concern was the statement that F/F D. Davis expressed on the afternoon of June 24, 2002 while standing in the dayroom, looking out a window at Fire Station #3. This statement was made following a locker and turnout inspection and sleeping quarter assignments of all the shift personnel, which was being performed by D/C Hunter, A/C Hanson, and Capt. Hutchinson. The assignment of sleeping quarters were being done to form some continuity when personnel swap stations, thus being kept accountable for the dorm locker, the locker key, and its sleeping area.

According to F/F D. Davis, as he was looking out the window at Fire Station #3 he stated, "if the two of them were involved in an accident and killed, it would not bother me." This statement was made after the departure of the inspecting officers. When asked for the reason that he felt the need to speak this harshly toward anyone, he stated, "he was upset about having to perform the inspections during the lunch hour (12 noon), and being made to move from the dorm room he had occupied since being transferred to that station to another less desirable dorm room."

Fire Fighter D. Davis stated that although he had made the statement about an accident, he did not really mean it. He understood that it was wrong of him to say it, to think in that manner, and to leverage his self-anger towards other members of the fire department.

During the discussion, it was identified that F/F D. Davis was being feed "demeaning statements" by other members of the department that was directed toward F/F Davis from D/C Hunter. Fire Fighter D. Davis never asked D/C Hunter to make sure the statements were true. D/C Hunter told F/F D. Davis that he needed to bring these individuals to him

F/F D. Davis was advised that if he needed Anger Management counseling to assist him with controlling his anger and aggression, the city still offered assistance through the EAP at the Pastoral Institute in Columbus, Ga.

# Memo

**To:** Chief Prater

**From:** Deputy Chief Hunter

**Subject:** Consultation of Fire Fighter David Davis

**Date:** July 19, 2002

**CC:** Max Wilkes, Barbara Godwin

Attached you will find a memo from Chief Hanson concerning a meeting held about the behavior of Fire Fighter David Davis. In attendance at this meeting was Chief Hanson, Captain Sumbry, Fire Fighter Davis, and I. It was brought to my attention that Fire Fighter Davis had made dreadful remarks about Chief Hanson, Captain Hutchinson and I after a locker inspection. Fire Fighter Davis stated "if the two were involved in an accident and killed, it would not bother me." He also refereed to me as Chief Osama Bin-Hunter. I asked Chief Hanson to investigate because of the severity of the remarks over a simple locker inspection. When asked about this situation, Fire Fighter Davis admitted making these statements, but used the excuse that when angered he makes statements like these. Chief Hanson spoke with Fire Fighter Davis about these remarks and offered assistance from the Pastoral Institute to help control his anger.

My concern is that Captain Sumbry has continuously consulted Fire Fighter Davis on his use of harsh profanity around the station and in public as well as his impolite behaviors around others. I suggested to Chief Hanson and Captain Sumbry to monitor Fire Fighter Davis' behavior so that we can help him in the best way that we can.


DEFENDANT'S EXHIBIT 37