IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DAVID DAVIS, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 3:06-cv-00544-VPM |
| PHENIX CITY, ALABAMA, et al. | ) Judge Vanzetta Penn McPherson |
| Defendants. | ) |

# ATTACHMENT G

 

# Phenix City Fire /Rescue Services
### 1111 Broad Street
### Phenix City, Alabama 36867
### (334) 448-2817

| Kristen Kennedy | Wallace B. Hunter | Bobby Brooks |
| Fire Marshal | Fire Chief | Captain/Training Officer |

# Memo

To: H.H. Roberts, City Manager; Barbara Goodwin, Personnel Director

From: Wallace B. Hunter, Fire Chief

Date: August 3, 2005

CC: file

Re: Sgt. David Davis Written Warning



DEFENDANT'S EXHIBIT 47

On the afternoon of Monday, August 1, 2005; I met with the Management Team consisting of all three Asst. Chiefs and Capt. Kennedy to discuss the state of our department. Some of the topics discussed were loyalty gratitude, disruption, staying out of City politics, working as a team under a para military organization, etc. I felt that I had one main complaint from the three shifts and that was that information was given to them in three different ways at three different times. To alleviate this, I asked all the Management team and Staff Captain Kennedy to meet with all three shifts to find out why there seems to be ongoing disruptions from our department with Fire Chiefs and city government over the past several years. Our Fire Department is constantly in the news and it has damaged our reputation. I felt that this management team ranging from 16-21 years of service should be able to relate to the personnel in which they are managing.

At approximately 1030 am on the morning of August 3, 2005; I called Fire Station #1 to talk to the Assistant Chief Johansen. I started this conversation by saying "Good Morning" and Chief Johansen stated that he was getting ready to call me because there was a problem at his staff meeting that morning. The management was meeting with A-Shift as it had previously met with B and C shifts on Monday and Tuesday of that week. Asst. Chief Johansen informed me of Sgt. Davis' behavior towards Capt. Kennedy and I went to Station #1. Upon my arrival, I found all three Chiefs and Capt. Kennedy in the Asst. Chiefs office and they explained the situation as it had occurred to me. The three Asst. Chiefs were preparing their statements and Capt. Kennedy was preparing her written warning. They were all in agreement as to what had happened in the meeting so I told Asst. Chief Johansen and Capt. Kennedy to meet me at the Personnel Director's

Office. Asst. Chief Johansen stopped by Station #3 to pick up Sgt. Davis to bring him to the Personnel Director's Office so that the written warning and suspension could be explained to him. We tried to talk to him about this problem and he explained that he's just an abrasive person and that he has this same problem at home. Chief Johansen and Capt. Kennedy spoke to Sgt. Davis about his lack of respect for the Management Team.

He told us that he hoped that this would be the end of this situation once he left this meeting and we all agreed to do better from this point forward. He basically lied to us because he did not end the situation at that meeting but later returned to file an appeal.

It is my opinion that Sgt. Davis has a problem with any person in an authoritative position. We have tried to counsel him on his behavior in the past as he has made comments about not caring whether Chief Hanson and Capt. Hutchinson were killed while riding together and referring to Chief Hunter as "Osama Bin Hunter."

To whom it may concern:

On August 3, 2005 a shift meeting was held at station #1. The events which will be recalled in this statement are as close to accurate as I George Bennett remember.

A meeting was held and in attendance were Chiefs Johansen, Jackson and Hanson along with Captain Kennedy and "A" shift personnel. This meeting was being conducted to discuss the changes which need to and will take place in the department. During this meeting a confrontation Captain Kennedy and Sgt. David Davis Both parties during this discussion seemed to become agitated at each other. During this discussion Captain Kennedy made statements about the department going to a different work schedule, during the discussion Sgt. Davis stated that they could go ahead and change the schedule today and that he was not going to leave the department. Sgt. Davis at some point said that he would not be "punked out" and he made a slight lunging motion of approximately 6-12 inches from where he was sitting, he never left his seat but used a sort of jerking motion in the direction of Captain Kennedy while talking to her. Captain Kennedy continued to address Sgt. Davis's questions during the meeting. Chief Hanson stepped in and to the crew that we had run over 300 calls for the month and was saying how great of an accomplishment this was for the department. Sgt. Davis interrupted and asked if this was the kind of meeting which was necessary to obtain this type of praise, Chief Johansen then stepped in and to Sgt. Davis that his sarcasm was not needed and that he needed to stop!

Sgt. George Bennett


DEFENDANT'S EXHIBIT 48

Mrs. Barbara Goodwin,                                                      August 04, 2005

I, Sergeant David P. Davis, of Phenix City Fire Rescue, in accordance with the Phenix City Merit System: Section 15, am requesting an employee appeal for disciplinary actions taken against me on August 03, 2005. I would also respectively request that upon receipt of this appeal request, that all facts of this incident and disciplinary action notice be sent in writing to me. In addition, I also request that documentation be given to me in writing, as to what the financial cost of this disciplinary action is, as it incurs towards me. I humbly ask, at this time, that I be given ample time to prepare my defense in this appeal, after I receive the requested documentation above.

