IN THE MIDDLE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DAVID DAVIS, )
)
Plaintiff, )
)
vs. ) CIVIL ACTION NO.
) 3:06cv544-WHA
PHENIX CITY, ALABAMA, et al., )
)
Defendants. )

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

COME NOW the Defendants in this case, The City of Phenix City, City Manager H. H. Roberts in his official capacity and Fire Chief Wallace Hunter in his official capacity, and, all evidence having been heard in this case, request this Honorable Court to grant them Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure, and say as follows:

(1) In its first Memorandum Opinion and Order (E. C. F. Document #49), this Court considered Phenix City Merit System Rule 15.023 PROCEDURE FOR PRESENTATION OF A GRIEVANCE, specifically citing Paragraph D of that rule, which states that, at the end of the grievance procedure "The City Manager shall put in writing the decision he/she has rendered concerning the grievance within five working days from the receipt of the written grievance from the employee. The decision of the City Manager shall be final, and the employee shall have no further rights of administrative appeal." Uncontroverted testimony at trial was that the Merit System Rule 15.023 only applied to the procedure available to an employee for the resolution of a grievance, that the "final" decision of the City Manager is only final as to the resolution of a work grievance, that even after the final resolution of a work grievance the employee is free to speak to City Council or the Media or to anyone else about the grievance as long as they comply with ASOP 12, and that it is not necessary to follow the grievance

procedure outlined in Merit System 15.023 in order to comply with ASOP 12.

(2) Testimony at trial was uncontroverted that under ASOP 12, as long as a firefighter exhausts his chain of command all the way through to the City Manager, in effect giving Department leadership the first chance to address a work-related issue in order to prevent chaos and disorder, that firefighter will have the absolute right to speak about that work-related matter to City Council or to the media or to anyone else. In fact, the plain language of ASOP 12 says that the City Manager "will arrange a hearing with the City Council." Plaintiff produced no witnesses or testimony which indicates that this plain language has some different meaning. Uncontroverted testimony at trial was also that members of the media are present at every City Council meeting, that such meetings are of public record, and that once a firefighter has made it to City Council, the firefighter has made it "outside the Department" with the speech and, so it follows, the firefighter may then speak to anybody about the matter. Plaintiff proffered no evidence at trial and produced no witnesses who testified that the plain language of ASOP 12 is in fact untrue. No witness in this case has ever testified that such witness has any knowledge of any Phenix City firefighter who has complied with ASOP 12 (i.e. exhausted their chain of command all the way through the City Manager) but then been prevented from speaking at City Council or reprimanded or disciplined for speaking at City Council.

(3) This Court, in its first Memorandum Opinion and Order (E. C. F. Document #49) considered testimony from the first deposition of H. H. Roberts which says:

> Q: Is a firefighter permitted to--after exhausting the chain of command on an issue affecting the fre department, is that firefighter then allowed to address the city council or city council members on that issue?
> A: Not by the Merit System, I don't think, no, sir.

Roberts Deposition 83:25-84:6.

Roberts' uncontroverted testimony at trial was that his answer, "Not by the Merit System," was meant only to say that there are no channels provided by the Merit System (e. g. the Grievance Procedure) under which a firefighter going through his chain of command would reach the City

2

Council. Roberts further testified that as long as a firefighter exhausted his chain of command, all the way through the City Manager, that firefighter was then free to speak about his work-related issue to anybody he chose to speak to, according to ASOP 12, which is "not by the Merit System." Roberts had originally also said, in the same deposition, that firefighters "can come to the council through proper procedures." Deposition of H. H. Roberts, 83:12-13.

(4) This Court, in its first Memorandum Opinion and Order (E. C. F. Document #49) considered testimony from the first deposition of Fire Chief Wallace Hunter, which says:

> Q: Okay. So, in other words, under this ASOP 12, firefighters are not permitted to go beyond the city manager and are not permitted to address the city council as a group in a meeting; is that accurate?
> A: City Manager informed the council of anything that's going on. He would be the one that--if he had to express something that was bad, he would be the one that would meet with the city council.