Respectively,

*[signature]*

David P. Davis, Sergeant
185 Lee Road 236
Phenix City, Alabama 36870
(334) 291-1927

DEFENDANT'S EXHIBIT 49




# Phenix City Fire /Rescue Services
1111 Broad Street
Phenix City, Alabama 36867
(334) 448-2817

Wallace B. Hunter
Chief

Kristin H. Kennedy
Fire Marshal

August 5, 2005



DEFENDANT'S EXHIBIT
50

Wallace B. Hunter
Phenix City Fire Chief
1111 Broad Street
Phenix City, Alabama 36867

Dear Chief Hunter:

This letter is to recall the discussion and events of August 3, 2005 involving myself, the Assistant Chiefs (Hanson, Jackson, Johansen), and Sergeant David Davis as well as further discussions in the office of the Personnel Director, Barbara Goodwin.

Around 0830 hours the meeting in which we were asked by the Fire Chief to relay information to the crew was taking place. We had previously spoken with the other two shifts concerning the new work schedule. As I was speaking to Sergeant Davis, he rose up in his chair towards me, stuck out his chest in a quick motion and made the comment, "well do it and don't punk me out or stop punking me out." At the time I was shocked and surprised that he had done this and did not know what he meant by the comment. I felt that it was not appropriate behavior. I also felt that he was trying to be threatening, challenging, and intimidating with his body language due to the intensity of the subject.

After the meeting was adjourned, I immediately went to the Assistant Chiefs and asked each of them if they saw and heard the same thing as I did? Their response was definitely that they saw and heard the same thing and they too felt that it was inappropriate and insubordinate. I also felt that Sergeant Davis was insubordinate but more than that I feel by his actions and tone that he was trying to be threatening and he needed to be made aware of his actions. I then looked through the Merit System and completed a Written Warning form. It was turned into Chief Hunter and taken to Personnel.

Around 1330 to 1400 hours, I, Fire Chief Hunter, Chief Johansen, and Barbara Goodwin met

*with Sergeant Davis to discuss the Written Warning. Chief Hunter began the meeting by advising Sergeant Davis as to the reason he was present and the Written Warning. Shortly thereafter I was able to address Sergeant Davis and explain my reasons for the Written Warning. I explained to him in a clam manner that " he did not have to like me or respect me but he would respect my rank and position as an officer in this department." I further advised him that when he made that gesture and comment that I felt it was disrespectful, threatening, and intimidating due to the subject matter of the meeting and that he was disagreeing with the subject. I also told him that " in this formal setting I could not allow him to be disrespectful to me in front of his peers." He stated that "he has respect for me and that he did not mean it in that way." I asked him to look at it from our perspective because there was no reason for that type of behavior. He did not deny what he had done but wanted to restate the comment in his own words.*

*Chief Johansen addressed Sergeant Davis next and advised him that if he had made the gesture and comment to him directly that he would have been taken out of the meeting at that point. He also told him that he perceived his actions the same as Captain Kennedy. Sergeant Davis acknowledged that he has a problem with anger at home as well as at work and that gets him into trouble. At one point Chief Johansen asked Sergeant Davis a question and Sergeant Davis turned away from him and began speaking to Mrs. Goodwin about another subject. Chief Johansen pointed out to Sergeant Davis that type of behavior was part of what gets him into trouble and that he was showing it again.*

*I asked Sergeant Davis near the end of the meeting if he could please allow Chief Hunter to run the department. Chief Hunter is a new, young, and vibrant Chief and can communicate with the city leaders and that it is only fair to give him this respect and right to do his job. I advised him that if he has concerns he feels needs to be addressed then he could send them up the Chain of Command and they would be addressed. I also told Sergeant Davis that he was an influential person in this department especially with the younger persons and he could use that influence in a positive manner to help the department.*

*Sergeant Davis asked Mrs. Goodwin if this could be reduced to a lesser charge and she told him no, that it was already lesser because he could have been dismissed due to insubordination. I stated at that time that " I did not want him to loose his job but to be made aware of how I perceived his actions." I also stressed to him again that he was insubordinate but more than that his actions seemed to be threatening and intimidating. He stated that " he did not want something crazy like this in his record." He was also concerned that this would not be over when we left the room. I stated to him " that as far as I was concerned it was over." Mrs. Goodwin also told him that we would not discuss this situation and if it was discussed it was because he told his co-workers. I put out my hand as a gesture of good will to shake Sergeant Davis' hand and we did shake hands. I felt that this matter was over but that was not the case.*

*During the meeting with the other shifts no one acted in the same manner as Sergeant Davis. All employees were given the same opportunity to voice their opinion and ask questions but no one else jumped at a supervisor for an answer that they did not like. Sergeant Davis admitted that he has a problem with anger and his actions proved that he may have a problem with authority as*

*well, especially if the message is not coming from him or he does not agree with it. In our organization there is a Chain of Command and a need for supervisors and no supervisor should be treated with disrespect much less be intimidated for trying to relay information.*

Sincerely,

Kristin H. Kennedy
Fire Marshal