Hunter Deposition 76: 7-16.

Hunter's uncontroverted testimony at trial was that by this answer he only meant to say that if the City Manager heard some kind of work-related issue from a firefighter who had come to him through the chain of command per ASOP 12, that if the City Manager felt that the matter was legitimate and deserved the attention of City Council, the City Manager would personally present it to the Council for the purpose of lending credibility to the matter and advocating a quick resolution by the Council. Hunter's uncontroverted testimony at trial was also that even if the City Manager did not join the firefighter in taking the matter to Council, the firefighter had his own independent guaranteed right to take the matter before City Council, or anywhere else for that matter, as soon as that firefighter exhausted his or her chain of command under ASOP 12. Also, in the same deposition, Hunter had answered the question, ". . . free speech is allowed if you follow the procedures that are set out in the ASOPs and in the Merit System for the City of Phenix City?" by responding, "That's correct." Deposition of Wallace Hunter, 102:18-22.

(5) At trial, Roberts was asked on direct examination by Plaintiff's counsel to explain the following excerpt from his deposition transcript:

> Q: Well, just so the record is clear, the firefighter pursues the chain of command on an issue affecting the fire department and addresses the city council on that same issue, then would he be subject to discipline, including firing?
> A: He could be, yes.

Plaintiff had attempted to offer this excerpt as evidence that even after compliance with ASOP 12, a firefighter could still be restrained from addressing City Council. However, Plaintiff's counsel failed to ask for clarification of this answer in Roberts' deposition. Once Plaintiff's counsel asked for this clarification at trial, Roberts explained very soundly and simply to Plaintiff's counsel and to the jury that even after a firefighter exhausted his chain of command under ASOP 12, in effect securing his guaranteed right to speak to City Council or to anyone else, that speech could still be punishable under Merit System 2.054 FREE SPEECH if that speech was false or intentionally disruptive or defamatory of Department leadership. This testimony was uncontroverted.

(6) Evidence at trial given by the Plaintiff and by Mayor Hardin is uncontroverted that at the personnel review board hearing, the transcript of which is also in evidence, the Plaintiff never raised either of his two primary defenses in this case, namely that (a) his immediate supervising officer George Bennett directed him to call the Mayor and (b) that when he spoke to the Mayor, he was speaking only as a Union Member and was not expressing concerns regarding the effect of the proposal in question on the Plaintiff personally. The plaintiff did dispute at trial what his intention was in calling the Mayor, but admitted on the stand, under oath, that he had pretended while talking to the Mayor that he had a question about the application of the proposed ordinance to himself, and admitted on the stand that, through answering a question posed to him by his own counsel Brian Polisuk, Plaintiff had informed the Personnel Review Board, and thus the decision makers in his termination, that the telephone call was in large part an inquiry relating to the effect the ordinance would have on Plaintiff personally. Chief Waters and the Plaintiff offered conflicting testimony at trial regarding whether George Bennett ever told the Plaintiff to call the Mayor about the proposal. However, Plaintiff admitted at trial, under oath, that the Plaintiff never did inform any of the decision makers regarding his

4

termination about his alleged contact with Captain Bennett. Because the decision makers were not privy to these two defenses, the decision makers cannot be blamed or otherwise held accountable for their failure to consider defenses they did not know nor could have been expected to know at the time they made their determination.

(7) The purpose of ASOP #12, according to language which is actually part of ASOP #12, is "To insure the orderly handling of work-related business of the Fire Department personnel." It is not an issue of fact whether a proposal which affects new hires in the Fire Department is "work-related business" as it is impossible to comprehend that a policy governing the workers in the Fire Department and regarding the training and education they undertake while at the Fire Department for the purpose of instructing them how to do work at the Fire Department is nevertheless unrelated to the work of the fire department.

(8) The purpose, "to insure orderly handling of business," would be absolutely defeated if the rule could be ignored by any member of the Fire Department while that member was off duty. As Chief Hunter testified, in his depositions and at trial, a simple way to state the purpose of this rule is to say that it is designed to ensure that the Department leadership receives "a chance" to address problems before those problems are taken outside the department. No testimony has been adduced at trial or during the course of discovery, contradicts Chief Hunter's testimony that this is the purpose of the rule. Such purpose would be defeated by any speech about work-related matters which is made before exhausting the chain of command whether this speech was made on duty or off duty. The drafters of this rule certainly cannot have imagined that speaking without following the chain of command while off duty would be less likely to cause disruption and disorder than speaking without following the chain of command on duty. This is made evident by the testimony at trial regarding the disruptive effect of the off-duty speech made by Plaintiff and other firefighters to a newspaper jounalist, which resulted in an article entitled "Three Alarm Turmoil." The Defendants have continually directed the Court to Belcher v. City of McAlester, Oklahoma 324 F.3d 1203 (10th Cir. 2003). In that case, a firefighter went outside the Fire Department and his chain of command in violation of Department and City policy. It has been undisputed throughout this trial that the Plaintiff went outside of his chain of command. Plaintiff has testified that he did not think he violated Department and City policy. The City Manager, the Fire Chief and former Deputy Fire Chief have all

5

testified that ASOP 12 applied to the discussion of the proposed Ordinance to extend probationary periods for new hires in the Phenix City Fire Department. Had the Plaintiff raised this issue with the City Manager, who he could have spoken to directly in his capacity as Union President or had he gone through his chain of command he would have learned quickly that ASOP 12 was applicable to his concern. Plaintiff offered no testimony that he even inquired of his superiors whether or not ASOP 12 was applicable. He certainly knew about ASOP 12 because, as testimony has indicated, he was issued a manual with all of the ASOPs at the commencement of his employment with the Phenix City Fire Department. If the Court finds as a matter of law, as we expect to show below, that ASOP 12 was applicable to the Plaintiff, then there is no question he violated City and Department policy, which means, as in Belcher, his speech should be afforded less protection since he ignored less disruptive internal channels of communication for his concerns.

(9) ASOP #12 also contains the language, "SCOPE: *This procedure shall be followed by all members of the Phenix City Fire Department.*" It is undisputed, and the evidence is uncontroverted, that at all times relevant to this cause of action, the Plaintiff was a member of the Phenix City Fire Department. No testimony has been given in this case that when the Plaintiff was off duty he suddenly ceased to be a "member" of the Fire Department. This idea is certainly bolstered by the fact that even when "off duty," firefighters are understood to be on call for emergency situations requiring extra personnel.

(10) The second paragraph under the "PROCEDURE" heading contemplates members of the Fire Department "go[ing] outside the department" with work-related issues. This bolsters the clarity of this rule's application to firefighters both on and off duty because it specifically speaks to procedures which must be followed by firefighters who want to take certain speech to "outside the Department," which it can be assumed contemplates speech which is not made while on duty.

(11) This rule does not prohibit the commission of speech. Rather, this rule prohibits an omission, that of channeling speech through a chain of command. This channeling is contemplated to occur while a firefighter is on duty. In other words, the acts which the Plaintiff has omitted to do, i.e. giving his leadership a chance to resolve problems, are acts the Plaintiff is contemplated to do while on duty. Undisputed testimony and evidence in

6

this case is that the Plaintiff failed to route his concerns all the way through the chain of command while on duty.

(12) ASOP #12 contemplates a firefighter being put on a City Council agenda. Nothing in this rule suggests the rule only speaks to such City Council agendas which take place during the on-duty hours of a given firefighter addressing City Council. It cannot be the case that the drafters of this rule intended a firefighter to be able to circumvent the rule by merely waiting until City Council holds an agenda while that firefighter is off duty. This would do very little to achieve the stated purpose of insuring "the orderly handling of work-related business of the Fire Department personnel."

(13) The evidence of this case is undisputed that the Plaintiff was counseled after an incident in which Plaintiff violated ASOP #12, resulting in a newspaper article headlined "Three Alarm Turmoil." It is also undisputed that the speech at issue in this newspaper incident occurred while the Plaintiff was off duty. It is also undisputed that as part of this counseling, Plaintiff signed a document acknowledging that the act was in violation of ASOP #12. Therefore, there is undisputed evidence that the Plaintiff was aware that off-duty speech was subject to ASOP #12.

(14) The Merit System Rules and Regulations and ASOPs that govern the activity of Phenix City Firefighters are in essence legislation. Therefore it is entirely appropriate that the canons of statutory interpretation be applied to them in determining when they are in force. If one reads the Political Activity section in the Merit System Rules and Regulations, you will find a provision that states the prohibition on supporting candidates and political causes is limited to "working hours". The statutory canon of interpretation expressio unius est exclusio alterius tells us that the mention of some implies the exclusion of those not mentioned. Allapattah Servs. v. Exxon Corp., 362 F.3d 739 (11th Cir. 2004). Put simply, since Political Activity of the Merit System Rules and Regulations specifies it is only applicable during working hours, and none of the other provisions of the Merit System Rules or ASOPs so state, we can safely assume those are applicable during working and non-working hours, or both while on duty and off duty.

(15) Evidence was presented at trial that Plaintiff's act of calling the Mayor and going outside of his chain of command caused a great deal of

7

disruption at the Phenix City Fire Department and had the potential to cause additional disruption. The City Manager testified about the fallout between the Mayor and the Fire Chief that lasted several weeks after the telephone call from the Plaintiff. The Fire Chief testified that the Plaintiff's conduct in calling the Mayor undermined his authority and the authority of all those in the chain of command as the Plaintiff was once again flouting not only a written policy of the Department but also a specific directive to follow that policy he had received not six months earlier. There is no question that Defendants have met their burden that Plaintiff's conduct caused actual disruption of the operation of the Fire Department and that certainly it had the potential to cause disruption.

(16) The Fire Chief, former Deputy Fire Chief and the City Manager all testified at trial that ASOP 12 applied to this matter and that the Plaintiff would have had not only an audience with City Council but that he would be authorized to speak to anyone he wished about the proposed Ordinance, had he only followed ASOP 12. No reasonable jury could conclude that the Plaintiff would not have received such audiences under the testimony provided at trial and the explanations provided for the prior deposition testimony.

WHEREFORE, above premises considered, the Defendant respectfully requests this Honorable Court to find that the issue of whether ASOP #12 applies to the Plaintiff's telephone call to Mayor Hardin about the proposal to extend the probationary period is not an issue of fact to be decided by the jury.

WHEREFORE, above premises considered, the Defendant respectfully requests that should this Honorable Court rule that the issue whether ASOP #12 applies to the Plaintiff's telephone call which is the subject of this suit is an issue of fact, the Court should resolve this issue of fact pursuant to <u>Rule 50 of the Federal Rules of Civil Procedure</u> because there is no evidence suggesting otherwise, and therefore a reasonable jury would have no legally sufficient evidentiary basis to find for the Plaintiff on this issue.

WHEREFORE, above premises considered, the jury has no legally sufficient evidentiary bases to find for the Plaintiff on any cause of action or any relevant factual issue in this case, and that pursuant to <u>Rule 50 of the</u>

<u>Federal Rules of Civil Procedure</u>, Judgment as a Matter of Law in this case is due to be GRANTED to the Defendants.

 

                                        JAMES R. MCKOON, JR.
                                        JOSHUA R. MCKOON
                                        Attorneys for Defendants
                                        McKoon & Associates
                                        Post Office Box 3220
                                        Phenix City, AL 36868-3220
                                        (334) 297-2300

OF COUNSEL:
JAMES P. GRAHAM, JR.
Post Office Box 3380
Phenix City, AL 36868-3380
(334) 291-0315

## *CERTIFICATE OF SERVICE*

     I hereby certify that on March 6, 2008 I presented a copy of the foregoing to Plaintiff's trial counsel.

                                        OF COUNSEL

9